UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| | Hon. Trevor N. McFadden |
| v. | Criminal No. 21-00037-TNM |
| TIMOTHY LOUIS HALE-CUSANELLI, | |
| Defendant. | |

## DEFENDANT'S MOTION FOR MODIFICATION OF OF BOND TO PLACE THE DEFFENDANT ON CONDITIONAL RELEASE PENDING TRIAL

Defendant Timothy Louis Hale-Cusanelli, by and through undersigned counsel, respectfully moves this Court, pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 *et seq.*, to release the defendant on personal recognizance. Alternatively, if the Court is not amenable to release defendant on personal recognizance, Mr. Hale-Cusanelli moves this court to release defendant into the third-party custody of his long-time friend ███████ and commit him to the supervision of a High Intensity Supervision Program (HISP) with GPS monitoring by local Pretrial Services.[1]  The defendant requests that he be placed on house arrest with

---

[1] There is a US District Court in Trenton, NJ.   They have a Pretrial Services unit that could provide supervision and has the ability to install GPS

reasonable curfew privileges that allow him to leave the house for work and activities related to this case. In support of this request the defense states the following:

**I.**                                   **BACKGROUND**

Mr. Hale-Cusanelli is a thirty-year-old with no criminal convictions. He received an Associate Degree in history from Brookdale Community College. Prior to his arrest, Mr. Hale-Cusanelli resided in Colts Neck, New Jersey, with a roommate. He was employed by HBC Management and is employed as a security officer doing base security for Naval Weapons Station Earle[2]. He is also enlisted as a Sergeant (E5) in the United States Army Reserves. He has been in the Army Reserves for approximately eleven years. Despite his arrest, Mr. Hale-Cusanelli has been offered an honorable discharge, directly reflecting his successful military career.

Mr. Hale-Cusanelli is before the Court charged with multiple counts arising out of his alleged participation in the activities that occurred at the United States Congress.  On January 6, 2021, Mr. Hale-Cusanelli attended

---

monitoring devices and supervise in a High Intensity Supervision Program (HISP).

[2] Mr. Hale-Cusanelli operates as a uniformed private police officer while on duty. He is required to carry an authorized firearm but the firearm is kept at his place of employment, issued to defendant while on duty and returned at the end of each shift.

a rally in Washington, DC where many speakers, including then-President of the United States, Donald J. Trump would be speaking. As has been noted, several of the attendees came prepared for confrontation wearing, "combat gear," helmets, body armor, etc..   By comparison, Mr. Hale-Cusanelli got dressed up in a suit and tie for the occasion.   He had no intention nor expectation that he would be involved in anything other than a peaceful show of support for President Trump.   During President Trump's speech, Trump encouraged the attendees to march to the United States Capitol to protest the Electoral College certification of the vote for the 2020 Presidential Election.  Mr. Hale-Cusanelli attended what he believed to be a protest, arriving near the end of the former President's speech when he encouraged the crowd to walk toward the Capitol. Mr. Hale-Cusanelli marched to the Capitol with the crowd, thinking he was protesting the election, which the President claimed had been fraudulently "stolen.[3]"  Mr. Hale-Cusanelli had no intention to cause damage to the Capitol buildings or grounds or to commit any crime or acts of violence.

---

[3] As noted in his post arrest statement, Mr. Hale-Cusanelli believed the President was likely part of the crowd because, as has been widely reported, the President claimed he would be walking to the Capital with the protesters.

Once at the Capitol, Mr. Hale-Cusanelli found himself surrounded by a large crowd of protestors who eventually began forcing their way into the Capitol building. The government makes no allegations that Mr. Hale-Cusanelli committed acts of violence against anyone. The government states that "Defendant acknowledged that some individuals in the mob fought with law enforcement officers…" and that he used vulgar language towards an officer after officers pepper sprayed the protesters. Gov't Mot. for Emergency Stay, Doc. 3, filed 1/19/21, at 5. However, there are no allegations nor evidence that Mr. Hale-Cusanelli himself physically fought with law enforcement officers nor any other individuals. There is no claim defendant was otherwise violent. The government further alleges that Mr. Hale-Cusanelli took a flag and flagpole and that he "observed another rioter throw [the flagpole] 'like a javelin' at a Capitol Police officer[.]" Doc. 3, at 4. The defendant himself is not being accused of throwing the flag or flagpole. Defendant picked up a flag pole that was abandoned on the ground. There is no evidence the abandoned flag he found was the one used in an assault.

Mr. Hale-Cusanelli was arrested on January 15, 2021, in New Jersey and charged with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority pursuant to 18 U.S.C. §§

1752(a)(1), (a)(2); Violent Entry and Disorderly Conduct on Capitol Grounds pursuant to 18 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G); and Obstructing a Law Enforcement Officer During a Civil Disorder pursuant to 18 U.S.C. § 231(a)(3). A search warrant at defendant's residence was executed.  No firearms were recovered nor any other weapons of any type nor explosives nor any materials suspected of potentially being used in connection with violence.

At Mr. Hale-Cusanelli's initial appearance in the District of New Jersey, the government argued for detention pursuant to 18 U.S.C. § 3142(f)(2)(B). The Magistrate Judge denied the government's detention motion. In response, the government moved for a stay of Mr. Hale-Cusanelli's release. The Court ruled that the stay of release would last until January 22, 2021. On February 3, 2021, Mr. Hale-Cusanelli was brought to the District of Columbia.

**II.**             **PROPOSED CONDITIONS OF RELEASE**

Mr. Hale-Cusanelli's first request is that he be released on personal recognizance, consistent with the statutory presumption as the favored form of release. If the Court believes personal recognizance is not sufficient, Mr. Hale-Cusanelli requests that he be released into the third-party custody of ███████.  Additionally, ███████, along with

█████████ would be actively checking in on Mr. Hale-Cusanelli. █████████ ██████ is an Aunt like figure to him and they have known each other for his entire life. █████████ husband is a police officer in New Jersey. █████████ fully understands the responsibilities and obligations of a third-party custodian, including his obligations to ensure that Mr. Hale-Cusanelli appears when ordered to do so, that he complies with all conditions of release and that he inform the Court and/or Pretrial Supervisor of any violations of the conditions. Assuming Mr. Hale- Cusanelli is permitted to return to New Jersey, pretrial supervision should be transferred there. If the Court believes that additional supervision is warranted the defendant is requesting, he be released into the HISP program, that a GPS monitoring system be employed along with a reasonable curfew that permits him to work and support himself.

In the event that Mr. Hale-Cusanelli is released on his own personal reconnaissance, █████████ and █████████, are willing to secure an apartment on his behalf and pay the first three months of rent in advance[4].

## III.      MEMORANDUM OF LAW AND ARGUMENT

---

[4] Defendant's prior housing was in conjunction with his military service. Given his arrest in this case, he is no longer eligible for that housing and will have to relocate.

Mr. Hale-Cusanelli submits that the order of detention should be vacated and that this court should set conditions of release in this case. Under the Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, *et. seq.,* there are four bail options: release on personal recognizance, release on conditions, temporary detention and pretrial detention. 18 U.S.C. § 3142(a). The Act provides that if the Court finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order detention of the person before trial." 18 U.S.C. §§ 3142(e)(1), (f)(2)(g). However, there is a strong presumption against detention. *See United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (citing *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Courts have held that a finding that defendant is a danger to the community or a serious flight risk is a basis of detention. *See United States v. Anderson*, 177 F. Supp. 3d 458, 461 (D.D.C. 2016) (*citing United States v. Salerno*, 481 U.S. 739, 755 (1987). The finding must be based on clear and convincing evidence that the defendant poses a danger to the community or a

preponderance of the evidence to support the defendant's likelihood to flee. *See id.*; *see also United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 442 (1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

The Act mandates pretrial release on personal recognizance or unsecured bond stating that the court "shall order the pretrial release…" unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the community. 18 U.S.C. § 3142(b)). When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release. 18 U.S.C. § 3142(c). The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the community's safety. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

To determine whether the conditions of release will reasonably assure a defendant's future presence in court, the following factors are considered: "(1) the nature and circumstances of the offense charged… (2) the weight of the evidence against the person; (3) the history and characteristics of the person… (4) the nature and seriousness of the

danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(1)-(4).

The legislative history of the Act stresses that '[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial. It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." S. Rep. No. 225, 98th Cong., 1st Sess. 7, 12, *reprinted in*, 1984 U.S. Code Cong. & Ad. News 3189.

In the instant case Mr. Hale-Cusanelli's continued detention without bond is not the least restrictive alternative case; there are conditions available that will assure the community's safety and his return for future court dates. *See U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996). Mr. Hale-Cusanelli is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial. *See United States v. Orta*, 760 F.2d 887 (8th Cir. 1985); *see also* 18 U.S.C. §3142(c)(1)(B) (stating the judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall determines will reasonably

assure the appearance of the person as required and the safety of any
other person and the community").

Notwithstanding that the defendant has been indicted he is still
presumed innocent. The defendant's ability to prepare a defense will be
hampered by his pretrial incarceration. Additionally, there are several
factors in the instant case which demonstrate that there are conditions of
release which would both guarantee Defendant's appearance and assure
the safety of the community.

## i. The nature and circumstances of the offenses charged weigh in favor of Mr. Hale-Cusanelli's release.

In determining the nature and circumstances of the offense charged,
the court looks at the seriousness of the offense. *See* 18 U.S.C. §
3142(g)(1). Here, the nature and circumstances of the charged offenses
weigh heavily in favor of release. Mr. Hale-Cusanelli is charged primarily
with offenses related to being on restricted Capitol grounds. The offenses
are non-violent offenses. The prosecution does not allege that defendant
ever physically injured anyone at any time. There is no claim defendant
ever attempted to injure anyone at any time. There is no claim defendant
ever threatened to injure anyone at any time. There is no claim defendant
ever planned, conspired, agreed, aided, abetted, facilitated or encouraged
anyone to physically harm anyone at any time. There is no claim

defendant ever possessed let alone used a firearm or weapon of any type at any time. There is no claim defendant ever attempted to obtain nor transfer any weapon at any time for any purpose in connection with the underlying event or in connection with the activities at issue. Similarly, there is no claim defendant ever possessed any handcuffs, flex cuffs, or other forms of restraints as has been alleged against other persons involved in the underlying event.

The government contends that Mr. Hale-Cusanelli used his military training to "assist other insurrectionists" but have not provided any specific evidence of this allegation other than stated that he used hand and voice signals. Doc. 3, filed 1/19/21, at 8. There is no evidence that Mr. Hale-Cusanelli was leading anyone or using his military training. There is no evidence that defendant participated in the planning of the underlying event, he was merely one of the thousands that participated in the event and ended up getting swept along with the crowd. He was not part of any group, is not a member of any organizations that was involved in the demonstration. Rather he travelled to the demonstration by himself to listen to a speech and exercise his right to protest. Similarly, he was not part of any group at the demonstration.

The prosecution places great weight on the defendant taking a flag and flagpole stating that the defendant "observed another rioter throw [the flagpole] 'like a javelin' at a Capitol Police officer…" Doc. 3, at 4. However, there is no allegation that Mr. Hale-Cusanelli is the one that threw this flagpole, directed another to throw it, or was in any way involved with assaulting Capitol Police Officers or other law enforcement officers. Upon information and belief, there is no evidence the flagpole that defendant picked up is the same one used to assault an officer, only speculation by the defendant that it "might be the same one." The nature and circumstances of the charged offenses weigh heavily in favor of release.

## ii. __The weight of the evidence weighs in favor of Mr. Hale-Cusanelli's release.__

The charges and the weight of the evidence against Mr. Hale-Cusanelli stem from allegations that he entered the Capitol and its grounds. The evidence in this case primarily consists of various photographs and video that appear to capture Mr. Hale-Cusanelli at the Capitol on January 6, 2021. As stated above, Mr. Hale-Cusanelli is charged with crimes stemming from entering and remaining on Capitol grounds, principally offenses analogous to trespass. He is not charged with crimes of violence

nor destruction. He never assaulted nor threatened anyone. The weight of the evidence leans in favor of Mr. Hale-Cusanelli's release.

### iii.  Mr. Hale-Cusanelli's History and Characteristics weigh in favor of his release.

As stated *supra*, Mr. Hale-Cusanelli is a member of the United States Army Reserves and has been for many years. He has no convictions. The only time that Mr. Hale-Cusanelli has been involved with the criminal justice system was approximately ten years ago, when there was an altercation between his mother and her then boyfriend who became violent when intoxicated. Based upon information and belief, Mr. Hale-Cusanelli intervened to protect his mother and was subsequently arrested.  The Grand Jury dismissed the case finding no probable cause to believe Mr. Hale-Cusanelli committed a crime. Undersigned counsel spoke with Mr. Steven Nelson, the attorney who represented defendant.   Counsel advised that it was clear Mr. Hale-Cusanelli's actions were in defense of his mother. Significantly Mr. Hale-Cusanelli's was released into the community for almost 2 years while the case was pending. He never failed to appear in Court for any court dates prior to the dismissal.    Based on past compliance the same may be expected in this case. Since that incident, Mr. Hale-Cusanelli has been a law-abiding citizen.

The government is attempting to paint Mr. Hale-Cusanelli as a white supremist, inaccurately stating that he is an "avowed white supremacist and Nazi sympathizer."  Doc. 3, at 8.  In fact, during an interview of Mr. Hale-Cusanelli by FBI agents, he denied this when he stated that, "he is not a Nazi…" and "he is not a white nationalist or a white supremacist." FD-302, 2/8/21, at 7-8. There is no evidence Mr. Hale-Cusanelli is a member of any white supremacist organizations.

The government states that Mr. Hale-Cusanelli's use of a YouTube channel and other social media platforms shows that he is a white supremacist and Nazi sympathizer. *See* Doc. 3 at 8. The YouTube videos, albeit controversial, to Mr. Hale-Cusanelli they are considered a platform to talk about local New Jersey politics.

As previously stated, the prosecution executed a search warrant at Mr. Hale-Cusanelli's residence. No firearms were recovered nor any other weapons of any type nor explosives nor any materials suspected of being potentially utilized in connection with violence.  The evidence taken from the residence included two controversial books, *Mein Kampft* and *The Turner Diaries*. The government is using these two books to claim that Mr. Hale-Cusanelli has white supremacist ties by stating these books are "required reading by those who are enmeshed in the White Supremacy

movement." Doc. 2, at 9 (internal quotations omitted). There is no evidence nor claim that Mr. Hale-Cusanelli is a member of any group.   The government places great weight on these two books, equating the ideology from the books to Mr. Hale-Cusanelli's own beliefs stating that "Defendant's actions and statements make plain his beliefs in White Supremacy, and his interest in participating in a civil war…" Doc. 3, at 9. This is not an accurate depiction of Mr. Hale-Cusanelli's character. The government uses the two books that were recovered from Mr. Hale-Cusanelli's residence to support this claim.   However, the government does not mention that there were hundreds of other books in Mr. Hale-Cusanelli's collection. Mr. Hale-Cusanelli has an Associate's Degree in history with aspirations to go back to school for a Bachelor's Degree and has since accumulated a small personal library of world history books. As the government concedes, "it might otherwise be possible to attribute the 'Based Hermes Show' and an interest in *Mein Kampf* and *The Turner Diaries* to morbid curiosity or First Amendment expression…" *Id.*

Mr. Hale-Cusanelli has extensive ties to the community of Colts Neck, New Jersey where he resides and where he has a solid support system

consisting of ██████████,[5] ██████████,[6] and ██████████. He has been offered employment as a landscaper in New Jersey immediatelyupon release[7].  As previously stated, he has never failed to appear in court before.

Due to these ties and his background, there is no indication that he would be a risk of flight or otherwise fail to comply with any order from this Court. Mr. Hale-Cusanelli's history and characteristics weigh heavily toward his release.

### iv.  Mr. Hale-Cusanelli is not a danger to the community and therefore should be released.

---

[5] ██████████ was best friends with Mr. Hale-Cusanelli's mother growing up and has known Mr. Hale-Cusanelli his entire life. The relationship between ██████████ and Mr. Hale-Cusanelli's mother deteriorated when Mr. Hale-Cusanelli's mother and provider became addicted to controlled substances. ██████████ became a constant supportin Mr. Hale-Cusanelli's life and describes herself as Mr. Hale-Cusanelli's Aunt.

[6] Similar to ██████████, ██████████ was a friend of Mr. Hale- Cusanelli's mother prior to her mental health and drug issues. ██████████ is Mr. Hale-Cusanelli's Godmother and has known him since he was born. In his parent's absence from his life, ██████████ has stepped up along with ██████████ ██████████ a parental-like figure, referring to herself as Mr. Hale- Cusanelli's "Aunt."

[7] Mr. Hale-Cusanelli cannot return to his former job as a security guard at a military installation because of the instant charges.

On January 6, 2021, Mr. Hale-Cusanelli set out to exercise his First Amendment right to protest and when he reached Capitol grounds things undoubtedly got out of hand. Assuming the prosecution's allegations are correct that he entered the Capitol area, it appears Mr. Hale-Cusanelli got swept up in the moment. However, at no time does the government even allege the defendant personally attempted to physically harm anyone.They claim other individuals of the thousands who participated in the activities of January 6, 2021, did inflict physical harm on individuals. Still others expressed a desire and intent to do so. But they do not claim that there is evidence Mr. Hale-Cusanelli personally did so.           Mr. Hale-Cusanelli is not a member of any far right-wing group. He has no record of violence or criminality that poses a danger to the community. Mr. Hale-Cusanelli does not own any firearms.   There is no allegation he ever expressed a desire or inclination to physically harm anyone.

Lastly, in assessing the danger Mr. Hale-Cusanelli's release poses on the community, his alleged activities must be viewed in context. Notwithstanding that his belief that the election was "stolen" may not have been rationally based, he was not acting out of criminal intent. He sought no personal nor pecuniary gain. Rather, he was responding to the entreaties of the then commander in chief, President Trump.  The former

President maintained that the election had been stolen and it was the duty of loyal citizens to "stop the steal" by preventing the election certification. Although the claim appears to be baseless, it is apparent that Mr. Hale-Cusanelli was one of millions of Americans who were misled by the former President's deception. Mr. Hale-Cusanelli did not act out of criminal intent but out of conscience, albeit one that was manipulated by deception. Hopefully, as a result of this experience he has learned not be so gullible and will not be so easily duped again. His solitary action in this case, measured against a history of being a law-abiding citizen, safely predicts that he is more likely to resume behaving as a law-abiding citizen if released pending trial. His history does not suggest that he is likely to resume the type of behavior that brings him before this court. It is an aberration in an otherwise exemplary record.

In view of that it is difficult to see how the government can credibly claim there are no conditions of release that protect the community from the danger Mr. Hale-Cusanelli's release poses, particularly when they cannot point to any attempt by him to physically injure anyone.

**IV.**                              **CONCLUSION**

Congress enacted the Bail Reform Act of 1984, in passing the Act, however, Congress did not intend to authorize the wholesale pretrial

incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code § 3142(j). To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "*there is a small but identifiable group of particularly dangerous [persons]* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this *limited group* ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189 (emphasis added).

Mr. Hale-Cusanelli should not be considered to be within that limited group. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial. Mr. Hale-Cusanelli does not pose a danger to the community and there is no risk of flight. All factors weigh in favor of Mr. Hale-Cusanelli being released on his own personal recognizance.

**WHEREFORE**, for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant through counsel, respectfully requests that he be released on personal recognizance. If that request is denied defendant requests as an alternative that he be released on Third Party Custody and placed into the High Intensive Supervision Program of the Pretrial Services Agency conditioned on reasonable conditions including but not limited to work release and curfew.

Respectfully submitted,

_____/s/_____
Jonathan Zucker # 384629
37 Florida Av. NE
Suite 200
Washington, DC  20002
(202) 624-0784
jonathanzuckerlaw@gmail.com

*Counsel for Timothy Hale-Cusanelli*

### CERTIFICATE OF SERVICE

I certify that on March 1, 2021, the foregoing was electronically served by email to AUSA James Nelson at james.nelson@usdoj.gov.

_____/s/_____
Jonathan Zucker

January 25, 2020

To whom this may concern,

I have known Timothy Hale-Cusanelli in a variety of capacities for over half of my life. He has been a classmate, co-worker, and most importantly friend. Throughout knowing him, we have both had ups and downs in our professional and personal lives. There has never been a time where I could not count on his level head and ability to see things from a different perspective to give life advice. Throughout our lives' we have been around people that represent different walks of life imaginable. Every instance I have known him to extend a handshake and introduce himself regardless of race, gender, age, or religion. This is especially important to mention considering the childhood trauma he faced as his drug addicted mother had several different men in and out of the house who would abuse and intimidate him. A particularly soul crushing event was after Tim returned from basic training to come home to find his joint bank account drained of his signing bonus and his mother at home with several "friends" spending Tim's money on drugs. As an 18-year-old man, who had just came back from the hardest thing he has ever done, he came home to a house in disarray, no money, and having to be the adult in the house at a young age. Tim had to scrape up $500 to buy a piece of garbage car in order for him to get back and forth to his minimum wage job. Any normal person would have given up, but he persevered and lifted himself out of the hole that he was put through with no fault of his own. To conclude, Tim has been a great friend to myself throughout my time of knowing him, always being there when I needed him, putting other's needs before his own. I respectfully ask the court to please give consideration to this letter.


Thank you for your time,

███████

Dear You Honor:                                                                    February 17, 2021

 I have known Tim his entire life, in fact I was present when he came into this world. Tim's journey in life so far has been a painful one. I was his mother's best friend; I have known her my entire life. I have stood by and watched in horror the hell she has put this boy through throughout his life, please pardon my choice of words your honor. Many years ago, I had to sever my relationship with her in order to protect and advocate for Tim. I am more of a mother to this boy then her. I believe growing up without your mom or with a troubled mother can harm you and crack your foundation and I believe some scars run very deep, unfortunately I know this walk all too well myself and because I do, I am able to really understand Tim and help him through these rough areas in his life, or at least try to. I too had a very rough start in life and hit some dead ends and had some of my own troubles in life. I am proof that with hard work and 2nd chances many good things await you. Tim has had to figure life out pretty much on his own, with some guidance from myself, and while I wish I could go into detail of the constant burdens his mother and father placed on him, the focus is why Tim deserves bail.

Tim is a very good person with a heart of gold. He truly would give anyone the shirt off his back. In 2013 my home was badly flooded, and the damage was catastrophic and overwhelming. Tim was one of the 1rst people to show up and offer me his help physically and financially. Tim is not a violent person in any manner. He would not harm anyone, not even a fly. Even in his profoundly tempestuous relationship with his mother he did whatever he could to help and protect her during some of her worst times, she has truly put him through a lot. I know the good that lives in him and I know that he does regard the law. Tim does have a good character; I know that may be hard to believe in light of these circumstances, but it is true, nonetheless. Tim is a very good person at the core. Tim is a reliable hard-working person; he has great work ethic and is extremely bright. I can always count on Tim when I need him. Tim is very trust-worthy and dependable. He truly would help anyone need. I truly love and care about Tim as if he were my own. In fact, I do have four children and I have always included Tim and consider him my 3rd son. My heart is very heavy for him. I truly believe these last few weeks have been very eye opening for him. Tim is not a bad person and it is very hard to watch what is happening to him, it is truly breaking my heart. Tim is one of the smartest people I know and sadly being terribly misunderstood. I cannot stress enough that you are not dealing with a violent person. Sadly, Tim was put in a very serious situation many years ago at the hands of his mother and was forced to make a split-second decision to protect he and his mother. As a result of that horrific day, Tim had to face the courts and while awaiting his day in court he respected and regarded the conditions placed upon him. Ultimately and thankfully truth prevailed.

Your honor I am asking you to please allow Tim to come home so the people that care very deeply about him, which are few can help him put some of these pieces back together now and prepare for the many challenges and changes he is facing. Please allow the little bit of family he does have to help him with this horrible nightmare in front of us, please. I am very confident Tim will not represent any sort of flight risk or be in any trouble in any manner before the next time he is present in front of you. I know Tim will make very good of his time before his next appearance and this court will be very pleased.

Your honor I have already begun to try and help Tim pick up some of the pieces by securing him gainful employment. When my home was damaged by that horrific flood, one of the things that happened was, the hill in which my home sits collapsed, and we had to build a massive retaining wall. The owner of the

company we hired to save my home has become a great friend to my husband and me. I reached out to him and told him what was happening, and that Tim needed a job ASAP. Tim happens to love horticulture and has a wonderful green thumb, and he has a job with my landscaper upon his release. With the spring just a few short weeks away my landscaper said he could really use a reliable person. Tim will be a great fit.

 If I might add, after many hardships in my own life and a very difficult and abusive marriage, I remarried to a wonderful man. He is truly heaven sent. If it holds water, my husband is a law enforcement officer here in NJ and I can assure you that he would do whatever he had to if the law were being broken. Your honor I respectfully ask you to please take this note into consideration.

Thank you for listening and any consideration you may give this letter.

Warmest regards,

"aunt" █████

February 23, 2021

Dear Sir/Madam:

My name is ████. I have known Timothy L. Hale-Cusanelli since the moment he was born, I was present to witness him coming into this world to an unstable future. I grew up with both of Tim's parents and in fact I am named as his Godmother, however never actually had an opportunity to fulfill those duties in his younger years as the result of heartbreaking chaos in his life.  I first witnessed physical, mental and substance abuse with both his parents during the months prior to him entering this world and existed thereafter with a plethora of absentee parents, custodial grandparents and multiple places to call home.  His foundation was rocky at best.

Tim's parents did not remain together and his father did not remain in is life. His mother eventually remarried to a man who adopted Timmy as his own and created, for a short time in his life, a place he felt secure, but as that marriage dissolved his adoptive father disappeared from his life as well, once again reinforcing abandonment and distrust. Tim's grandparents who tried to provide the best they could for him passed from this world further enlarging the void in his life.    While I understand that where an individual comes from does not dictate their future nor does it excuse poor choice or behavior as an adult, yet I consider that this young man has been so disillusioned with a sense of not belonging to anyone.  He did not have the luxury of a family that provided unconditional love, trust and guidance.

Tim had to learn to fend for himself, take care of a mother with mental disorders He has come a long way and found the one place that is stable for him in the United States Army. This is a place he trusted and respected, not to mention his love of our great Nation. He tried to support his mother when he was in boot camp and sent all his money to her, left his job every time she called having a panic attack, he tried but to no avail she abandoned him as well and he stabilized himself with the Army and work.

Tim has always been of the inquisitive nature and will read, investigate and research at in depth levels. He is most passionate in the study history and the Bible. He has read and collected thousands of books over the years. Tim had a professor that sparked his interest deeply and created an aspiration of becoming a history professor.

Can I tell you a little bit of personal information about Tim? Sure! He is undoubtedly rough around the edges with a dry and intense sense of humor that can either send you into hysterics or leave you pondering his train of thought.    He has never been violent and actually has a deeply kind soul. It does not come out it tears or words but rather actions. His Aunt ████ experienced a terrible flood in her home several years ago, that almost sent her home into the water, he saw her fear, sadness and frustration. He offered to assist her financially as she had been one of the only people to step up to bat for him when he so desperately needed an adult in his life!

Pg. 2

More recently his cousin (on his paternal side) passed away at a young age from addiction, Timothy without hesitation offered to pay for his funeral, not knowing if his Uncle and his wife could afford to do so. With this being said Tim is not even close to his father's family, he is estranged from them but it did not stop him from caring and attending his cousin's funeral where I sat with him. In addition, a little known fact is that Timothy is Puerto Rican, yes his father's family is of color and accusation that he is a racist is devastatingly false !

His most recent focus while employed as a contractor with the Navy, was his elected position as Shop Steward wherein he was working effortlessly to represent the employees, their grievances and ensure better working conditions. Tim had found a cause in people who believed in him to speak on their behalf and he spent much of his time on this effort. He did not miss time from work or use spare time to attend rallies, organize or attend meetings regarding the state of our politics.  What to make of his You Tube endeavors, well kids these days!!!!!  Like I said, his personality is somewhat quirky and intense.

Tim believed in a President, as do so many other millions of Americans. You cannot fault him or any other for their belief. In my opinion Tim would never jeopardize his future, the integrity of being a soldier in the United States Army or will to cause harm to another, not in a premeditated way.

Sincerely,

Aunt ███