UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-37 |
| v. : | |
| : | |
| TIMOTHY LOUIS HALE-CUSANELLI : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO VACATE TRIAL DATE AND CONTINUE TRIAL,
AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America, by and through the United States Attorney for the District of Columbia, hereby moves this Court to vacate the trial date currently set for November 9, 2021, grant a 60-day continuance of the above-captioned proceeding, exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (hereinafter, "the STA"), and set a status hearing to monitor the government's progress in meeting its discovery obligations. In support of its motion, the government states as follows:

**FACTUAL BACKGROUND**

On January 6, 2021, the defendant, Timothy Hale-Cusanelli, was a United States Army Reservist who resided on Naval Weapons Station Earl in Colts Neck, New Jersey and held a "Secret" level Security Clearance.[1] The defendant traveled to Washington, D.C., on January 6, 2021, and participated in the attack on the United States Capitol (hereinafter, "the Capitol Breach") that took place later that day.

In the early afternoon on January 6, before the U.S. Capitol was breached, the defendant was near the front of the crowd pushing toward the building on its West Side. As he moved

---

[1] Hale-Cusanelli was discharged from the United States Army effective June 3, 2021. He received an "Other than Honorable Discharge" and a reduction in rank from Sergeant (E-5) to PV1 (E-1).

toward the building, he passed barriers that had been knocked aside and witnessed rioters fighting law enforcement officers who were attempting to hold the mob back. The defendant moved toward the Capitol, using his military training to withstand the effects of OC spray, and continued as law enforcement officers threw flashbangs to disperse the crowd, despite losing his hearing at one point. The defendant urged fellow rioters to advance on the Capitol using vocal and tactical-hand signals. As the defendant moved closer to the Capitol, he witnessed rioters' collective assault on the law enforcement line guarding the Capitol, leading to the moment when the conflict between law enforcement officials and the rioters—in the defendant's words—"blew up." The defendant entered the Capitol through the Senate Wing Door at approximately 2:14 p.m., moments after the first rioter breached the building through a nearby broken window.

After the riot, the defendant admitted his conduct and explained his motive for participating in the riot to a Confidential Human Source ("CHS"). The defendant couldn't find words to describe how exhilarating January 6 was, due to "the adrenaline, the rush, the purpose" that he felt. The defendant told the CHS that the closest comparison to what he experienced would be "civil war," and stated that if there had been more rioters, they could have taken the entire Capitol and held it. The defendant stated that he "really wishes" for a civil war and that it would be "only a matter of time" before such a war breaks out. When the CHS asked about the likelihood of significant fatalities, the defendant replied: "Thomas Jefferson said the tree of liberty should be refreshed with the blood of patriots and tyrants." The defendant further admitted his conduct and motive in an interview with law enforcement officials, during which he stated that he had intended to interfere with the certification of the 2020 Presidential Election and had done so.

**PROCEDURAL BACKGROUND**

The defendant is charged by indictment with violations of 18 U.S.C. §§ 1512(c)(2) (obstructing an official proceeding); 18 U.S.C. § 231(a)(3)(certain acts during a civil disorder); 18 U.S.C. § 1752(a)(1)(unlawful entry and disorderly conduct on restricted grounds); and 40 U.S.C. § 5104(e)(2)(D) and (G) (disruptive or disorderly conduct and parading, demonstrating, or picketing in Capitol Buildings). The obstruction charge carries a maximum statutory penalty of twenty years.

The defendant has been held in pretrial detention since the date of his arrest. On March 2, 2021, this Court found that "no condition or combination of conditions [of release] will reasonably assure … the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1). In making that finding, this Court emphasized that the defendant had urged other rioters to "essentially storm the Capitol Building and enter it despite police presence, tear gas, [and] fences" and that the defendant had a "well-documented history of racist and violent language" and some history of "hateful" if "not necessarily violent conduct." This Court found the evidence against the defendant "overwhelming" and the defendant's history and violent language "highly troubling." This Court concluded that the defendant's history demonstrated an escalating willingness to advocate for and engage in violence. The defendant moved for reconsideration of this Court's detention order, which this Court denied. The defendant appealed, and the Court of Appeals affirmed this Court's order in a precedential opinion. *United States v. Hale-Cusanelli*, 3 F.4th 449, 457 (D.C. Cir. 2021).

Even though the investigation into the defendant's charged conduct and the Capitol Breach is ongoing, the most substantial evidence specific to the defendant's participation in the events of January 6 has been produced, as outlined in two discovery notices filed with the Court

on May 11, 2021, and July 14, 2021, as well as in response to the defendant's May 22, 2021, "Report Concerning Discovery." (*See* Dkts. 32, 34, and 36.)[2]

Separately, however, the government is in possession of a broad array of discoverable material among which may be interspersed arguably exculpatory material. These documents include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act accounts, digital media tips, Parler video, and news footage); hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement; and financial, travel, and communications records. The government has filed two memoranda regarding its ongoing and diligent efforts to produce discovery from these voluminous materials (the "Discovery Status Memoranda"). S*ee* Dkts. 37, 39, incorporated herein by reference.

---

[2] Multiple items that have been produced to the defense have been marked "Sensitive" or "Highly Sensitive" pursuant to the protective order entered in this case. (*See* Dkt. 31.) The government's motion for a protective order was unopposed by former defense counsel, and this Court entered the protective order on May 6, 2021. While the undersigned has informed current defense counsel of the protective order and continued to produce Sensitive and Highly Sensitive material pursuant to the protective order, the undersigned has yet to receive acknowledgment of or indication of compliance with the terms of the protective order from current defense counsel. Notably, neither former nor current defense counsel has filed a fully executed copy of Attachment A to the protective order—"Defendant's Acceptance." According to the terms of the protective order, "Defense counsel must obtain a fully executed copy of Attachment A *before* providing the defendant access to Sensitive or Highly Sensitive materials, and must file a copy with the Court within one week of execution." (Dkt. 31, ¶13 (emphasis added).)

While the absence of the defendant's acknowledgment of the protective order does not alter, or hamper, the government's discovery obligations (*see* Prot. Ord., Dkt. 31 ¶12,) the government includes this information for the Court's awareness as it bears on the defendant's access to and ability to review discovery.

On July 30, 2021, after the parties announced they were unable to agree to a pretrial disposition of the charges in the indictment, this Court set this case for trial on November 9, 2021, over the government's objection.

**ARGUMENT**

For the reasons described below, the United States seeks to vacate the trial date and continue this matter to permit the government to continue its collection, review, cataloging, and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady*[3] doctrine. Although we have been diligent in our efforts to comply with unprecedented discovery obligations, given the nature and volume of material, our plan will not be completed by the time of the currently scheduled trial. Accordingly, the government requests that the Court set a status hearing in sixty days to monitor the government's progress in complying with its discovery obligations. If, at that time, the government needs additional time to complete its discovery obligations or defense counsel needs additional time to complete its review of the discovery, the Court may then entertain any requests for an additional ends-of-justice continuance. If the parties' discovery obligations are nearly complete at that time, the Court can and should set a trial date.[4]

---

[3]     *Brady v. Maryland*, 373 U.S. 83 (1963).

[4]     The ongoing pandemic may also serve as a basis to toll the STA. In recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47 on August 25, 2021, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021. Chief Judge Howell found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." As set forth in Standing Orders Nos. 20-9, 20-19, 20-29, 20-62, 20-68, 20-89, 20-93 and 21-10, the Court previously found that due to the exigent circumstances created by the COVID-19 pandemic, the

On July 30, 2021, after the parties announced they were unable to agree to a pretrial disposition of the charges in the indictment, this Court set this case for trial on November 9, 2021, over the government's objection.

**ARGUMENT**

For the reasons described below, the United States seeks to vacate the trial date and continue this matter to permit the government to continue its collection, review, cataloging, and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and the *Brady*[3] doctrine. Although we have been diligent in our efforts to comply with unprecedented discovery obligations, given the nature and volume of material, our plan will not be completed by the time of the currently scheduled trial. Accordingly, the government requests that the Court set a status hearing in sixty days to monitor the government's progress in complying with its discovery obligations. If, at that time, the government needs additional time to complete its discovery obligations or defense counsel needs additional time to complete its review of the discovery, the Court may then entertain any requests for an additional ends-of-justice continuance. If the parties' discovery obligations are nearly complete at that time, the Court can and should set a trial date.[4]

---

[3]   *Brady v. Maryland*, 373 U.S. 83 (1963).

[4]   The ongoing pandemic may also serve as a basis to toll the STA. In recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47 on August 25, 2021, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021. Chief Judge Howell found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." As set forth in Standing Orders Nos. 20-9, 20-19, 20-29, 20-62, 20-68, 20-89, 20-93 and 21-10, the Court previously found that due to the exigent circumstances created by the COVID-19 pandemic, the

Our need for reasonable time to address unprecedented complex discovery obligations warrants the requested continuance and exclusion of time under the STA, even over the defendant's objection. In fact, much longer continuances have been granted in cases involving far less complexity in terms of the volume and nature of data. Further, the STA expressly contemplates that warranted periods of delay may lengthen the period of pretrial detention of a defendant, and the defendant's constitutional speedy trial rights are in no danger of being violated in view of the government's ongoing and diligent efforts to produce discovery.

### I. The Government's Approach to Discovery is Intended to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.

The Capitol Breach involved thousands of individuals inside and outside of the Capitol, many of whom overwhelmed and assaulted law enforcement officers. According to a Washington Post analysis of the events, the mob on the west side eventually grew to at least 9,400 people, outnumbering officers by more than 58 to one. *See* *https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics*. As these individuals attacked the Capitol, members of Congress, including the Vice President in his capacity as President of the Senate, worked to certify the Electoral College vote of the 2020 Presidential Election until doing so became unsafe due to the breach of the Capitol.

While it may be tempting to view many of the charged cases as individual matters with straightforward discovery, the reality is that these cases are bound by interrelated facts and shared evidence. Each defendant's conduct was enabled because of the collective efforts of the

---

period from March 17, 2020 through August 31, 2021, would be excluded in criminal cases under the STA.

mob.  Thus, within the thousands of hours of video footage depicting the conduct of other rioters or law enforcement officials, or the hundreds of interviews with rioters and law enforcement officials, *inter alia*, there may be information that is also arguably relevant to potential defenses.  For example, some defendants have requested any information that arguably shows law enforcement officers authorized the entry of alleged rioters.  Other defendants have suggested that the crowd was peaceful and that acts of violence have been exaggerated or mischaracterized by the government.  Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[5] the government intends to provide all defendants with all data that may contain information that is arguably material to their defenses, and in a manner that will facilitate the search, retrieval, sorting, and management of that information.

      Importantly, the volume of discoverable materials is unrelated to the government's entirely justified decision to prosecute cases arising out of the Capitol Breach simultaneously, and is only marginally impacted by ongoing arrests arising out of the Capitol Breach, a concern this Court has previously raised.  A large portion of the discoverable material was created on January 6, when the events were captured by the U.S. Capitol Police's extensive camera system, body-worn cameras of responding law enforcement, and news agencies that captured the riot as

---

[5]    *United States v. Meek,* No. 19-cr-00378-JMS-MJD, 2021 WL 1049773 *5 (S.D. Ind. 2021). *See also United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849 *4 (S.D.N.Y. 2011)(not reported in F.Supp.2d)("placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything, the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client. This is especially true considering that, if exculpatory evidence exists, the defense is in the best position to know what such evidence might be and where it might be located.")

it unfolded. In addition, the rioters themselves created an enormous digital footprint on January 6, when they recorded each other on their cell phones and cameras and described their conduct through copious digital communications and social media posts. Given the overt nature of this investigation, had the government failed to move quickly to collect such evidence, it would surely have risked the loss or destruction of terabytes of evidence.[6]

Since January, the government has worked diligently to obtain, organize, review, and make accessible voluminous data. As elaborated in the Discovery Status Memoranda, performing the required tasks correctly and comprehensively takes time. We are using Relativity as a platform to manage, review, and share documents. Before documents are loaded to our Relativity workspace, we must ensure that we have the password for protected documents, that the documents were provided in a format that will open, and that we remove irrelevant software and system files that would only cloud the workspace and confuse reviewers. Once the documents are loaded, we must deduplicate them so that they are not analyzed or reproduced multiple times. We must also review documents to identify items that must be excluded or redacted. These processes are necessary to avoid production of unorganized data dumps, unreadable files, and unusable databases, or a failure of the government to take adequate steps to

---

[6] The attack on the U.S. Capitol and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See* Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf.

Moreover, the prompt filing of charges against numerous offenders was a necessary general deterrent to those plotting future, similar attacks. As for specific deterrence, the prompt filing of criminal charges against the defendant—whom this Court has previously found to have shown an escalating willingness to advocate for and engage in violence—was vital to protect the community from him.


prevent both victims' and defendants' private information from being shared with hundreds of defendants.[7]

The processing and production of thousands of hours of digital evidence is also complex and time-consuming. As elaborated in the Discovery Status Memoranda, we are using evidence.com as a platform to manage, review, and share digital media evidence. On Friday, September 3, 2021, the government amended its contract with Axon Enterprise, Inc. ("Axon"), to fund a defense environment or "instance" of evidence.com administered by the Federal Public Defender for the District of Columbia. Other than body-worn-camera footage, digital evidence must first be transmitted to our vendor from law enforcement for ingestion into our instance of evidence.com. The act of transmitting terabytes of digital information can take weeks. Such information may then require additional processing, e.g., conversion from a proprietary format, before it can be ingested into evidence.com.[8]

The government's approach to the production of voluminous discovery in the Capitol Breach cases is consistent with the *Recommendations for Electronically Stored Information*

---

[7]    Under our plan, document productions from Relativity will be made on a rolling basis, and we are prioritizing the processing and production of documents that have been requested by Capitol Breach defendants. Ultimately, we will also make any documents we produce available to a defense Relativity workspace. This will allow Capitol Breach defense teams to leverage Relativity's search and analytics capabilities to search the voluminous documents for information they believe may be material to their individual cases. This week, we will produce U.S. Capitol Police ("USCP") reports related to allegations of misconduct by law enforcement in connection with the events of January 6, 2021. Shortly thereafter, we will produce Metropolitan Police Department use-of-force investigation files.

[8]    Under our plan, as such material is organized, we will share it to the defense instance of evidence.com on a rolling basis. We are now technologically ready to share body-worn-camera footage from its instance to the defense instance and are finalizing the logistics of doing so. As of September 7, 2021, our vendor has received the majority of USCP surveillance footage, and we are in the process of creating tags to organize the footage to facilitate its review by defendants, e.g., identifying cameras by location.

*(ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[9] It is also the generally accepted approach in cases involving voluminous information. Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has satisfied its *Brady* obligations. *See United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material.").[10] The rare

---

[9]     *See https://www.justice.gov/archives/dag/page/file/913236/download.*

[10]    *See also United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (same), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan*, 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires); *United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit

cases where courts have required the government to identify *Brady* within previously produced discovery are the exceptions to this widely observed rule. For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions that involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" *Id*. at 84 n.15 (quoting *Skilling*, 554 F.3d at 576).

## II. An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.

Given the due diligence the government has applied and continues to apply to meet its discovery obligations, as set forth above and as previously set forth in our Discovery Status Memoranda and elaborated upon in prior hearings, the government has established that the requested ends-of-justice continuance is warranted under the STA.

The STA requires the district court to "exclude" from "the time within which . . . the trial . . . must commence":

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(7)(A).

---

Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material.");

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id*. at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id*. at 508. Congress recognized "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id*.

Although the "substantive balancing underlying the decision" to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014), the requirement of express findings imposes "procedural strictness" on the court. *Zedner*, 547 U.S. at 509 (2006). Those findings "must indicate [the court] 'seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials.'" *Rice*, 746 F.3d at 1078 (quoting *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008)).

The need for a reasonable period of time to address discovery obligations is among the well-recognized reasons that justify an ends-of-justice continuance. The courts have repeatedly upheld, against defense challenges, discovery-based continuances involving far less complexity and far less data than exists in the Capitol Breach cases. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-79 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in a two co-defendant health care fraud and money laundering conspiracy case, in part because the

12

District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[11]

Notably, Section 3161(h)(7)(A) does not require defendant's consent for an ends-of-justice continuance, and this Court and should grant the continuance over a defense objection where, as here, the circumstances clearly warrant it.[12]  Further, the STA expressly contemplates continuances that will delay the trials of detained defendants.  Pursuant to 18 U.S.C. § 3164:

---

[11] *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

[12] District courts routinely grant STA continuances over defense objections. *E.g., United States v. Grant*, No. CR 3:21-MJ-00144-CHL, 2021 WL 1762102, at *3 (W.D. Ky. May 4, 2021); *United States v. Williams*, No. 8:19-CR-40, 2020 WL 2499749, at *2 (D. Neb. May 14, 2020); *United States v. Kingston*, No. 2-18-CR-00365JNPBCW, 2019 WL 1200254, at *4 (D. Utah Mar. 14, 2019), *aff'd sub nom. United States v. Dermen*, 779 F. App'x 497 (10th Cir. 2019); *United States v. Miller*, No. CR 16-40026-TSH, 2017 WL 11318728, at *2 (D. Mass. June 9, 2017); *United States v. Payne*, No. 2:16-CR-46-GMN-PAL, 2016 WL 7238921, at *3 (D. Nev. Dec. 12, 2016); *United States v. Cavalier*, No. 2:16-CR-046-GMN-PAL, 2016 WL 3381230, at *4 (D. Nev. June 13, 2016); *United States v. Villarreal*, No. CR 10-50082-JLV, 2011 WL

(a) The trial or other disposition of cases involving—

   (1) a detained person who is being held in detention solely because he is awaiting trial, and

   (2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,

shall be accorded priority.

(b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. *The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.*

18 U.S.C. § 3164 (emphasis added). At the same time that the STA requires the trial of a detained person to commence within ninety days, it also *excludes* from this computation of time periods of delay enumerated in Section 3161(h). So long as this Court "seriously weigh[s] the benefits of granting the continuance against the strong public and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008), the excluded periods must be omitted from the computation of ninety-day time limitation for bringing a detained defendant to trial.[13]

---

2182423, at *8 (D.S.D. June 3, 2011); *United States v. Leeper*, No. 08-CR-69S-5,12, 2009 WL 5171831, at *4 (W.D.N.Y. Dec. 23, 2009).

[13]   *See also United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) ("Congress obviously contemplated some extension of the ninety-day limit on incarceration before trial when it incorporated the § 3161(h) exclusions into § 3164."); *United States v. Accetturo*, 623 F. Supp. 746, 765 (D.N.J. 1985) ("[T]he lengthy detention of a defendant under the Bail Reform Act due to a complex case is also specifically contemplated by the Speedy Trial Act."); *United States v. Babichenko*, No.: 1:18-cr-00258-BLW, 2019 WL 3558484, at *5 (D. Idaho Aug. 5, 2019) ("[A]pplication of the complex-case time frame under the Speedy Trial Act will sometimes lengthen the period of pretrial detention of a defendant.").

### III.     Defendant's Constitutional Speedy Trial Rights are Being Honored.

The Court has expressed concerns about the defendant's constitutional speedy trial rights but those have not been, and are in no danger of being, violated. "The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim. *See* 18 U.S.C. § § 3173. But it will be an 'unusual case' in which the Act is followed but the Constitution violated." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Under the first factor, which "is to some extent a triggering mechanism," *id.*, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial, as "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness," *Doggett v. United States*, 505 U.S. 647, 652 (1992). Without such a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530.

Given that only nine months that have passed between the defendant's arrest and the present, the defendant cannot yet establish that the length of delay triggers a review of the other *Barker* factors. *See Doggett*, 505 U.S. 647, 652 .1 ("post accusation delay [is] presumptively prejudicial at least as it approaches one year"); *see also*, *e.g.*, *United States v. Ford*, 155 F. Supp. 3d 60, 69 (D.D.C. 2016) ("Sanders's seven-month delay and Hager's nine-month delay do not violate the Sixth Amendment right to a speedy trial.").

Moreover, whether a delay is presumptively prejudicial depends upon the "peculiar circumstances of the case," and therefore requires judicial findings. *Barker*, 407 U.S. at 530-31;

*United States v. Marshall*, 669 F.3d 288, 295-96 (D.C. Cir. 2011) (requiring the district court to make factual findings regarding defendant's allegation that the government did not overcome the presumption of prejudice for delays over one year); *United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007) (assuming without deciding that a delay barely over one year between the indictment and trial was presumptively prejudicial).

The defendant cannot show, and this Court should not find, that the government is not "prosecut[ing] his case with customary promptness," *see Doggett*, 505 U.S. at 652, given the government's diligent efforts to address unprecedented complex discovery issues.[14] Even in cases involving substantially longer periods of pre-trial detention, the D.C. Circuit has found no violation of the Sixth Amendment speedy trial guarantee. *See, e.g., Rice,* 746 F.3d at 1082 ("although Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense. [*Barker*, 407 U.S. at 532]."); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-and-one-half years of pretrial detention did not violate the Sixth Amendment). In *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg recently denied a defendant's motion to dismiss for a speedy trial violation, finding that his Sixth Amendment right had not been infringed notwithstanding the fact that the defendant had at that point been detained pending trial for 28 months.

---

[14]   Even assuming that the defendant had made a showing of prejudice, the presumption is rebuttable, and the threshold requirement—the length of the delay—is only "one factor among several." *Doggett,* 505 U.S. at 652.

**CONCLUSION**

For the reasons described above, and any others that may be offered at a hearing on this matter, the United States respectfully requests that the Court grant its motion to vacate the trial date currently set for November 9, 2021, grant a 60-day continuance of the above-captioned proceeding, and set a status hearing to monitor the government's progress in meeting its discovery obligations.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:   /s/ *Emily A. Miller*
EMILY A. MILLER
Capitol Breach Discovery Coordinator
DC Bar No. 462077
555 Fourth Street, N.W., Room 5826
Washington, DC 20530
Emily.Miller2@usdoj.gov
(202) 252-6988

By:   /s/ *Kathryn E. Fifield*
Kathryn E. Fifield
Trial Attorney
U.S. Department of Justice, Crim. Division
Detailed to the D.C. U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Kathryn.Fifield@usdoj.gov
(202) 320-0048