UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | NO. 21-cr-37 |
| v. : | |
| : | |
| TIMOTHY LOUIS HALE-CUSANELLI : | |
| : | |
| Defendant. : | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO VACATE TRIAL DATE AND CONTINUE TRIAL, AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

Timothy Louis Hale-Cusanelli ("the defendant") has filed a "Memorandum in Opposition," (Dkt. 43 (hereinafter, "Def. Opp.")), to the United States' "Motion to Vacate Trial Date and Exclude Time Under the Speedy Trial Act," (Dkt. 41 (hereinafter, "Gov't Mtn.")). For the reasons stated below, the defendant's arguments are unpersuasive and this Court should grant the government's Motion.

**I.     The Defendant Makes no Effort to Contradict the Government's Basis for Requesting an Ends-of-Justice Continuance Under the Speedy Trial Act (STA).**

Since January 6, 2021, the government's historic challenge has been to obtain, organize, review, and make accessible an incredible volume of data, all while guarding against the misuse of vast quantities of PII, protecting the security of the U.S. Capitol, and respecting the rights of victims. The government has been working expeditiously, bringing every resource the Department of Justice has to bear, to accomplish this goal. In its Motion, the government explained these efforts in detail. (Gov't Mtn. at 6-7.) The government has also thoroughly explained, both in its Motion and in periodic Discovery Status Memoranda that, notwithstanding the devotion of substantial resources, that task is ongoing. This is due not only the volume of information but to the complexity of organizing digital information from multiple sources and

1

platforms into a format that can be used by attorneys to prepare for and make their trial presentations. (Gov't Motion at 8-11; Discovery Status Memoranda, Dkt. 37, 39, 42.)

In his opposition, the defendant does not engage with, much less deny the complex reality explained in the government's filings and at prior status hearings in this matter. Nor does he contradict the substantial precedent in this jurisdiction and others supporting the government's request for an ends-of-justice continuance pursuant to the STA. (*See* Gov't Mtn. at 12-13, 12 n.11.) Any clear-eyed analysis of the factors enumerated in the STA—notably, the complexity of the case, the unprecedented nature of this prosecution, and, in light of the foregoing, that it is wholly unreasonable to expect either the defendant or the government to adequately prepare for pretrial proceedings or for the trial itself within the constraints of the current trial date— undeniably supports findings that an ends-of-justice continuance is warranted. *See* 18 U.S.C. § 3161(h)(7)(B).

Conspicuously, the defendant does not engage with any analysis of the 3161(h)(7)(B) factors and cites not a single case contradicting the ample weight of supportive authority cited by the government. The defendant's meager attempt to distinguish a single case relied on by the government, *United States v. Bikundi*, 926 F.3d 761 (D.C. Cir. 2019), misses the mark. The D.C. Circuit in *Bikundi* did not identify any particular circumstances required for a district court to find that an ends-of-justice continuance is warranted.[1] For the court to do so would have

---

[1] *Bikundi* usefully compares here insofar as it discusses "complexity" and the time needed to "permit defense counsel and the government time to both produce discovery and review discovery" as sufficient to support a district court's findings that an ends-of-justice continuance is warranted. *See Bikundi*, 926 F.3d at 777. It certainly does not, as the defendant suggests, (*see* Def. Opp. at 11,) define what a "complex" case is, nor does it specify any preconditions—such as a defendant's desire for additional time to review discovery—for an ends-of-justice continuance to be warranted. And, as discussed in the government's Motion, a defendant's consent or lack thereof is by no means dispositive of whether a continuance should be granted. (*See* Gov't Mtn. at 13 n.11 (listing cases).)

contradicted the plain text of the STA, which broadly identifies a set of *illustrative* factors which, "among others," *may* support a district court's findings that an ends-of-justice continuance is warranted under the specific circumstances at bar. *See* 18 U.S.C. § 3161(h)(7)(B). At bottom, *Bikundi* stands for the proposition that the findings required by the STA to support an ends-of-justice continuance are committed to the sound discretion of the district court. *Id.* at 776 (citing *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014)).

As much as the defendant would like this Court to blindly zero in on the fact that he is charged as an individual, the reality is that the defendant participated in the largest incidence of interrelated crimes in American history, and his case is one of hundreds bound by interrelated facts and shared evidence. The government has taken an appropriately expansive view of what information may be material or potentially exculpatory and therefore discoverable, and is asking, in good faith, for needed time to ensure adherence to its discovery obligations.

Rather than mount a serious legal argument, the defendant relies on a groundless assault on the government's motives. Wholly ignoring the government's Discovery Status Memoranda, the defendant complains that the government has not produced an itemized accounting of "the numbers of persons dedicated to the [discovery] tasks outlined, the funds dedicated to the various contracts, when these contracts were entered into, hours being worked under the contracts, etc." *Id*. The defendant cites nothing to suggest such number-crunching is required to demonstrate the government's good faith efforts to meet its discovery obligations.[2] The defendant excises the

---

[2] Even so, the government's successive Discovery Status Memoranda address in detail, among other things, "persons dedicated to the tasks outlined," and the details of "various contracts," between the government and providers such as Deloitte and Axon. (*See* Def. Opp at 11.) The defendant's assertion, then, that "[a]bsolutely no information," (*id*.,) has been provided regarding the resources and the diligence that the government has dedicated to adhering to its discovery obligations, is especially perplexing.

government's reasonable explanations regarding the status of discovery, falsely suggesting that the government has done nothing to substantially advance that review in the interim. (Def. Opp. at 3-5.) But, as the government's Discovery Status Memoranda show, the government's discovery efforts have been nothing but expeditious and diligent. By granting the government's previous continuance requests, the Court has implicitly but necessarily found those reports to be accurate and to demonstrate the government's good faith.

Further, the defendant's charge that the government has somehow "contradicted itself" by explaining that it has already disclosed the most substantial exculpatory information but that "discovery is not yet complete," (Def. Opp. at 11,) makes absolutely no sense in light of the government's Discovery Status Memoranda and its representations in open court. The government has been abundantly clear in stating that the substantial disclosures made thus far include evidence in the government's possession that has been identified as specific to the defendant's involvement in the events of January 6, 2021. The government has also been abundantly clear that the vast quantity of evidence in its possession that has not yet been identified as material or exculpatory for this defendant may indeed be material or exculpatory, and therefore discoverable.

Lastly, the defendant's accusation that the government's continuance requests are motivated by a desire to strengthen its own case, (*see* Def. Opp. at 8,), in addition to being wholly without foundation, is beside the point. Assertions about the subjective motivations of the prosecutors is a pointless distraction. *See generally Nevius v. United States*, 257 F. Supp. 3d 9, 13 (D.D.C. 2017) (taxpayer "failed to provide the Court with any credible evidence that could impugn the Government's motives behind issuing the Summons, and to thereby suggest that the Summons was issued without good faith, or for some improper purpose.").

The government has explained in detail the unique factual cicumstances and cited to extensive legal authority demonstrating that an ends-of-justice continuance is warranted, and that time under the Speedy Trial Act should be excluded based on that continuance. The requested continuance is demonstrably necessary to discharge the government's disclosure obligations and ensure adequate preparation for trial. For these reasons, the government respectfully asks that this Court vacate the November 9, 2021, trial date, continue this matter and exclude time under the STA, and set a status hearing in 60 days to monitor the government's progress in meeting its discovery obligations.

## II. The Defendant's Sixth Amendment Speedy Trial Claim is Plainly Unsupported by Law, and Should be Rejected.

The defendant's primary purported basis for opposing the government's request for an ends-of-justice continuance is that his Sixth Amendment right to a speedy trial has been violated. (Def. Opp, at 7-9.) The defendant is incorrect.

In the first instance, the defendant has failed to trigger an inquiry under *Barker v. Wingo*, 407 U.S. 514, 530 (1972), because he has not demonstrated and cannot demonstrate that the length of delay has been presumptively prejudicial. The defendant acknowledges that, even if this Court grants the government's requested continuance, the delay between his arrest and trial will still be substantially less than one year. (*See* Def. Opp. at 8 (discussing the length of delay).) The defendant ignores, however, that this length of delay is clearly insufficient to demonstrate presumptive prejudice, triggering the *Barker* inquiry. *See United States v. Gerald,* 5 F.3d 563, 566 (D.C. Cir. 1993) (eleven-month delay was not "so long that it gives rise to a presumptive violation of [defendant's] Sixth Amendment rights"); *see also Doggett v. United States*, 505 U.S. 647, 652 (1992) ("post accusation delay [is] presumptively prejudicial at least as it approaches one year"); *see generally United States v. Ford*, 155 F. Supp. 3d 60, 69 (D.D.C. 2016)

("Sanders's seven-month delay and Hager's nine-month delay do not violate the Sixth Amendment right to a speedy trial."). Because the defendant has failed to show that the length of delay is presumptively prejudicial, any analysis of the defendant's constitutional speedy trial analysis ends here. *See Barker*, 407 U.S. at 530 (absent a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors").

Assuming, *arguendo*, that the defendant had made a showing of presumptive prejudice, the defendant's arguments under the remaining *Barker v. Wingo* factors fall far short. Under *Barker*, the Court considers: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. Of these, the defendant has only arguably satisfied one factor by nominally invoking his right to a speedy trial. Any analysis of the factors altogether weighs heavily in the government's favor.

The government has presented eminently reasonable explanations for the delay: its strenuous efforts to meet the challenges imposed by the enormous amount of relevant evidence that it must review, process, categorize, and organize into a format that will make it accessible and useful to the defense. *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 204 (D.C. Cir. 2013) (no Sixth Amendment violation from three and one-half year delay where, *inter alia*, the government had to "collect and decipher foreign evidence, and coordinate with foreign witnesses-all serious obstacles to a quick resolution"); *United States v. Zaitar*, 858 F. Supp. 2d 103, 111-12 (D.D.C. 2012) (no Sixth Amendment violation; "[r]etrieving evidence has required MLAT requests and reliance on international diplomacy"; "[v]ariations in Arabic dialects were realized only in July 2011 and translations revised for accuracy. The translation process is ongoing."); *United States v. Brodie*, 326 F. Supp. 2d 83, 88 (D.D.C. 2004) (no Sixth Amendment violation where, "[i]mportantly, the delay here cannot be attributed to any fault or misconduct by

6

the government" where, *inter alia*, "extensive document discovery has been produced to the defendants"); *see generally* Lafave and Israel, 5 CRIMINAL PROCEDURE, § 18.2(c) (4th ed.), "Reason for Delay" ("delay … caused by the case's complexity favors a finding of no constitutional violation").

As for prejudice to the defendant, he complains only about his pretrial detention. (Def. Opp. at 9.) He does not contend, much less convincingly show, that any delay has impeded his ability to prepare his defense, which is the primary "prejudice" that the speedy trial right seeks to avoid. *See Barker*, 407 U.S. at 532 (the "most serious" form of prejudice arising from delay is "the possibility that the defense will be impaired"). Because the defendant "offers no explanation of how the delay impaired [his] defense," he "fails to show that [his] Sixth Amendment right to a speedy trial was violated." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019); *see also Mitchell v. United States*, 841 F. Supp. 2d 322, 330 (D.D.C. 2012) (no *Barker* prejudice where defendant did not allege "witness disappearance or death and the inability of a witness to recall events accurately due to the passage of time"). "[T]he defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992); *see also United States v. Omran*, 641 F. App'x 427, 429 (5th Cir. 2016) (unpublished) (defendant's "vague and conclusory assertions are insufficient to show the extreme prejudice or willfulness by the prosecution to delay his trial which would require an examination of the *Barker* factors"). "[A] defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense." *Doggett*, 505 U.S. at 656; *see also Barker*, 407 U.S. at 522

(rejecting a rigid rule because of the "unsatisfactorily severe remedy of dismissal of the indictment"). Accordingly, the defendant cannot show, and this Court should not find, that any violation of the defendant's constitutional rights to a speedy trial has occurred.

## CONCLUSION

For those reasons and those set forth in the Motion, the United States respectfully requests that the Court grant its motion to vacate the trial date currently set for November 9, 2021, grant a 60-day continuance of the above-captioned proceeding, and set a status hearing to monitor the government's progress in meeting its discovery obligations.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By: /s/ *Emily A. Miller*
EMILY A. MILLER
Capitol Breach Discovery Coordinator
DC Bar No. 462077
555 Fourth Street, N.W., Room 5826
Washington, DC 20530
Emily.Miller2@usdoj.gov
(202) 252-6988

By: /s/ *Kathryn E. Fifield*
Kathryn E. Fifield
Trial Attorney
U.S. Department of Justice, Crim. Division
Detailed to the D.C. U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, DC 20530
Kathryn.Fifield@usdoj.gov
(202) 320-0048