IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:21-CR-37 |
| | : | |
| | : | (JUDGE McFADDEN) |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY LOUIS HALE-CUSANELLI, | : | |
| | : | |
| Defendant | : | |

MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

    Defendant Timothy Hale-Cusanelli moves to dismiss Count One of the Superseding Indictment and, in support of the motion, sets forth the following facts and argument.

**1. Introduction**

The Defendant was indicted on 9 March 2022 by way of Superseding Indictment, and charged with the following:

    a)    Count 1: Obstruction of an Official Proceeding;[1]

    b)    Count 2: Entering and Remaining in a Restricted Building or Grounds;[2]

    c)    Count 3: Disorderly and Disruptive Conduct in a Restricted Building or Grounds;[3]

    d)    Count 4: Disorderly Conduct in a Capitol Building;[4]

    e)    Count 5: Parading, Demonstrating, or Picketing in a Capitol Building.[5]

---

[1] 18 USC § 1512(c)(2
[2] 18 USC § 1752(a)(1)
[3] 18 USC § 1752(a)(2)
[4] 40 USC § 5104(e)(2)(D)
[5] 40 USC § 5104(e)(2)(G)

1

All of the charges listed *supra*. stem from events that took place on 6 January 2021 at or in the U.S. Capitol building. The Defendant entered a plea of not guilty on all counts on 23 March 2021. Attorney Jonathan W. Crisp, Esq, was appointed as counsel for the Defendant on 21 June 2021. The Defendant's charges come from the events that took place at the United States Capitol on January 6, 2021. The Defendant respectfully requests this Honorable Court dismiss Count One of the Superseding Indictment for the reasons set forth.

**STANDARD OF REVIEW**

A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(B). Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." FED. R. CRIM. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." United States v. Syring, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); United States v. Sampson, 371 U.S. 75, 78 (1962). Indeed, as the Court in United States v. Titilayo Akintomide Akinyoyenu, 199 F. Supp. 3d 106 109 (DC District Court 2016) has stated, "[i]n reviewing the indictment, the court affords deference to the 'fundamental role of the grand jury.'" (quoting United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (internal citations omitted). Failure to do so is violative of the Fifth

Amendment. (See United States v. Hitt, 249 F.3d 1010, 1016, (D.C. Cir. 2001) holding that "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." United States v. Ring, 628 F. Supp. 2d 195, 204 (D.D.C. 2009)(internal quotations omitted).

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." United States v. Apodaca, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing Russell v. United States, 369 U.S. 749 (1962), and Stirone v. United States, 361 U.S. 212 (1960)).

**STATUTORY INTERPRETATION**

In determining the legislative intent of a statute, one "begins… with the text and legislative history of" the statute. Busic v. United States, 446 U.S. 398, 405 (1980). Thus, at the outset "…the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain … the sole function of the courts is to enforce it according to its terms." United States v. Hite, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (internal quotes omitted). If such

meaning is unclear, then logically, one proceeds with an examination of the statute's context and history. Id. at 1160.

Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." United States v. Lanier, 520 U.S. 259, 266 (1997).

**Motion to Dismiss Count One – Obstruction of Justice**

Count One of the Indictment charges the Defendant with a violation of 18 U.S.C §1512(c)(2), as follows:

On or about January 6, 2021, within the District of Columbia and elsewhere, TIMOTHY LOUIS HALE-CUSANELLI, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

The indictment provides no other facts in support of this Count.

**Section 1512 Must be Strictly Construed**

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." See generally, 18 U.S.C. §§ 1501-1521. As the Ninth Circuit has carefully considered and recognized, based on the plain language of the statute, an offense under §1512(c) does not prohibit the obstruction of every governmental function; it does prohibit the obstruction of proceedings that rise to the level of a formal hearing. See United States v. Ermoian, 752 F.3d 1165, 1170

(9th Cir. 2013). Certain opinions have dismissed the applicability of <u>Ermoian</u> to the cases at bar seeking to limit the holding in <u>Ermoian</u> to defining what an official proceeding is not: a criminal investigation.[6] Such a limited analysis ignores how <u>Ermoian</u> also seeks to quantify the term "official proceeding" through an analysis of the statutory language of §1512. In short, <u>Ermoian</u> continually seeks to define the relevant phrase in terms of a tribunal-like setting. <u>Id</u>. at 1171-72. This is particularly relevant here because it serves as a segue to the scope and applicability of the statute in question. Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress. Any alleged obstruction of the certification of the Electoral College vote is simply outside the scope of an official proceeding as contemplated within §1512(c) itself.

**A. Mr. Hale's Alleged Conduct Does Not Fit within the Scope of Section 1512(c)(2)**

      18 U.S.C. §1512(c) prohibits "corruptly…obstruct[ing], influenc[ing], or imped[ing] any *official proceeding*, or attempt[ing] to do so." <u>Id.</u> (emphasis added). Section 1512(a)(1) of Chapter 73 of Title 18 defines an official proceeding as:

---

[6] Memorandum Opinion, <u>United States v. Nordean</u>, Case no.: 1:21-cr-175-TJK, ECF No. 263, p. 11.

- (A) A proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

- (B) A proceeding before the Congress;

- (C) A proceeding before a Federal Government agency which is authorized by law; or

- (D) A proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C §1512(a)(1).

With respect to 18 U.S.C §1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the]…statute both out of deference to the prerogative of Congress…and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." United States v. Arthur Anderson, LLP, 544 U.S. 696, 703 (2005) (internal citations and quotations omitted) (strictly construing §1512(b)(2)'s broadly worded language in finding that

jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

A great deal of time has been spent in assessing how to read the two 92) subsections of 1512(c).  As has been clearly stated, "[r]eading §1512(c)(2) alone is linguistically awkward."[7] The only common-sense approach to reading the two (2) subsections is to read them as to be related and conjoined by the disjunctive word "or" in section (c)(1) followed immediately by "otherwise" in (c)(2).  The Supreme Court had an opportunity to define, albeit in a different context, the meaning of "otherwise" in statutory analysis.  In United States v. Begay, 553 U.S. 137 (2008) the Court held that the text preceding the word "otherwise" was tied to and otherwise influenced the language preceding it by "limit[ing] the scope of the clause to crimes that are similar to the examples themselves." Id. at 143.

To read the subsections as distinct requires one to both disregard the use of "or" and "otherwise" in the statute in question as well as their common everyday meanings.  This, of course, violates the precept that "[w]hen possible, courts 'must give effect… to every clause and word' in a statute."  Memorandum Opinion,

---

[7] Memorandum Opinion, United States v. Miller, Case no.: 1:21-cr-119-CJN, ECF No. 72, p. 11.

United States v. Miller, Case no.: 1:21-cr-119-CJN, ECF No. 72, p. 12.  (quoting

Setser v. United States, 566 U.S. 231, 239 (2012)(internal citations omitted).

**B.  The Statutory Context of the Statute is limited in scope**

In short, the subsections of the statute clearly indicate an intent to criminalize behavior in a narrow sub-context, but all as it relates to presenting evidence at a tribunal.  Sections a-d all speak to discrete actions in that context.  Each section logically flows from one to the other and the statute, when read to discuss evidence and its presentation has synergy.  To insert a broad reading of a subsection in the middle of the statute would create an internal inconsistency and render a large amount of the statute superfluous and clearly not synergistic.

Again, as Judge Nichols cogently argued in his memorandum opinion cited above, yet another reason to find that subsection (c)(2) is related to and serves as a catch-all for (c)(1) is based on the history of the statute itself.  Mem Op. at 23-25.

Because there was a gap in the statute that essentially allowed one to engage in the conduct s/he could not direct another to commit, subsection (c) was promulgated.  The new subsection drew heavily from the preceding sections and had a limited focus.  And even more compelling, as Judge Nichols notes, "if subsection 1512(c)(2) is as broad as the government contends here, there would have been no need for the very same Congress to add § 1512(a)(2)(B) just three months later." Id. at 25.

## C. The Legislative History Demonstrates that §1512(c) Concerns the Administration of Justice

§1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance." Pub. L. No. 107-204, 116 Stat. 745. Nothing in the legislative history of the Sarbanes-Oxley Act supports the notion that Congress enacted §1512(c)(2) to criminalize the disruption of a ceremony before Congress by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become. Rather, the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." Yates v. United States, 574 U.S. 528, 535-36 (2015). The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," S. REP. NO. 107-146, at 2 (2002) (emphasis added).

In Yates, the Supreme Court narrowly construed the term "tangible object" as set forth in 18 U.S.C. § 1519, which penalized a person who

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with

9

>the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519. Keeping in mind that Congress designed the Sarbanes-Oxley Act with a "trained [] attention on corporate and accounting deception and cover-ups," the Court held that the Act did not contemplate penalizing the act of tossing undersized fish overboard to avoid the consequences of an inspection by federal authorities. Id. at 532. Rather, in the context of the statute's purpose, a "tangible object" must be one used to record or preserve information. Id. Thus, while fish are tangible objects in the lay sense of that phrase, they do not qualify as tangible objects under §1519 given the broader context of the Sarbanes-Oxley Act. In rendering the Yates decision, the Supreme Court clearly telegraphed that legal terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act.

In short, when considering the Act's preamble and legislative history, it is clear that §1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. The legislative background of §1512(c) makes plain that it was not intended to apply in all circumstances where *any* government function may have been impeded, and given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

**Others Tools of Statutory Interpretation Support Mr. Hale-Cusanelli's Motion to Dismiss**

Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further supports Mr. Hale-Cusanelli's interpretation of the statute at issue.[8] Several of the subsections of Chapter 73 explicitly relate to the administration of justice. See 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim, or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute within Chapter 73 that prohibits "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstructing, or impeding *the administration of justice*." 18 U.S.C. § 1507 (emphasis added). All these laws are related to the obstruction of the administration of justice. Section 1512(c) falls right within their midst.

All of these arguments fall within the ambit of the tools of statutory construction, and specifically here, that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" United States v. Bass, 404 U.S. 336, 347 (1971), quoting Rewis v. United States, 401 U.S. 808, 812 (1971).

---

[8] *See* NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n, 961 F.3d 421, 426 (D.C. Cir. 2020) (quoting Util. Air Regulatory Grp. V. E.P.A., 573 U.S. 302, 321 (2014)) ("A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

11

The statute in question is subject to multiple interpretations: "either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)." Memorandum Opinion, United States v. Miller, Case no.: 1:21-cr-119-CJN, ECF No. 72, p. 28.  As such, This Honorable Court should "exercise[] restraint in assessing the reach of [the]…statute both out of deference to the prerogative of Congress…and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." United States v. Arthur Anderson, LLP, 544 U.S. 696, 703 (2005) (internal citations and quotations omitted).

**Alternatively, Section 1512(c)(2) is Unconstitutionally Vague**

Under the same principles of United States v. Johnson, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague and does not provide fair notice to Mr. Hale-Cusanelli as to the conduct it punishes. Section 1512(c)(2) provides that:

Whoever *corruptly* –

>   (1)   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

>    *(2)    Otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2).

First, §1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. To wit, courts must speculate as to the meaning of the word "corruptly" and the phrase "official proceeding." Perhaps more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, requiring courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

In Johnson, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." Johnson, 576 U.S. at 591. In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. Johnson, 576 U.S. at 597. Observing that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of

13

persistent efforts to establish a standard can provide evidence of vagueness." Id. at 598.

Similarly, here, the residual clause of §1512(c) is unconstitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. As discussed at length above, courts have generally interpreted "official proceeding" to mean something more formal than an investigation, but there has been no established standard, leaving the courts to deal with this ambiguity.

Further, the vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding." The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations. The court held that "in the absence of some narrowing gloss, people must guess at its meaning and application." United States v. Poindexter, 951 F.2d 369, 398 (D.C. Cir. 1991). Previously, in Ricks v. District of Columbia, 414 F.2d 1097 (D.C. Cir. 1968), the court had held that a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of another's behavior.'"

14

Poindexter, 951 F.2d at 399 (quoting Ricks, 414 F.2d at 1097). The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. Id. After an assessment of the legislative history and judicial interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires and found the term vague as applied to the defendant making false statements. Id. at 406.

Following Poindexter, Congress amended §1515 to define "corruptly" for purposes of §1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." §1515(b). However, this amendment did not resolve the vagueness that still exists in §1512 as Congress did not amend §1515 as it applies to §1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case the defendant influenced a witness, which fits squarely within the non-vague category that Poindexter established. See United States v. Morrison, 98 F.3d 619, 630 (D.C. Cir. 1996). In Morrison, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." Id. The Poindexter Court explained that influencing another to "violate their legal duty" was not vague because "it would

15

both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'" Poindexter, 951 F.2d at 379. However, Morrison was not faced with the question of what "corruptly" means in the context of §1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the statute. Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

### III. Conclusion

For the reasons set forth hereinabove, the Defendant, Mr. Hale-Cusanelli, respectfully requests that this Honorable Court grant the foregoing motion to dismiss.

Respectfully submitted,

CRISP AND ASSOCIATES, LLC

Date: 28 March 2022

*/s/Jonathan W. Crisp*
Jonathan W. Crisp, Esquire
4031 North Front St.
Harrisburg, PA  17110
I.D. # 83505
(717) 412-4676
jcrisp@crisplegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on the individual listed below:

### ELECTRONIC SERVICE

Kathryn Fifield, Esquire
Assistant United States Attorney
US Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
Kathryn.fifield@usdoj.gov

Karen Seifert, Esquire
Assistant United States Attorney
US Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530
karen.seifert@usdoj.gov

Date: 28 March 2022

/s/ Jonathan W. Crisp
Jonathan W. Crisp, Esquire
4031 North Front St.
Harrisburg, PA  17110
I.D. # 83505
(717) 412-4676
jcrisp@crisplegal.com
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:21-CR-37** |
| | : | |
| | : | **(JUDGE McFADDEN)** |
| v. | : | |
| | : | |
| | : | |
| **TIMOTHY LOUIS HALE-CUSANELLI,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

Upon consideration of the Defendant's Motion to Dismiss Count One of the Superseding Indictment, it is hereby ORDERED that the Motion is GRANTED.

Date: _____     _____
                                                                                                   HONORABLE JUDGE MCFADDEN
                                                                                                     United States District Court
                                                                                                             District of Columbia