UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-37 (TNM) |
| v. : | |
| : | |
| TIMOTHY LOUIS HALE- : | |
| CUSANELLI, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### OPPOSITION TO GOVERNMENT'S NOTICE PURSUANT TO FRE 404(b)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant Timothy Louis Hale-Cusanelli's Opposition to Government's Notice Pursuant to FRE 404(b). (Def. Opp., ECF No 63.) Defendant asks this Court to exclude pretrial certain evidence the government intends to introduce in its case-in-chief to prove the defendant's intent to commit the crimes with which he is charged, arguing that the government's notice pursuant to Federal Rule of Evidence 404(b) is insufficient. Defendant's argument lacks merit, and his request to exclude evidence should be denied.

### FACTUAL BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol;

however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

As of January 6, 2021, Defendant was enlisted in the United States Army Reserves and worked as a security contractor at Naval Weapons Station Earle in Colts Neck, New Jersey,[1] where he maintained a "Secret" security clearance. On January 6, 2021, Defendant traveled from New Jersey to Washington, D.C. to participate in the "Stop the Steal" rally. While in Washington, D.C. for that event, Defendant recorded videos of himself protesting in a variety of locations, screaming at and interfering with United States Capitol Police officers, climbing scaffolding to enter the United States Capitol building through doors that had been kicked open by rioters, and chanting "Stop the Steal" with other rioters. Defendant posted some of these videos to social media. As a result of the actions of Defendant and hundreds of others, on January 6, 2021, Congress was forced to halt its proceedings and evacuate the House and Senate Chambers. After the building was secured later that day, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

Defendant's actions at the Capitol were reported to the Naval Criminal Investigation Service ("NCIS") by a confidential human source (CHS). Defendant spoke directly to the CHS about his actions at the Capitol and showed the CHS photographs and video. The CHS later recorded a conversation with Defendant, wherein Defendant again admitted his conduct and spoke at length about his participation in the Capitol riot. During that conversation, Defendant stated

---

[1] Since his arrest, Defendant has been administratively discharged from the Army Reserves and barred from entering the Navy's Earle facility.

that the closest comparison to what he experienced on January 6, 2021, would be "civil war," and that if there had been more rioters, they could have taken the entire Capitol building and held it. Defendant stated that he "fucking really wish[ed] there would be a civil war," because it would "provide a clean slate." Defendant opined that civil war would be "the simplest solution, the most likely outcome," because "political solutions" would be insufficient to fix the country's problems in the face of "entrenched interests." When the CHS stated that, in the case of a civil war, "a whole bunch of fucking people would die," Defendant responded, "as Jefferson said, the price -- the tree of liberty must be refreshed with the blood of patriots and tyrants."

In his conversation with the CHS, Defendant expressed a belief in Jewish control of and influence on major national institutions, including major tech companies, media, and government. Defendant said that he did not want to be subservient to corporations, and wanted to kill Google, Twitter, and Facebook. Defendant expressed a belief that the "threat" to America was not outward, but inward: "[Y]ou know, it's not … the Soviet Union that blew up the Twin Towers and then blamed it on a third world shithole." CHS asked Defendant who he thought was responsible for the Twin Towers, and Defendant replied, "I don't know, but I bet they had big noses." Defendant continued, "imagine being so disgusting of a people that you need laws to keep people from hating you."

The CHS asked Defendant what he would do if he were "King of America," which led to the following exchange:

| | |
|---|---|
| CHS: | What would you do to change what's going on right now? |
| Defendant: | Such as? |
| CHS: | I don't fucking know. What -- |
| Defendant: | Change what's going on – what's going on? |
| CHS: | Well, like, the divide in America. The Democrats, Joe Biden, the Jews. |

| | | |
|---|---|---|
| Defendant: | | You repeated yourself. |
| CHS: | | Are you saying they're all part of the Jews? |
| Defendant: | | Of course.  I'd give them 24 hours to leave the country.  No.  But also, yes.  But no, what I would do is just arrest them all.  Not all the Jews, … a lot, but yeah. I would purge, I would purge Congress. None of them have any purpose or use.  They're all a bunch of insider-trading cunts. They do nothing but vote for war and rape kids.  So, Congress can go… |

Defendant continued, saying that he would then set up regional governments, like "old Empires did."  Defendant then said that this was how the U.S. Government was supposed to be, because Thomas Jefferson said there should be a revolution every 10 years, and Benjamin Franklin said there should be a revolution every 30 years.  Defendant said that he believed there should be a revolution "every few generations."

Prior to January 6, 2021, Defendant repeatedly expressed his belief to the CHS that the 2020 Presidential Election was fraudulent and that Joe Biden was not the true winner of the election.

Further, before January 6, 2021, Defendant openly espoused a white supremacist and Nazi sympathizer ideology in conversations with coworkers and in social media postings.  Coworkers observed Defendant adopt what they referred to as a "Hitler mustache" and a combover hairstyle, from which they inferred that Defendant aimed to impersonate Adolf Hitler and idealized Nazi Germany.  Defendant told a coworker that, "babies born with any deformities or disabilities should be shot in the forehead," and "if [Defendant] was a Nazi in the time being, [Defendant] would kill all the Jews and eat them for breakfast, lunch and dinner, and he wouldn't need to season them because the salt from their tears would make it flavorful enough."  Defendant told a different coworker that, "Jews, women, and blacks were on the bottom of the totem pole."  Prior to January 6, Defendant had a podcast-style Youtube show called the "Based Hermes Show" in which he

espoused white supremacist views. Defendant deleted episodes of the "Based Hermes Show" from Youtube after January 6 and prior to his arrest.

## PROCEDURAL BACKGROUND

On January 15, 2021, Defendant was charged by complaint for his actions on January 6, 2021, when large crowds breached the U.S. Capitol Building as Congress convened a Joint Session to certify the Electoral College vote in the 2020 Presidential Election. (ECF No. 1-1.) Two weeks later, the grand jury charged him with several federal offenses based on the same conduct. (ECF No. 9.) Following a Superseding Indictment, Defendant stands charged with obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); entering and remaining in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). (ECF No. 59.)

On September 30, 2021, the government served notice on counsel for the defendant of its intent to introduce at trial evidence of the defendant's intent, including:

> [S]tatements made by Defendant in the time period leading up to and directly after the charged crimes in which Defendant expressed (i) animus toward the Jewish people and association of Democrats and President Biden as part of the Jewish people, (ii) hopes for a civil war in America, and (iii) support of President Donald Trump and claims about election fraud related to the 2020 Presidential Election.

The notice stated that "the Defendant's statements about his ideology and concerns about the election show his intent to participate in the events at the Capitol on January 6, 2021, obstruct the proceedings of the U.S. Congress, and prevent President Biden from taking office." In the alternative, the government's notice indicated that, "[t]o the extent this evidence alternatively falls

under Fed. R. Evid. 404(b), please consider this written notice that the evidence is admissible there under as it illustrates motive, lack of mistake or accident, and knowledge."

Defendant now seeks to exclude pretrial the evidence referenced in the government's notice, arguing that the notice "lack[s] sufficient justification necessary under Rule 403(b)(3) and do[es] not fall under the permitted Rule 402(b)(2) exceptions,"[2] that the evidence referenced in the notice is unfairly prejudicial, that a limiting instruction will not sufficiently guard against prejudice, and that the evidence referenced in the notice will be offered purely for the prohibited purpose of proving Defendant's propensity for bad character and bad acts. (*See* Def. Opp. at 7, 8, and 9.) Each of the Defendant's arguments lack merit, and his request to exclude evidence pretrial should be denied.

## ARGUMENT

### I.  Rule 404(b) Does Not Apply Because the Evidence that the Government Seeks to Introduce is Intrinsic to the Charged Crimes.

Federal Rule of Evidence 404(b) limits the admissibility of evidence of a defendant's "other crimes, wrongs, or acts" to prove a defendant's propensity to commit a crime or purely to prove a defendant's character. Fed. R. Evid. 404(b); *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). The limitations of Rule 404(b) only apply, however, when the evidence that the government seeks to introduce is "extrinsic" to the charged crime. *Id.* at 928. That is, Rule 404(b) only limits admission of evidence that is, in fact, of "other" crimes, wrongs, or acts as opposed to "intrinsic" evidence of the crimes charged. *See id.* at 928-29; *United States v. Badru*, 97 F.3d 1471, 1474-75 (D.C. Cir. 1995). Evidence "offered as direct evidence of [a] fact in issue" is not evidence of an "other" crime. *Badru*, 97 F.3d at 1475 (internal quotation marks omitted). "In

---

[2]  Defendant likely intended to reference Rule 404(b)(3) and Rule 404(b)(2).

other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic." *Bowie*, 232 F.3d at 929.

      Here, the evidence referenced in the government's September 30, 2021, notice to the defense are statements that are intrinsic to the charged crimes. At trial, to prove a violation of 18 U.S.C. § 1512(c)(2), the government will be required to prove beyond a reasonable doubt that the defendant "obstruct[ed], influence[d], or impede[d]," an official proceeding, or attempted to do so, and that he did so "corruptly." 18 U.S.C. § 1512(c)(2). To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."). To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of 18 U.S.C. § 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005).

To violate Section 1512(c)(2), the government must also satisfy a "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (internal quotation marks omitted). "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge." *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

Defendant's statements to the CHS and his coworkers demonstrate Defendant's corrupt state of mind and a nexus to Congress's certification of the Electoral College vote. In the context of his conversation with the CHS, it is clear that Defendant views "Democrats, Joe Biden, the Jews," as one and the same. Defendant believes that revolution or "civil war … would give us our best shot at clear bill of health as a society." That Defendant made these statements after the events of January 6 does not detract from their relevance to the *mens rea* element of 18 U.S.C. § 1512(c)(2). The government anticipates that the CHS will testify that these statements reflect Defendant's deeply held beliefs, beliefs that Defendant brought with him to the Capitol and acted upon on January 6. Defendant's white-supremacist, Nazi-sympathizer ideology is the driving force behind his desire for a civil war. In turn, Defendant's desire for civil war rather than "political solutions" is evidence of Defendant's "consciousness of wrongdoing" on January 6 and a nexus to the Electoral College vote, the obstruction of which was an effort to thwart the election of President Biden. For this reason, Defendant's statements to the CHS, to his coworkers, and on social media, are probative of the *mens rea* element of 18 U.S.C. § 1512(c)(2) and should be admitted as intrinsic evidence of that offense.

### II. To the Extent that Rule 404(b) Applies, the Evidence That the Government Seeks to Introduce is Admissible for a Legitimate Nonpropensity Purpose.

While Rule 404(b) prohibits the use of evidence of other crimes, wrongs, or acts to prove a defendant's character, evidence of other crimes, wrongs, or acts is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See Bowie*, 232 F.3d at 926, 930 (citing Fed. R. Evid. 404(b)).  Rule 404(b) is thus a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929.  Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id*. at 929-30 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (*quoting United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of other acts is admissible under Rule 404(b).  First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted).  Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id*.  Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that

danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original). Once that two-part test is satisfied, evidence that falls within Rule 404(b) may be introduced during the government's case-in-chief, including to anticipate a defendant's denial of intent. *See United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *see also United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence to prove identity and to prove that prior and subsequent offenses are so identical as to mark them as handiwork of the defendant should be introduced in the government's case-in-chief).

As discussed above, the evidence referenced in the government's September 30, 2021, notice to the defense is directly relevant to the *mens rea* element of 18 U.S.C. § 1512(c)(2). In the alternative, the evidence is highly probative of Defendant's motive, intent, plan, knowledge, or absence of mistake in committing that offense, as well as the misdemeanor offenses with which Defendant stands charged. *See* Fed. R. Evid. 404(b)(2). Evidence admitted under Rule 404(b) need only to be relevant to a nonpropensity purpose; that is, the evidence must have a "tendency to make" a fact of consequence "more … probable." *United States v. Smith*, No. 19-324 (BAH), 2020 WL 5995199, at *16 (D.D.C. Oct. 9, 2020) (quoting Fed. R. Evid. 401). Here, Defendant's statements articulating his desire for civil war and his white-supremacist/Nazi-sympathizer ideology are relevant to his corrupt motive to disrupt or attempt to disrupt the orderly operation of government—specifically, the January 6, 2021, vote to certify the election of President Biden. Defendant's statements make more probable his purposeful, deliberate effort to obstruct, impede, or interfere with an official Congressional proceeding.

In the same way, the statements are also probative of Defendant having knowingly and willfully entered and remained in a restricted building and grounds, engaged in disruptive and disorderly conduct with intent to impede and disrupt the orderly conduct of government, and paraded, picketed, or demonstrated in a Capitol building, elements required by the misdemeanor charges in the superseding indictment.  Defendant's statements demonstrate that his conduct on January 6, 2021—entering Capitol grounds, breaching the building as part of the first wave of rioters, waving a flag and engaging with law enforcement while inside—was purposeful, not mistaken or accidental, and was motivated by his deeply held anti-government and antisemitic beliefs.  Defendant cannot credibly argue that such evidence will be offered purely for the prohibited purpose of creating an inference that Defendant is of bad character.

Indeed, this Court has already noted the connection between Defendant's history of racist and violent language and his "willing[ness] to put these thoughts into action.". *United States v. Hale-Cusanelli*, 3 F.4th 449, 454 (D.C. Cir. 2021) (quoting this Court's oral detention findings ("Det. Tr." at 28) (Suppl. to Def.'s Memorandum of Law and Fact, *Hale-Cusanelli*, No. 21-3029 (D.C. Cir. May 27, 2021))).  In deciding the question of pretrial detention under the Bail Reform Act, 18 U.S.C. § 3142 *et seq.*, this Court relied on Defendant's statements to the CHS to find a valid "concern regarding the potential escalation of violence [by Defendant] at this point given all that has occurred"—up to and including the events of January 6.  (Det. Tr. at 28.)  The factfinder at trial may properly make a similar inference, namely, that Defendant's statements to the CHS and his coworkers evinced an intent to oppose the government, the same intent that was animating Defendant when he sought to obstruct the Certification proceeding on January 6.

The highly probative value of the government's proffered evidence is not substantially outweighed by potential prejudice to the defendant.  Rule 403 "does not bar powerful, or even

'prejudicial' evidence." *Pettiford*, 517 F.3d at 590 (internal quotation marks omitted). As with any evidence admitted under Rule 404(b), there is inherent risk of prejudice to the defendant. *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). To warrant exclusion, prejudice to the defendant must be *unfair*, and the defense must show "compelling or unique" evidence of prejudice, *see id.*, distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential of any Rule 404(b) evidence.

The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis). Thus, because the government's Rule 404(b) evidence is not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.[3]

---

[3] Defendant makes a cursory suggestion that he did receive adequate notice of the evidence at issue here. As an initial matter, no notice under Rule 404(b) is required at all because the evidence in question is intrinsic. But even if Defendant's concern with respect to the September 30 letter had merit, this filing may also serve as reasonable written notice of the evidence that the government intends to offer, the permitted purpose, and the reasoning supporting the purpose. *See, e.g.*, *United States v. Roberson*, __ F. Supp. 3d __, No. 21-102 (JDB), 2022 WL 35643, at *2 n.4 (D.D.C. Jan. 4, 2022).

**CONCLUSION**

Because the government's proffered evidence is admissible as intrinsic to the offenses with which Defendant is charged or, in the alternative, as evidence admissible for a legitimate nonpropensity purpose under Rule 404(b), the government respectfully requests that Defendant's request to exclude such evidence pretrial be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Kathryn E. Fifield*
        Kathryn E. Fifield
        Wis. Bar No. 1097640
        Trial Attorney
        U.S. Department of Justice, Criminal Division
        Detailed to the D.C. United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        (202) 320-0048
        Kathryn.fifield@usdoj.gov

        Karen P. W. Seifert
        NY Bar No. 4742342
        Assistant United States Attorney
        National Security Section
        United States Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7527
        Karen.Seifert@usdoj.gov