```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
      * * * * * * * * * * * * * *    )
 3    UNITED STATES OF AMERICA,      )      Criminal Action
                                     )       No. 21-00037
 4               Plaintiff,          )
                                     )      MORNING SESSION
 5      vs.                          )
                                     )
 6    TIMOTHY LOUIS HALE-CUSANELLI,  )      Washington, D.C.
                                     )      May 23, 2022
 7               Defendant.          )      9:16 a.m.
                                     )
 8    * * * * * * * * * * * * * *    )

 9

10                   TRANSCRIPT OF JURY TRIAL
            BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14    FOR THE GOVERNMENT:     KAREN P. SEIFERT, ESQ.
                              KATHRYN E. FIFIELD, ESQ.
15                            UNITED STATES ATTORNEY'S OFFICE
                               FOR THE DISTRICT OF COLUMBIA
16                            555 Fourth Street, Northwest
                              Eleventh Floor
17                            Washington, D.C. 20530

18
      FOR THE DEFENDANT:      JONATHAN W. CRISP, ESQ.
19                            CRISP AND ASSOCIATES, LLC
                              4031 North Front Street
20                            Harrisburg, Pennsylvania 17110

21
      REPORTED BY:            LISA EDWARDS, RDR, CRR
22                            Official Court Reporter
                              United States District Court for the
23                             District of Columbia
                              333 Constitution Avenue, Northwest
24                            Room 6706
                              Washington, D.C. 20001
25                            (202) 354-3269
```

```
1              THE COURT:  Good morning.
2              MS. SEIFERT:  Good morning, your Honor.
3              MR. CRISP:  Good morning, your Honor.
4              THE COURTROOM DEPUTY:  This is Criminal Case
5     21-37, the United States of America versus Timothy
6     Hale-Cusanelli.
7              Counsel, please come forward to identify
8     yourselves for the record, starting with the Government.
9              MS. FIFIELD:  Your Honor, Kathryn Fifield on
10    behalf of the United States.  My co-counsel is AUSA Karen
11    Seifert.
12             THE COURT:  Good morning.
13             MS. FIFIELD:  Good morning, your Honor.
14             MR. CRISP:  Good morning, your Honor.  Jonathan
15    Crisp on behalf of Timothy Hale-Cusanelli.
16             THE COURT:  Good morning, Mr. Crisp.
17             MR. CRISP:  Good morning, sir.
18             THE COURT:  So we are missing your client.  I
19    understand he's still at the jail?
20             MR. CRISP:  I believe he is here in the building.
21             THE U.S. MARSHAL:  Your Honor, he's not yet here
22    at D.C. Jail.  They're currently trying to bring him here.
23             THE COURT:  So you all are doing that.
24             MR. CRISP:  I apologize.  I misunderstood what my
25    assistant said.  I apologize.
```

```
 1                    THE COURT:  And he also hasn't been shaved; is

 2        that correct?

 3                    MR. CRISP:  Correct.

 4                    THE COURT:  So what do you want to do about that?

 5                    MR. CRISP:  We do have shaving materials here.

 6        It's been a problem.  The last time he shaved was the time

 7        he got rid of his beard; and you saw what it was, last week

 8        or whenever it was.  So I'd like the opportunity to shave

 9        him here, if possible.  I do have a razor.  We can go out

10        and buy an electric razor.  It's not like a straight razor

11        or anything; it's just a blade.  But I'd prefer to have him

12        shaved before he walks in the courtroom.

13                    THE COURT:  Any problem with that, deputy?

14                    THE U.S. MARSHAL:  It would have to go through the

15        cell block supervisor again.

16                    THE COURT:  Tell him I want to have him shaved.

17                    THE U.S. MARSHAL:  Yes, sir.

18                    THE COURT:  So other than this, Ms. Fifield, are

19        you ready for trial?

20                    MS. FIFIELD:  Yes.  The Government's ready.

21                    THE COURT:  And, Mr. Crisp, other than not having

22        a client, are you ready for trial?

23                    MR. CRISP:  Yes.  Do I need to go up to the

24        podium?

25                    THE COURT:  Yes, please.
```

1          MR. CRISP:  I believe you said we can take off our

2     mask?

3          THE COURT:  Yes.

4          MR. CRISP:  Aside from the idea that they will not

5     let me access him or see him during the course of this

6     trial.  So I would ask for an abatement until I can actually

7     see him if they're not going to let me in the prison.  I

8     need to obviously continue to work with him during the

9     course of the trial.

10          So from that standpoint, I would say no.  But all

11     other issues aside, yes.

12          THE COURT:  So I saw your message.  For the

13     record, I think you emailed my clerk --

14          MR. CRISP:  I did, your Honor.

15          THE COURT:  -- yesterday evening.

16          MR. CRISP:  I didn't have your email.  So I didn't

17     want to be --

18          THE COURT:  That's perfectly appropriate.

19          But I take it this is an issue that came up

20     yesterday.  Correct?

21          MR. CRISP:  It started on Wednesday after I was

22     here visiting.  And it transmogrified into -- it went from

23     taking personal effects that I had in my bag to now not

24     letting me in.  But the first time they denied me access was

25     yesterday.  That's correct.

```
1              THE COURT:  So I'm just wondering, practically

2    speaking, this week I think it's probably -- you're probably

3    mostly going to be wanting to talk with him here.  Right?

4              MR. CRISP:  Well, my expectation is that they're

5    going to take him back to the prison as soon as trial is

6    done.  So I'd have to go back to the prison to meet with

7    him.

8              THE COURT:  Well, I know I can ask the marshals to

9    hold him and you can meet with him downstairs, which I think

10   is probably more convenient for you.

11             MR. CRISP:  It certainly is.  Yes.

12             THE COURT:  So I guess, Ms. Fifield, were you

13   copied on that email?

14             MS. FIFIELD:  If your Honor is asking -- I'm not

15   sure which specific email, if we were copied on that.  But

16   if you're asking if we were aware of the situation, yes, we

17   were.

18             THE COURT:  So I guess I feel a little

19   uncomfortable ordering the jail to do something, although

20   they're making a complete hash of things so far today,

21   without getting their input.  So maybe you could ask one of

22   your colleagues to kind of get their side of what's going on

23   before I order them to do something.

24             In the meantime, I guess I'd just ask the marshals

25   to keep Mr. Hale-Cusanelli around after the end of the day
```

1    of trial so that Mr. Crisp can meet with his client

2    downstairs.

3              THE U.S. MARSHAL:  Would you like him to stay past

4    when we end today, sir?

5              THE COURT:  Yes, sir.

6              THE U.S. MARSHAL:  That'll have to go again

7    through the cell block.  I'm not sure how late they'll be

8    allowed to keep him here.

9              THE COURT:  So yes.  Let's deal with that for

10   right now.  I think that's probably the best solution, is

11   just to try to have him stick around here and meet with him.

12   In the meantime, the U.S. Attorney's Office can figure out

13   the jail's side of this.

14             MR. CRISP:  Sure.

15             MS. SEIFERT:  Your Honor, if I might just make a

16   couple of representations here for the United States.

17             THE COURT:  Sure.

18             MS. SEIFERT:  I understand counsel's desire to see

19   his client, and certainly the Government will assist in

20   trying to get information from the jail and can request that

21   counsel for the jail be available for a teleconference with

22   your Honor to explain whatever is going on.

23             Obviously, the United States Attorney's Office

24   doesn't have the ability to either request or order the

25   jail; but we can certainly communicate, if the Court would

 1     like, information from them.

 2             I will note, however, that it is at least my

 3     experience in this district that counsel are usually not

 4     able to speak with their attorney at the jail after the

 5     close of the business day.  So I don't know that the

 6     inability to go to access the jail now actually affects

 7     defense counsel unless the case goes over the weekend, and

 8     counsel can make arrangements to see his client on a

 9     Saturday.  I don't anticipate the case will go over the

10     weekend.  And typically, counsel at least in my experience

11     in this district see their clients in the morning.  If your

12     Honor wants to start at 9:30 and he can be brought over

13     earlier, that would give defense counsel time to see him in

14     the morning.

15             But it is not typically my experience that the

16     jail makes available counsel visits after hours.

17             THE COURT:  Yes.  That's my impression, too.

18             To be clear, though, about my position, the

19     Defendant has been remanded to the custody of the Attorney

20     General.  You work for the Attorney General.  The D.C. Jail

21     is not in front of me; you are.  So I think you are

22     responsible for him.

23             But taking all of that, I understand you can't

24     order the D.C. Jail to do something.  I do think it's

25     appropriate for you to make representations, though, about

1     the D.C. Jail's perspective.

2              But I agree with you as a practical matter that it

3     makes sense for Mr. Crisp to try to meet with him here

4     rather than at the jail.

5              MS. SEIFERT:  Respectfully, your Honor, I think

6     the other option would be to ask the Marshals Service to

7     inquire of the jail and ask the marshal to make

8     representations, since you can order the Marshals Service

9     and the jail is under contract with the marshals to house

10    them.

11             THE COURT:  The marshals also work for the Justice

12    Department.

13             MS. SEIFERT:  I'd be happy to figure out whoever

14    you want to have before you without -- who might have more

15    personal knowledge than the Government does.

16             THE COURT:  You're all the Government.  That's my

17    point.

18             MR. CRISP:  A point of clarification, your Honor.

19             Was the representation that I'm not able to get in

20    after hours?  I don't know what "after hours" is.  I can

21    tell you I was there until 7:30, 8:00 on Wednesday night, so

22    I have seen him up until those hours.  So I don't know how

23    we're defining that.

24             So my expectation was -- and I -- in all the other

25    prisons, in 22 years, I can't say I've had issues getting in

1    to see clients after 5:00, 6:00 at night during the course

2    of trial when they were incarcerated.  So it is a normal

3    practice.  I don't know if Government counsel was under the

4    misimpression that I couldn't get in after 5:00.

5              THE COURT:  I've had the same impression, that you

6    can't just go in at any time.

7              MR. CRISP:  Sure.

8              THE COURT:  There are business hours.  And maybe

9    it's a COVID thing.  I don't know.  But anyway, I --

10             MR. CRISP:  I just wanted to make sure that -- I

11   was there until ultimately I left the room at 8:00.  But I

12   left him at 7:00, 7:30.  They never kicked me out.

13             THE COURT:  Okay.  Maybe you were getting away

14   with something.

15             MR. CRISP:  Thanks.

16             THE COURT:  Have the parties talked about what I

17   should be telling people about masks?  By the way, for now,

18   if you don't want to wear a mask, don't feel like you need

19   to.

20             MS. SEIFERT:  Your Honor, the Government inquired

21   of Mr. Crisp whether or not he was going to be able to make

22   representations for defense, and we did not hear back from

23   him.  So I don't have representations for all of our

24   witnesses.

25             All but one witness are government employees who

 1    are covered by the vaccine mandate.  But because we did not

 2    hear from defense, I did not specifically inquire of each of

 3    the witnesses about their health information.  The

 4    individual who is not covered by the mandate is vaccinated.

 5    So I think you could say the Government and its witnesses

 6    are all vaccinated or either required to be vaccinated, and

 7    that would be a fair characterization.

 8              THE COURT:  Can you make representations, sir?

 9              MR. CRISP:  I apologize.  We did discusses this,

10    and I neglected to ask him if he is vaccinated.  I can tell

11    you the entire defense team is.  I can text and see if he

12    is.  I should have done that.

13              THE COURT:  So I think maybe what I'll say is

14    something like:  The attorneys and the Court staff have all

15    been vaccinated.

16              In any event, we're all kind of sitting well away

17    from the jurors.  I have asked you all to be unmasked at

18    least when you're speaking and the witnesses when they're

19    speaking so that the jury can hear and observe you clearly.

20              I don't know that I need to go through the vaccine

21    status of everybody, especially these days.  It doesn't seem

22    like that makes very much difference.  But I think I will

23    ask the jurors to remain masked, both up here and

24    downstairs, until we're going to be using my jury box.

25              I think the last thing that I wanted to cover,

1    we've sent around kind of updated voir dire and preliminary

2    jury instructions.  Does the Government have any final

3    concerns that you wish to raise on any of those?  I'm not

4    looking to rehash things, but to the extent there's anything

5    new here that you want on the record.

6              MS. FIFIELD:  The Government has no final concerns

7    about the jury instructions.

8              THE COURT:  Thank you, Ms. Fifield.

9              Ms. Crisp?

10             MR. CRISP:  The same.  Defense doesn't have any

11   concerns either.

12             THE COURT:  Anything else you think we need to

13   talk about before your client comes in?

14             MR. CRISP:  May I talk with counsel?  We had --

15             (Counsel confer privately off the record.)

16             MS. SEIFERT:  The jury has been waiting for a long

17   time.

18             THE COURT:  But we're waiting on the Defendant.

19             MS. SEIFERT:  Just -- I apologize to the court

20   reporter for all the cross-talk not by a microphone.

21             We have tried to work out the issues with the

22   transcript.  I still have not heard back from defense as to

23   what their issues are, so I don't have any representations

24   for the Court at this time.

25             THE COURT:  So it sounds like maybe the best thing

1    is for you all to talk now.  I don't think this is going to

2    be an issue today.

3              MS. SEIFERT:  I agree, your Honor.

4              THE COURT:  If there is anything that I need to

5    resolve, we can talk about that at the end of the day.

6              MS. SEIFERT:  Absolutely.

7              THE COURT:  And, Ms. Seifert, you agree that

8    there's nothing that we should be discussing before the jury

9    comes out?

10             MS. SEIFERT:  Not to my knowledge, your Honor.

11             THE COURT:  So let's try to get the Defendant and

12   get him shaved as quickly as possible.

13             Deputy, can you come up here?

14             (Confers with the deputy marshal privately.)

15             (Thereupon a recess was taken, after which the

16   following proceedings were had:)

17             (Whereupon, the prospective jury panel entered the

18   courtroom at 10:31 a.m. and the following proceedings were

19   had:)

20             THE COURT:  Good morning.

21             THE COURTROOM DEPUTY:  This is Criminal Case

22   21-37, the United States of America versus Timothy

23   Hale-Cusanelli.

24             Counsel, please come forward to identify

25   yourselves for the record, starting with the Government.

1          MS. FIFIELD:  Kathryn Fifield on behalf of the

2     United States.  And with me at counsel table is AUSA Karen

3     Seifert.

4          THE COURT:  Good morning, Ms. Fifield.

5          Good morning, Ms. Seifert.

6          MR. CRISP:  Good morning, your Honor.  Jonathan

7     Crisp on behalf of Timothy Hale-Cusanelli.

8          THE COURT:  Good morning, Mr. Crisp.

9          And good morning, Mr. Hale-Cusanelli.

10         And good morning, ladies and gentlemen.  Welcome

11    to our ceremonial courtroom.  I need to start out by

12    apologizing to you all for keeping you waiting.  We had some

13    issues this morning that were beyond the control of anyone

14    in this courtroom, but I do apologize.

15         As you all are D.C. residents, for most of you,

16    this is not your first time in a courtroom for jury service.

17    I want you to know I'm going to try to move this as quickly

18    as possible for everyone.  But as you all probably know,

19    especially the first day, when we pick a jury, there can be

20    some stops and starts.  And so I apologize for what you've

21    already experienced and that there will be some more waiting

22    today.

23         Ladies and gentlemen, you've been called to this

24    courtroom for possible jury selection in a criminal case

25    entitled the United States of America versus Timothy

1    Hale-Cusanelli.

2            Let me ask you to all stand so that the deputy

3    clerk can swear you in, and then we'll proceed.

4            (Whereupon, the prospective jury panel was duly

5    sworn.)

6            THE COURT:  Thank you, ladies and gentlemen.

7            I should also mention one other thing:  Of course,

8    we are here still in COVID times.  The parties, the court

9    staff and I are vaccinated.  And I have asked the attorneys

10   and Mr. Hale-Cusanelli and the witnesses not to wear masks

11   at least when they're speaking to you so that you can all

12   hear and observe them well.  And I think that's important to

13   get a good transcript and so you all can make sure to hear

14   them.

15           Also, we're making sure to keep them away from you

16   all.  We'll try to keep our distance.

17           I am going to ask you all to remain masked, given

18   the recent rise in COVID positive tests here in the D.C.

19   area.

20           I want you all to know, we're trying to do

21   everything we can to both protect everybody and also to make

22   you feel comfortable and to ensure the criminal justice

23   system can continue.  And that's important to the United

24   States; it's important to Mr. Hale-Cusanelli.  So we're

25   doing our best to balance those various competing concerns.

1          I'll tell you, we've tried to seat you all a bit

2    further apart here for this initial voir dire.  That's why

3    we're up here in the ceremonial courtroom.

4          Also, if you are selected for the jury, we're not

5    going to be using those small little jury rooms in the back

6    that many of you all are familiar with.  We'll have you sit

7    in a larger room where you can be more distanced.

8          You probably saw we had protocols at the very

9    outset when you come into the building, and certainly if you

10   are on the jury and anybody feels sick or, God forbid, tests

11   positive, I'll ask you to let Ms. Chaclan know right away.

12   These are all steps we're taking to try to protect you, but

13   plus to make sure that we can continue with the business of

14   the Court that is so important to the parties.

15         The purpose of jury selection is to select jurors

16   who have no prior knowledge of the case and no bias toward

17   or against either side in this case.  In short, it is our

18   aim to select a jury that will reach a verdict based solely

19   on the evidence presented in this courtroom and the law as I

20   instruct you.  During this process, you'll be introduced to

21   the participants in the trial and I will ask you a series of

22   questions that the attorneys and I think will be helpful to

23   us in selecting a fair and impartial jury.

24         You of course are bound by the oath you've just

25   taken to answer truthfully.

1           Before I begin, I'm going to read to you a quick

2    summary of the case so that you'll have a bit of background

3    information on it.

4           The Government has charged Mr. Hale-Cusanelli with

5    a number of charges related to his alleged participation in

6    the January 6th breach of the Capitol, the U.S. Capitol

7    Building, back on January 6th, 2021.

8           I think you all have received a note card and a

9    pen.  You actually don't need to use those for this first

10   part.  We will get to those.  But for now, if you have a

11   "yes" answer to any of my questions, I'll just ask you to

12   raise your hand.  If you do have a "yes" answer, one of my

13   staff will bring around a microphone to have you just stand

14   where you are, give me your juror number and tell me what

15   your answer is; again, if your answer is "yes," explaining

16   your answer.

17          If for any reason there's something that is

18   sensitive or private in your answer, if you think it would

19   be better to not answer in front of everybody, that's fine.

20   Just let me know and I'll bring you up so you and the

21   attorneys and I can speak privately.

22          But for most of these questions, I think you'll

23   find that there's nothing too private about them, and

24   typically people can just answer publicly.

25          So my first question:  This is a criminal case

1    entitled the United States of America versus Timothy

2    Hale-Cusanelli.

3            The Defendant is charged with the offenses of

4    obstruction of justice of an official proceeding -- I'm

5    sorry -- obstruction of an official proceeding and aiding

6    and abetting; entering and remaining in a restricted

7    building or grounds; disorderly and disruptive conduct in a

8    restricted building or grounds; disorderly conduct in a

9    Capitol building; and parading, demonstrating or picketing

10   in a Capitol building.  He was arrested in connection with

11   the events that occurred at the U.S. Capitol on January 6th,

12   2021.

13           Do you know or have you heard anything about this

14   specific case?  And again, I'm sure many of you are aware in

15   general about what happened on January 6th, 2021.  But if

16   you believe you know something specifically about

17   Mr. Hale-Cusanelli's case, let me ask you to raise your

18   hand.

19           And, ma'am, actually, could you come forward with

20   the attorneys, approach?

21           THE COURT:  Ma'am, what's your juror number?

22           PROSPECTIVE JUROR:  153.

23           THE COURT:  Let me see if I can find you.

24           (Whereupon, the following proceedings were had at

25   sidebar outside the presence of the jury:)

```
 1              MS. SEIFERT:  It's 15, your Honor.

 2              THE COURT:  Yes, ma'am.  Do you think you heard

 3     about this case?

 4              PROSPECTIVE JUROR:  I think I heard about the

 5     appeal from 2021 in the last year.  Maybe it was a different

 6     case.

 7              MS. SEIFERT:  If the juror could speak up a little

 8     bit.

 9              PROSPECTIVE JUROR:  The appeals process last year.

10              THE COURT:  What do you remember about that?

11              PROSPECTIVE JUROR:  Just that it happened.

12              THE COURT:  So there --

13              PROSPECTIVE JUROR:  I was a law student last year.

14              THE COURT:  Is there anything about your memory of

15     that -- you know there hasn't been a trial?

16              PROSPECTIVE JUROR:  Yes.  I just remember that.

17     That's it.

18              THE COURT:  Is there anything about that that

19     would make it difficult for you to be a fair and impartial

20     juror in this case?

21              PROSPECTIVE JUROR:  No.  I don't think so.  Just

22     trying to be honest.

23              THE COURT:  I appreciate that.

24              Any questions from the attorneys on that?

25              MS. SEIFERT:  I just wanted to clarify.  So in
```

1    your time working as a law student, you saw that this

2    Defendant had an appeal?

3              PROSPECTIVE JUROR:  Of some sort.

4              MS. SEIFERT:  You were knowledgeable about that

5    from that experience as a law student?

6              PROSPECTIVE JUROR:  Yes.

7              MS. SEIFERT:  Do you have any independent

8    knowledge of the result of an appeal or finding therein?

9              PROSPECTIVE JUROR:  No.  I don't remember.  I just

10   remember the name.

11             THE COURT:  Thank you, ma'am.  I appreciate it.

12   You can have a seat.

13             (Whereupon, the following proceedings were had in

14   open court:)

15             THE COURT:  Any other "yes" answers to that

16   question?

17             The second question:  The Government in this case,

18   as you might have just heard, is represented by Trial

19   Attorney Kathryn Fifield and Assistant U.S. Attorney Karen

20   Seifert.  The Defendant is represented by Jonathan Crisp.

21   The Defendant is Timothy Hale-Cusanelli, formerly a resident

22   of Colts Neck, New Jersey.

23             Do you happen to know any of these people?  Do any

24   of these names ring a bell for you?

25             Seeing no hands, I will now ask each side to

1    introduce their witnesses just by reading a list of the

2    names.

3              Ms. Fifield?

4              MS. FIFIELD:  Good morning, everyone.  As the

5    Judge said, my name is Kathryn Fifield.  I'm a trial

6    attorney for the Government in this case.  My co-counsel is

7    AUSA Karen Seifert.

8              During this trial, you will hear from or hear

9    about the following witnesses:  Michael Jacobs; with the

10   FBI, Special Agent Christopher Deibert, Special Agent Erik

11   Framhein, Special Agent Jamshid Ochilov; from the United

12   States Naval Criminal Investigative Service, Special Agent

13   Anthony Z. Golt, Special Agent Daniel Myers; from the United

14   States Capitol Police, Inspector Monique Moore, Officer

15   Matthew Shephard, Officer Raymond Watts; from the United

16   States Secret Service, Special Agent Paul Wade; from the

17   United States Senate, former counsel to the Secretary of the

18   Senate Daniel Schwager and Diego Torres, records custodian

19   for the Senate; from the United States House of

20   Representatives, Douglas Massengale, records custodian.

21             THE COURT:  Thank you, Ms. Fifield.  Do you have

22   more?

23             MS. FIFIELD:  That's it.  Thank you, your Honor.

24             THE COURT:  Does anybody recognize any of those

25   names?

 1          Yes, sir.  And if you could just stand and

 2   identify yourself by giving us your juror number.  Give us

 3   just a second to find you on our list.

 4          PROSPECTIVE JUROR:  1412.  I've heard of

 5   Mr. Shephard.

 6          THE COURT:  You've heard about Officer Shephard?

 7          PROSPECTIVE JUROR:  Yes.

 8          THE COURT:  But you don't know him?

 9          PROSPECTIVE JUROR:  Yes.  I have heard about him

10   through the news, but I do not actually know him.

11          THE COURT:  Anybody else?

12          Seeing no hands, let me ask Mr. Crisp to read his

13   list.

14          MR. CRISP:  We don't have any witnesses, Judge.

15          THE COURT:  Great.

16          So moving to the next few questions, ladies and

17   gentlemen, these next questions relate to you, members of

18   your immediate family and close personal friends.  So I'm

19   not asking you about everybody you know or some, you know,

20   second cousin twice removed.  I want to know about you, your

21   immediate family and close personal friends.

22          So does anybody in that group now work for or has

23   anyone in that group ever worked for any law enforcement

24   agency?  And by "law enforcement agency," I mean a police

25   department in or outside of D.C., special police officers,

1    prosecutors' offices such as the state's attorney or United

2    States attorney, the Park Police, the FBI, the Department of

3    Justice, Homeland Security, sheriff's offices, Secret

4    Service or any other law enforcement agency.

5            So if you or someone in that group works for or

6    has worked for law enforcement, please raise your hand.

7    We'll just start over in this section here.

8            And again, yes.  If you could just stand and give

9    us your juror number.

10           PROSPECTIVE JUROR:  My number is 0206.

11           THE COURT:  Yes, sir.

12           PROSPECTIVE JUROR:  During law school, I worked

13   for the D.A. in New Orleans.

14           THE COURT:  Sir, as you probably know from your

15   experience in the D.A.'s office, there are good prosecutors

16   and bad prosecutors, good police officers and bad police

17   officers.  Is there anything about your experience working

18   for the D.A. that would make it be difficult for you to be

19   fair and impartial to both sides here?

20           PROSPECTIVE JUROR:  No.

21           THE COURT:  Thank you.

22           Anybody else in this far section?  You or somebody

23   close to you has worked for law enforcement?

24           Let's go to the middle section here.  I saw

25   several hands.  We can start in the first row.

1        PROSPECTIVE JUROR:  Hello, your Honor.

2        THE COURT:  Good morning, sir.

3        PROSPECTIVE JUROR:  Juror No. 0781.

4        THE COURT:  Yes, sir.

5        PROSPECTIVE JUROR:  I work for the Justice

6   Department.

7        THE COURT:  And what do you do at the Justice

8   Department, sir?

9        PROSPECTIVE JUROR:  I'm an assistant director in

10  the civil division, intellectual property staff.

11       THE COURT:  And have you previously worked on the

12  prosecutor's side?  Obviously, you're on the civil side now.

13       PROSPECTIVE JUROR:  No, sir.

14       THE COURT:  Obviously, the Government here is

15  represented by DOJ attorneys.  I take it you don't know

16  either of these ladies?

17       PROSPECTIVE JUROR:  No.

18       THE COURT:  It's a big place.

19       And is there anything about your experience as a

20  DOJ employee that will make it be difficult for you to be

21  fair and impartial to both sides here?

22       PROSPECTIVE JUROR:  No.

23       THE COURT:  Thank you, sir.

24       PROSPECTIVE JUROR:  Hi.  I'm Juror No. 1096, and I

25  used to work for the FDA office of criminal investigation.

```
 1                THE COURT:  Did you say the FDA?
 2                PROSPECTIVE JUROR:  Yes.
 3                THE COURT:  And what was your role there, sir?
 4                PROSPECTIVE JUROR:  I was an automation clerk.
 5                THE COURT:  So I guess same the question I asked
 6      the first gentleman:  You're around law enforcement
 7      officers.  You know that there are good and bad law
 8      enforcement officers.  Anything about your experience there
 9      that would make it be difficult for you to be fair and
10      impartial to both sides?
11                PROSPECTIVE JUROR:  No.
12                THE COURT:  Thank you.
13                PROSPECTIVE JUROR:  Hello.  I'm Juror 0141.
14                THE COURT:  Give me just a second.  0141.  Yes,
15      sir.
16                PROSPECTIVE JUROR:  And my mother was a police
17      officer in Georgia 30-plus years ago.
18                THE COURT:  So same question for you, sir:  Is
19      there anything about your mother's experience that would
20      make it be difficult for you to be fair and impartial to
21      both sides?
22                PROSPECTIVE JUROR:  No.
23                THE COURT:  Obviously, we'll be hearing from law
24      enforcement officers.  Do you think you can treat their
25      testimony the same as the testimony of any other witness?
```

 1              PROSPECTIVE JUROR:  Yes, sir.

 2              THE COURT:  Thank you.

 3              PROSPECTIVE JUROR:  Juror 1412.  I have a cousin

 4     who's a police officer and I have a stepson who was actually

 5     in the Reserves and was called up to -- as protection for

 6     the whole incident.

 7              I also work at Walter Reed.

 8              THE COURT:  I didn't understand that.

 9              PROSPECTIVE JUROR:  I work at Walter Reed.

10              THE COURT:  Yes.

11              PROSPECTIVE JUROR:  So that's for the military.

12              THE COURT:  So first, let's talk about your

13     cousin.  I guess the same question.

14              PROSPECTIVE JUROR:  It's completely unrelated.  No

15     conflict.  I thought it was important to bring it up.

16              THE COURT:  Who did you say -- is it your son?

17              PROSPECTIVE JUROR:  My stepson was in the

18     Reserves, and he was called up to provide protection on

19     January 6.

20              THE COURT:  And have you talked with him about

21     those experiences, sir?

22              PROSPECTIVE JUROR:  Yes, sir.

23              THE COURT:  And I guess my question for you, sir,

24     is:  Anything about -- obviously, we've all seen news

25     reports.  We've all heard a lot about it, may well have

1    thoughts about what happened then.  My question is whether

2    you think you can look at the evidence the Government

3    provides in this case and kind of put aside preconceived

4    notions that you may have and be fair to both parties on

5    this case.

6              PROSPECTIVE JUROR:  That's my intent.  I hope to.

7    Obviously, I've had a lot of information from multiple

8    areas.

9              THE COURT:  I think the attorneys and I can -- we

10   can talk with you a little bit about that later.  But I

11   appreciate your answer, sir.

12             PROSPECTIVE JUROR:  Hi.  Juror 1524.

13             THE COURT:  Yes, ma'am.

14             PROSPECTIVE JUROR:  I worked for the Department of

15   Homeland Security about seven years ago and my sister is --

16   she works for a sheriff's department.

17             THE COURT:  What did you do for DHS, ma'am?

18             PROSPECTIVE JUROR:  Program analyst.

19             THE COURT:  And I'm sorry.  Your sister, is she a

20   deputy?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  Is there anything about either your

23   experiences or your sister's experiences that you think

24   would make it be difficult for you to be fair and impartial

25   to both sides here?

1    PROSPECTIVE JUROR:  I don't think so.

2    THE COURT:  Any reason you couldn't evaluate the

3    testimony of police officers based on what you see here and

4    not kind of assume that, you know, any police officer is

5    automatically going to be telling the truth, or perhaps from

6    what you've heard from your sister you might think that all

7    cops are bad cops or something like that?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  You can evaluate each witness's

10   testimony based on what you see?

11   PROSPECTIVE JUROR:  I believe so.

12   THE COURT:  Thank you, ma'am.

13   PROSPECTIVE JUROR:  I'm Juror 0008.

14   THE COURT:  Yes, ma'am.

15   PROSPECTIVE JUROR:  My father was a U.S.

16   corrections officers for over 20 years and is a retired U.S.

17   veteran.  And my uncle worked for the New York State bureau

18   of criminal investigation, which he participated in with the

19   FBI.

20   THE COURT:  Ma'am, is there anything about what

21   you've heard from your father or your uncle that would make

22   it be difficult for you to be fair to both sides here?

23   PROSPECTIVE JUROR:  No, sir.

24   THE COURT:  Thank you.

25   There's someone in front of you.

 1          PROSPECTIVE JUROR:  Hello, your Honor.  I'm Juror
 2    No. 0590.
 3          THE COURT:  Give me just a second to find you.  Go
 4    ahead.
 5          PROSPECTIVE JUROR:  You've got it?  I'm not sure
 6    whether it relates to me, but I am a court reporter.  So I
 7    have done numerous depositions with, you know, witnesses
 8    and -- you know, so would that be a problem?
 9          THE COURT:  I think there will be a question that
10    relates to that, but we can handle that right now.
11          Anything else about that experience, sir, that you
12    think that would make it difficult for you to be fair and
13    impartial to both sides?
14          PROSPECTIVE JUROR:  No.
15          THE COURT:  And, sir, obviously, you've spent a
16    lot of time in courtrooms.  You may know more about the law
17    than many lawyers.  Can you follow the law as I tell it to
18    you and kind of put aside what you've learned from your
19    experiences as a court reporter?
20          PROSPECTIVE JUROR:  Yes.
21          THE COURT:  Thank you, sir.
22          PROSPECTIVE JUROR:  0522.
23          THE COURT:  Yes, sir.
24          PROSPECTIVE JUROR:  Several members of my family
25    are North Carolina state troopers.

```
 1              THE COURT:  So, you know, same question that I've
 2      asked the other jurors, sir:  Obviously, you know better
 3      than most people that there are good law enforcement
 4      officers and bad law enforcement officers.  Any reason that
 5      you won't be able to evaluate the testimony of law
 6      enforcement officers here based on what you observe of them
 7      and kind of put aside any preconceived notion?
 8              PROSPECTIVE JUROR:  No.
 9              THE COURT:  And do you believe you can be fair and
10      impartial to both sides here, sir?
11              PROSPECTIVE JUROR:  Yes.
12              THE COURT:  Thank you.
13              PROSPECTIVE JUROR:  0310.
14              THE COURT:  Yes, sir.
15              PROSPECTIVE JUROR:  I was a sworn law enforcement
16      officer between undergrad and graduate school, two years.
17              THE COURT:  Where was that?
18              PROSPECTIVE JUROR:  Louisiana Office of State
19      Parks.
20              THE COURT:  Any reason that will affect your
21      ability to evaluate the testimony of the witnesses you hear,
22      sir?
23              PROSPECTIVE JUROR:  No, your Honor.
24              THE COURT:  And any reason that you can't be fair
25      and impartial to both sides here?
```

```
 1                    PROSPECTIVE JUROR:  No, your Honor.

 2                    THE COURT:  Thank you.

 3                    PROSPECTIVE JUROR:  Hi.  I'm 1329.

 4                    THE COURT:  Yes, ma'am.

 5                    PROSPECTIVE JUROR:  My brother was an NCIS agent

 6       about ten years ago.

 7                    THE COURT:  With Naval Criminal Investigative

 8       Services?

 9                    PROSPECTIVE JUROR:  That's correct.

10                    THE COURT:  And so it sounds like we will -- or

11       may, anyway, hear testimony from a Naval Criminal

12       Investigative Service agent.  I take it you didn't recognize

13       the name.  Correct?

14                    PROSPECTIVE JUROR:  I did not.

15                    THE COURT:  So anything about his experience that

16       would make it be difficult for you to evaluate the testimony

17       of any law enforcement officer here?

18                    PROSPECTIVE JUROR:  No.

19                    THE COURT:  And any reason that you'd kind of feel

20       some sort of favoritism or attachment to the NCIS and

21       therefore kind of give -- you're not going to be able to be

22       fair and impartial to both sides here?

23                    PROSPECTIVE JUROR:  No.  I don't think so.

24                    THE COURT:  Thank you, ma'am.

25                    PROSPECTIVE JUROR:  1348.
```

```
 1                  THE COURT:  Yes, ma'am.

 2                  PROSPECTIVE JUROR:  My cousin is -- he was a

 3     police officer and is now a detective.

 4                  THE COURT:  So same questions for you, ma'am:  Any

 5     reason you can't evaluate the testimony of a law enforcement

 6     officer the same as the testimony of anybody else here,

 7     ma'am?

 8                  PROSPECTIVE JUROR:  No.

 9                  THE COURT:  And any reason you can't be fair and

10     impartial to both sides here?

11                  PROSPECTIVE JUROR:  No.

12                  THE COURT:  Okay.  Thank you.

13                  And I think we've got a few hands over on this

14     side.

15                  PROSPECTIVE JUROR:  1013.

16                  THE COURT:  Yes, sir.

17                  PROSPECTIVE JUROR:  I've got a close friend in the

18     police department and DOJ.

19                  THE COURT:  Which police department, sir?

20                  PROSPECTIVE JUROR:  MPD.

21                  THE COURT:  And where do your friends at DOJ work?

22                  PROSPECTIVE JUROR:  He works at Main Justice.

23                  THE COURT:  Do you know what division?

24                  PROSPECTIVE JUROR:  I don't know the specifics.

25                  THE COURT:  So any reason those relationships --
```

1    anything about those relationships that'll make it be

2    difficult for you to evaluate the testimony of law

3    enforcement officers the same as anybody else's testimony?

4         PROSPECTIVE JUROR:  No.

5         THE COURT:  And any reason you can't be fair and

6    impartial to both sides here, given your relationship with

7    them?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  Thank you.

10        PROSPECTIVE JUROR:  Hi.  0056.

11        THE COURT:  Yes, ma'am.

12        PROSPECTIVE JUROR:  My husband is an assistant

13   U.S. attorney in the civil division.

14        THE COURT:  The D.C. U.S. Attorney's Office?

15        PROSPECTIVE JUROR:  Yes.

16        MR. CRISP:  Your Honor, I didn't hear.

17        THE COURT:  Her husband is a civil AUSA in this

18   district.

19        So obviously, Ms. Seifert is probably one of your

20   husband's colleagues, but I think they actually work in

21   different buildings.  You don't recognize her name?

22        PROSPECTIVE JUROR:  I don't know.  I don't know.

23        THE COURT:  It's a very big office.

24        PROSPECTIVE JUROR:  Yes.

25        THE COURT:  Anything about your husband's work and

1    the fact that he works there that will make it be difficult

2    for you to be fair and impartial to both sides here?

3                PROSPECTIVE JUROR:  No.

4                THE COURT:  Thank you, ma'am.

5                PROSPECTIVE JUROR:  Good morning, your Honor.

6    1339.

7                THE COURT:  Yes, sir.

8                PROSPECTIVE JUROR:  My father-in-law is a retired

9    police officer from Arlington, and I currently am detailed

10   to the Department of Homeland Security.

11               THE COURT:  You are, sir?

12               PROSPECTIVE JUROR:  I am.  Yes.

13               THE COURT:  What do you do at DHS?

14               PROSPECTIVE JUROR:  I'm a software engineer.

15               THE COURT:  So anything about either your current

16   employment or your father-in-law's prior job that would make

17   it be difficult for you to be fair and impartial to both

18   sides here?

19               PROSPECTIVE JUROR:  No, your Honor.

20               THE COURT:  Thank you.

21               Anybody we missed?

22               Here's another big question for D.C. residents.

23   Has any member of that group -- and remember by "that group"

24   we're talking about you, immediate family or close

25   friends -- who has ever gone to law school, worked as a

 1    lawyer or worked in a law office?  And let me say, if you're

 2    just going to tell me something you've already told me, we

 3    don't need to hear from you again.  But additional people.

 4              We'll start over here again.

 5              THE COURT:  Welcome to D.C., right?

 6              [Laughter.]

 7              PROSPECTIVE JUROR:  0206.

 8              THE COURT:  Yes, sir.

 9              PROSPECTIVE JUROR:  So I'm an attorney.  I worked

10    at the Fifth Circuit as a law clerk and for a nonprofit in

11    D.C. and the House and now the Library of Congress.

12              THE COURT:  You're in the Library of Congress, the

13    general counsel's office?

14              PROSPECTIVE JUROR:  No.  I'm in CRS.

15              THE COURT:  When were you at the House, sir?

16              PROSPECTIVE JUROR:  I was employed there until

17    three months ago and I was employed there on January 6th as

18    a staffer.

19              THE COURT:  So we will come back and talk about

20    that part later.

21              Let me ask, will you be able to put aside your

22    legal training and your experiences in the law and follow my

23    instructions on the law and apply them here in this case,

24    sir?

25              PROSPECTIVE JUROR:  Yes.

```
1              THE COURT:  And, sir, other than as a law clerk,

2      have you had any criminal experience?

3              PROSPECTIVE JUROR:  I do advise members of

4      Congress on a variety of issues.

5              THE COURT:  Thank you.

6              PROSPECTIVE JUROR:  Juror No. 0795.

7              My sister is an attorney with the

8      telecommunications program on contract law and her husband

9      is also an attorney.

10             THE COURT:  Do either of them -- or have either of

11     them done criminal work, ma'am?

12             PROSPECTIVE JUROR:  Not that I'm aware of.

13             THE COURT:  That's fine.

14             And so anything -- well, let me put it this way:

15     I'm sure you've talked with them.  You've kind of gotten

16     good legal vignettes, all that type of thing.  But can you

17     put those conversations and what you know from them aside

18     and apply the law as I tell you here in this trial?

19             PROSPECTIVE JUROR:  Yes, sir.

20             THE COURT:  Thank you, ma'am.

21             PROSPECTIVE JUROR:  Hello.  1094.

22             THE COURT:  Yes, ma'am.

23             PROSPECTIVE JUROR:  I interned at a law firm in my

24     early 20s a number of years ago and then my husband was a

25     paralegal and he also interned at the same office.  That was
```

```
1    in Boston.

2              THE COURT:  So any reason you won't be able to put

3    aside your knowledge of the law from your experiences and

4    from your husband's experiences and apply the law as I tell

5    you?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Thank you, ma'am.

8              PROSPECTIVE JUROR:  Good morning, your Honor.

9    0258.

10             THE COURT:  Good morning, sir.  Yes.

11             PROSPECTIVE JUROR:  My father was a lawyer for the

12   State of Massachusetts Department of Children and Families.

13             THE COURT:  Any reason that you won't be able to

14   apply the law as I tell you and kind of put aside what

15   you've learned from your father?

16             PROSPECTIVE JUROR:  No, your Honor.

17             THE COURT:  Thank you.

18             PROSPECTIVE JUROR:  1129.

19             And so I'm an attorney.  I'm currently now working

20   for a DNA testing company.  But I did work on the Hill for

21   17 years and was there up on the Hill on January 6th.  Of

22   course, I have tons of friends there, too.

23             THE COURT:  You said you were there on January 6?

24             PROSPECTIVE JUROR:  I was.  Yes.

25             THE COURT:  We'll talk about that in a little bit.
```

1          But just focusing on your legal experience right

2     now, any reason that you won't be able to apply the law as I

3     tell you rather than based on your own knowledge and

4     experience?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  And it doesn't sound like you have any

7     criminal law experience.  Is that correct?

8          PROSPECTIVE JUROR:  Well, I was chief counsel on

9     the House Judiciary Committee, so I advised Congress.  But

10    not a practitioner.

11         THE COURT:  Thank you.

12         PROSPECTIVE JUROR:  Good morning, your Honor,

13    Judge.  0407.

14         THE COURT:  Yes, sir.

15         PROSPECTIVE JUROR:  The past 30 years, I have been

16    a CJA panel attorney in this court, D.C. District Court, and

17    D.C. Superior.

18         THE COURT:  So you have a lot of criminal

19    experience.

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Would you be able to put that aside

22    and apply the law as I tell it to you and not as you know

23    it?

24         PROSPECTIVE JUROR:  Yes, I can.

25         THE COURT:  And any reason that you can't be fair

1    and impartial to both sides, putting aside your experience

2    from your clients and from working with prosecutors?  I'm

3    not quite sure which way that might cut.  But regardless,

4    can you put that aside and --

5              PROSPECTIVE JUROR:  I certainly can.

6              THE COURT:  Thank you, sir.

7              PROSPECTIVE JUROR:  0282.

8              THE COURT:  Yes, ma'am.

9              PROSPECTIVE JUROR:  I spent two summers working in

10   Georgetown Law School and two summers working for the D.C.

11   Bar Association.

12             THE COURT:  So you're not an attorney, but have

13   worked at these places?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  And the same question, ma'am:  Can you

16   put aside whatever you may have learned about the law from

17   those experiences and just apply the law as I tell it to

18   you?

19             PROSPECTIVE JUROR:  Yes, sir.

20             THE COURT:  Thank you, ma'am.

21             PROSPECTIVE JUROR:  Good morning.  0872.

22             THE COURT:  Yes, ma'am.

23             PROSPECTIVE JUROR:  Over the years, since 2011, I

24   have worked at several law firms, corporate law firms, in

25   Washington, D.C. in the accounting department.

 1                   THE COURT:  And can you -- do you believe you'll

 2      be able to apply the law as I tell you to and not from what

 3      you may have learned from your experience at those law

 4      firms?

 5                   PROSPECTIVE JUROR:  Yes.

 6                   THE COURT:  Thank you, ma'am.

 7                   PROSPECTIVE JUROR:  Good morning, your Honor.  I'm

 8      Juror No. 0643.  I'm a lawyer and my father's a lawyer and

 9      many of my friends are lawyers.

10                   THE COURT:  What do you do, ma'am?

11                   PROSPECTIVE JUROR:  I'm a sole proprietor on the

12      criminal justice panel in D.C. Superior Court.

13                   THE COURT:  So you obviously have plenty of

14      criminal experience.  I guess the same questions that I

15      asked the gentleman a couple moments ago:  Can you put aside

16      your knowledge of the law and apply the law as I tell it to

17      you only here in this court?

18                   PROSPECTIVE JUROR:  Yes, sir.

19                   THE COURT:  And any reason your experience and the

20      experiences of your family and friends might make you favor

21      one side or the other?

22                   PROSPECTIVE JUROR:  No, your Honor.

23                   THE COURT:  Thank you, ma'am.

24                   PROSPECTIVE JUROR:  Juror No. 0153.

25                   I'm an attorney in D.C., and my father's an

1    attorney and a lot of my close friends are also attorneys.

2            THE COURT:  What do you do, ma'am?

3            PROSPECTIVE JUROR:  I'm in private practice doing

4    privacy and cybersecurity compliance.

5            THE COURT:  And any criminal experience, ma'am?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  Is there anybody close to you that's a

8    criminal attorney?

9            PROSPECTIVE JUROR:  No.

10           THE COURT:  Can you apply the law as I tell it to

11   you and not as you know it?

12           PROSPECTIVE JUROR:  Yes, your Honor.

13           THE COURT:  Thank you, ma'am.

14           PROSPECTIVE JUROR:  0873.

15           THE COURT:  Yes, sir.

16           PROSPECTIVE JUROR:  I'm currently applying to take

17   the Bar and my grandfather is an attorney as well.

18           THE COURT:  Could you say the first part again?  I

19   had a hard time hearing you.

20           PROSPECTIVE JUROR:  I received my J.D. and am

21   currently under consideration for the Bar.

22           THE COURT:  And where did you say you practice

23   now?

24           PROSPECTIVE JUROR:  I'm under consideration for

25   the Bar right now.  So hopefully within the next few weeks

```
 1        I'll have an answer.
 2               THE COURT:  Congratulations.
 3               PROSPECTIVE JUROR:  Thank you.
 4               [Applause.]
 5               THE COURT:  You might get more applause here than
 6        you'll get when you actually pass the Bar.
 7               Sir, did you spend any time interning at a
 8        prosecutor's office or for a criminal defense attorney?
 9               PROSPECTIVE JUROR:  No.  Nothing criminal.
10               THE COURT:  So is there any reason you can't put
11        aside all that you've just learned?  I know your mind is
12        brimming with knowledge of the law.  But can you put that
13        aside and focus on the -- apply the law as I tell it to you?
14               PROSPECTIVE JUROR:  No reason.  No.
15               THE COURT:  Thank you, sir.
16               PROSPECTIVE JUROR:  0899.
17               I'm married to an attorney and have lots of
18        attorney friends.  But I think I can be impartial.
19               THE COURT:  Is your spouse a criminal attorney,
20        ma'am?
21               PROSPECTIVE JUROR:  No.
22               THE COURT:  Thank you.
23               We've got everybody on this side, it looks like.
24               PROSPECTIVE JUROR:  Good morning, Judge, again.
25               THE COURT:  Good morning, sir.
```

 1          PROSPECTIVE JUROR:  0590.  And I have worked for

 2     35 years as a patent prosecution specialist with several law

 3     firms.

 4          THE COURT:  And obviously, we talked a few moments

 5     ago about your experience as a court reporter.  Anything

 6     about your experience as a patent prosecutor that would make

 7     it difficult for you to be fair to both sides here?

 8          PROSPECTIVE JUROR:  No, your Honor.  Not at all.

 9          THE COURT:  Thank you, sir.

10          PROSPECTIVE JUROR:  Good morning.  I'm 1488.  And

11     my husband is an attorney at the Department of Justice.

12     Although I am not an attorney, I've worked at the Court of

13     Federal Claims for about 30 years and most of my friends are

14     judges and attorneys.

15          THE COURT:  What does your husband do at DOJ,

16     ma'am?

17          PROSPECTIVE JUROR:  He's in the environmental

18     division.

19          THE COURT:  Is he a criminal prosecutor?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  So, ma'am, anything from -- you don't

22     know me.  Correct?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Phew.  I didn't recognize you.  I

25     wanted to make sure.

1          Anything about either your experiences or your

2     husband's experiences that would make it difficult for you

3     to be fair and impartial to both sides?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Thank you.

6          PROSPECTIVE JUROR:  Good morning.  Good morning.

7     1528.

8          THE COURT:  Yes, sir.

9          PROSPECTIVE JUROR:  My husband is an attorney.  He

10    clerked for the county attorney in Louisville and worked for

11    HUD.

12          THE COURT:  Is the county attorney a criminal

13    prosecutor?

14          PROSPECTIVE JUROR:  It might be; but I don't

15    recall him talking about criminal cases.

16          THE COURT:  So anything -- any reason you can't

17    put aside what you've learned from him and just apply the

18    law as I tell you here in the courtroom?

19          PROSPECTIVE JUROR:  No.  No reason.

20          THE COURT:  Thank you, sir.

21          PROSPECTIVE JUROR:  Good morning, Judge.  Juror

22    No. 0967.  My wife is a corporate attorney at Hogan Lovells.

23          THE COURT:  And, sir, you said 0967?

24          PROSPECTIVE JUROR:  0967.  Yes.

25          THE COURT:  Thank you.

```
 1              PROSPECTIVE JUROR:  0176.

 2              THE COURT:  Yes, sir.

 3              PROSPECTIVE JUROR:  0176.

 4              THE COURT:  Yes, sir.

 5              PROSPECTIVE JUROR:  I have several close friends

 6    who are attorneys and I used to be in legal screening for a

 7    facility in California.

 8              THE COURT:  But you're not an attorney yourself;

 9    is that correct?

10              PROSPECTIVE JUROR:  Correct.

11              THE COURT:  And any reason that you can't be fair

12    and impartial to both sides, sir?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Can you put aside what you know and

15    what you've heard from your friends and just apply the law

16    as I tell it to you here?

17              PROSPECTIVE JUROR:  I can.

18              THE COURT:  Thank you, sir.

19              PROSPECTIVE JUROR:  0182.

20              THE COURT:  Yes, ma'am.

21              PROSPECTIVE JUROR:  I'm not an attorney, but I

22    have worked for two attorney nonprofits for the last 15

23    years.  One was constitutional and one that is on

24    environmental law.

25              THE COURT:  And any reason you can't put your
```

1    knowledge of the law that you've acquired from working at

2    those firms aside and just apply the law as I tell it to

3    you?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  Thank you.

6              PROSPECTIVE JUROR:  1200.

7              THE COURT:  Yes, sir.

8              PROSPECTIVE JUROR:  Yes.  I have one close friend

9    who's an attorney at the Department of Homeland Security.

10             THE COURT:  And I guess your friend wouldn't be a

11   prosecutor.  Do you know?

12             PROSPECTIVE JUROR:  I actually don't know what she

13   does.  I was wondering about that.

14             THE COURT:  That works well for our purposes.

15             So can you put aside whatever you may know from

16   your friend and just apply the law as I tell it to you?

17             PROSPECTIVE JUROR:  I can.

18             THE COURT:  Thank you.

19             PROSPECTIVE JUROR:  1339.

20             THE COURT:  Yes, sir.

21             PROSPECTIVE JUROR:  I'm a member of the D.C. Bar,

22   but I have never practiced criminal law.  And my wife is not

23   practicing.

24             THE COURT:  And any reason you can't put aside

25   what you know from the law and what you've heard from your

 1    wife and just apply the law as I tell it to you, sir?

 2              PROSPECTIVE JUROR:  Absolutely.

 3              THE COURT:  Thank you.

 4              PROSPECTIVE JUROR:  I'm Juror 1453.

 5              THE COURT:  Yes, ma'am.

 6              PROSPECTIVE JUROR:  My daughter is -- she's a

 7    lawyer here, counsel for the Department of Transportation.

 8              THE COURT:  Okay.  And has your daughter done

 9    criminal work, ma'am?

10              PROSPECTIVE JUROR:  No.

11              THE COURT:  Any reason that you can't put aside

12    what you've learned from her about the law and just apply

13    the law as I tell it to you here?

14              PROSPECTIVE JUROR:  I can do it.  Yes.  I can do

15    it.

16              THE COURT:  Thank you, ma'am.

17              PROSPECTIVE JUROR:  Hello.  1566.

18              I'm an attorney.  I work for the IRS, Office of

19    General Counsel.

20              THE COURT:  Do you have any criminal background,

21    sir?

22              PROSPECTIVE JUROR:  Just as a judicial intern for

23    the Southern District of California.

24              THE COURT:  And so any reason that you can't put

25    aside your experience and your knowledge of the law and just

1    apply the law as I tell it to you, sir?

2              PROSPECTIVE JUROR:  No.  Not at all.

3              THE COURT:  Thank you.

4              PROSPECTIVE JUROR:  1568.

5              THE COURT:  Yes, ma'am.

6              PROSPECTIVE JUROR:  I'm an attorney for the

7    Executive Branch.  I do not litigate and I don't do criminal

8    law.

9              THE COURT:  Do you want to approach or can you

10   tell me what --

11             PROSPECTIVE JUROR:  Please.  Yes.

12             THE COURT:  You may approach.

13             (Whereupon, the following proceedings were had at

14   sidebar outside the presence of the jury:)

15             PROSPECTIVE JUROR:  I work for the Office of the

16   Director of National Intelligence.

17             THE COURT:  And do you have any criminal

18   experience, ma'am?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  So is there any reason you can't be --

21   you can't put your knowledge of the law aside and apply the

22   law as I give it to you?

23             PROSPECTIVE JUROR:  No reason.

24             THE COURT:  Thank you, ma'am.

25             (Whereupon, the following proceedings were had in

```
1    open court:)

2              THE COURT:  I'm sure there are more hands.  We've

3    got to have more lawyers in this place.

4              PROSPECTIVE JUROR:  1171.  Good morning.

5              THE COURT:  Yes, sir.

6              PROSPECTIVE JUROR:  I'm an attorney in private

7    practice.  I work on ERISA, so no criminal background.

8              THE COURT:  And any reason you can't put aside

9    your knowledge of the law and just apply the law as I tell

10   it to you here?

11             PROSPECTIVE JUROR:  No.

12             THE COURT:  Okay.

13             PROSPECTIVE JUROR:  Good morning.  0616.

14             THE COURT:  Yes, sir.

15             PROSPECTIVE JUROR:  My mother is a retired

16   attorney.  No criminal law.

17             THE COURT:  And same question, sir.

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  You can apply the law as I tell it to

20   you?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Thank you.

23             PROSPECTIVE JUROR:  0835.

24             THE COURT:  Yes, sir.

25             PROSPECTIVE JUROR:  My father is a criminal
```

1  defense attorney who practices in state and federal court in

2  New York.

3          THE COURT:  Any reason you can't put what you've

4  learned from him aside and just apply the law as I tell it

5  to you?

6          PROSPECTIVE JUROR:  No, sir.

7          THE COURT:  And any reason that your father's

8  experience as a criminal defense attorney -- that that is

9  going to make you maybe believe Mr. Crisp or maybe, you

10  know, based on your father's experience you wouldn't believe

11  a word he says?  I don't know.  But is there any reason why

12  you would be biased towards one side or the other?

13          PROSPECTIVE JUROR:  I can be fair.

14          THE COURT:  Do you have doubts about that?

15          PROSPECTIVE JUROR:  A little bit.

16          THE COURT:  Could you approach, sir?

17          (Whereupon, the following proceedings were had at

18  sidebar outside the presence of the jury:)

19          THE COURT:  And you are Juror 0835?

20          PROSPECTIVE JUROR:  0835.

21          THE COURT:  Tell me about your concerns.

22          PROSPECTIVE JUROR:  Well, my dad talked about how

23  unfair the system could be.  Sometimes people who are less

24  advantaged, that sort of thing.  I don't know.  Also, you

25  know, I work with -- a lot of my friends are lawyers.  And

```
 1    so...
 2              THE COURT:  And so I guess your concern is the
 3    system may not be fair to the Defendant?
 4              PROSPECTIVE JUROR:  Sometimes.  Yes.
 5              THE COURT:  And is that because they don't get
 6    good representation?
 7              PROSPECTIVE JUROR:  Yes.
 8              THE COURT:  So did your father practice in federal
 9    court, you said?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  So let me ask the Government, do you
12    have any questions for this juror?
13              MS. SEIFERT:  Did your father ever complain about
14    the way in which he was treated by prosecutors or that
15    prosecutors had resources that outpaced those of defendants?
16              PROSPECTIVE JUROR:  Yes.
17              MS. SEIFERT:  Okay.  Both of those?
18              PROSPECTIVE JUROR:  More the second.
19              MS. SEIFERT:  That prosecutors had resources that
20    he didn't have?
21              PROSPECTIVE JUROR:  Yes.  Sometimes, you know, the
22    prosecutors overreached.
23              MS. SEIFERT:  No other questions.
24              MR. CRISP:  What didn't he have?  I didn't hear
25    that.
```

```
 1                THE COURT:  Resources.

 2                MR. CRISP:  No questions.

 3                MS. SEIFERT:  The juror said he was concerned that

 4      his father stated that the prosecutors would sometimes

 5      overreach.

 6                Is that accurate?

 7                PROSPECTIVE JUROR:  Yes.

 8                THE COURT:  Thank you, sir.

 9                PROSPECTIVE JUROR:  Thank you.

10                (Prospective Juror No. 0835 returns to his seat.)

11                THE COURT:  Do you want to make a motion?

12                MS. SEIFERT:  We would move to strike the juror

13      for cause.

14                MR. CRISP:  I wasn't sure whether we had -- are we

15      bringing the individuals back before we do that?

16                THE COURT:  So I try to -- when we do it up here,

17      let's try and deal with that all at once.

18                MR. CRISP:  Okay.  Can we call him back, then?

19                THE COURT:  Well, why don't you just -- so that's

20      your time to do the rehabilitation.  I'm not going to call

21      him up now.  But presumably we'll get back to him.

22                MR. CRISP:  Okay.

23                THE COURT:  If you want to do any rehab, you can.

24                And you can move to strike at that point.

25                MS. SEIFERT:  Thank you, your Honor.
```

```
 1                    (Whereupon, the following proceedings were had in

 2        open court:)

 3                    THE COURT:  The next juror?

 4                    PROSPECTIVE JUROR:  0310.

 5                    THE COURT:  Can you say that one more time?

 6                    PROSPECTIVE JUROR:  0310.

 7                    THE COURT:  Yes, sir.

 8                    PROSPECTIVE JUROR:  My fiancée graduated law

 9        school, doesn't practice.  She works for a national

10        organization.

11                    THE COURT:  So anything -- any reason you can't

12        put aside what you may have learned from your fiancée and

13        just apply the law as I tell it to you here?

14                    PROSPECTIVE JUROR:  No, your Honor.

15                    THE COURT:  Thank you.

16                    PROSPECTIVE JUROR:  I'm 0363.

17                    THE COURT:  Yes, sir.

18                    PROSPECTIVE JUROR:  I'm a corporate associate at

19        Gibson, Dunn & Crutcher.  My practice focus is on corporate

20        governance and securities litigation.

21                    THE COURT:  Any criminal experience, sir?

22                    PROSPECTIVE JUROR:  No, sir.

23                    THE COURT:  Any reason you can't put your

24        knowledge of the law aside and apply the law as I tell it to

25        you?
```

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Thank you.

3          PROSPECTIVE JUROR:  Good morning.  I'm Juror 1570.

4          THE COURT:  Yes, ma'am.

5          PROSPECTIVE JUROR:  I work for the legislative

6     branch of the government, which we work directly for

7     Congress.  And I work with mostly procurement attorneys.

8          THE COURT:  So you're not an attorney, but you

9     work with a lot of attorneys?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  And obviously, that's a civil area.

12    But any reason you can't put aside your knowledge of the law

13    that you've acquired from them and just apply the law as I

14    tell it to you?

15         PROSPECTIVE JUROR:  No, your Honor.

16         THE COURT:  Thank you.

17         PROSPECTIVE JUROR:  1348.

18         And I'm an attorney.  I currently work for an

19    association in the government affairs department.  Before

20    that, I worked in the House of Representatives for over six

21    years.

22         THE COURT:  And were you at the House -- when did

23    you leave the House, ma'am?

24         PROSPECTIVE JUROR:  In 2008.

25         THE COURT:  No criminal experience, it sounds

```
1    like?
2              PROSPECTIVE JUROR:  No.
3              THE COURT:  Any reason you can't apply the law as
4    I tell it to you and put aside your own knowledge of the
5    law?
6              PROSPECTIVE JUROR:  No.
7              THE COURT:  Thank you.
8              If you could just pass the microphone down to your
9    right there.
10             PROSPECTIVE JUROR:  Good morning.  No. 1536.
11             THE COURT:  Yes, ma'am.
12             PROSPECTIVE JUROR:  My husband and sister are both
13   attorneys.  My husband is an intellectual property attorney
14   with a private firm here in D.C.  My sister is a public
15   defense attorney in Atlanta, Georgia.
16             THE COURT:  And so first, any reason you can't put
17   aside your knowledge of the law based on what you've heard
18   from family members and just apply the law as I tell it to
19   you?
20             PROSPECTIVE JUROR:  No, sir.
21             THE COURT:  Secondly, obviously, given that you've
22   got a relative who's a defense attorney, is that going to
23   influence you one way or the other in this case, do you
24   think?
25             PROSPECTIVE JUROR:  No.  I don't think so.
```

 1                   THE COURT:  Thank you, ma'am.

 2                   PROSPECTIVE JUROR:  Hi.  Good morning.  I'm Juror

 3       0551.

 4                   THE COURT:  Yes, ma'am.

 5                   PROSPECTIVE JUROR:  In addition to having friends

 6       who are attorneys, all civil division stuff, I'm not an

 7       attorney, but I am a research historian for a civil

 8       litigation firm.  We do consulting for the Department of

 9       Justice.

10                   THE COURT:  Is that primarily civil work?

11                   PROSPECTIVE JUROR:  All civil.  Yeah.  No criminal

12       work.

13                   THE COURT:  So any reason you can't apply the law

14       as I tell it to you and put aside anything you may know from

15       your work or your friends?

16                   PROSPECTIVE JUROR:  No.

17                   THE COURT:  Thank you.

18                   PROSPECTIVE JUROR:  1395.

19                   THE COURT:  Can you say that one more time, ma'am?

20                   PROSPECTIVE JUROR:  Sure.  1395.

21                   THE COURT:  Yes, ma'am.

22                   PROSPECTIVE JUROR:  My husband is a health

23       regulatory attorney here in D.C.  No criminal background.

24       And I am not an attorney, but I am a former Senate

25       leadership staffer.

1          THE COURT:  When did you leave the Senate, ma'am?

2          PROSPECTIVE JUROR:  In 2008.

3          THE COURT:  Any reason you can't put aside what

4     you know of the law from your husband and just apply the law

5     as I tell it to you?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Thank you, ma'am.

8          Anybody else?  We've got everyone.  That tends to

9     be the longest question, just so you all know.

10         Do you have any difficulty reading, speaking or

11    understanding English?  Do you have any difficulty reading,

12    speaking or understanding English?

13         Do you live or work in or near the U.S. Capitol?

14    And so before I get your hands, A, if you've already told

15    me, don't just raise your hand to tell me something you've

16    already told me.  And, B, I don't want to put like a

17    specific radius from the Capitol.  Obviously, we all in one

18    sense or another live or work near the Capitol.  But I mean

19    such that you are, you know, walking by it on a regular

20    basis or it feels like something that you are seeing on a

21    daily or at least weekly basis.  So do you live or work in

22    or near the U.S. Capitol?

23         PROSPECTIVE JUROR:  Good morning, your Honor.

24    0653.

25         THE COURT:  Yes, sir.

 1          PROSPECTIVE JUROR:  I live on Capitol Hill.
 2   Normally, I walk our dog past the Capitol or on the grounds
 3   on an almost daily basis.  And I walked by it on the morning
 4   of January 6th.
 5          THE COURT:  What time, approximately, did you go
 6   by on January 6th, do you think?
 7          PROSPECTIVE JUROR:  Probably 9:00 or 10:00 in the
 8   morning.
 9          THE COURT:  So I think the events we'll be talking
10   about happened later in the day.  I mean, you know things
11   can be very fluid.  The important thing is that I want you
12   to apply the facts as you hear here and not kind of say,
13   Well, actually, I remember kind of differently.  Can you do
14   that, sir?  Can you apply the facts only as you hear them
15   here in the courtroom?
16          PROSPECTIVE JUROR:  Yes, I can.
17          THE COURT:  Thank you.
18          PROSPECTIVE JUROR:  Juror 0795.
19          THE COURT:  Yes, ma'am.
20          PROSPECTIVE JUROR:  I live on Capitol Hill.
21          THE COURT:  Thank you.
22          PROSPECTIVE JUROR:  Juror 1094.
23          THE COURT:  Yes, ma'am.
24          PROSPECTIVE JUROR:  I work for the Smithsonian.
25   My children go to school at the Smithsonian as well in the

```
1     child center.
2               THE COURT:  Thank you.
3               PROSPECTIVE JUROR:  1129.  And I live about four
4     blocks from the Capitol.  My wife works in the Capitol.
5               THE COURT:  Your wife actually works at the
6     Capitol?
7               PROSPECTIVE JUROR:  She does.
8               THE COURT:  What does your wife do?
9               PROSPECTIVE JUROR:  She works for the House Rules
10    Committee.
11              THE COURT:  Was she there on January 6, sir?
12              PROSPECTIVE JUROR:  She was not.  She was working
13    remotely.
14              THE COURT:  Okay.
15              PROSPECTIVE JUROR:  Good morning, your Honor.
16    1014.
17              THE COURT:  Good morning, sir.
18              PROSPECTIVE JUROR:  I work at the
19    Federal Judiciary Building, the Thurgood Marshall Federal
20    Judiciary Building.
21              THE COURT:  Okay.  Were you there on January 6th,
22    sir?
23              PROSPECTIVE JUROR:  I was not.
24              THE COURT:  Good.  You weren't supposed to be.  I
25    think we were all shut down.
```

1          The middle section here.  Any hands?

2          MR. CRISP:  Your Honor, may we approach briefly?

3          THE COURT:  Yes.

4          Give me just a second, folks.

5          If the attorneys could approach.

6          (Whereupon, the following proceedings were had at

7    sidebar outside the presence of the jury:)

8          MR. CRISP:  My concern is what you just said:

9    "Good.  You weren't supposed to be," I don't know how that

10   would be interpreted by members of the jury, because

11   obviously my client was there.  And that's part of the

12   issue.

13         THE COURT:  No.  He said the Judiciary Building,

14   our building.

15         MR. CRISP:  I thought that you were asking about

16   the Capitol.

17         THE COURT:  No.

18         MR. CRISP:  It wasn't directed towards the

19   building at the Capitol?

20         THE COURT:  No.  He said he works at the Judiciary

21   Building.

22         MR. CRISP:  He did.

23         MS. SEIFERT:  I believe that the Court said down

24   there because of COVID everyone was working remotely from

25   the judiciary.  I believe the Court was making a joke.

```
 1                    MR. CRISP:  I appreciate the clarification.

 2                    (Whereupon, the following proceedings were had in

 3          open court:)

 4                    PROSPECTIVE JUROR:  Juror 1272.

 5                    THE COURT:  Yes, ma'am.

 6                    PROSPECTIVE JUROR:  I work downtown in that area

 7          and I also pass Capitol Hill, the Smithsonian.  I pass all

 8          of that every day.

 9                    THE COURT:  Were you there on January 6, ma'am?

10                    PROSPECTIVE JUROR:  Yes.

11                    THE COURT:  About what time?

12                    PROSPECTIVE JUROR:  All day, from 8:00 a.m. until

13          5:00.

14                    THE COURT:  So I guess the same question that I

15          asked a few moments ago to someone:  Can you apply the facts

16          and the law based on what you hear in the courtroom and not

17          kind of second-guess based on what you might remember?

18                    PROSPECTIVE JUROR:  Yes.

19                    THE COURT:  Thank you.

20                    PROSPECTIVE JUROR:  0616.

21                    THE COURT:  Yes, sir.

22                    PROSPECTIVE JUROR:  I work for the Library of

23          Congress.  But I wasn't there on the 6th.

24                    THE COURT:  Thank you.

25                    PROSPECTIVE JUROR:  0499.
```

1          THE COURT:  Yes, ma'am.

2          PROSPECTIVE JUROR:  I work at the Library of

3     Congress.  But on the 6th I was on detail at the Rayburn

4     Health Unit, and I wasn't present that day.

5          THE COURT:  You were at the Rayburn House Office

6     Building, ma'am?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Did you go over to the main Capitol

9     Building at all on that day?

10          PROSPECTIVE JUROR:  I did, but we were on

11     lockdown.

12          THE COURT:  And so the same question I've asked a

13     few other folks:  Can you evaluate the law and the facts

14     based on what you hear in the courtroom and not based on

15     what you may recall of what happened that day?

16          PROSPECTIVE JUROR:  I do not know if I can.

17          THE COURT:  Could you approach, ma'am?

18          (Whereupon, the following proceedings were had at

19     sidebar outside the presence of the jury:)

20          THE COURT:  So you have some concerns about your

21     ability to --

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Can you tell me about that?

24          PROSPECTIVE JUROR:  Just being present that day,

25     it's still very real to me.  And also I saw -- since we were

1    at the health unit, the police were brought in with

2    injuries.  It would be difficult for me to be fair, given

3    that -- what happened.

4              THE COURT:  Any questions from the Government?

5              MS. SEIFERT:  No, your Honor.

6              THE COURT:  Any questions from the defense?

7              MR. CRISP:  No, your Honor.

8              THE COURT:  You may have a seat, ma'am.  Thank

9    you.

10             (Prospective Juror No. 0499 returns to her seat.)

11             THE COURT:  Is there a motion?

12             MR. CRISP:  For cause, your Honor.

13             MS. SEIFERT:  No objection.

14             THE COURT:  Without objection, I'll strike her.  I

15   think I'm not going to excuse her right now.  But she is

16   stricken.

17             Thank you, folks.

18             MR. CRISP:  That was what number?

19             THE COURT:  0499.

20             MR. CRISP:  Thank you.  I lost my place there.

21             (Whereupon, the following proceedings were had in

22   open court:)

23             THE COURT:  Next?

24             PROSPECTIVE JUROR:  0182.

25             And my husband works at the Capitol for Congress.

```
 1                    THE COURT:  Hold on just a moment.

 2                    You said your husband works at the Capitol?

 3                    PROSPECTIVE JUROR:  Yes.

 4                    THE COURT:  And what does he do at the Capitol,

 5      ma'am?

 6                    PROSPECTIVE JUROR:  He works for Senator Schumer.

 7                    THE COURT:  And was your husband there on January

 8      6th?

 9                    PROSPECTIVE JUROR:  No.  He was working from home.

10                    THE COURT:  Thank you, ma'am.

11                    PROSPECTIVE JUROR:  1200.

12                    THE COURT:  Yes, sir.

13                    PROSPECTIVE JUROR:  I live on Capitol Hill.

14                    THE COURT:  Did you pass by or anything on January

15      6th?

16                    PROSPECTIVE JUROR:  No.  I was working from home

17      all that day.

18                    THE COURT:  Thank you.

19                    PROSPECTIVE JUROR:  1395.

20                    THE COURT:  Yes, ma'am.

21                    PROSPECTIVE JUROR:  I live on Capitol Hill.

22                    THE COURT:  Were you there on January 6th?

23                    PROSPECTIVE JUROR:  I was on Capitol Hill.  I was

24      at my home.  Yes.

25                    THE COURT:  Can you put aside what you knew or saw
```

1      or heard from January 6th and apply -- just kind of apply

2      the facts that you hear here in the courtroom?

3                      PROSPECTIVE JUROR:  Yes.

4                      THE COURT:  Thank you.

5                      PROSPECTIVE JUROR:  Juror 0835.

6                      I also was on Capitol Hill.  I live about 12

7      blocks from there.  And I interned for the House of

8      Representatives in 2007.

9                      THE COURT:  And I guess the same question about

10     kind of living on Capitol Hill:  You might have seen things

11     or not seen things.  But can you apply the facts based on

12     what you hear in the courtroom and not what you might have

13     heard or seen yourself?

14                     PROSPECTIVE JUROR:  Yes.

15                     THE COURT:  Thank you.

16                     PROSPECTIVE JUROR:  Juror No. 1570.

17                     I live on Capitol Hill.  And I work near the

18     Capitol, but I was at home working from home that day.

19                     THE COURT:  And the same question, ma'am:  Can you

20     kind of apply the facts as you hear them in the courtroom

21     and not based on what you remember?

22                     PROSPECTIVE JUROR:  Yes.

23                     THE COURT:  Thank you.

24                     PROSPECTIVE JUROR:  1348.  My office is a few

25     blocks from the Capitol.  I was working from home on January

```
1    6th.
2              THE COURT:  Thank you, ma'am.
3              PROSPECTIVE JUROR:  0195.  And I live on Capitol
4    Hill.
5              THE COURT:  Were you there on January 6th?
6              PROSPECTIVE JUROR:  Working from home.
7              THE COURT:  Can you apply the facts that you hear
8    in the courtroom and not based on what you saw or heard?
9              PROSPECTIVE JUROR:  Yes, your Honor.
10             THE COURT:  Thank you.
11             Anybody else for that question?  Lives or works
12   near Capitol Hill?
13             I'll be instructing the jury at the end of the
14   trial that the testimony of a police officer should be
15   treated the same as the testimony of any other witness and
16   that the jury should not give either greater or lesser
17   weight to the testimony of a witness simply because that
18   witness is a police officer.
19             Would the fact that a witness is a police officer
20   or a law enforcement agent have any effect at all on whether
21   or not you believe that person's testimony?  In other words,
22   would the fact that a witness is a police officer or a law
23   enforcement agent either make you more or less likely to
24   believe his or her testimony?
25             If your answer is yes, please raise your hand.
```

```
 1              PROSPECTIVE JUROR:  1412.

 2              I mean, with the low bar of any impact, I think,

 3     yes.  It would have an impact.  But my impression from

 4     working with law enforcement, I think it's something I can

 5     manage.

 6              THE COURT:  And I think we talked about this, sir.

 7     Obviously, you've got relatives who are police officers.

 8     I'm a former police officer.  I can tell you that there are

 9     good cops and bad cops, and I'm sure you know that as well.

10              Is there any reason you can't evaluate the

11     evidence based on what you observe from the witness and if

12     this person seems like a credible person, believe him; and

13     if you're kind of finding that the person doesn't seem

14     credible, doesn't remember things, whatever, decide, Well,

15     this is not somebody that I can trust?

16              PROSPECTIVE JUROR:  Yes.  I think I can do that.

17     Yes.

18              THE COURT:  Any other hands for that question?

19              Yes, ma'am.

20              PROSPECTIVE JUROR:  May I approach?

21              THE COURT:  Yes.  You may approach.

22              (Whereupon, the following proceedings were had at

23     sidebar outside the presence of the jury:)

24              PROSPECTIVE JUROR:  0872.

25              MS. SEIFERT:  Sorry?
```

```
 1                 PROSPECTIVE JUROR:  0872.
 2                 THE COURT:  Yes, ma'am.
 3                 PROSPECTIVE JUROR:  I'm not sure if this is
 4       important, but my younger brother currently has a case in
 5       the AG's office, a case pending against MPD, against MPD for
 6       police brutality.  So I'm not sure if that is going to
 7       affect the fairness.
 8                 THE COURT:  Thank you for raising that.  I think
 9       that probably would be relevant at least to one of my
10       subsequent questions, if not this one.
11                 So it sounds like we will be hearing from
12       Metropolitan Police officers; is that right?
13                 MS. SEIFERT:  No.  No Metropolitan Police
14       officers.
15                 THE COURT:  So you will be hearing from different
16       police officers, from different departments, not even from
17       the Metropolitan Police Department.
18                 PROSPECTIVE JUROR:  Okay.
19                 THE COURT:  Do you think that you can put his
20       experiences aside and weigh the testimony of these officers
21       from a different department based on how you observe them
22       and their demeanor and how they strike you and not kind of
23       be thinking about what your brother's experiences are?
24                 PROSPECTIVE JUROR:  I'm not sure, because it's not
25       just his experience.  It's just over the years, you know,
```

1     listening to the media and the different cases, Americans

2     saying police brutality.  So I'm not sure that's going to,

3     you know, have any fairness or bias against this case.

4                THE COURT:  Do you have any questions?

5                MR. CRISP:  No, I do not.

6                THE COURT:  Any questions?

7                MS. SEIFERT:  No, your Honor.

8                THE COURT:  Thank you, ma'am.  You may step away.

9                (Prospective Juror No. 0872 returns to her seat.)

10               MS. SEIFERT:  Your Honor, we would move to strike

11    the juror for cause.

12               THE COURT:  Mr. Crisp?

13               MR. CRISP:  I have no response, Judge.

14               THE COURT:  Without objection, I'll be striking

15    Juror 0872.

16               MR. CRISP:  872, right?

17               THE COURT:  Yes.

18               MR. CRISP:  Thank you.

19               MS. SEIFERT:  Thank you, your Honor.

20               (Whereupon, the following proceedings were had in

21    open court:)

22               THE COURT:  Any other yes's for that question?

23               No. 9:  If you are selected as a juror in this

24    case, I will instruct you to avoid all media coverage,

25    including radio, television, podcasts and social media, and

1    not to use the Internet with regard to this case for any

2    purpose.  That is, you'll be forbidden from reading

3    newspaper articles about this case, listening to radio and

4    podcast stories about this case, watching TV news about this

5    case, Googling this case, blogging or tweeting about this

6    case or reading or posting comments about this case on any

7    social media sites.

8            Do you have any reservations or concerns about

9    your willingness or ability to follow this instruction?  If

10    so, please raise your hand.

11            Jurors are the sole judges of the facts.  However,

12    the jury must follow the principles of law as instructed by

13    the judge.  The jury may not follow some rules of law and

14    ignore others.  Even if the jury disagrees or dislikes the

15    rules of law or does not understand the reasons for some of

16    the rules, it is their duty to follow them.

17            Do you have any personal beliefs that would make

18    it difficult to follow the Court's legal instructions,

19    whatever they may be?  Any personal beliefs that you think

20    would make it difficult for you to follow my instructions on

21    the law?

22            Now I'll ask you to get out those note cards and

23    pencils or pens.  If you can put your juror number at the

24    top of the card.  For these next questions, if your answer

25    is "yes," just write down the number of the question.  You

1    don't need to write down your answer.  Just write down the

2    number of the question if your answer is "yes," and we will

3    talk together about those questions in a moment.

4         I should say, once I've finished asking all the

5    questions, I'll ask you all to go back and take your seats

6    in the hallway and then I'll have you come in and speak with

7    the attorneys and me one at a time.

8         Let me tell you now, while the other jurors will

9    be out of the room, there will still be members of the

10   public who can have access to the courtroom.  If the answer

11   to the question was something that's kind of personal and

12   that you don't feel comfortable answering in front of

13   everyone else, I'll ask you to let me know and I'll have you

14   come up here and answer that question with the husher, as we

15   just did.

16        So you'll have that opportunity in a moment.  But

17   I just wanted to tell you all now so you know if there is

18   something private that you don't feel comfortable answering

19   in front of other people, just let me know when it comes

20   time for me to speak to you.

21        Question 11:  Have you had any unpleasant

22   experiences with the police or a prosecutor or other law

23   enforcement, whether here in D.C. or elsewhere, or have you

24   had any unpleasant experiences with a defense attorney or

25   defense investigator, whether here in D.C. or elsewhere,

1    that would make it difficult for you to be a fair juror in

2    this trial?

3            I should say, if it's something you've already

4    told me, you don't need to tell me again.  That applies for

5    any of these questions.  But if there's something new that

6    is responsive to that question that we haven't already

7    discussed, please write down No. 11.

8            No. 12:  Have you had an experience as a member of

9    a grand jury or as a juror in a previous trial that would

10   affect your ability to be a fair juror in this trial?  In

11   other words, I know most of you are long-term D.C.

12   residents.  I'm sure you've been on a jury before.  My

13   question, though, is:  Would your experience as a grand

14   juror or as a juror in a trial affect your ability to be a

15   fair juror in this case in any way?  If so, please write

16   down No. 12.

17           No. 13:  Have you, members of your immediate

18   family or close personal friends ever been arrested for,

19   convicted of or charged with a crime or been a victim of or

20   witness to a crime?  So there was a lot going on there.

21   I'll ask you again.

22           Have you, members of your immediate family or

23   close personal friends ever been arrested for, convicted of

24   or charged with a crime or been a victim of or witness to a

25   crime?  If so, please write down 13.

1            No. 14:  Do you or someone close to you have any

2    personal or professional connection to the events at the

3    U.S. Capitol on January 6th, 2021?  Obviously, we're all

4    aware of it.  Probably most of us feel, you know, some

5    feelings towards it.  But do you or someone close to you

6    have any personal or professional connection to the events

7    at the U.S. Capitol on January 6th, 2021?

8            Have you ever watched a video of what happened at

9    the U.S. Capitol on January 6, 2021, on the news or on the

10   Internet?  So again, that's asking about whether you've

11   watched videos.  I'm sure many, if not most, of us have seen

12   articles.  But have you looked at videos from the U.S.

13   Capitol on January 6th, 2021?  If so, please write down No.

14   15.

15            PROSPECTIVE JUROR:  What question?

16            THE COURT:  15.  Sorry about that.

17            No. 16:  Will you have difficulty putting aside

18   what you have heard or seen about events at the U.S. Capitol

19   on January 6th, 2021, and your opinions about those events

20   to decide this case in a fair and impartial manner based

21   only on the evidence you receive in court?  I'll ask that

22   again.  That's Question 16.

23            Will you have difficulty putting aside what you

24   have heard or seen about events at the U.S. Capitol on

25   January 6th, 2021, and your opinions about those events to

1    decide this case in a fair and impartial manner based only

2    on the evidence you receive in this case?  If you think you

3    would have difficulty putting aside those feelings or

4    opinions, please write down 16.

5              17:  Do you think that everyone who entered the

6    Capitol on January 6th, 2021, knew that the Electoral

7    College count was occurring in the building on that day?  If

8    you are unaware that the count was occurring then, you

9    should answer "no."  So if you are unaware of it, don't

10   write down 17.  But if you do think that everyone who

11   entered the Capitol on January 6th, 2021, knew that the

12   Electoral College count was occurring in the building on

13   that day, please write down 17.

14             This next question is my hardship question.  I

15   will say, this is frankly going to be one of the shorter

16   jury trials that you will see in a federal case.  We're

17   expecting to get started with the trial today.  I think the

18   case will be to the jury by Thursday.  You would probably

19   begin deliberating either Thursday or possibly Friday; and

20   obviously, deliberations take as long as -- I mean, that's

21   up to the jury.  I can't say.  But realistically, we're

22   talking about this week and possibly into early next week.

23             We will start no earlier than 9:00 and no later

24   than 10:00 each morning, and we will wrap up between 4:30

25   and 5:30.  No later than 5:30 each day.

1        So those are kind of the parameters we're talking

2    about.

3        So given those parameters, given that this is

4    frankly on the shorter end of federal jury trials and given

5    that frankly it's the responsibility for all of us as

6    citizens of this country to participate in jury service, if

7    you believe that jury service in this case would be an

8    extreme hardship to you, please write down No. 18.

9        Do you have a health or physical problem that

10   would make it difficult for you to serve on this jury?  If

11   so, please write down No. 19.  Do you have a health or

12   physical problem that would make it difficult for you to

13   serve on this jury?  Please write down No. 19.

14        No. 20:  Is there any other reason that would make

15   it difficult for you to sit as a juror in this case?

16   Perhaps you have a religious, moral or philosophical reason

17   that you believe would make it hard for you to be fair.  In

18   sum, is there some other reason that would make it difficult

19   for you to sit as a fair, impartial and attentive juror in

20   this particular case?  If so, write down 20.

21        It's just about noon.  Actually, can I have the

22   attorneys approach for just a minute?  Why don't we talk

23   about the schedule.

24        (Whereupon, the following proceedings were had at

25   sidebar outside the presence of the jury:)

1          THE COURT:  I guess I was inclined to get started,

2     but do you need to use the restroom?

3          MR. CRISP:  I do, actually, Judge.

4          THE COURT:  So we can do that while we're getting

5     people seated.  But you all could just take a lunch break

6     now and we'll resume at 1:00.  We could do that instead.  Do

7     you have any strong feelings on that?

8          MS. SEIFERT:  I don't think it matters either way,

9     your Honor.  I would suggest maybe calling the first 20 back

10    after lunch and then the next 20 an hour later.  However

11    your Honor wants to do it.  We can start with them before

12    lunch, if your Honor wants to take five or ten before lunch.

13         MR. CRISP:  It is -- I have no feelings one way or

14    the other.

15         THE COURT:  So let's get started on that.  I'll

16    dismiss them and we'll take a few minutes and then get

17    started.  If you wanted to run out or if anyone else needs

18    to go out, that's fine, before we start with the first

19    juror.

20         MR. CRISP:  Okay.

21         THE COURT:  Thank you.

22         (Whereupon, the following proceedings were had in

23    open court:)

24         THE COURT:  Folks, we're going to move to our next

25    phase here.  I'm going to ask everybody to sit out in the

1   hallway in just a moment.   I think you can go out and sit

2   in any order.   But then just listen for Ms. Chaclan, the

3   courtroom deputy, who will be asking you all to come in one

4   at a time.

5           So for folks on this side, your left, my right,

6   we're going to be starting with you all.   So stay close.

7           For you all in the middle, honestly we're not

8   going to get to you until lunch.   So feel free to go to

9   lunch and come back by 1:30.   Once I've spoken with you,

10  please feel free -- for you all on the far side, feel free

11  to go to lunch and just come back by 1:30.

12          Please don't -- obviously, you know little to

13  nothing about the case right now.   But you certainly should

14  not be going telling people about the case, let alone doing

15  research about it.   Just kind of feel free to read a book.

16  You can enjoy some quiet.   But I'm going to ask you all to

17  move out to the hall.

18          And for those to my right, please make sure to

19  stick around.

20          You all in the center, please feel free to go to

21  lunch.   Just be back by 1:30.   Bring your index cards with

22  you.

23          (Whereupon, the prospective jury panel exited the

24  courtroom at 12:00 p.m. and the following proceedings were

25  had:)

1          THE COURT:  I think, counsel, Juror 1524

2     apparently has a child's doctor's appointment at 2:30.  For

3     some reason, she decided to come today.  So we're going to

4     take her out of order and begin with her.

5          Ms. Crisp, how about if you use the podium there?

6          Ms. Seifert, Ms. Fifield, we'll give you the

7     handheld microphone.  You can ask any followups with that

8     microphone.

9          Mr. Crisp, you can use the podium.

10          THE COURTROOM DEPUTY:  If there's a private

11    question, should they use the intercoms?

12          THE COURT:  We'll just have them come up here.

13          So we'll go to 1524 first.

14          (Thereupon, Prospective Juror No. 1524 entered the

15    courtroom and the following proceedings were had:)

16          THE COURT:  Ma'am, if you could come to the podium

17    there.

18          Do I understand you have a doctor's appointment?

19          PROSPECTIVE JUROR:  Right.  My son has a

20    psychiatrist appointment this afternoon at 2:30 in Potomac.

21          THE COURT:  So why did you come today?

22          PROSPECTIVE JUROR:  I was told to be here at 8:00.

23          THE COURT:  But don't you have -- can't you call

24    in and say you've got a doctor's appointment?

25          PROSPECTIVE JUROR:  They didn't -- it doesn't

```
 1    allow for that.  It's an automated system.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR:  There is no way to give an

 4    answer.

 5              THE COURT:  Is that going to be all afternoon?

 6              PROSPECTIVE JUROR:  His appointment?

 7              THE COURT:  Yes.

 8              PROSPECTIVE JUROR:  It starts at 2:30.  Probably

 9    30 minutes.

10              THE COURT:  30 minutes?

11              PROSPECTIVE JUROR:  It's a medication management

12    appointment.

13              THE COURT:  When could you realistically be back

14    here?

15              PROSPECTIVE JUROR:  It's in Potomac.  So if he's

16    done at 3:00, if there's no traffic, I could be here

17    probably at 4:30, if I take the Metro.

18              THE COURT:  Any objection, Ms. Seifert?

19              MS. SEIFERT:  No, your Honor.

20              THE COURT:  And Mr. Crisp?

21              MR. CRISP:  No, your Honor.

22              THE COURT:  So, ma'am, I'm going to excuse you and

23    just ask you to -- we'll put you back on the wheel.  But

24    you're excused to go home.

25              PROSPECTIVE JUROR:  Okay.  So don't go back to the
```

1    jury office?

2              THE COURT:  You don't need to go back to the jury

3    office.

4              MR. CRISP:  What was the juror number?

5              THE COURT:  1524.

6              MR. CRISP:  Thank you.

7              (Thereupon, Prospective Juror No. 1524 retired

8    from the courtroom and the following proceedings were had:)

9              THE COURT:  Michelle, can you excuse 0872?  She's

10   one of the first.

11             THE COURTROOM DEPUTY:  Okay.

12             THE COURT:  Thanks.

13             (Thereupon, Prospective Juror No. 0795 entered the

14   courtroom and the following proceedings were had:)

15             THE COURT:  This is Juror 0795, and she's answered

16   yes to 13 and 15.

17             13 is if you or someone close to you has been a

18   victim of, witness to or arrested for or charged with a

19   crime.  Can you tell me about that, what am?

20             PROSPECTIVE JUROR:  I have a mother and a sister

21   who have both been mugged at gunpoint.

22             THE COURT:  I'm sorry to hear that, ma'am.

23             Was that here in D.C.?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  It was?

```
 1                  PROSPECTIVE JUROR:  Correct.

 2                  THE COURT:  Is there anything about that

 3      experience that has given you a real favoritism towards

 4      police for how they helped you or frustration with the

 5      police because of how they handled that or anything else

 6      that you think would affect your ability to be fair to both

 7      sides here?

 8                  PROSPECTIVE JUROR:  No.  Both incidents were

 9      several years ago.

10                  THE COURT:  And on 15, you said that you've

11      watched video of January 6.  About how many times would you

12      say you've watched video or how many videos have you watched

13      of the January 6 incident?

14                  PROSPECTIVE JUROR:  Less than ten.  I watched some

15      realtime video from my office while it was going on and I

16      saw a couple of things afterwards.

17                  THE COURT:  And you don't recognize the Defendant,

18      I take it?

19                  PROSPECTIVE JUROR:  No.

20                  THE COURT:  Do you think you can put aside what

21      you've seen and read about January 6th and just take the

22      evidence that you hear in court as what is true and what the

23      Defendant should be evaluated on?

24                  PROSPECTIVE JUROR:  I do.

25                  THE COURT:  Is there anything about your knowledge
```

1    of January 6th that will make it be difficult for you to be

2    fair and impartial to both sides here?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  All right.  Any followup from the

5    Government?

6              MS. SEIFERT:  No, your Honor.

7              THE COURT:  Any from the defense?

8              MR. CRISP:  No, your Honor.

9              THE COURT:  Thank you, ma'am.  Feel free to go to

10   lunch.

11             If you can just hang out there, Mr. Crisp.

12             (Thereupon, Prospective Juror No. 0795 retired

13   from the courtroom and the following proceedings were had:)

14             (Thereupon, Prospective Juror No. 0206 entered the

15   courtroom and the following proceedings were had:)

16             THE COURT:  This is Juror 0206.  He's answered yes

17   to 14 and 15.

18             14 is if you or someone close to you has

19   professional or personal connections to the events of

20   January 6th.  Can you tell me about that, sir?

21             PROSPECTIVE JUROR:  I was employed by the House of

22   Representatives on January 6th.  I was teleworking that day,

23   though.

24             THE COURT:  And remind me:  What do you do for the

25   House, sir?

1                PROSPECTIVE JUROR:  I was a staffer in a personal

2      office to a member.

3                THE COURT:  So I'm sure you've talked with your

4      boss and your colleagues about that.  Do you think you can

5      put aside what you've heard and, I'm sure, personal feelings

6      about that and evaluate Mr. Hale-Cusanelli based on the

7      evidence you hear in court, recognizing the question is not

8      whether January 6th was a good thing or a bad thing, but did

9      Mr. Hale-Cusanelli do the things that the Government says he

10     did here?

11               PROSPECTIVE JUROR:  Yes.

12               THE COURT:  And then 15 is you watched video of

13     January 6.  About how many times would you say you've

14     watched video?

15               PROSPECTIVE JUROR:  When it was on the news, you

16     know, in the months following January 6th, it was on a lot.

17     So it would be hard to estimate a number, but dozens of

18     times.

19               THE COURT:  And I guess a similar question:  Can

20     you evaluate Mr. Hale-Cusanelli based on the evidence that

21     is adduced here at trial and not based on your knowledge?

22               PROSPECTIVE JUROR:  Yes.

23               THE COURT:  Thank you, sir.  Actually, hold on.

24               Does the Government have any followup questions?

25               MS. SEIFERT:  No, your Honor.

1          THE COURT:  Mr. Crisp?

2          MR. CRISP:  I do, your Honor.

3          Sir, how many conversations would you estimate

4     you've had with colleagues about what happened on the 6th?

5          PROSPECTIVE JUROR:  Dozens, at least.

6          MR. CRISP:  Did you have sort of a response,

7     emotional or otherwise, while watching what was going on?

8          PROSPECTIVE JUROR:  Yes.

9          MR. CRISP:  How would you describe that response?

10         PROSPECTIVE JUROR:  Distressing.

11         MR. CRISP:  You said distressing?

12         PROSPECTIVE JUROR:  Yeah.

13         MR. CRISP:  Fair to say that it's something that

14    still concerns you?

15         PROSPECTIVE JUROR:  Yes.

16         MR. CRISP:  And it's something you feel an

17    emotional response to as you look back on it?

18         PROSPECTIVE JUROR:  In some aspects, yes.

19         MR. CRISP:  Do you think watching videos of it and

20    reliving that, shall we say, is going to be emotionally

21    stressful?

22         PROSPECTIVE JUROR:  Manageable, I'd say.

23         MR. CRISP:  And do you think it's possible that

24    it'll have the ability to color your perspective on the

25    arguments that may be made?

1            PROSPECTIVE JUROR:  No.  I think I can view it

2      objectively.

3            MR. CRISP:  Thank you.  No further questions,

4      Judge.

5            THE COURT:  Any followup?

6            MS. SEIFERT:  I'm sorry.  I have a little hard

7      time hearing.  Did you say despite the questions of defense

8      counsel, you think you can still put aside those concerns

9      and look at the evidence objectively?

10            PROSPECTIVE JUROR:  Yes.

11            MS. SEIFERT:  Thank you so much.

12            THE COURT:  All right, sir.  Thank you.  Feel free

13      to go to lunch.

14            PROSPECTIVE JUROR:  Thank you.

15            (Thereupon, Prospective Juror No. 0206 retired

16      from the courtroom and the following proceedings were had:)

17            THE COURT:  Do you have a motion, Mr. Crisp?

18            MR. CRISP:  I do.  Well, I understand his goal;

19      and he's an attorney and he's trained as one.  I would

20      challenge him for cause.  He has certainly answered in a

21      neutral fashion, but he works there.  Countless times he's

22      talked about it.  I do think because of the number of videos

23      that will be shown, I don't think we can be absolutely

24      certain that it's not going to be emotionally challenging

25      for him, especially if he knows people that were there and

1  sees things like that.  So I think it has the ability to

2  compromise his impartiality.

3          THE COURT:  Ms. Seifert?

4          MS. SEIFERT:  Your Honor, the witness stated --

5  excuse me -- the venireperson stated that he felt he could

6  put aside any emotions.  He was not there on the day.  He

7  did not personally experience any of the events.  I think if

8  we were to strike jurors based on conversations that they

9  had with people in and around the Hill on January 6th, that

10  would be a bit too far and encompassing a large part of the

11  venire.

12          Counsel can certainly use his peremptories -- his

13  peremptory strikes for this particular venireperson.  But

14  overall, he said he's a lawyer.  He could put aside his

15  concerns and follow the judge's instructions.

16          THE COURT:  I'm going to sustain the challenge.  I

17  think he did answer very well.  I am concerned about having

18  someone who actually worked for a member and worked for a

19  member on January 6th being on the jury.  So I will grant

20  the strike.

21          (Thereupon, Juror No. 0653 entered the courtroom

22  and the following proceedings were had:)

23          THE COURT:  Good afternoon, sir.

24          PROSPECTIVE JUROR:  Good afternoon.

25          THE COURT:  This is Juror 0653.  He's answered yes

1    to 11, 13, 15 and 17.

2              Let's start with No. 11, sir.  You or someone

3    close to you has -- I guess you've had unpleasant

4    experiences with either police or defense attorneys?

5              PROSPECTIVE JUROR:  I think I may have answered

6    that incorrectly.  It wasn't a defense attorney; it was a

7    plaintiff's attorney.  I was the Defendant in a case

8    recently.

9              THE COURT:  Okay.  So obviously, this is a

10   criminal case.  There's no plaintiff's attorneys here.  Any

11   reason that --

12             PROSPECTIVE JUROR:  It was a civil case, a trust

13   case.

14             THE COURT:  So is there any reason that experience

15   will --

16             PROSPECTIVE JUROR:  I don't think so.

17             THE COURT:  -- affect you at all?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  13:  You or someone close to you has

20   been arrested for or convicted of a crime or been a victim

21   of or witness to a crime.

22             PROSPECTIVE JUROR:  Yes.  Our house was broken

23   into and burglarized, but it's been decades.

24             THE COURT:  Anything about that that will make it

25   be difficult for you to be fair and impartial to both sides

1    here?

2              PROSPECTIVE JUROR:  No.  Not at all.

3              THE COURT:  You also indicated that you've watched

4    video of what happened on January 6.  About how many times

5    would you say you've watched video of that incident, sir?

6              PROSPECTIVE JUROR:  I don't know that I could give

7    you an accurate account, but it was several.  It was

8    newscasts and, you know, various different media outlets.

9    So I saw a lot of the coverage, including while it was

10   happening.

11             THE COURT:  So is that primarily just kind of

12   watching news and you see things?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  And do you think that you can put what

15   you've seen aside and evaluate the Defendant and the case

16   here based on what you hear in the courtroom and not what

17   you've heard or seen elsewhere?

18             PROSPECTIVE JUROR:  I hope so.

19             THE COURT:  And what gives you pause about that,

20   sir?

21             PROSPECTIVE JUROR:  This didn't come up earlier,

22   but early in my career I worked for a member of Congress on

23   the House side.

24             THE COURT:  Is that member still --

25             PROSPECTIVE JUROR:  No.  He's no longer a member.

 1    He's passed away.

 2            But in my professional career, I was the president

 3    and CEO of a trade association, so we were actively involved

 4    in lobbying.  So I spent a good part of my career in and

 5    around the Capitol Building, and I have a high degree of

 6    respect for the building.

 7            So my thoughts on the day that this was all

 8    happening was that it was terribly disrespectful to a very

 9    important institution in our country.

10            THE COURT:  So I understand that, and I'm sure a

11    lot of people would agree with you.  The question is not,

12    you know, kind of generally about what happened on January

13    6th that you're going to be asked to decide here, but did

14    this man do the things the Government says that he did and

15    do those in fact meet the elements of certain crimes?

16            Do you think you could make that evaluation

17    without kind of having general feelings about January 6th

18    impact your evaluation?

19            PROSPECTIVE JUROR:  I think so.  I would do my

20    best to be able to do that.

21            THE COURT:  And on 17, you said you think that --

22    17 is that you believe that everyone who entered the Capitol

23    on January 6th knew that the Electoral College count was

24    occurring in the building on that day.

25            PROSPECTIVE JUROR:  I do.

1          THE COURT:  And what is that based on, sir?

2          PROSPECTIVE JUROR:  Well, I think the whole rally

3    and the crowd and everything was based on stopping the

4    steal.  And stopping the steal meant stopping the accurate

5    count.  And that's why they approached the building and

6    forced their way in.

7          THE COURT:  Okay.

8          PROSPECTIVE JUROR:  I can think of no other reason

9    why someone would, you know, participate if it was not to

10   stop the count.

11         THE COURT:  Ms. Seifert, any questions?

12         MS. SEIFERT:  Sir, you said you worked in the

13   House several years ago?

14         PROSPECTIVE JUROR:  Yes.

15         MS. SEIFERT:  You don't have any current friends

16   or colleagues who were at the House or the Senate on January

17   6th?

18         PROSPECTIVE JUROR:  Did you say friends?

19         MS. SEIFERT:  Friends or colleagues that if you --

20   let me rephrase it.

21         Do you have any friends or colleagues that were at

22   the Capitol on January 6th that you talked to there --

23   talked to them about their experiences?

24         PROSPECTIVE JUROR:  Not that I recollect.  But

25   through my years of lobbying, I know that there are staffers

1    that, you know -- I can't recall talking to any of them

2    about it.

3              MS. SEIFERT:  Sorry.  Your own knowledge about

4    January 6th is just what you've understood from media

5    coverage essentially.  Is that fair?

6              PROSPECTIVE JUROR:  Yes.

7              MS. SEIFERT:  And you said that you didn't think

8    there would be other reasons for going into the Capitol.  If

9    defense put forward another reason -- I'm not saying the

10   Defendant did go in or not.  But if the defense were to put

11   forward another reason and you were to find that reason to

12   be credible, would you be able to set aside your

13   preconceived notion --

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  -- that there might not be another

16   reason?

17             PROSPECTIVE JUROR:  I think so.  I could be

18   educated.  Yes.

19             MS. SEIFERT:  Thank you.

20             THE COURT:  Mr. Crisp?

21             MR. CRISP:  Sir, you obviously feel strongly about

22   the building itself.  Do you think -- during the course of

23   this trial, you will see a number of videos at various

24   points through the events, shall we say.  Do you think that

25   will make it harder to be objective in watching it from an

1    emotional standpoint?

2              PROSPECTIVE JUROR:  No.  I don't think so.

3              MR. CRISP:  It's something that you feel strongly

4    about in general in terms of the conduct or in terms of the

5    building?  Can you isolate that?  And do you understand my

6    question?

7              PROSPECTIVE JUROR:  So let me try to read it back

8    to you.  What you're trying to say is:  Are the feelings

9    about the building itself or about the people who were

10   participating that day --

11             MR. CRISP:  Yes, sir.

12             PROSPECTIVE JUROR:  -- is that correct?

13             MR. CRISP:  Yes, sir.

14             PROSPECTIVE JUROR:  Yeah.  I think I can separate

15   the two.

16             MR. CRISP:  Okay.  Thank you.

17             THE COURT:  Thank you, sir.  Feel free to go to

18   lunch.

19             PROSPECTIVE JUROR:  Thank you.

20             (Thereupon, Prospective Juror No. 0653 retired

21   from the courtroom and the following proceedings were had:)

22             THE COURT:  Mr. Crisp, do you have a motion?

23             MR. CRISP:  I do, Judge.

24             I think -- you know, he's never fully committed.

25   He said "I think so" and "I hope so" even after your Honor

1    questioned him.  I do think he has every intention of that,

2    but I think he's -- he has a strong position on what

3    occurred.  So I still never received a "Yes, I will firmly

4    be able to do this and commit to what your Honor instructs."

5    So the only answers he gave in that regard were "I think so"

6    and "I hope so."

7         MS. SEIFERT:  Your Honor, the Government's

8    experience in such answers is that certain jurors speak more

9    certainly and others don't.  It seems to the Government that

10   he was repeatedly reassuring the Court he could follow the

11   instructions, the facts on the law as presented.  He stated

12   if he was presented with evidence contrary to what his

13   initial thought was, he could put that aside.

14        THE COURT:  So that was the part that concerned me

15   a little bit, honestly.  I agree, I think, that some people

16   speak more or less certainly.  But that he's coming in with

17   a preconceived notion that somebody was in the Capitol to

18   stop the Electoral College count and that Mr. Crisp has to

19   rebut that, that feels the opposite of how our system of

20   justice works.

21        MS. SEIFERT:  Again, I think your Honor -- and

22   this is the problem with this particular question

23   generally -- is jurors are going to have all kinds of

24   personal experiences watching news and this coverage about

25   the election, and that might have given them some set of

1    information.  And potentially it sounds like he's saying

2    it's coverage he watched, was that that was the point of the

3    rally that day.  That was why people went into the Capitol

4    that day.

5           So I'm not sure that he would have necessarily

6    other information, but he's willing to accept that

7    information here.  Again, I think that when we talked about

8    adding this question, it wasn't that it would be a

9    disqualifier, but merely an opportunity for the jury to

10   explain further about what they have heard and learned about

11   January 6th.

12          And to the extent that the juror is now saying,

13   Yes, I heard other things, but I'm willing to be educated

14   and listen to whatever is put before me, that would seem it

15   should resolve any objection.  All the jurors are going to

16   come in with a varying basis of understanding and facts

17   based on what they've read and seen and heard prior to now.

18   So it's obviously a very national-reach, large-scale, very

19   well-reported event.

20          THE COURT:  I'm going to grant the defense motion

21   to strike.

22          The venireman said he was concerned about his

23   ability to be fair and impartial.  I do think this Electoral

24   College point is a relatively sophisticated perspective, a

25   relatively informed one, and does bring in a fair amount of

 1    outside knowledge that I don't think we can have on the

 2    jury.

 3              So I'm granting the motion to strike.

 4              (Thereupon, Prospective Juror No. 264 entered the

 5    courtroom and the following proceedings were had:)

 6              THE COURT:  Good afternoon, sir.

 7              PROSPECTIVE JUROR:  Good afternoon.

 8              THE COURT:  This is Juror 264.  He's answered yes

 9    to 13, 14, 15, 16 and 17.

10              Why don't we start with 13.  You or someone close

11    to you has either been a victim of, witness to or charged

12    with a crime.  Can you tell me about that, sir?

13              PROSPECTIVE JUROR:  Yeah.  My father was charged

14    with armed robbery about -- it was about 40 years ago.

15              THE COURT:  Anything about that experience that

16    would make it be difficult for you to be fair and impartial

17    to both sides?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  You said you or someone close to you

20    had a close connection to January 6th?

21              PROSPECTIVE JUROR:  Yeah.  My wife is a

22    journalist, so she covers breaking news a lot of times in

23    her work; and so various other followup stories related to

24    breaking news, which January 6th was certainly one.

25              THE COURT:  And so she's written stories about

1    January 6th?

2              PROSPECTIVE JUROR:  She's not a reporter.  She's

3    an editor of a digital home page.  So she curates stories

4    and works with reporters to put out breaking news alerts and

5    summarize stories for distribution.

6              THE COURT:  I take it she's an editor, so she

7    wouldn't have gone to the Capitol on January 6th?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  Anything about her work and her

10   knowledge that would make it be difficult for you to be fair

11   and impartial to both sides?

12             PROSPECTIVE JUROR:  No.  She's highly unbiased.

13             THE COURT:  I beg your pardon?

14             PROSPECTIVE JUROR:  She's very unbiased.

15   Unbiased.  So no.  There would be no problem there.

16             THE COURT:  15, you said you watched video of what

17   happened on January 6th.

18             PROSPECTIVE JUROR:  Uh-huh.

19             THE COURT:  About how many times would you say

20   you've done that?

21             PROSPECTIVE JUROR:  A half dozen.

22             THE COURT:  And can you put aside what you know

23   from your wife, what you've read, what you've watched and

24   evaluate the facts as adduced here in the courtroom?

25             PROSPECTIVE JUROR:  Yes.  I could do that.

1      THE COURT:  And then 16, you'd have difficulty

2  putting aside what you've heard or seen about the events to

3  make a decision in an impartial manner?

4      PROSPECTIVE JUROR:  I should clarify.  So I think

5  that I can effectively assess the evidence as presented.  I

6  thought it important to note that I have developed opinions

7  related to the incident on January 6th and the various

8  undemocratic -- in my view, undemocratic acts related to

9  that.  Election denialism in particular.

10      THE COURT:  And I think we all have kind of

11  general feelings about what happened on January 6th.  I

12  think the question is whether you can evaluate the facts you

13  hear here to determine whether or not this Defendant did

14  what the Government says he did and, if so, whether those

15  actions violate the law.  Do you think you can do that?

16      PROSPECTIVE JUROR:  I am confident I can do that.

17  Yes.

18      THE COURT:  And you think everyone who entered the

19  Capitol on January 6th knew the Electoral College count was

20  occurring?

21      PROSPECTIVE JUROR:  I do.  Yes.

22      THE COURT:  And what's that based on, sir?

23      PROSPECTIVE JUROR:  The news stories that I've

24  read, the basis of the rally preceding it, the buildup to

25  the march to the Capitol as it were, the video and images

 1      that I saw.  People were saying the time, the date and the

 2      timing of the event, that it was during the electoral count

 3      and certification.

 4              THE COURT:  So I'm going to be telling you that

 5      everybody is supposed to come in kind of with a presumption

 6      of innocence and that it is the Government's burden to prove

 7      that they did and knew the things that the Government says

 8      they did and knew.

 9              Now, do you think you could follow that

10      instruction?

11              PROSPECTIVE JUROR:  Yes.  I think in the purpose

12      of the -- of the purposes of the courtroom, I can certainly

13      do that.

14              THE COURT:  Mr. Crisp, do you have any questions?

15              MR. CRISP:  Yes, your Honor.

16              Sir, if you were presented with alternate bases

17      for people attending or different rationales for being in

18      certain locations, is your belief that everyone knew to be

19      there for a particular reason so firmly held that it would

20      be hard to consider that?

21              PROSPECTIVE JUROR:  No.  I will listen to the

22      evidence presented.

23              MR. CRISP:  And do you understand that the defense

24      doesn't have a burden to present any evidence in that

25      regard?

1          PROSPECTIVE JUROR:  I do.  I value that.

2          THE COURT:  Can you say that again?

3          PROSPECTIVE JUROR:  I do.  I respect that.  I

4     fully acknowledge that it's the burden of the Government to

5     prove guilt, and I think that's important.

6          MR. CRISP:  Do you think you would, because it's

7     something that you firmly believe, as I understood you --

8     and if I misstate something, please correct me -- that you

9     would be compromising a personal belief or conviction that

10    you otherwise would have by examining alternate motives?

11         PROSPECTIVE JUROR:  No.  None.  No.

12         MR. CRISP:  Thank you, sir.

13         No further questions, Judge.

14         MS. SEIFERT:  No questions.

15         THE COURT:  Thank you, sir.  Feel free to go to

16    lunch.

17         PROSPECTIVE JUROR:  Thank you.

18         (Thereupon, Prospective Juror No. 264 retired from

19    the courtroom and the following proceedings were had:)

20         THE COURT:  Why don't we try to get one more.

21         (Thereupon, Prospective Juror No. 1094 entered the

22    courtroom and the following proceedings were had:)

23         THE COURT:  This is Juror 1094.  She's answered

24    yes to 13, 15, 16, 17 and 18.

25         Why don't we start with 18.  That's the hardship

1    question, ma'am.  Can you tell me about that?

2            PROSPECTIVE JUROR:  Yes.  I am relocating to

3    St. Louis in June.  So I just -- I'm in the process of

4    moving my family.

5            In addition, my childcare is not operating at full

6    hours still because of COVID, so it's just kind of

7    complicated because I have to get my kids by -- I have to

8    pick them up between 4:30 and 5:00 and I can't drop them off

9    until between 8:40 and 9:00 a.m.  So there are just some

10   problems there.

11           And then also I have a dental appointment on

12   Thursday, and that scheduling is a little complicated.

13           THE COURT:  Any questions, Ms. Seifert?

14           MS. SEIFERT:  No, your Honor.

15           THE COURT:  Mr. Crisp?

16           MR. CRISP:  No.

17           THE COURT:  Ma'am, I'm going to excuse you.  You

18   may return.  No need to go back to the jury office.

19           PROSPECTIVE JUROR:  Oh, okay.  Do I still need to

20   call in?

21           THE COURT:  No.  We'll get you next time.  Well, I

22   guess maybe not.

23           PROSPECTIVE JUROR:  No.  I'm going.  Though I have

24   served on juries.

25           THE COURT:  I'm sure you have.

```
1              PROSPECTIVE JUROR:  I've lived in D.C. for 20
2     years.  Thank you.
3              THE COURT:  Thank you.
4              (Thereupon, Prospective Juror No. 1094 retired
5     from the courtroom and the following proceedings were had:)
6              THE COURT:  Let's come back at 1:30.  Thanks,
7     folks.
8              MS. SEIFERT:  Your Honor, before we break, your
9     Honor asked the Government to make some inquiries.  I'd like
10    to put those on the record.
11             THE COURT:  Yes.  Thanks.
12             MS. SEIFERT:  So --
13             MR. CRISP:  I did get an email from DOC as well.
14             THE COURT:  Okay.
15             MS. SEIFERT:  So the first thing is, your Honor
16    was asking about the shave and the haircut.  And I did speak
17    with the U.S. Marshal, who then called the jail,
18    Ms. Michelle Williams, the deputy director of
19    administration, in my presence.  They stated the Defendant
20    was given a shave and a haircut three weeks ago.
21             They rely on an email from Angela Caesar about
22    defendants who have court appearances in front of juries in
23    terms of who needs to have a shave and a haircut.  On
24    Friday, when Ms. Caesar submitted that list to the jail, it
25    did not include Mr. Hale-Cusanelli.  She did send a
```

1   correction around 3:30 in the afternoon.  But because it was

2   so late in the day, the jail didn't see it until this

3   morning, which at that time it was too late to give him

4   that.

5              I will also note Deputy Haywood explained to me

6   that though this is not the Marshals Service policy to

7   permit any type of hair-shaving care in the cell block, here

8   they did make an exception in this case, and they did so

9   because your Honor had requested it, but they would not do

10  that again.

11             Also, I was asked to speak with the jail and the

12  Marshals Service with respect to Defendant's counsel being

13  barred from the jail.  And the jail, Ms. Williams again

14  relayed the following information, which I share with the

15  Court again.  I don't know the accuracy of that.  I'm just

16  relaying what was told to me:

17             On May 18, counsel came to the jail when, during a

18  search of his bag -- sorry.  Let me take a step back.

19             Posted online at the jail is a policy with respect

20  to legal visits that goes into great detail with respect to

21  what is permitted inside the jail.  On Pages 19 and 20,

22  there's a list of prohibited items, which includes several

23  of the items found in counsel's bag.

24             On May 18, counsel came to the jail and had on him

25  several medications.  The jail notes that medications are

1     allowed, but only if they're life-sustaining to counsel.

2     And apparently there was a determination made these were

3     not.  Those medications -- defense counsel was permitted to

4     go out to his car and put the medications in the car.

5          Then he came back in.  And during the subsequent

6     search of his bag, the following items were found:  two

7     boxes of gum, two cellular phone cables, one Apple AirPod, a

8     lotion or hand cream of some kind and a bottle of Melatonin

9     pills.  All of those items are listed in the prohibited

10    items attachment in the legal policy visit section of the

11    jail's website on Pages 19 and 20.  Specifically, it states

12    that electronic equipment must be cleared and it does not

13    permit counsel to bring in any types of cables or AirPods

14    related to devices, cellular devices.  It also says:  No

15    lotions, no gum.

16         That is the basis on which the jail on the 18th

17    made a determination that counsel was not going to be

18    allowed back in.

19         This morning, after being asked by the Court,

20    myself and the U.S. Attorney's Office spoke with

21    Ms. Williams, asked her to please speak with the deputy

22    director of the jail for operations.

23         And I have information that I received while we

24    have been with the jury panel that the deputy director of

25    operations has made an exception and is willing to let

1    defense counsel again visit at the jail and that there are

2    some additional rules that will be placed on defense counsel

3    because of his prior violation of policy.  But he has been

4    stated -- given an email about what those rules are.

5            Again, I'm just relaying information.  I don't

6    know the accuracy of any of that information.

7            THE COURT:  I appreciate it.

8            Did you hear why the Defendant wasn't on the bus?

9            MS. SEIFERT:  I did not ask that question, your

10   Honor, because I thought your Honor had already dealt with

11   that with the marshals.

12           THE COURT:  That's fine.

13           MS. SEIFERT:  Oh, sorry.  One additional point

14   they asked me to raise was that although defense counsel

15   stated that Defendant did ask for a shave and a haircut,

16   they did not have a record of him asking for that

17   previously.  Again, he got one three weeks ago, but they did

18   not have a record of him asking for it for trial today.

19           And they noted that defense counsel did not alert

20   the jail that he needed a shave or a haircut, and that it's

21   typically defense counsel that raises that with them.  So

22   they did not know.

23           Again, just relaying information.

24           THE COURT:  I understand.  I think actually we do

25   that.  But it sounds like there was at least some fault on

 1      our side in not putting him on the list.  But it sounds like

 2      this is resolved.

 3                  Is there anything you want to say?

 4                  MR. CRISP:  Yeah.  The email said I can get in

 5      without any electronic items.  Previously I had brought them

 6      in during the visits for discovery purposes.  But that's

 7      fine.

 8                  THE COURT:  I'll see you all at 1:30.

 9                  (Thereupon, a luncheon recess was taken, after

10      which the following proceedings were had:)

11                  (Conclusion of morning session.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3                     I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                    Dated this 23rd day of May, 2022.

11

12                    <u>/s/ Lisa Edwards, RDR, CRR</u>
                      Official Court Reporter
13                    United States District Court for the
                        District of Columbia
14                    333 Constitution Avenue, Northwest
                      Washington, D.C. 20001
15                    (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 105:12

## 0

**0008** [1] - 27:13
**0056** [1] - 32:10
**0141** [2] - 24:13, 24:14
**0153** [1] - 39:24
**0176** [2] - 44:1, 44:3
**0182** [2] - 44:19, 62:24
**0195** [1] - 65:3
**0206** [5] - 22:10, 34:7, 81:14, 81:16, 84:15
**0258** [1] - 36:9
**0282** [1] - 38:7
**0310** [3] - 29:13, 52:4, 52:6
**0363** [1] - 52:16
**0407** [1] - 37:13
**0499** [3] - 60:25, 62:10, 62:19
**0522** [1] - 28:22
**0551** [1] - 55:3
**0590** [2] - 28:2, 42:1
**0616** [2] - 48:13, 60:20
**0643** [1] - 39:8
**0653** [4] - 56:24, 85:21, 85:25, 91:20
**0781** [1] - 23:3
**0795** [5] - 35:6, 57:18, 79:13, 79:15, 81:12
**0835** [5] - 48:23, 49:19, 49:20, 51:10, 64:5
**0872** [6] - 38:21, 66:24, 67:1, 68:9, 68:15, 79:9
**0873** [1] - 40:14
**0899** [1] - 41:16
**0967** [3] - 43:22, 43:23, 43:24

## 1

**1013** [1] - 31:15
**1014** [1] - 58:16
**1094** [5] - 35:21, 57:22, 98:21, 98:23, 100:4
**1096** [1] - 23:24
**10:00** [2] - 57:7,

73:24
**10:31** [1] - 12:18
**11** [4] - 70:21, 71:7, 86:1, 86:2
**1129** [2] - 36:18, 58:3
**1171** [1] - 48:4
**12** [3] - 64:6, 71:8, 71:16
**1200** [2] - 45:6, 63:11
**1272** [1] - 60:4
**12:00** [1] - 76:24
**13** [9] - 71:17, 71:25, 79:16, 79:17, 86:1, 86:19, 94:9, 94:10, 98:24
**1329** [1] - 30:3
**1339** [2] - 33:6, 45:19
**1348** [3] - 30:25, 53:17, 64:24
**1395** [1] - 55:18, 55:20, 63:19
**14** [4] - 72:1, 81:17, 81:18, 94:9
**1412** [3] - 21:4, 25:3, 66:1
**1453** [1] - 46:4
**1488** [1] - 42:10
**15** [12] - 18:1, 44:22, 72:14, 72:16, 79:16, 80:10, 81:17, 82:12, 86:1, 94:9, 95:16, 98:24
**1524** [6] - 26:12, 77:1, 77:13, 77:14, 79:5, 79:7
**1528** [1] - 43:7
**153** [1] - 17:22
**1536** [1] - 54:10
**1566** [1] - 46:17
**1568** [1] - 47:4
**1570** [2] - 53:3, 64:16
**16** [6] - 72:17, 72:22, 73:4, 94:9, 96:1, 98:24
**17** [9] - 36:21, 73:5, 73:10, 73:13, 86:1, 88:21, 88:22, 94:9, 98:24
**17110** [1] - 1:20
**18** [5] - 74:8, 98:24, 98:25, 101:17, 101:24
**18th** [1] - 102:16
**19** [4] - 74:11, 74:13, 101:21, 102:11
**1:00** [1] - 75:6
**1:30** [5] - 76:9, 76:11, 76:21, 100:6, 104:8

## 2

**20** [8] - 27:16, 74:14, 74:20, 75:9, 75:10, 100:1, 101:21, 102:11
**20001** [2] - 1:24, 105:14
**2007** [1] - 64:8
**2008** [2] - 53:24, 56:2
**2011** [1] - 38:23
**202** [2] - 1:25, 105:15
**2021** [12] - 16:7, 17:12, 17:15, 18:5, 72:3, 72:7, 72:9, 72:13, 72:19, 72:25, 73:6, 73:11
**2022** [2] - 1:6, 105:10
**20530** [1] - 1:17
**20s** [1] - 35:24
**21-00037** [1] - 1:3
**21-37** [2] - 2:5, 12:22
**22** [1] - 8:25
**23** [1] - 1:6
**23rd** [1] - 105:10
**264** [3] - 94:4, 94:8, 98:18
**2:30** [3] - 77:2, 77:20, 78:8

## 3

**30** [4] - 37:15, 42:13, 78:9, 78:10
**30-plus** [1] - 24:17
**333** [2] - 1:23, 105:14
**35** [1] - 42:2
**354-3269** [2] - 1:25, 105:15
**3:00** [1] - 78:16
**3:30** [1] - 101:1

## 4

**40** [1] - 94:14
**4031** [1] - 1:19
**4:30** [3] - 73:24, 78:17, 99:8

## 5

**555** [1] - 1:16
**5:00** [4] - 9:1, 9:4, 60:13, 99:8
**5:30** [2] - 73:25

## 6

**6** [9] - 25:19, 36:23, 58:11, 60:9, 72:9, 80:11, 80:13, 82:13, 87:4
**6706** [1] - 1:24
**6:00** [1] - 9:1
**6th** [48] - 16:6, 16:7, 17:11, 17:15, 34:17, 36:21, 57:4, 57:6, 58:21, 60:23, 61:3, 63:8, 63:15, 63:22, 64:1, 65:1, 65:5, 72:3, 72:7, 72:13, 72:19, 72:25, 73:6, 73:11, 80:21, 81:1, 81:20, 81:22, 82:8, 82:16, 83:4, 85:9, 85:19, 88:13, 88:17, 88:23, 89:17, 89:22, 90:4, 93:11, 94:20, 94:24, 95:1, 95:7, 95:17, 96:7, 96:11, 96:19

## 7

**7:00** [1] - 9:12
**7:30** [2] - 8:21, 9:12

## 8

**872** [1] - 68:16
**8:00** [4] - 8:21, 9:11, 60:12, 77:22
**8:40** [1] - 99:9

## 9

**9** [1] - 68:23
**9:00** [3] - 57:7, 73:23, 99:9
**9:16** [1] - 1:7
**9:30** [1] - 7:12

## A

**a.m** [4] - 1:7, 12:18, 60:12, 99:9
**abatement** [1] - 4:6
**abetting** [1] - 17:6
**ability** [11] - 6:24, 29:21, 61:21, 69:9, 71:10, 71:14, 80:6, 83:24, 85:1, 93:23, 105:7
**able** [14] - 7:4, 8:19,

9:21, 29:5, 30:21, 34:21, 36:2, 36:13, 37:2, 37:21, 39:2, 88:20, 90:12, 92:4
**absolutely** [3] - 12:6, 46:2, 84:23
**accept** [1] - 93:6
**access** [4] - 4:5, 4:24, 7:6, 70:10
**account** [1] - 87:7
**accounting** [1] - 38:25
**accuracy** [2] - 101:15, 103:6
**accurate** [4] - 51:6, 87:7, 89:4, 105:4
**acknowledge** [1] - 98:4
**acquired** [2] - 45:1, 53:13
**Action** [1] - 1:3
**actions** [1] - 96:15
**actively** [1] - 88:3
**acts** [1] - 96:8
**adding** [1] - 93:8
**addition** [2] - 55:5, 99:5
**additional** [3] - 34:3, 103:2, 103:13
**adduced** [2] - 82:21, 95:24
**administration** [1] - 100:19
**advantaged** [1] - 49:24
**advise** [1] - 35:3
**advised** [1] - 37:9
**affairs** [1] - 53:19
**affect** [6] - 29:20, 67:7, 71:10, 71:14, 80:6, 86:17
**affects** [1] - 7:6
**afternoon** [7] - 77:20, 78:5, 85:23, 85:24, 94:6, 94:7, 101:1
**afterwards** [1] - 80:16
**AG's** [1] - 67:5
**agency** [3] - 21:24, 22:4
**Agent** [6] - 20:10, 20:11, 20:12, 20:13, 20:16
**agent** [4] - 30:5, 30:12, 65:20, 65:23
**ago** [13] - 24:17, 26:15, 30:6, 34:17, 35:24, 39:15, 42:5, 60:15, 80:9, 89:13,

94:14, 100:20, 103:17
**agree** [5] - 8:2, 12:3,
12:7, 88:11, 92:15
**ahead** [1] - 28:4
**aiding** [1] - 17:5
**aim** [1] - 15:18
**AirPod** [1] - 102:7
**AirPods** [1] - 102:13
**alert** [1] - 103:19
**alerts** [1] - 95:4
**alleged** [1] - 16:5
**allow** [1] - 78:1
**allowed** [3] - 6:8,
102:1, 102:18
**almost** [1] - 57:3
**alone** [1] - 76:14
**alternate** [2] - 97:16,
98:10
**America** [4] - 2:5,
12:22, 13:25, 17:1
**AMERICA** [1] - 1:3
**Americans** [1] - 68:1
**amount** [1] - 93:25
**analyst** [1] - 26:18
**AND** [1] - 1:19
**Angela** [1] - 100:21
**answer** [20] - 15:25,
16:11, 16:12, 16:15,
16:16, 16:18, 16:19,
16:24, 26:11, 41:1,
65:25, 69:24, 70:1,
70:2, 70:10, 70:14,
73:9, 78:4, 85:17
**answered** [7] -
79:15, 81:16, 84:20,
85:25, 86:5, 94:8,
98:23
**answering** [2] -
70:12, 70:18
**answers** [3] - 19:15,
92:5, 92:8
**Anthony** [1] - 20:13
**anticipate** [1] - 7:9
**anyway** [2] - 9:9,
30:11
**apart** [1] - 15:2
**apologize** [6] - 2:24,
2:25, 10:9, 11:19,
13:14, 13:20
**apologizing** [1] -
13:12
**appeal** [3] - 18:5,
19:2, 19:8
**appeals** [1] - 18:9
**appearances** [2] -
1:13, 100:22
**applause** [2] - 41:4,
41:5
**Apple** [1] - 102:7
**applies** [1] - 71:4

**apply** [37] - 34:23,
35:18, 36:4, 36:14,
37:2, 37:22, 38:17,
39:2, 39:16, 40:10,
41:13, 43:17, 44:15,
45:2, 45:16, 46:1,
46:12, 47:1, 47:21,
48:9, 48:19, 49:4,
52:13, 52:24, 53:13,
54:3, 54:18, 55:13,
56:4, 57:12, 57:14,
60:15, 64:1, 64:11,
64:20, 65:7
**applying** [1] - 40:16
**appointment** [7] -
77:2, 77:18, 77:20,
77:24, 78:6, 78:12,
99:11
**appreciate** [5] -
18:23, 19:11, 26:11,
60:1, 103:7
**approach** [10] -
17:20, 47:9, 47:12,
49:16, 59:2, 59:5,
61:17, 66:20, 66:21,
74:22
**approached** [1] -
89:5
**appropriate** [2] -
4:18, 7:25
**area** [3] - 14:19,
53:11, 60:6
**areas** [1] - 26:8
**arguments** [1] -
83:25
**Arlington** [1] - 33:9
**armed** [1] - 94:14
**arrangements** [1] -
7:8
**arrested** [5] - 17:10,
71:18, 71:23, 79:18,
86:20
**articles** [2] - 69:3,
72:12
**aside** [48] - 4:4, 4:11,
26:3, 28:18, 29:7,
34:21, 35:17, 36:3,
36:14, 37:21, 38:1,
38:4, 38:16, 39:15,
41:11, 41:13, 43:17,
44:14, 45:2, 45:15,
45:24, 46:11, 46:25,
47:21, 48:8, 49:4,
52:12, 52:24, 53:12,
54:4, 54:17, 55:14,
56:3, 63:25, 67:20,
72:17, 72:23, 73:3,
80:20, 82:5, 84:8,
85:6, 85:14, 87:15,
90:12, 92:13, 95:22,

96:2
**aspects** [1] - 83:18
**assess** [1] - 96:5
**assist** [1] - 6:19
**assistant** [3] - 2:25,
23:9, 32:12
**Assistant** [1] - 19:19
**associate** [1] - 52:18
**ASSOCIATES** [1] -
1:19
**association** [2] -
53:19, 88:3
**Association** [1] -
38:11
**assume** [1] - 27:4
**Atlanta** [1] - 54:15
**attachment** [2] -
30:20, 102:10
**attending** [1] - 97:17
**attentive** [1] - 74:19
**attorney** [47] - 7:4,
20:6, 22:1, 22:2,
32:13, 34:9, 35:7,
35:9, 36:19, 37:16,
38:12, 39:25, 40:1,
40:8, 40:17, 41:8,
41:17, 41:18, 41:19,
42:11, 42:12, 43:9,
43:10, 43:12, 43:22,
44:8, 44:21, 44:22,
45:9, 46:18, 47:6,
48:6, 48:16, 49:1,
49:8, 53:8, 53:18,
54:13, 54:15, 54:22,
55:7, 55:23, 55:24,
70:24, 84:19, 86:6,
86:7
**Attorney** [4] - 7:19,
7:20, 19:19
**Attorney's** [4] - 6:12,
6:23, 32:14, 102:20
**ATTORNEY'S** [1] -
1:15
**attorneys** [20] -
10:14, 14:9, 15:22,
16:21, 17:20, 18:24,
23:15, 26:9, 40:1,
42:14, 44:6, 53:7,
53:9, 54:13, 55:6,
59:5, 70:7, 74:22,
86:4, 86:10
**AUSA** [4] - 2:10,
13:2, 20:7, 32:17
**automated** [1] - 78:1
**automatically** [1] -
27:5
**automation** [1] -
24:4
**available** [2] - 6:21,
7:16

**Avenue** [2] - 1:23,
105:14
**avoid** [1] - 68:24
**aware** [4] - 5:16,
17:14, 35:12, 72:4

## B

**background** [4] -
16:2, 46:20, 48:7,
55:23
**bad** [7] - 22:16, 24:7,
27:7, 29:4, 66:9, 82:8
**bag** [4] - 4:23,
101:18, 101:23, 102:6
**balance** [1] - 14:25
**bar** [1] - 66:2
**Bar** [6] - 38:11,
40:17, 40:21, 40:25,
41:6, 45:21
**barred** [1] - 101:13
**based** [27] - 15:18,
27:3, 27:10, 29:6,
37:3, 49:10, 54:17,
60:16, 60:17, 61:14,
64:11, 64:21, 65:8,
66:11, 67:21, 72:20,
73:1, 82:6, 82:20,
82:21, 85:8, 87:16,
89:1, 89:3, 93:17,
96:22
**bases** [1] - 97:16
**basis** [6] - 56:20,
56:21, 57:3, 93:16,
96:24, 102:16
**beard** [1] - 3:7
**BEFORE** [1] - 1:10
**beg** [1] - 95:13
**begin** [3] - 16:1,
73:19, 77:4
**behalf** [4] - 2:10,
2:15, 13:1, 13:7
**belief** [2] - 97:18,
98:9
**beliefs** [2] - 69:17,
69:19
**bell** [1] - 19:24
**best** [5] - 6:10,
11:25, 14:25, 88:20,
105:7
**better** [2] - 16:19,
29:2
**between** [4] - 29:16,
73:24, 99:8, 99:9
**beyond** [1] - 13:13
**bias** [2] - 15:16, 68:3
**biased** [1] - 49:12
**big** [3] - 23:18,
32:23, 33:22

**bit** [8] - 15:1, 16:2,
18:8, 26:10, 36:25,
49:15, 85:10, 92:15
**blade** [1] - 3:11
**block** [3] - 3:15, 6:7,
101:7
**blocks** [3] - 58:4,
64:7, 64:25
**blogging** [1] - 69:5
**book** [1] - 76:15
**boss** [1] - 82:4
**Boston** [1] - 36:1
**bottle** [1] - 102:8
**bound** [1] - 15:24
**box** [1] - 10:24
**boxes** [1] - 102:7
**branch** [1] - 53:6
**Branch** [1] - 47:7
**breach** [1] - 16:6
**break** [2] - 75:5,
100:8
**breaking** [3] - 94:22,
94:24, 95:4
**briefly** [1] - 59:2
**brimming** [1] - 41:12
**bring** [7] - 2:22,
16:13, 16:20, 25:15,
76:21, 93:25, 102:13
**bringing** [1] - 51:15
**broken** [1] - 86:22
**brother** [2] - 30:5,
67:4
**brother's** [1] - 67:23
**brought** [3] - 7:12,
62:1, 104:5
**brutality** [2] - 67:6,
68:2
**Building** [8] - 16:7,
58:19, 58:20, 59:13,
59:21, 61:6, 61:9,
88:5
**building** [16] - 2:20,
15:9, 17:7, 17:8, 17:9,
17:10, 59:14, 59:19,
73:7, 73:12, 88:6,
88:24, 89:5, 90:22,
91:5, 91:9
**buildings** [1] - 32:21
**buildup** [1] - 96:24
**burden** [3] - 97:6,
97:24, 98:4
**bureau** [1] - 27:17
**burglarized** [1] -
86:23
**bus** [1] - 103:8
**business** [3] - 7:5,
9:8, 15:13
**buy** [1] - 3:10
**BY** [1] - 1:21

## C

**cables** [2] - 102:7, 102:13
**Caesar** [2] - 100:21, 100:24
**California** [2] - 44:7, 46:23
**Capitol** [50] - 16:6, 17:9, 17:10, 17:11, 20:14, 56:13, 56:17, 56:18, 56:22, 57:1, 57:2, 57:20, 58:4, 58:6, 59:16, 59:19, 60:7, 61:8, 62:25, 63:2, 63:4, 63:13, 63:21, 63:23, 64:6, 64:10, 64:17, 64:18, 64:25, 65:3, 65:12, 72:3, 72:7, 72:9, 72:13, 72:18, 72:24, 73:6, 73:11, 88:5, 88:22, 89:22, 90:8, 92:17, 93:3, 95:7, 96:19, 96:25
**car** [2] - 102:4
**card** [2] - 16:8, 69:24
**cards** [2] - 69:22, 76:21
**care** [1] - 101:7
**career** [3] - 87:22, 88:2, 88:4
**Carolina** [1] - 28:25
**case** [46] - 7:7, 7:9, 13:24, 15:16, 15:17, 16:2, 16:25, 17:14, 17:17, 18:3, 18:6, 18:20, 19:17, 20:6, 26:3, 26:5, 34:23, 54:23, 67:4, 67:5, 68:3, 68:24, 69:1, 69:3, 69:4, 69:5, 69:6, 71:15, 72:20, 73:1, 73:2, 73:16, 73:18, 74:7, 74:15, 74:20, 76:13, 76:14, 86:7, 86:10, 86:12, 86:13, 87:15, 101:8
**Case** [2] - 2:4, 12:21
**cases** [2] - 43:15, 68:1
**cell** [3] - 3:15, 6:7, 101:7
**cellular** [2] - 102:7, 102:14
**center** [2] - 58:1, 76:20
**CEO** [1] - 88:3
**ceremonial** [2] -

13:11, 15:3
**certain** [4] - 84:24, 88:15, 92:8, 97:18
**certainly** [12] - 5:11, 6:19, 6:25, 15:9, 38:5, 76:13, 84:20, 85:12, 92:9, 92:16, 94:24, 97:12
**CERTIFICATE** [1] - 105:1
**certification** [1] - 97:3
**certify** [1] - 105:4
**Chaclan** [2] - 15:11, 76:2
**challenge** [2] - 84:20, 85:16
**challenging** [1] - 84:24
**characterization** [1] - 10:7
**charged** [7] - 16:4, 17:3, 71:19, 71:24, 79:18, 94:11, 94:13
**charges** [1] - 16:5
**chief** [1] - 37:8
**child** [1] - 58:1
**child's** [1] - 77:2
**childcare** [1] - 99:5
**Children** [1] - 36:12
**children** [1] - 57:25
**Christopher** [1] - 20:10
**Circuit** [1] - 34:10
**citizens** [1] - 74:6
**civil** [10] - 23:10, 23:12, 32:13, 32:17, 53:11, 55:6, 55:7, 55:10, 55:11, 86:12
**CJA** [1] - 37:16
**Claims** [1] - 42:13
**clarification** [2] - 8:18, 60:1
**clarify** [1] - 18:25, 96:4
**clear** [1] - 7:18
**cleared** [1] - 102:12
**clearly** [1] - 10:19
**clerk** [5] - 4:13, 14:3, 24:4, 34:10, 35:1
**clerked** [1] - 43:10
**client** [7] - 2:18, 3:22, 6:1, 6:19, 7:8, 11:13, 59:11
**clients** [3] - 7:11, 9:1, 38:2
**close** [22] - 7:5, 21:18, 21:21, 22:23, 31:17, 33:24, 40:1, 40:7, 44:5, 45:8,

71:18, 71:23, 72:1, 72:5, 76:6, 79:17, 81:18, 86:3, 86:19, 94:10, 94:19, 94:20
**co** [2] - 2:10, 20:6
**co-counsel** [2] - 2:10, 20:6
**colleagues** [7] - 5:22, 32:20, 82:4, 83:4, 89:16, 89:19, 89:21
**College** [6] - 73:7, 73:12, 88:23, 92:18, 93:24, 96:19
**color** [1] - 83:24
**Colts** [1] - 19:22
**COLUMBIA** [2] - 1:1, 1:15
**Columbia** [2] - 1:23, 105:13
**comfortable** [3] - 14:22, 70:12, 70:18
**coming** [1] - 92:16
**comments** [1] - 69:6
**commit** [1] - 92:4
**committed** [1] - 91:24
**Committee** [2] - 37:9, 58:10
**communicate** [1] - 6:25
**company** [1] - 36:20
**competing** [1] - 14:25
**complain** [1] - 50:13
**complete** [2] - 5:20, 105:6
**completely** [1] - 25:14
**compliance** [1] - 40:4
**complicated** [2] - 99:7, 99:12
**compromise** [1] - 85:2
**compromising** [1] - 98:9
**concern** [2] - 50:2, 59:8
**concerned** [4] - 51:3, 85:17, 92:14, 93:22
**concerns** [10] - 11:3, 11:6, 11:11, 14:25, 49:21, 61:20, 69:8, 83:14, 84:8, 85:15
**Conclusion** [1] - 104:11
**conduct** [2] - 17:7, 17:8, 91:4
**confer** [1] - 11:15

**confers** [1] - 12:14
**confident** [1] - 96:16
**conflict** [1] - 25:15
**congratulations** [1] - 41:2
**Congress** [9] - 34:11, 34:12, 35:4, 37:9, 53:7, 60:23, 61:3, 62:25, 87:22
**connection** [4] - 17:10, 72:2, 72:6, 94:20
**connections** [1] - 81:19
**consider** [1] - 97:20
**consideration** [2] - 40:21, 40:24
**constitutes** [1] - 105:4
**Constitution** [2] - 1:23, 105:14
**constitutional** [1] - 44:23
**consulting** [1] - 55:8
**continue** [3] - 4:8, 14:23, 15:13
**contract** [2] - 8:9, 35:8
**contrary** [1] - 92:12
**control** [1] - 13:13
**convenient** [1] - 5:10
**conversations** [3] - 35:17, 83:3, 85:8
**convicted** [3] - 71:19, 71:23, 86:20
**conviction** [1] - 98:9
**copied** [2] - 5:13, 5:15
**cops** [4] - 27:7, 66:9
**corporate** [4] - 38:24, 43:22, 52:18, 52:19
**correct** [13] - 3:2, 3:3, 4:20, 4:25, 30:9, 30:13, 37:7, 42:22, 44:9, 44:10, 80:1, 91:12, 98:8
**correction** [1] - 101:1
**corrections** [1] - 27:16
**Counsel** [2] - 11:15, 46:19
**counsel** [32] - 2:7, 2:10, 6:21, 7:3, 7:7, 7:8, 7:10, 7:13, 7:16, 9:3, 11:14, 12:24, 13:2, 20:6, 20:17, 37:8, 46:7, 77:1, 84:8, 85:12, 101:12,

101:17, 101:24, 102:1, 102:3, 102:13, 102:17, 103:1, 103:2, 103:14, 103:19, 103:21
**counsel's** [3] - 6:18, 34:13, 101:23
**count** [9] - 73:7, 73:8, 73:12, 88:23, 89:5, 89:10, 92:18, 96:19, 97:2
**countless** [1] - 84:21
**country** [2] - 74:6, 88:9
**county** [2] - 43:10, 43:12
**couple** [3] - 6:16, 39:15, 80:16
**course** [7] - 4:5, 4:9, 9:1, 14:7, 15:24, 36:22, 90:22
**Court** [16] - 1:22, 1:22, 6:25, 10:14, 11:24, 15:14, 37:16, 39:12, 42:12, 59:23, 59:25, 92:10, 101:15, 102:19, 105:12, 105:13
**COURT** [460] - 1:1, 2:1, 2:12, 2:16, 2:18, 2:23, 3:1, 3:4, 3:13, 3:16, 3:18, 3:21, 3:25, 4:3, 4:12, 4:15, 4:18, 5:1, 5:8, 5:12, 5:18, 6:5, 6:9, 6:17, 7:17, 8:11, 8:16, 9:5, 9:8, 9:13, 9:16, 10:8, 10:13, 11:8, 11:12, 11:18, 11:25, 12:4, 12:7, 12:11, 12:20, 13:4, 13:8, 14:6, 17:21, 17:23, 18:2, 18:10, 18:12, 18:14, 18:18, 18:23, 19:11, 19:15, 20:21, 20:24, 21:6, 21:8, 21:11, 21:15, 22:11, 22:14, 22:21, 23:2, 23:4, 23:7, 23:11, 23:14, 23:18, 23:23, 24:1, 24:3, 24:5, 24:12, 24:14, 24:18, 24:23, 25:2, 25:8, 25:10, 25:12, 25:16, 25:20, 25:23, 26:9, 26:13, 26:17, 26:19, 26:22, 27:2, 27:9, 27:12, 27:14, 27:20, 27:24, 28:3, 28:9, 28:15, 28:21, 28:23, 29:1,

29:9, 29:12, 29:14, 29:17, 29:20, 29:24, 30:2, 30:4, 30:7, 30:10, 30:15, 30:19, 30:24, 31:1, 31:4, 31:9, 31:12, 31:16, 31:19, 31:21, 31:23, 31:25, 32:5, 32:9, 32:11, 32:14, 32:17, 32:23, 32:25, 33:4, 33:7, 33:11, 33:13, 33:15, 33:20, 34:5, 34:8, 34:12, 34:15, 34:19, 35:1, 35:5, 35:10, 35:13, 35:20, 35:22, 36:2, 36:7, 36:10, 36:13, 36:17, 36:23, 36:25, 37:6, 37:11, 37:14, 37:18, 37:21, 37:25, 38:6, 38:8, 38:12, 38:15, 38:20, 38:22, 39:1, 39:6, 39:10, 39:13, 39:19, 39:23, 40:2, 40:5, 40:7, 40:10, 40:13, 40:15, 40:18, 40:22, 41:2, 41:5, 41:10, 41:15, 41:19, 41:22, 41:25, 42:4, 42:9, 42:15, 42:19, 42:21, 42:24, 43:5, 43:8, 43:12, 43:16, 43:20, 43:23, 43:25, 44:2, 44:4, 44:8, 44:11, 44:14, 44:18, 44:20, 44:25, 45:5, 45:7, 45:10, 45:14, 45:18, 45:20, 45:24, 46:3, 46:5, 46:8, 46:11, 46:16, 46:20, 46:24, 47:3, 47:5, 47:9, 47:12, 47:17, 47:20, 47:24, 48:2, 48:5, 48:8, 48:12, 48:14, 48:17, 48:19, 48:22, 48:24, 49:3, 49:7, 49:14, 49:16, 49:19, 49:21, 50:2, 50:5, 50:8, 50:11, 51:1, 51:8, 51:11, 51:16, 51:19, 51:23, 52:3, 52:5, 52:7, 52:11, 52:15, 52:17, 52:21, 52:23, 53:2, 53:4, 53:8, 53:11, 53:16, 53:22, 53:25, 54:3, 54:7, 54:11, 54:16, 54:21, 55:1, 55:4, 55:10, 55:13, 55:17, 55:19, 55:21, 56:1, 56:3, 56:7,

56:25, 57:5, 57:9, 57:17, 57:19, 57:21, 57:23, 58:2, 58:5, 58:8, 58:11, 58:14, 58:17, 58:21, 58:24, 59:3, 59:13, 59:17, 59:20, 60:5, 60:9, 60:11, 60:14, 60:19, 60:21, 60:24, 61:1, 61:5, 61:8, 61:12, 61:17, 61:20, 61:23, 62:4, 62:6, 62:8, 62:11, 62:14, 62:19, 62:23, 63:1, 63:4, 63:7, 63:10, 63:12, 63:14, 63:18, 63:20, 63:22, 63:25, 64:4, 64:9, 64:15, 64:19, 64:23, 65:2, 65:5, 65:7, 65:10, 66:6, 66:18, 66:21, 67:2, 67:8, 67:15, 67:19, 68:4, 68:6, 68:8, 68:12, 68:14, 68:17, 68:22, 72:16, 75:1, 75:4, 75:15, 75:21, 75:24, 77:1, 77:12, 77:16, 77:21, 77:23, 78:2, 78:5, 78:7, 78:10, 78:13, 78:18, 78:20, 78:22, 79:2, 79:5, 79:9, 79:12, 79:15, 79:22, 79:25, 80:2, 80:10, 80:17, 80:20, 80:25, 81:4, 81:7, 81:9, 81:16, 81:24, 82:3, 82:12, 82:19, 82:23, 83:1, 84:5, 84:12, 84:17, 85:3, 85:16, 85:23, 85:25, 86:9, 86:14, 86:17, 86:19, 86:24, 87:3, 87:11, 87:14, 87:19, 87:24, 88:10, 88:21, 89:1, 89:7, 89:11, 90:15, 90:20, 91:17, 91:22, 92:14, 93:20, 94:6, 94:8, 94:15, 94:19, 94:25, 95:6, 95:9, 95:13, 95:16, 95:19, 95:22, 96:1, 96:10, 96:18, 96:22, 97:4, 97:14, 98:2, 98:15, 98:20, 98:23, 99:13, 99:15, 99:17, 99:21, 99:25, 100:3, 100:6, 100:11, 100:14, 103:7, 103:12, 103:24, 104:8

**court** [20] - 11:19, 14:8, 19:14, 28:6,

28:19, 37:16, 39:17, 42:5, 48:1, 49:1, 50:9, 52:2, 60:3, 62:22, 68:21, 72:21, 75:23, 80:22, 82:7, 100:22
**Court's** [1] - 69:18
**courtroom** [34] - 3:12, 12:18, 13:11, 13:14, 13:16, 13:24, 15:3, 15:19, 43:18, 57:15, 60:16, 61:14, 64:2, 64:12, 64:20, 65:8, 70:10, 76:3, 76:24, 77:15, 79:8, 79:14, 81:13, 81:15, 84:16, 85:21, 87:16, 91:21, 94:5, 95:24, 97:12, 98:19, 98:22, 100:5
**COURTROOM** [4] - 2:4, 12:21, 77:10, 79:11
**courtrooms** [1] - 28:16
**cousin** [4] - 21:20, 25:3, 25:13, 31:2
**cover** [1] - 10:25
**coverage** [5] - 68:24, 87:9, 90:5, 92:24, 93:2
**covered** [2] - 10:1, 10:4
**covers** [1] - 94:22
**COVID** [5] - 9:9, 14:8, 14:18, 59:24, 99:6
**cream** [1] - 102:8
**credible** [3] - 66:12, 66:14, 90:12
**crime** [8] - 71:19, 71:20, 71:24, 71:25, 79:19, 86:20, 86:21, 94:12
**crimes** [1] - 88:15
**criminal** [33] - 13:24, 14:22, 16:25, 23:25, 27:18, 35:2, 35:11, 37:7, 37:18, 39:12, 39:14, 40:5, 40:8, 41:8, 41:9, 41:19, 42:19, 43:12, 43:15, 45:22, 46:9, 46:20, 47:7, 47:17, 48:7, 48:16, 48:25, 49:8, 52:21, 53:25, 55:11, 55:23, 86:10
**Criminal** [6] - 1:3, 2:4, 12:21, 20:12, 30:7, 30:11
**Crisp** [24] - 2:15,

2:16, 3:21, 6:1, 8:3, 9:21, 11:9, 13:7, 13:8, 19:20, 21:12, 49:9, 68:12, 77:5, 77:9, 78:20, 81:11, 83:1, 84:17, 90:20, 91:22, 92:18, 97:14, 99:15
**CRISP** [77] - 1:18, 1:19, 2:3, 2:14, 2:17, 2:20, 2:24, 3:3, 3:5, 3:23, 4:1, 4:4, 4:14, 4:16, 4:21, 5:4, 5:11, 6:14, 8:18, 9:7, 9:10, 9:15, 10:9, 11:10, 11:14, 13:6, 21:14, 32:16, 50:24, 51:2, 51:14, 51:18, 51:22, 59:2, 59:8, 59:15, 59:18, 59:22, 60:1, 62:7, 62:12, 62:18, 62:20, 68:5, 68:13, 68:16, 68:18, 75:3, 75:13, 75:20, 78:21, 79:4, 79:6, 81:8, 83:2, 83:6, 83:9, 83:11, 83:13, 83:16, 83:19, 83:23, 84:3, 84:18, 90:21, 91:3, 91:11, 91:13, 91:16, 91:23, 97:15, 97:23, 98:6, 98:12, 99:16, 100:13, 104:4
**cross** [1] - 11:20
**cross-talk** [1] - 11:20
**crowd** [1] - 89:3
**CRR** [3] - 1:21, 105:3, 105:12
**CRS** [1] - 34:14
**Crutcher** [1] - 52:19
**curates** [1] - 95:3
**current** [2] - 33:15, 89:15
**Cusanelli** [16] - 2:6, 2:15, 5:25, 12:23, 13:7, 13:9, 14:1, 14:10, 14:24, 16:4, 17:2, 19:21, 82:6, 82:9, 82:20, 100:25
**CUSANELLI** [1] - 1:6
**Cusanelli's** [1] - 17:17
**custodian** [2] - 20:18, 20:20
**custody** [1] - 7:19
**cut** [1] - 38:3
**cybersecurity** [1] - 40:4

**D**

**D.A** [2] - 22:13, 22:18
**D.A.'s** [1] - 22:15
**D.C** [29] - 1:6, 1:17, 1:24, 2:22, 7:20, 7:24, 8:1, 13:15, 14:18, 21:25, 32:14, 33:22, 34:5, 34:11, 37:16, 37:17, 38:10, 38:25, 39:12, 39:25, 45:21, 54:14, 55:23, 70:23, 70:25, 71:11, 79:23, 100:1, 105:14
**dad** [1] - 49:22
**daily** [2] - 56:21, 57:3
**Daniel** [2] - 20:13, 20:18
**date** [1] - 97:1
**Dated** [1] - 105:10
**daughter** [2] - 46:6, 46:8
**days** [1] - 10:21
**deal** [2] - 6:9, 51:17
**dealt** [1] - 103:10
**decades** [1] - 86:23
**decide** [4] - 66:14, 72:20, 73:1, 88:13
**decided** [1] - 77:3
**decision** [1] - 96:3
**Defendant** [18] - 1:7, 7:19, 11:18, 12:11, 17:3, 19:2, 19:20, 19:21, 50:3, 80:17, 80:23, 86:7, 87:15, 90:10, 96:13, 100:19, 100:22
**DEFENDANT** [1] - 1:18
**Defendant's** [1] - 101:12
**defendants** [2] - 50:15, 100:22
**defense** [29] - 7:7, 7:13, 9:22, 10:2, 10:11, 11:10, 11:22, 41:8, 49:1, 49:8, 54:15, 54:22, 62:6, 70:24, 70:25, 81:7, 84:7, 86:4, 86:6, 90:9, 90:10, 93:20, 97:23, 102:3, 103:1, 103:2, 103:14, 103:19, 103:21
**defining** [1] - 8:23
**degree** [1] - 88:5
**Deibert** [1] - 20:10
**deliberating** [1] - 73:19

**deliberations** [1] - 73:20

**demeanor** [1] - 67:22

**demonstrating** [1] - 17:9

**denialism** [1] - 96:9

**denied** [1] - 4:24

**dental** [1] - 99:11

**department** [7] - 21:25, 26:16, 31:18, 31:19, 38:25, 53:19, 67:21

**Department** [12] - 8:12, 22:2, 23:6, 23:8, 26:14, 33:10, 36:12, 42:11, 45:9, 46:7, 55:8, 67:17

**departments** [1] - 67:16

**depositions** [1] - 28:7

**Deputy** [1] - 101:5

**deputy** [9] - 3:13, 12:13, 12:14, 14:2, 26:20, 76:3, 100:18, 102:21, 102:24

**DEPUTY** [4] - 2:4, 12:21, 77:10, 79:11

**describe** [1] - 83:9

**desire** [1] - 6:18

**despite** [1] - 84:7

**detail** [2] - 61:3, 101:20

**detailed** [1] - 33:9

**detective** [1] - 31:3

**determination** [2] - 102:2, 102:17

**determine** [1] - 96:13

**developed** [1] - 96:6

**devices** [2] - 102:14

**DHS** [2] - 26:17, 33:13

**Diego** [1] - 20:18

**difference** [1] - 10:22

**different** [8] - 18:5, 32:21, 67:15, 67:16, 67:21, 68:1, 87:8, 97:17

**differently** [1] - 57:13

**difficult** [26] - 18:19, 22:18, 23:20, 24:9, 24:20, 26:24, 27:22, 28:12, 30:16, 32:2, 33:1, 33:17, 42:7, 43:2, 62:2, 69:18, 69:20, 71:1, 74:10, 74:12, 74:15, 74:18, 81:1, 86:25, 94:16, 95:10

**difficulty** [6] - 56:10, 56:11, 72:17, 72:23, 73:3, 96:1

**digital** [1] - 95:3

**dire** [2] - 11:1, 15:2

**directed** [1] - 59:18

**directly** [1] - 53:6

**director** [4] - 23:9, 100:18, 102:22, 102:24

**Director** [1] - 47:16

**disagrees** [1] - 69:14

**discovery** [1] - 104:6

**discussed** [1] - 71:7

**discusses** [1] - 10:9

**discussing** [1] - 12:8

**dislikes** [1] - 69:14

**dismiss** [1] - 75:16

**disorderly** [2] - 17:7, 17:8

**disqualifier** [1] - 93:9

**disrespectful** [1] - 88:8

**disruptive** [1] - 17:7

**distance** [1] - 14:16

**distanced** [1] - 15:7

**distressing** [2] - 83:10, 83:11

**distribution** [1] - 95:5

**district** [4] - 7:3, 7:11, 32:18, 105:13

**District** [5] - 1:22, 1:23, 37:16, 46:23, 105:13

**DISTRICT** [4] - 1:1, 1:1, 1:11, 1:15

**division** [5] - 23:10, 31:23, 32:13, 42:18, 55:6

**DNA** [1] - 36:20

**DOC** [1] - 100:13

**doctor's** [3] - 77:2, 77:18, 77:24

**dog** [1] - 57:2

**DOJ** [5] - 23:15, 23:20, 31:18, 31:21, 42:15

**done** [7] - 5:6, 10:12, 28:7, 35:11, 46:8, 78:16, 95:20

**doubts** [1] - 49:14

**Douglas** [1] - 20:20

**down** [17] - 54:8, 58:25, 59:23, 69:25, 70:1, 71:7, 71:16, 71:25, 72:13, 73:4, 73:10, 73:13, 74:8, 74:11, 74:13, 74:20

**downstairs** [1] - 5:9,

6:2, 10:24

**downtown** [1] - 60:6

**dozen** [1] - 95:21

**dozens** [2] - 82:17, 83:5

**drop** [1] - 99:8

**duly** [1] - 14:4

**Dunn** [1] - 52:19

**during** [11] - 4:5, 4:8, 9:1, 15:20, 20:8, 22:12, 90:22, 97:2, 101:17, 102:5, 104:6

**duty** [1] - 69:16

**E**

**early** [3] - 35:24, 73:22, 87:22

**editor** [2] - 95:3, 95:6

**educated** [2] - 90:18, 93:13

**Edwards** [1] - 105:12

**EDWARDS** [2] - 1:21, 105:3

**effect** [1] - 65:20

**effectively** [1] - 96:5

**effects** [1] - 4:23

**either** [16] - 6:24, 10:6, 11:11, 15:17, 23:16, 26:22, 33:15, 35:10, 43:1, 65:16, 65:23, 73:19, 75:8, 86:4, 94:11

**election** [2] - 92:25, 96:9

**Electoral** [6] - 73:6, 73:12, 88:23, 92:18, 93:23, 96:19

**electoral** [1] - 97:2

**electric** [1] - 3:10

**electronic** [2] - 102:12, 104:5

**elements** [1] - 88:15

**Eleventh** [1] - 1:16

**elsewhere** [3] - 70:23, 70:25, 87:17

**email** [7] - 4:16, 5:13, 5:15, 100:13, 100:21, 103:4, 104:4

**emailed** [1] - 4:13

**emotional** [3] - 83:7, 83:17, 91:1

**emotionally** [1] - 83:20, 84:24

**emotions** [1] - 85:6

**employed** [3] - 34:16, 34:17, 81:21

**employee** [1] - 23:20

**employees** [1] - 9:25

**employment** [1] - 33:16

**encompassing** [1] - 85:10

**end** [5] - 5:25, 6:4, 12:5, 65:13, 74:4

**enforcement** [19] - 21:23, 21:24, 22:4, 22:6, 22:23, 24:6, 24:8, 24:24, 29:3, 29:4, 29:6, 29:15, 30:17, 31:5, 32:3, 65:20, 65:23, 66:4, 70:23

**engineer** [1] - 33:14

**English** [2] - 56:11, 56:12

**enjoy** [1] - 76:16

**ensure** [1] - 14:22

**entered** [11] - 12:17, 73:5, 73:11, 77:14, 79:13, 81:14, 85:21, 88:22, 94:4, 96:18, 98:21

**entering** [1] - 17:6

**entire** [1] - 10:11

**entitled** [2] - 13:25, 17:1

**environmental** [2] - 42:17, 44:24

**equipment** [1] - 102:12

**Erik** [1] - 20:10

**ERISA** [1] - 48:7

**especially** [3] - 10:21, 13:19, 84:25

**ESQ** [3] - 1:14, 1:14, 1:18

**essentially** [1] - 90:5

**estimate** [2] - 82:17, 83:3

**evaluate** [14] - 27:2, 27:9, 29:5, 29:21, 30:16, 31:5, 32:2, 61:13, 66:10, 82:6, 82:20, 87:15, 95:24, 96:12

**evaluated** [1] - 80:23

**evaluation** [2] - 88:16, 88:18

**evening** [1] - 4:15

**event** [3] - 10:16, 93:19, 97:2

**events** [12] - 17:11, 57:9, 72:2, 72:6, 72:18, 72:19, 72:24, 72:25, 81:19, 85:7, 90:24, 96:2

**evidence** [13] - 15:19, 26:2, 66:11,

72:21, 73:2, 80:22, 82:7, 82:20, 84:9, 92:12, 96:5, 97:22, 97:24

**examining** [1] - 98:10

**exception** [2] - 101:8, 102:25

**excuse** [5] - 62:15, 78:22, 79:9, 85:5, 99:17

**excused** [1] - 78:24

**Executive** [1] - 47:7

**exited** [1] - 76:23

**expectation** [2] - 5:4, 8:24

**expecting** [1] - 73:17

**experience** [37] - 7:3, 7:10, 7:15, 19:5, 22:15, 22:17, 23:19, 24:8, 24:19, 28:11, 30:15, 35:2, 37:1, 37:4, 37:7, 37:19, 38:1, 39:3, 39:14, 39:19, 40:5, 42:5, 42:6, 46:25, 47:18, 49:8, 49:10, 52:21, 53:25, 67:25, 71:8, 71:13, 80:3, 85:7, 86:14, 92:8, 94:15

**experienced** [1] - 13:21

**experiences** [18] - 25:21, 26:23, 28:19, 34:22, 36:3, 36:4, 38:17, 39:20, 43:1, 43:2, 67:20, 67:23, 70:22, 70:24, 86:4, 89:23, 92:24

**explain** [2] - 6:22, 93:10

**explained** [1] - 101:5

**explaining** [1] - 16:15

**extent** [2] - 11:4, 93:12

**extreme** [1] - 74:8

**F**

**facility** [1] - 44:7

**fact** [4] - 33:1, 65:19, 65:22, 88:15

**facts** [13] - 57:12, 57:14, 60:15, 61:13, 64:2, 64:11, 64:20, 65:7, 69:11, 92:11, 93:16, 95:24, 96:12

**fair** [41] - 10:7, 15:23,

18:19, 22:19, 23:21, 24:9, 24:20, 26:4, 26:24, 27:22, 28:12, 29:9, 29:24, 30:22, 31:9, 32:5, 33:2, 33:17, 37:25, 42:7, 43:3, 44:11, 49:13, 50:3, 62:2, 71:1, 71:10, 71:15, 72:20, 73:1, 74:17, 74:19, 80:6, 81:2, 83:13, 86:25, 90:5, 93:23, 93:25, 94:16, 95:10
**fairness** [2] - 67:7, 68:3
**familiar** [1] - 15:6
**Families** [1] - 36:12
**family** [9] - 21:18, 21:21, 28:24, 33:24, 39:20, 54:18, 71:18, 71:22, 99:4
**far** [4] - 5:20, 22:22, 76:10, 85:10
**fashion** [1] - 84:21
**father** [11] - 27:15, 27:21, 33:8, 33:16, 36:11, 36:15, 48:25, 50:8, 50:13, 51:4, 94:13
**father's** [4] - 39:8, 39:25, 49:7, 49:10
**father-in-law** [1] - 33:8
**father-in-law's** [1] - 33:16
**fault** [1] - 103:25
**favor** [1] - 39:20
**favoritism** [2] - 30:20, 80:3
**FBI** [3] - 20:10, 22:2, 27:19
**FDA** [2] - 23:25, 24:1
**Federal** [3] - 42:13, 58:19
**federal** [4] - 49:1, 50:8, 73:16, 74:4
**feelings** [8] - 72:5, 73:3, 75:7, 75:13, 82:5, 88:17, 91:8, 96:11
**felt** [1] - 85:5
**few** [8] - 21:16, 31:13, 40:25, 42:4, 60:15, 61:13, 64:24, 75:16
**fiancée** [2] - 52:8, 52:12
**Fifield** [11] - 2:9, 3:18, 5:12, 11:8, 13:1, 13:4, 19:19, 20:3,

20:5, 20:21, 77:6
**FIFIELD** [9] - 1:14, 2:9, 2:13, 3:20, 5:14, 11:6, 13:1, 20:4, 20:23
**Fifth** [1] - 34:10
**figure** [2] - 6:12, 8:13
**final** [2] - 11:2, 11:6
**fine** [5] - 16:19, 35:13, 75:18, 103:12, 104:7
**finished** [1] - 70:4
**firm** [1] - 35:23, 54:14, 55:8
**firmly** [3] - 92:3, 92:19, 98:7
**firms** [5] - 38:24, 39:4, 42:3, 45:2
**first** [15] - 4:24, 13:16, 13:19, 16:9, 16:25, 22:25, 24:6, 25:12, 40:18, 54:16, 75:9, 75:18, 77:13, 79:10, 100:15
**five** [1] - 75:12
**Floor** [1] - 1:16
**fluid** [1] - 57:11
**focus** [2] - 41:13, 52:19
**focusing** [1] - 37:1
**folks** [6] - 59:4, 61:13, 62:17, 75:24, 76:5, 100:7
**follow** [11] - 28:17, 34:22, 69:9, 69:12, 69:13, 69:16, 69:18, 69:20, 85:15, 92:10, 97:9
**following** [34] - 12:16, 12:18, 17:24, 19:13, 20:9, 47:13, 47:25, 49:17, 52:1, 59:6, 60:2, 61:18, 62:21, 66:22, 68:20, 74:24, 75:22, 76:24, 77:15, 79:8, 79:14, 81:13, 81:15, 82:16, 84:16, 85:22, 91:21, 94:5, 98:19, 98:22, 100:5, 101:14, 102:6, 104:10
**followup** [4] - 81:4, 82:24, 84:5, 94:23
**followups** [1] - 77:7
**FOR** [4] - 1:1, 1:14, 1:15, 1:18
**forbid** [1] - 15:10
**forbidden** [1] - 69:2
**forced** [1] - 89:6
**foregoing** [1] - 105:4

former [3] - 20:17, 55:24, 66:8
**formerly** [1] - 19:21
**forward** [5] - 2:7, 12:24, 17:19, 90:9, 90:11
**four** [1] - 58:3
**Fourth** [1] - 1:16
**Framhein** [1] - 20:11
**frankly** [3] - 73:15, 74:4, 74:5
**free** [9] - 76:8, 76:10, 76:15, 76:20, 81:9, 84:12, 91:17, 98:15
**Friday** [2] - 73:19, 100:24
**friend** [4] - 31:17, 45:8, 45:10, 45:16
**friends** [21] - 21:18, 21:21, 31:21, 33:25, 36:22, 39:9, 39:20, 40:1, 41:18, 42:13, 44:5, 44:15, 49:25, 55:5, 55:15, 71:18, 71:23, 89:15, 89:18, 89:19, 89:21
**front** [6] - 7:21, 16:19, 27:25, 70:12, 70:19, 100:22
**Front** [1] - 1:19
**frustration** [1] - 80:4
**full** [2] - 99:5, 105:5
**fully** [2] - 91:24, 98:4

**G**

**general** [5] - 17:15, 34:13, 88:17, 91:4, 96:11
**General** [3] - 7:20, 46:19
**generally** [2] - 88:12, 92:23
**gentleman** [2] - 24:6, 39:15
**gentlemen** [4] - 13:10, 13:23, 14:6, 21:17
**Georgetown** [1] - 38:10
**Georgia** [2] - 24:17, 54:15
**Gibson** [1] - 52:19
**given** [11] - 14:17, 32:6, 54:21, 62:2, 74:3, 74:4, 80:3, 92:25, 100:20, 103:4
**goal** [1] - 84:18
**God** [1] - 15:10

**Golf** [1] - 20:13
**Googling** [1] - 69:5
**governance** [1] - 52:20
**Government** [26] - 2:8, 6:19, 8:15, 8:16, 9:3, 9:20, 10:5, 11:2, 11:6, 12:25, 16:4, 19:17, 20:6, 23:14, 26:2, 50:11, 62:4, 81:5, 82:9, 82:24, 88:14, 92:9, 96:14, 97:7, 98:4, 100:9
**GOVERNMENT** [1] - 1:14
**government** [3] - 9:25, 53:6, 53:19
**Government's** [3] - 3:20, 92:7, 97:6
**graduate** [1] - 29:16
**graduated** [1] - 52:8
**grand** [2] - 71:9, 71:13
**grandfather** [1] - 40:17
**grant** [2] - 85:19, 93:20
**granting** [1] - 94:3
**great** [2] - 21:15, 101:20
**greater** [1] - 65:16
**grounds** [3] - 17:7, 17:8, 57:2
**group** [5] - 21:22, 21:23, 22:5, 33:23
**guess** [16] - 5:12, 5:18, 5:24, 24:5, 25:13, 25:23, 39:14, 45:10, 50:2, 60:14, 60:17, 64:9, 75:1, 82:19, 86:3, 99:22
**guilt** [1] - 98:5
**gum** [2] - 102:7, 102:15
**gunpoint** [1] - 79:21

**H**

**hair** [1] - 101:7
**hair-shaving** [1] - 101:7
**haircut** [5] - 100:16, 100:20, 100:23, 103:15, 103:20
**Hale** [17] - 2:6, 2:15, 5:25, 12:23, 13:7, 13:9, 14:1, 14:10, 14:24, 16:4, 17:2, 19:21, 82:6,

82:9, 82:20, 100:25
**HALE** [1] - 1:6
**Hale-Cusanelli** [16] - 2:6, 2:15, 5:25, 12:23, 13:7, 13:9, 14:1, 14:10, 14:24, 16:4, 17:2, 19:21, 82:6, 82:9, 82:20, 100:25
**HALE-CUSANELLI** [1] - 1:6
**Hale-Cusanelli's** [1] - 17:17
**half** [1] - 95:21
**hall** [1] - 76:17
**hallway** [2] - 70:6, 76:1
**hand** [7] - 16:12, 17:18, 22:6, 56:15, 65:25, 69:10, 102:8
**handheld** [1] - 77:7
**handle** [1] - 28:10
**handled** [1] - 80:5
**hands** [8] - 19:25, 21:12, 22:25, 31:13, 48:2, 56:14, 59:1, 66:18
**hang** [1] - 81:11
**happy** [1] - 8:13
**hard** [5] - 40:19, 74:17, 82:17, 84:6, 97:20
**harder** [1] - 90:25
**hardship** [3] - 73:14, 74:8, 98:25
**Harrisburg** [1] - 1:20
**hash** [1] - 5:20
**Haywood** [1] - 101:5
**health** [5] - 10:3, 55:22, 62:1, 74:9, 74:11
**Health** [1] - 61:4
**hear** [26] - 9:22, 10:2, 10:19, 14:12, 14:13, 20:8, 29:21, 30:11, 32:16, 34:3, 50:24, 57:12, 57:14, 60:16, 61:14, 64:2, 64:12, 64:20, 65:7, 79:22, 80:22, 82:7, 87:16, 96:13, 103:8
**heard** [25] - 11:22, 17:13, 18:2, 18:4, 19:18, 21:4, 21:6, 21:9, 25:25, 27:6, 27:21, 44:15, 45:25, 54:17, 64:1, 64:13, 65:8, 72:18, 72:24, 82:5, 87:17, 93:10, 93:13, 93:17, 96:2
**hearing** [5] - 24:23,

40:19, 67:11, 67:15, 84:7
**held** [1] - 97:19
**hello** [5] - 23:1, 24:13, 28:1, 35:21, 46:17
**helped** [1] - 80:4
**helpful** [1] - 15:22
**hereby** [1] - 105:3
**hi** [5] - 23:24, 26:12, 30:3, 32:10, 50:5
**high** [1] - 88:5
**highly** [1] - 95:12
**Hill** [14] - 36:20, 36:21, 57:1, 57:20, 60:7, 63:13, 63:21, 63:23, 64:6, 64:10, 64:17, 65:4, 65:12, 85:9
**historian** [1] - 55:7
**Hogan** [1] - 43:22
**hold** [3] - 5:9, 63:1, 82:23
**home** [9] - 63:9, 63:16, 63:24, 64:18, 64:25, 65:6, 78:24, 95:3
**Homeland** [4] - 22:3, 26:15, 33:10, 45:9
**honest** [1] - 18:22
**honestly** [2] - 76:7, 92:15
**Honor** [68] - 2:2, 2:3, 2:9, 2:13, 2:14, 2:21, 4:14, 5:14, 6:15, 6:22, 7:12, 8:5, 8:18, 9:20, 12:3, 12:10, 13:6, 18:1, 20:23, 23:1, 28:1, 29:23, 30:1, 32:16, 33:5, 33:19, 36:8, 36:16, 37:12, 39:7, 39:22, 40:12, 42:8, 51:25, 52:14, 53:15, 56:23, 58:15, 59:2, 62:5, 62:7, 62:12, 65:9, 68:7, 68:10, 68:19, 75:9, 75:11, 75:12, 78:19, 78:21, 81:6, 81:8, 82:25, 83:2, 85:4, 91:25, 92:4, 92:7, 92:21, 97:15, 99:14, 100:8, 100:9, 100:15, 101:9, 103:10
**HONORABLE** [1] - 1:10
**hope** [4] - 26:6, 87:18, 91:25, 92:6
**hopefully** [1] - 40:25
**hour** [1] - 75:10

**hours** [6] - 7:16, 8:20, 8:22, 9:8, 99:6
**House** [15] - 20:19, 34:11, 34:15, 37:9, 53:20, 53:22, 53:23, 58:9, 61:5, 64:7, 81:21, 81:25, 87:23, 89:13, 89:16
**house** [2] - 8:9, 86:22
**HUD** [1] - 43:11
**husband** [14] - 32:12, 32:17, 35:8, 35:24, 42:11, 42:15, 43:9, 54:12, 54:13, 55:22, 56:4, 62:25, 63:2, 63:7
**husband's** [4] - 32:20, 32:25, 36:4, 43:2
**husher** [1] - 70:14

**I**

**idea** [1] - 4:4
**identify** [3] - 2:7, 12:24, 21:2
**ignore** [1] - 69:14
**images** [1] - 96:25
**immediate** [5] - 21:18, 21:21, 33:24, 71:17, 71:22
**impact** [3] - 66:2, 66:3, 88:18
**impartial** [28] - 15:23, 18:19, 22:19, 23:21, 24:10, 24:20, 26:24, 28:13, 29:10, 29:25, 30:22, 31:10, 32:6, 33:2, 33:17, 38:1, 41:18, 43:3, 44:12, 72:20, 73:1, 74:19, 81:2, 86:25, 93:23, 94:16, 95:11, 96:3
**impartiality** [1] - 85:2
**important** [10] - 14:12, 14:23, 14:24, 15:14, 25:15, 57:11, 67:4, 88:9, 96:6, 98:5
**impression** [3] - 7:17, 9:5, 66:3
**inability** [1] - 7:6
**incarcerated** [1] - 9:2
**incident** [4] - 25:6, 80:13, 87:5, 96:7
**incidents** [1] - 80:8
**inclined** [1] - 75:1

**include** [1] - 100:25
**includes** [1] - 101:22
**including** [2] - 68:25, 87:9
**incorrectly** [1] - 86:6
**independent** [1] - 19:7
**index** [1] - 76:21
**indicated** [1] - 87:3
**individual** [1] - 10:4
**individuals** [1] - 51:15
**influence** [1] - 54:23
**information** [13] - 6:20, 7:1, 10:3, 16:3, 26:7, 93:1, 93:6, 93:7, 101:14, 102:23, 103:5, 103:6, 103:23
**informed** [1] - 93:25
**initial** [2] - 15:2, 92:13
**injuries** [1] - 62:2
**innocence** [1] - 97:6
**input** [1] - 5:21
**inquire** [2] - 8:7, 10:2
**inquired** [1] - 9:20
**inquiries** [1] - 100:9
**inside** [1] - 101:21
**Inspector** [1] - 20:14
**instead** [1] - 75:6
**institution** [1] - 88:9
**instruct** [2] - 15:20, 68:24
**instructed** [1] - 69:12
**instructing** [1] - 65:13
**instruction** [2] - 69:9, 97:10
**instructions** [7] - 11:2, 11:7, 34:23, 69:18, 69:20, 85:15, 92:11
**instructs** [1] - 92:4
**intellectual** [2] - 23:10, 54:13
**Intelligence** [1] - 47:16
**intent** [1] - 26:6
**intention** [1] - 92:1
**intercoms** [1] - 77:11
**intern** [1] - 46:22
**interned** [3] - 35:23, 35:25, 64:7
**Internet** [2] - 69:1, 72:10
**interning** [1] - 41:7
**interpreted** [1] - 59:10
**introduce** [1] - 20:1

**introduced** [1] - 15:20
**investigation** [2] - 23:25, 27:18
**Investigative** [3] - 20:12, 30:7, 30:12
**investigator** [1] - 70:25
**involved** [1] - 88:3
**IRS** [1] - 46:18
**isolate** [1] - 91:5
**issue** [3] - 4:19, 12:2, 59:12
**issues** [6] - 4:11, 8:25, 11:21, 11:23, 13:13, 35:4
**it'll** [1] - 83:24
**items** [6] - 101:22, 101:23, 102:6, 102:9, 102:10, 104:5
**itself** [2] - 90:22, 91:9

**J**

**J.D** [1] - 40:20
**Jacobs** [1] - 20:9
**jail** [26] - 2:19, 5:19, 6:20, 6:21, 6:25, 7:4, 7:6, 7:16, 8:4, 8:7, 8:9, 100:17, 100:24, 101:2, 101:11, 101:13, 101:17, 101:19, 101:21, 101:24, 101:25, 102:16, 102:22, 103:1, 103:20
**Jail** [3] - 2:22, 7:20, 7:24
**Jail's** [1] - 8:1
**jail's** [2] - 6:13, 102:11
**Jamshid** [1] - 20:11
**January** [54] - 16:6, 16:7, 17:11, 17:15, 25:19, 34:17, 36:21, 36:23, 57:4, 57:6, 58:11, 58:21, 60:9, 63:7, 63:14, 63:22, 64:1, 64:25, 65:5, 72:3, 72:7, 72:9, 72:13, 72:19, 72:25, 73:6, 73:11, 80:11, 80:13, 80:21, 81:1, 81:20, 81:22, 82:8, 82:13, 82:16, 85:9, 85:19, 87:4, 88:12, 88:17, 88:23, 89:16, 89:22, 90:4, 93:11,

94:20, 94:24, 95:1, 95:7, 95:17, 96:7, 96:11, 96:19
**Jersey** [1] - 19:22
**job** [1] - 33:16
**joke** [1] - 59:25
**Jonathan** [3] - 2:14, 13:6, 19:20
**JONATHAN** [1] - 1:18
**journalist** [1] - 94:22
**judge** [1] - 69:13
**Judge** [10] - 20:5, 21:14, 37:13, 41:24, 43:21, 68:13, 75:3, 84:4, 91:23, 98:13
**JUDGE** [1] - 1:11
**judge's** [1] - 85:15
**judges** [2] - 42:14, 69:11
**judicial** [1] - 46:22
**judiciary** [1] - 59:25
**Judiciary** [5] - 37:9, 58:19, 58:20, 59:13, 59:20
**June** [1] - 99:3
**juries** [2] - 99:24, 100:22
**juror** [29] - 16:14, 17:21, 18:7, 18:20, 21:2, 22:9, 23:3, 35:6, 39:24, 43:21, 50:12, 51:3, 51:12, 52:3, 64:5, 68:11, 68:23, 69:23, 71:1, 71:9, 71:10, 71:14, 71:15, 74:15, 74:19, 75:19, 79:4, 93:12
**Juror** [37] - 23:24, 24:13, 25:3, 26:12, 27:13, 28:1, 39:8, 46:4, 49:19, 51:10, 53:3, 55:2, 57:18, 57:22, 60:4, 62:10, 64:16, 68:9, 68:15, 77:1, 77:14, 79:7, 79:13, 79:15, 81:12, 81:14, 81:16, 84:15, 85:21, 85:25, 91:20, 94:4, 94:8, 98:18, 98:21, 98:23, 100:4
**JUROR** [373] - 17:22, 18:4, 18:9, 18:11, 18:13, 18:16, 18:21, 19:3, 19:6, 19:9, 21:4, 21:7, 21:9, 22:10, 22:12, 22:20, 23:1, 23:3, 23:5, 23:9, 23:13, 23:17, 23:22, 23:24, 24:2, 24:4,

24:11, 24:13, 24:16,
24:22, 25:1, 25:3,
25:9, 25:11, 25:14,
25:17, 25:22, 26:6,
26:12, 26:14, 26:18,
26:21, 27:1, 27:8,
27:11, 27:13, 27:15,
27:23, 28:1, 28:5,
28:14, 28:20, 28:22,
28:24, 29:8, 29:11,
29:13, 29:15, 29:18,
29:23, 30:1, 30:3,
30:5, 30:9, 30:14,
30:18, 30:23, 30:25,
31:2, 31:8, 31:11,
31:15, 31:17, 31:20,
31:22, 31:24, 32:4,
32:8, 32:10, 32:12,
32:15, 32:22, 32:24,
33:3, 33:5, 33:8,
33:12, 33:14, 33:19,
34:7, 34:9, 34:14,
34:16, 34:25, 35:3,
35:6, 35:12, 35:19,
35:21, 35:23, 36:6,
36:8, 36:11, 36:16,
36:18, 36:24, 37:5,
37:8, 37:12, 37:15,
37:20, 37:24, 38:5,
38:7, 38:9, 38:14,
38:19, 38:21, 38:23,
39:5, 39:7, 39:11,
39:18, 39:22, 39:24,
40:3, 40:6, 40:9,
40:12, 40:14, 40:16,
40:20, 40:24, 41:3,
41:9, 41:14, 41:16,
41:21, 41:24, 42:1,
42:8, 42:10, 42:17,
42:20, 42:23, 43:4,
43:6, 43:9, 43:14,
43:19, 43:21, 43:24,
44:1, 44:3, 44:5,
44:10, 44:13, 44:17,
44:19, 44:21, 45:4,
45:6, 45:8, 45:12,
45:17, 45:19, 45:21,
46:2, 46:4, 46:6,
46:10, 46:14, 46:17,
46:22, 47:2, 47:4,
47:6, 47:11, 47:15,
47:19, 47:23, 48:4,
48:6, 48:11, 48:13,
48:15, 48:18, 48:21,
48:23, 48:25, 49:6,
49:13, 49:15, 49:20,
49:22, 50:4, 50:7,
50:10, 50:16, 50:18,
50:21, 51:7, 51:9,
52:4, 52:6, 52:8,
52:14, 52:16, 52:18,

52:22, 53:1, 53:3,
53:5, 53:10, 53:15,
53:17, 53:24, 54:2,
54:6, 54:10, 54:12,
54:20, 54:25, 55:2,
55:5, 55:11, 55:16,
55:18, 55:20, 55:22,
56:2, 56:6, 56:23,
57:1, 57:7, 57:16,
57:18, 57:20, 57:22,
57:24, 58:3, 58:7,
58:9, 58:12, 58:15,
58:18, 58:23, 60:4,
60:6, 60:10, 60:12,
60:18, 60:20, 60:22,
60:25, 61:2, 61:7,
61:10, 61:16, 61:22,
61:24, 62:24, 63:3,
63:6, 63:9, 63:11,
63:13, 63:16, 63:19,
63:21, 63:23, 64:3,
64:5, 64:14, 64:16,
64:22, 64:24, 65:3,
65:6, 65:9, 66:1,
66:16, 66:20, 66:24,
67:1, 67:3, 67:18,
67:24, 72:15, 77:19,
77:22, 77:25, 78:3,
78:6, 78:8, 78:11,
78:15, 78:25, 79:20,
79:24, 80:1, 80:8,
80:14, 80:19, 80:24,
81:3, 81:21, 82:1,
82:11, 82:15, 82:22,
83:5, 83:8, 83:10,
83:12, 83:15, 83:18,
83:22, 84:1, 84:10,
84:14, 85:24, 86:5,
86:12, 86:16, 86:18,
86:22, 87:2, 87:6,
87:13, 87:18, 87:21,
87:25, 88:19, 88:25,
89:2, 89:8, 89:14,
89:18, 89:24, 90:6,
90:14, 90:17, 91:2,
91:7, 91:12, 91:14,
91:19, 94:7, 94:13,
94:18, 94:21, 95:2,
95:8, 95:12, 95:14,
95:18, 95:21, 95:25,
96:4, 96:16, 96:21,
96:23, 97:11, 97:21,
98:1, 98:3, 98:11,
98:17, 99:2, 99:19,
99:23, 100:1
  **jurors** [10] - 10:17,
10:23, 15:15, 29:2,
69:11, 70:8, 85:8,
92:8, 92:23, 93:15
  **JURY** [1] - 1:10
  **jury** [48] - 10:19,

10:24, 11:2, 11:7,
11:16, 12:8, 12:17,
13:16, 13:19, 13:24,
14:4, 15:4, 15:5,
15:10, 15:15, 15:18,
15:23, 17:25, 47:14,
49:18, 59:7, 59:10,
61:19, 65:13, 65:16,
66:23, 69:12, 69:13,
69:14, 71:9, 71:12,
73:16, 73:18, 73:21,
74:4, 74:6, 74:7,
74:10, 74:13, 74:25,
76:23, 79:1, 79:2,
85:19, 93:9, 94:2,
99:18, 102:24
  **justice** [4] - 14:22,
17:4, 39:12, 92:20
  **Justice** [7] - 8:11,
22:3, 23:5, 23:7,
31:22, 42:11, 55:9

## K

  **KAREN** [1] - 1:14
  **Karen** [4] - 2:10,
13:2, 19:19, 20:7
  **KATHRYN** [1] - 1:14
  **Kathryn** [4] - 2:9,
13:1, 19:19, 20:5
  **keep** [4] - 5:25, 6:8,
14:15, 14:16
  **keeping** [1] - 13:12
  **kicked** [1] - 9:12
  **kids** [1] - 99:7
  **kind** [29] - 5:22,
10:16, 11:1, 26:3,
27:4, 28:18, 29:7,
30:19, 30:21, 35:15,
36:14, 57:12, 57:13,
60:17, 64:1, 64:10,
64:20, 66:13, 67:22,
70:11, 74:1, 76:15,
87:11, 88:12, 88:17,
96:10, 97:5, 99:6,
102:8
  **kinds** [1] - 92:23
  **knowledge** [21] -
8:15, 12:10, 15:16,
19:8, 36:3, 37:3,
39:16, 41:12, 45:1,
46:25, 47:21, 48:9,
52:24, 53:12, 54:4,
54:17, 80:25, 82:21,
90:3, 94:1, 95:10
  **knowledgeable** [1] -
19:4
  **knows** [1] - 84:25

## L

  **ladies** [5] - 13:10,
13:23, 14:6, 21:16,
23:16
  **large** [2] - 85:10,
93:18
  **large-scale** [1] -
93:18
  **larger** [1] - 15:7
  **last** [7] - 3:6, 3:7,
10:25, 18:5, 18:9,
18:13, 44:22
  **late** [3] - 6:7, 101:2,
101:3
  **Laughter** [1] - 34:6
  **law** [96] - 15:19,
18:13, 19:1, 19:5,
21:23, 21:24, 22:4,
22:6, 22:12, 22:23,
24:6, 24:7, 24:23,
28:16, 28:17, 29:3,
29:4, 29:5, 29:15,
30:17, 31:5, 32:2,
33:8, 33:25, 34:1,
34:10, 34:22, 34:23,
35:1, 35:8, 35:18,
35:23, 36:3, 36:4,
36:14, 37:2, 37:7,
37:22, 38:16, 38:17,
38:24, 39:2, 39:3,
39:16, 40:10, 41:12,
41:13, 42:2, 43:18,
44:15, 44:24, 45:1,
45:2, 45:16, 45:22,
45:25, 46:1, 46:12,
46:13, 46:25, 47:1,
47:8, 47:21, 47:22,
48:9, 48:16, 48:19,
49:4, 52:8, 52:13,
52:24, 53:12, 53:13,
54:3, 54:5, 54:17,
54:18, 55:13, 56:4,
60:16, 61:13, 65:20,
65:22, 66:4, 69:12,
69:13, 69:15, 69:21,
70:22, 92:11, 96:15
  **Law** [1] - 38:10
  **law's** [1] - 33:16
  **lawyer** [6] - 34:1,
36:11, 39:8, 46:7,
85:14
  **lawyers** [4] - 28:17,
39:9, 48:3, 49:25
  **leadership** [1] -
55:25
  **learned** [10] - 28:18,
36:15, 38:16, 39:3,
41:11, 43:17, 46:12,

49:4, 52:12, 93:10
  **least** [8] - 7:2, 7:10,
10:18, 14:11, 56:21,
67:9, 83:5, 103:25
  **leave** [2] - 53:23,
56:1
  **left** [3] - 9:11, 9:12,
76:5
  **legal** [7] - 34:22,
35:16, 37:1, 44:6,
69:18, 101:20, 102:10
  **legislative** [1] - 53:5
  **less** [4] - 49:23,
65:23, 80:14, 92:16
  **lesser** [1] - 65:16
  **letting** [1] - 4:24
  **Library** [4] - 34:11,
34:12, 60:22, 61:2
  **life** [1] - 102:1
  **life-sustaining** [1] -
102:1
  **likely** [1] - 65:23
  **LISA** [2] - 1:21, 105:3
  **Lisa** [1] - 105:12
  **list** [6] - 20:1, 21:3,
21:13, 100:24,
101:22, 104:1
  **listed** [1] - 102:9
  **listen** [1] - 76:2,
93:14, 97:21
  **listening** [2] - 68:1,
69:3
  **litigate** [1] - 47:7
  **litigation** [2] - 52:20,
55:8
  **live** [11] - 56:13,
56:18, 56:21, 57:1,
57:20, 58:3, 63:13,
63:21, 64:6, 64:17,
65:3
  **lived** [1] - 100:1
  **lives** [1] - 65:11
  **living** [1] - 64:10
  **LLC** [1] - 1:19
  **lobbying** [2] - 88:4,
89:25
  **locations** [1] - 97:18
  **lockdown** [1] - 61:11
  **long-term** [1] - 71:11
  **longest** [1] - 56:9
  **look** [3] - 26:2,
83:17, 84:9
  **looked** [1] - 72:12
  **looking** [1] - 11:4
  **looks** [1] - 41:23
  **lost** [1] - 62:20
  **lotion** [1] - 102:8
  **lotions** [1] - 102:15
  **LOUIS** [1] - 1:6
  **Louis** [1] - 99:3

**Louisiana** [1] - 29:18
**Louisville** [1] - 43:10
**Lovells** [1] - 43:22
**low** [1] - 66:2
**lunch** [12] - 75:5, 75:10, 75:12, 76:8, 76:9, 76:11, 76:21, 81:10, 84:13, 91:18, 98:16
**luncheon** [1] - 104:9

## M

**ma'am** [71] - 17:19, 17:21, 18:2, 19:11, 26:13, 26:17, 27:12, 27:14, 27:20, 30:4, 30:24, 31:1, 31:4, 31:7, 32:11, 33:4, 35:11, 35:20, 35:22, 38:20, 38:22, 39:6, 39:10, 39:23, 40:2, 40:5, 40:13, 41:20, 42:16, 42:21, 44:20, 46:5, 46:9, 46:16, 47:5, 47:18, 47:24, 53:4, 53:23, 54:11, 55:1, 55:4, 55:19, 55:21, 56:1, 56:7, 57:19, 57:23, 60:5, 60:9, 61:1, 61:6, 61:17, 62:8, 63:5, 63:10, 63:20, 64:19, 65:2, 66:19, 67:2, 68:8, 77:16, 78:22, 79:22, 81:9, 99:1, 99:17
**Main** [1] - 31:22
**main** [1] - 61:8
**man** [1] - 88:14
**manage** [1] - 66:5
**manageable** [1] - 83:22
**management** [1] - 78:11
**mandate** [2] - 10:1, 10:4
**manner** [3] - 72:20, 73:1, 96:3
**march** [1] - 96:25
**married** [1] - 41:17
**marshal** [2] - 8:7, 12:14
**MARSHAL** [5] - 2:21, 3:14, 3:17, 6:3, 6:6
**Marshal** [1] - 100:17
**Marshall** [1] - 58:19
**marshals** [5] - 5:8,

5:24, 8:9, 8:11, 103:11
**Marshals** [4] - 8:6, 8:8, 101:6, 101:12
**mask** [2] - 4:2, 9:18
**masked** [2] - 10:23, 14:17
**masks** [2] - 9:17, 14:10
**Massachusetts** [1] - 36:12
**Massengale** [1] - 20:20
**materials** [1] - 3:5
**matter** [1] - 8:2
**matters** [1] - 75:8
**Matthew** [1] - 20:15
**McFADDEN** [1] - 1:10
**mean** [5] - 21:24, 56:18, 57:10, 66:2, 73:20
**meant** [1] - 89:4
**meantime** [2] - 5:24, 6:12
**media** [6] - 68:1, 68:24, 68:25, 69:7, 87:8, 90:4
**medication** [1] - 78:11
**medications** [4] - 101:25, 102:3, 102:4
**meet** [6] - 5:6, 5:9, 6:1, 6:11, 8:3, 88:15
**Melatonin** [1] - 102:8
**member** [9] - 33:23, 45:21, 71:8, 82:2, 85:18, 85:19, 87:22, 87:24, 87:25
**members** [8] - 21:17, 28:24, 35:3, 54:18, 59:10, 70:9, 71:17, 71:22
**memory** [1] - 18:14
**mention** [1] - 14:7
**merely** [1] - 93:9
**message** [1] - 4:12
**Metro** [1] - 78:17
**Metropolitan** [3] - 67:12, 67:13, 67:17
**Michael** [1] - 20:9
**Michelle** [2] - 79:9, 100:18
**microphone** [5] - 11:20, 16:13, 54:8, 77:7, 77:8
**middle** [3] - 22:24, 59:1, 76:7
**might** [13] - 6:15, 8:14, 19:18, 27:6,

38:3, 39:20, 41:5, 43:14, 60:17, 64:10, 64:12, 90:15, 92:25
**military** [1] - 25:11
**mind** [1] - 41:11
**minute** [1] - 74:22
**minutes** [3] - 75:16, 78:9, 78:10
**misimpression** [1] - 9:4
**missed** [1] - 33:21
**missing** [1] - 2:18
**misstate** [1] - 98:8
**misunderstood** [1] - 2:24
**moment** [4] - 63:1, 70:3, 70:16, 76:1
**moments** [3] - 39:15, 42:4, 60:15
**Monique** [1] - 20:14
**months** [2] - 34:17, 82:16
**Moore** [1] - 20:14
**moral** [1] - 74:16
**MORNING** [1] - 1:4
**morning** [46] - 2:1, 2:2, 2:3, 2:12, 2:13, 2:14, 2:16, 2:17, 7:11, 7:14, 12:20, 13:4, 13:5, 13:6, 13:8, 13:9, 13:10, 13:13, 20:4, 23:2, 33:5, 36:8, 36:10, 37:12, 38:21, 39:7, 41:24, 41:25, 42:10, 43:6, 43:21, 48:4, 48:13, 53:3, 54:10, 55:2, 56:23, 57:3, 57:8, 58:15, 58:17, 73:24, 101:3, 102:19, 104:11
**most** [7] - 13:15, 16:22, 29:3, 42:13, 71:11, 72:4, 72:11
**mostly** [2] - 5:3, 53:7
**mother** [3] - 24:16, 48:15, 79:20
**mother's** [1] - 24:19
**motion** [6] - 51:11, 62:11, 84:17, 91:22, 93:20, 94:3
**motives** [1] - 98:10
**move** [6] - 13:17, 51:12, 51:24, 68:10, 75:24, 76:17
**moving** [2] - 21:16, 93:4
**MPD** [3] - 31:20, 67:5
**MR** [75] - 2:3, 2:14, 2:17, 2:20, 2:24, 3:3, 3:5, 3:23, 4:1, 4:4,

4:14, 4:16, 4:21, 5:4, 5:11, 6:14, 8:18, 9:7, 9:10, 9:15, 10:9, 11:10, 11:14, 13:6, 21:14, 32:16, 50:24, 51:2, 51:14, 51:18, 51:22, 59:2, 59:8, 59:15, 59:18, 59:22, 60:1, 62:7, 62:12, 62:18, 62:20, 68:5, 68:13, 68:16, 68:18, 75:3, 75:13, 75:20, 78:21, 79:4, 79:6, 81:8, 83:2, 83:6, 83:9, 83:11, 83:13, 83:16, 83:19, 83:23, 84:3, 84:18, 90:21, 91:3, 91:11, 91:13, 91:16, 91:23, 97:15, 97:23, 98:6, 98:12, 99:16, 100:13, 104:4
**MS** [61] - 2:2, 2:9, 2:13, 3:20, 5:14, 6:15, 6:18, 8:5, 8:13, 9:20, 11:6, 11:16, 11:19, 12:3, 12:6, 12:10, 13:1, 18:1, 18:7, 18:25, 19:4, 19:7, 20:4, 20:23, 50:13, 50:17, 50:19, 50:23, 51:3, 51:12, 51:25, 59:23, 62:5, 62:13, 66:25, 67:13, 68:7, 68:10, 68:19, 75:8, 78:19, 81:6, 82:25, 84:6, 84:11, 85:4, 89:12, 89:15, 89:19, 90:3, 90:7, 90:19, 92:7, 92:21, 98:14, 99:14, 100:8, 100:12, 100:15, 103:9, 103:13
**mugged** [1] - 79:21
**multiple** [1] - 26:7
**must** [2] - 69:12, 102:12
**Myers** [1] - 20:13

## N

**name** [4] - 19:10, 20:5, 30:13, 32:21
**names** [3] - 19:24, 20:2, 20:25
**National** [1] - 47:16
**national** [2] - 52:9, 93:18
**national-reach** [1] - 93:18
**Naval** [3] - 20:12, 30:7, 30:11

**NCIS** [2] - 30:5, 30:20
**near** [5] - 56:13, 56:18, 56:22, 64:17, 65:12
**necessarily** [1] - 93:5
**Neck** [1] - 19:22
**need** [15] - 3:23, 4:8, 9:18, 10:20, 11:12, 12:4, 13:11, 16:9, 34:3, 70:1, 71:4, 75:2, 79:2, 99:18, 99:19
**needed** [1] - 103:20
**needs** [2] - 75:17, 100:23
**neglected** [1] - 10:10
**neutral** [1] - 84:21
**never** [4] - 9:12, 45:22, 91:24, 92:3
**new** [2] - 11:5, 71:5
**New** [4] - 19:22, 22:13, 27:17, 49:2
**news** [11] - 21:10, 25:24, 69:4, 72:9, 82:15, 87:12, 92:24, 94:22, 94:24, 95:4, 96:23
**newscasts** [1] - 87:8
**newspaper** [1] - 69:3
**next** [11] - 21:16, 21:17, 40:25, 52:3, 62:23, 69:24, 73:14, 73:22, 75:10, 75:24, 99:21
**night** [2] - 8:21, 9:1
**none** [1] - 98:11
**nonprofit** [1] - 34:10
**nonprofits** [1] - 44:22
**noon** [1] - 74:21
**normal** [1] - 9:2
**normally** [1] - 57:2
**North** [1] - 1:19, 28:25
**Northwest** [3] - 1:16, 1:23, 105:14
**note** [5] - 7:2, 16:8, 69:22, 96:6, 101:5
**noted** [1] - 103:19
**notes** [2] - 101:25, 105:5
**nothing** [4] - 12:8, 16:23, 41:9, 76:13
**notion** [3] - 29:7, 90:13, 92:17
**notions** [1] - 26:4
**number** [16] - 16:5, 16:14, 17:21, 21:2, 22:9, 22:10, 35:24,

62:18, 69:23, 69:25, 70:2, 79:4, 82:17, 84:22, 90:23
**numerous** [1] - 28:7

# O

**oath** [1] - 15:24
**objection** [5] - 62:13, 62:14, 68:14, 78:18, 93:15
**objective** [1] - 90:25
**objectively** [2] - 84:2, 84:9
**observe** [5] - 10:19, 14:12, 29:6, 66:11, 67:21
**obstruction** [2] - 17:4, 17:5
**obviously** [23] - 4:8, 6:23, 23:12, 23:14, 24:23, 25:24, 26:7, 28:15, 29:2, 32:19, 39:13, 42:4, 53:11, 54:21, 56:17, 59:11, 66:7, 72:3, 73:20, 76:12, 86:9, 90:21, 93:18
**occurred** [2] - 17:11, 92:3
**occurring** [5] - 73:7, 73:8, 73:12, 88:24, 96:20
**Ochilov** [1] - 20:11
**OF** [4] - 1:1, 1:3, 1:10, 1:15
**offenses** [1] - 17:3
**Office** [8] - 6:12, 6:23, 29:18, 32:14, 46:18, 47:15, 61:5, 102:20
**office** [14] - 22:15, 23:25, 32:23, 34:1, 34:13, 35:25, 41:8, 64:24, 67:5, 79:1, 79:3, 80:15, 82:2, 99:18
**OFFICE** [1] - 1:15
**officer** [13] - 24:17, 25:4, 27:4, 29:16, 30:17, 31:3, 31:6, 33:9, 65:14, 65:18, 65:19, 65:22, 66:8
**Officer** [3] - 20:14, 20:15, 21:6
**officers** [17] - 21:25, 22:16, 22:17, 24:7, 24:8, 24:24, 27:3, 27:16, 29:4, 29:6,

102:11
**panel** [6] - 12:17, 14:4, 37:16, 39:12, 76:23, 102:24
**parading** [1] - 17:9
**paralegal** [1] - 35:25
**parameters** [2] - 74:1, 74:3
**pardon** [1] - 95:13
**Park** [1] - 22:2
**Parks** [1] - 29:19
**part** [7] - 16:10, 34:20, 40:18, 59:11, 85:10, 88:4, 92:14
**participants** [1] - 15:21
**participate** [2] - 74:6, 89:9
**participated** [1] - 27:18
**participating** [1] - 91:10
**participation** [1] - 16:5
**particular** [5] - 74:20, 85:13, 92:22, 96:9, 97:19
**parties** [4] - 9:16, 14:8, 15:14, 26:4
**pass** [5] - 41:6, 54:8, 60:7, 63:14
**passed** [1] - 88:1
**past** [3] - 6:3, 37:15, 57:2
**patent** [2] - 42:2, 42:6
**Paul** [1] - 20:16
**pause** [1] - 87:19
**pen** [1] - 16:9
**pencils** [1] - 69:23
**pending** [1] - 67:5
**Pennsylvania** [1] - 1:20
**pens** [1] - 69:23
**people** [17] - 9:17, 16:24, 19:23, 29:3, 34:3, 49:23, 70:19, 75:5, 76:14, 84:25, 85:9, 88:11, 91:9, 92:15, 93:3, 97:1, 97:17
**peremptories** [1] - 85:12
**peremptory** [1] - 85:13
**perfectly** [1] - 4:18
**perhaps** [2] - 27:5, 74:16
**permit** [2] - 101:7, 102:13

**permitted** [2] - 101:21, 102:3
**person** [3] - 66:12, 66:13
**person's** [1] - 65:21
**personal** [16] - 4:23, 8:15, 21:18, 21:21, 69:17, 69:19, 70:11, 71:18, 71:23, 72:2, 72:6, 81:19, 82:1, 82:5, 92:24, 98:9
**personally** [1] - 85:7
**perspective** [3] - 8:1, 83:24, 93:24
**phase** [1] - 75:25
**phew** [1] - 42:24
**philosophical** [1] - 74:16
**phone** [1] - 102:7
**physical** [2] - 74:9, 74:12
**pick** [2] - 13:19, 99:8
**picketing** [1] - 17:9
**pills** [1] - 102:9
**place** [3] - 23:18, 48:3, 62:20
**placed** [1] - 103:2
**places** [1] - 38:13
**Plaintiff** [1] - 1:4
**plaintiff's** [2] - 86:7, 86:10
**plenty** [1] - 39:13
**plus** [1] - 15:13
**podcast** [1] - 69:4
**podcasts** [1] - 68:25
**podium** [4] - 3:24, 77:5, 77:9, 77:16
**point** [6] - 8:17, 8:18, 51:24, 93:2, 93:24, 103:13
**points** [1] - 90:24
**police** [26] - 21:24, 21:25, 22:16, 24:16, 25:4, 27:3, 27:4, 31:3, 31:18, 31:19, 33:9, 62:1, 65:14, 65:18, 65:19, 65:22, 66:7, 66:8, 67:6, 67:16, 68:2, 70:22, 80:4, 80:5, 86:4
**Police** [5] - 20:14, 22:2, 67:12, 67:13, 67:17
**policy** [4] - 101:6, 101:19, 102:10, 103:3
**position** [2] - 7:18, 92:2
**positive** [2] - 14:18, 15:11
**possible** [5] - 3:9,

12:12, 13:18, 13:24, 83:23
**possibly** [2] - 73:19, 73:22
**posted** [1] - 101:19
**posting** [1] - 69:6
**potentially** [1] - 93:1
**Potomac** [2] - 77:20, 78:15
**practical** [1] - 8:2
**practically** [1] - 5:1
**practice** [7] - 9:3, 40:3, 40:22, 48:7, 50:8, 52:9, 52:19
**practiced** [1] - 45:22
**practices** [1] - 49:1
**practicing** [1] - 45:23
**practitioner** [1] - 37:10
**preceding** [1] - 96:24
**preconceived** [4] - 26:3, 29:7, 90:13, 92:17
**prefer** [1] - 3:11
**preliminary** [1] - 11:1
**presence** [8] - 17:25, 47:14, 49:18, 59:7, 61:19, 66:23, 74:25, 100:19
**present** [3] - 61:4, 61:24, 97:24
**presented** [6] - 15:19, 92:11, 92:12, 96:5, 97:16, 97:22
**president** [1] - 88:2
**presumably** [1] - 51:21
**presumption** [1] - 97:5
**previous** [1] - 71:9
**previously** [3] - 23:11, 103:17, 104:5
**primarily** [2] - 55:10, 87:11
**principles** [1] - 69:12
**prison** [3] - 4:7, 5:5, 5:6
**prisons** [1] - 8:25
**privacy** [1] - 40:4
**private** [7] - 16:18, 16:23, 40:3, 48:6, 54:14, 70:18, 77:10
**privately** [3] - 11:15, 12:14, 16:21
**problem** [7] - 3:6, 3:13, 28:8, 74:9, 74:12, 92:22, 95:15
**problems** [1] - 99:10
**proceed** [1] - 14:3

32:3, 66:7, 67:12, 67:14, 67:16, 67:20
**offices** [2] - 22:1, 22:3
**official** [3] - 17:4, 17:5, 105:12
**Official** [1] - 1:22
**once** [3] - 51:17, 70:4, 76:9
**one** [28] - 5:21, 9:25, 14:7, 16:12, 32:19, 39:21, 44:23, 45:8, 49:12, 52:5, 54:23, 55:19, 56:17, 67:9, 67:10, 70:7, 73:15, 75:13, 76:3, 79:10, 84:19, 93:25, 94:24, 98:20, 102:7, 103:13, 103:17
**online** [1] - 101:19
**open** [7] - 19:14, 48:1, 52:2, 60:3, 62:22, 68:21, 75:23
**operating** [1] - 99:5
**operations** [2] - 102:22, 102:25
**opinions** [4] - 72:19, 72:25, 73:4, 96:6
**opportunity** [3] - 3:8, 70:16, 93:9
**opposite** [1] - 92:19
**option** [1] - 8:6
**order** [6] - 5:23, 6:24, 7:24, 8:8, 76:2, 77:4
**ordering** [1] - 5:19
**organization** [1] - 52:10
**Orleans** [1] - 22:13
**otherwise** [2] - 83:7, 98:10
**outlets** [1] - 87:8
**outpaced** [1] - 50:15
**outset** [1] - 15:9
**outside** [9] - 17:25, 21:25, 47:14, 49:18, 59:7, 61:19, 66:23, 74:25, 94:1
**overall** [1] - 85:14
**overreach** [1] - 51:5
**overreached** [1] - 50:22
**own** [3] - 37:3, 54:4, 90:3

# P

**p.m** [1] - 76:24
**page** [1] - 95:3
**Pages** [2] - 101:21,

**proceeding** [2] - 17:4, 17:5
**proceedings** [31] - 12:16, 12:18, 17:24, 19:13, 47:13, 47:25, 49:17, 52:1, 59:6, 60:2, 61:18, 62:21, 66:22, 68:20, 74:24, 75:22, 76:24, 77:15, 79:8, 79:14, 81:13, 81:15, 84:16, 85:22, 91:21, 94:5, 98:19, 98:22, 100:5, 104:10, 105:6
**process** [3] - 15:20, 18:9, 99:3
**procurement** [1] - 53:7
**produced** [1] - 105:6
**professional** [4] - 72:2, 72:6, 81:19, 88:2
**program** [2] - 26:18, 35:8
**prohibited** [2] - 101:22, 102:9
**property** [2] - 23:10, 54:13
**proprietor** [1] - 39:11
**prosecution** [1] - 42:2
**prosecutor** [5] - 42:6, 42:19, 43:13, 45:11, 70:22
**prosecutor's** [2] - 23:12, 41:8
**prosecutors** [8] - 22:15, 22:16, 38:2, 50:14, 50:15, 50:19, 50:22, 51:4
**prosecutors'** [1] - 22:1
**PROSPECTIVE** [373] - 17:22, 18:4, 18:9, 18:11, 18:13, 18:16, 18:21, 19:3, 19:6, 19:9, 21:4, 21:7, 21:9, 22:10, 22:12, 22:20, 23:1, 23:3, 23:5, 23:9, 23:13, 23:17, 23:22, 23:24, 24:2, 24:4, 24:11, 24:13, 24:16, 24:22, 25:1, 25:3, 25:9, 25:11, 25:14, 25:17, 25:22, 26:6, 26:12, 26:14, 26:18, 26:21, 27:1, 27:8, 27:11, 27:13, 27:15, 27:23, 28:1, 28:5, 28:14, 28:20, 28:22,

28:24, 29:8, 29:11, 29:13, 29:15, 29:18, 29:23, 30:1, 30:3, 30:5, 30:9, 30:14, 30:18, 30:23, 30:25, 31:2, 31:8, 31:11, 31:15, 31:17, 31:20, 31:22, 31:24, 32:4, 32:8, 32:10, 32:12, 32:15, 32:22, 32:24, 33:3, 33:5, 33:8, 33:12, 33:14, 33:19, 34:7, 34:9, 34:14, 34:16, 34:25, 35:3, 35:6, 35:12, 35:19, 35:21, 35:23, 36:6, 36:8, 36:11, 36:16, 36:18, 36:24, 37:5, 37:8, 37:12, 37:15, 37:20, 37:24, 38:5, 38:7, 38:9, 38:14, 38:19, 38:21, 38:23, 39:5, 39:7, 39:11, 39:18, 39:22, 39:24, 40:3, 40:6, 40:9, 40:12, 40:14, 40:16, 40:20, 40:24, 41:3, 41:9, 41:14, 41:16, 41:21, 41:24, 42:1, 42:8, 42:10, 42:17, 42:20, 42:23, 43:4, 43:6, 43:9, 43:14, 43:19, 43:21, 43:24, 44:1, 44:3, 44:5, 44:10, 44:13, 44:17, 44:19, 44:21, 45:4, 45:6, 45:8, 45:12, 45:17, 45:19, 45:21, 46:2, 46:4, 46:6, 46:10, 46:14, 46:17, 46:22, 47:2, 47:4, 47:6, 47:11, 47:15, 47:19, 47:23, 48:4, 48:6, 48:11, 48:13, 48:15, 48:18, 48:21, 48:23, 48:25, 49:6, 49:13, 49:15, 49:20, 49:22, 50:4, 50:7, 50:10, 50:16, 50:18, 50:21, 51:7, 51:9, 52:4, 52:6, 52:8, 52:14, 52:16, 52:18, 52:22, 53:1, 53:3, 53:5, 53:10, 53:15, 53:17, 53:24, 54:2, 54:6, 54:10, 54:12, 54:20, 54:25, 55:2, 55:5, 55:11, 55:16, 55:18, 55:20, 55:22, 56:2, 56:6, 56:23, 57:1, 57:7, 57:16,

57:18, 57:20, 57:22, 57:24, 58:3, 58:7, 58:9, 58:12, 58:15, 58:18, 58:23, 60:4, 60:6, 60:10, 60:12, 60:18, 60:20, 60:22, 60:25, 61:2, 61:7, 61:10, 61:16, 61:22, 61:24, 62:24, 63:3, 63:6, 63:9, 63:11, 63:13, 63:16, 63:19, 63:21, 63:23, 64:3, 64:5, 64:14, 64:16, 64:22, 64:24, 65:3, 65:6, 65:9, 66:1, 66:16, 66:20, 66:24, 67:1, 67:3, 67:18, 67:24, 72:15, 77:19, 77:22, 77:25, 78:3, 78:6, 78:8, 78:11, 78:15, 78:25, 79:20, 79:24, 80:1, 80:8, 80:14, 80:19, 80:24, 81:3, 81:21, 82:1, 82:11, 82:15, 82:22, 83:5, 83:8, 83:10, 83:12, 83:15, 83:18, 83:22, 84:1, 84:10, 84:14, 85:24, 86:5, 86:12, 86:16, 86:18, 86:22, 87:2, 87:6, 87:13, 87:18, 87:21, 87:25, 88:19, 88:25, 89:2, 89:8, 89:14, 89:18, 89:24, 90:6, 90:14, 90:17, 91:2, 91:7, 91:12, 91:14, 91:19, 94:7, 94:13, 94:18, 94:21, 95:2, 95:8, 95:12, 95:14, 95:18, 95:21, 95:25, 96:4, 96:16, 96:21, 96:23, 97:11, 97:21, 98:1, 98:3, 98:11, 98:17, 99:2, 99:19, 99:23, 100:1
**prospective** [3] - 12:17, 14:4, 76:23
**Prospective** [14] - 51:10, 62:10, 68:9, 77:14, 79:7, 79:13, 81:12, 81:14, 84:15, 91:20, 94:4, 98:18, 98:21, 100:4
**protect** [2] - 14:21, 15:12
**protection** [2] - 25:5, 25:18
**protocols** [1] - 15:8
**prove** [2] - 97:6, 98:5

**provide** [1] - 25:18
**provides** [1] - 26:3
**psychiatrist** [1] - 77:20
**public** [2] - 54:14, 70:10
**publicly** [1] - 16:24
**purpose** [3] - 15:15, 69:2, 97:11
**purposes** [3] - 45:14, 97:12, 104:6
**put** [50] - 26:3, 28:18, 29:7, 34:21, 35:14, 35:17, 36:2, 36:14, 37:21, 38:4, 38:16, 39:15, 41:10, 41:12, 43:17, 44:14, 44:25, 45:15, 45:24, 46:11, 46:24, 47:21, 48:8, 49:3, 52:12, 52:23, 53:12, 54:4, 54:16, 55:14, 56:3, 56:16, 63:25, 67:19, 69:23, 78:23, 80:20, 82:5, 84:8, 85:6, 85:14, 87:14, 90:9, 90:10, 92:13, 93:14, 95:4, 95:22, 100:10, 102:4
**putting** [6] - 38:1, 72:17, 72:23, 73:3, 96:2, 104:1

**Q**

**questioned** [1] - 92:1
**questions** [28] - 15:22, 16:11, 16:22, 18:24, 21:16, 21:17, 31:4, 39:14, 50:12, 50:23, 51:2, 62:4, 62:6, 67:10, 68:4, 68:6, 69:24, 70:3, 70:5, 71:5, 82:24, 84:3, 84:7, 89:11, 97:14, 98:13, 98:14, 99:13
**quick** [1] - 16:1
**quickly** [2] - 12:12, 13:17
**quiet** [1] - 76:16
**quite** [1] - 38:3

**R**

**radio** [2] - 68:25, 69:3
**radius** [1] - 56:17
**raise** [8] - 11:3, 16:12, 17:17, 22:6,

56:15, 65:25, 69:10, 103:14
**raises** [1] - 103:21
**raising** [1] - 67:8
**rally** [3] - 89:2, 93:3, 96:24
**rather** [2] - 8:4, 37:3
**rationales** [1] - 97:17
**Rayburn** [2] - 61:3, 61:5
**Raymond** [1] - 20:15
**razor** [2] - 3:9, 3:10
**RDR** [3] - 1:21, 105:3, 105:12
**reach** [2] - 15:18, 93:18
**read** [8] - 16:1, 21:12, 76:15, 80:21, 91:7, 93:17, 95:23, 96:24
**reading** [5] - 20:1, 56:10, 56:11, 69:2, 69:6
**ready** [3] - 3:19, 3:20, 3:22
**real** [2] - 61:25, 80:3
**realistically** [2] - 73:21, 78:13
**realtime** [1] - 80:15
**reason** [50] - 16:17, 27:2, 29:4, 29:20, 29:24, 30:19, 31:5, 31:9, 31:25, 32:5, 36:2, 36:13, 37:2, 37:25, 39:19, 41:10, 41:14, 43:16, 43:19, 44:11, 44:25, 45:24, 46:11, 46:24, 47:20, 47:23, 48:8, 49:3, 49:7, 49:11, 52:11, 52:23, 53:12, 54:3, 54:16, 55:13, 56:3, 66:10, 74:14, 74:16, 74:18, 77:3, 86:11, 86:14, 89:8, 90:9, 90:11, 90:16, 97:19, 99:13
**reasons** [2] - 69:15, 90:8
**reassuring** [1] - 92:10
**rebut** [1] - 92:19
**receive** [2] - 72:21, 73:2
**received** [4] - 16:8, 40:20, 92:3, 102:23
**recent** [1] - 14:18
**recently** [1] - 86:8
**recess** [2] - 12:15, 104:9
**recognize** [5] -

20:24, 30:12, 32:21, 42:24, 80:17
**recognizing** [1] - 82:7
**recollect** [1] - 89:24
**record** [8] - 2:8, 4:13, 11:5, 11:15, 12:25, 100:10, 103:16, 103:18
**records** [2] - 20:18, 20:20
**Reed** [2] - 25:7, 25:9
**regard** [3] - 69:1, 92:5, 97:25
**regardless** [1] - 38:3
**regular** [1] - 56:19
**regulatory** [1] - 55:23
**rehab** [1] - 51:23
**rehabilitation** [1] - 51:20
**rehash** [1] - 11:4
**relate** [1] - 21:17
**related** [5] - 16:5, 94:23, 96:7, 96:8, 102:14
**relates** [2] - 28:6, 28:10
**relationship** [1] - 32:6
**relationships** [2] - 31:25, 32:1
**relative** [1] - 54:22
**relatively** [2] - 93:24, 93:25
**relatives** [1] - 66:7
**relayed** [1] - 101:14
**reliving** [1] - 83:20
**relocating** [1] - 99:2
**rely** [1] - 100:21
**remain** [2] - 10:23, 14:17
**remaining** [1] - 17:6
**remanded** [1] - 7:19
**remember** [9] - 18:10, 18:16, 19:9, 19:10, 33:23, 57:13, 60:17, 64:21, 66:14
**remind** [1] - 81:24
**remotely** [2] - 58:13, 59:24
**removed** [1] - 21:20
**repeatedly** [1] - 92:10
**rephrase** [1] - 89:20
**REPORTED** [1] -

1:21
**reported** [1] - 93:19
**Reporter** [2] - 1:22, 105:12
**reporter** [5] - 11:20, 28:6, 28:19, 42:5, 95:2
**reporters** [1] - 95:4
**reports** [1] - 25:25
**representation** [2] - 8:19, 50:6
**representations** [7] - 6:16, 7:25, 8:8, 9:22, 9:23, 10:8, 11:23
**Representatives** [4] - 20:20, 53:20, 64:8, 81:22
**represented** [3] - 19:18, 19:20, 23:15
**request** [2] - 6:20, 6:24
**requested** [1] - 101:9
**required** [1] - 10:6
**research** [2] - 55:7, 76:15
**reservations** [1] - 69:8
**Reserves** [2] - 25:5, 25:18
**resident** [1] - 19:21
**residents** [3] - 13:15, 33:22, 71:12
**resolve** [2] - 12:5, 93:15
**resolved** [1] - 104:2
**resources** [3] - 50:15, 50:19, 51:1
**respect** [5] - 88:6, 98:3, 101:12, 101:19, 101:20
**respectfully** [1] - 8:5
**response** [4] - 68:13, 83:6, 83:9, 83:17
**responsibility** [1] - 74:5
**responsible** [1] - 7:22
**responsive** [1] - 71:6
**restricted** [2] - 17:6, 17:8
**restroom** [1] - 75:2
**result** [1] - 19:8
**resume** [1] - 75:6
**retired** [9] - 27:16, 33:8, 48:15, 79:7, 81:12, 84:15, 91:20, 98:18, 100:4
**return** [1] - 99:18
**returns** [3] - 51:10, 62:10, 68:9

**rid** [1] - 3:7
**ring** [1] - 19:24
**rise** [1] - 14:18
**robbery** [1] - 94:14
**role** [1] - 24:3
**Room** [1] - 1:24
**room** [3] - 9:11, 15:7, 70:9
**rooms** [1] - 15:5
**row** [1] - 22:25
**Rules** [1] - 58:9
**rules** [5] - 69:13, 69:15, 69:16, 103:2, 103:4
**run** [1] - 75:17

### S

**Saturday** [1] - 7:9
**saw** [11] - 3:7, 4:12, 15:8, 19:1, 22:24, 61:25, 63:25, 65:8, 80:16, 87:9, 97:1
**scale** [1] - 93:18
**schedule** [1] - 74:23
**scheduling** [1] - 99:12
**school** [5] - 22:12, 29:16, 33:25, 52:9, 57:25
**School** [1] - 38:10
**Schumer** [1] - 63:6
**Schwager** [1] - 20:18
**screening** [1] - 44:6
**search** [2] - 101:18, 102:6
**seat** [6] - 15:1, 19:12, 51:10, 62:8, 62:10, 68:9
**seated** [1] - 75:5
**seats** [1] - 70:5
**second** [8] - 9:17, 21:3, 21:20, 24:14, 28:3, 50:18, 59:4, 60:17
**second-guess** [1] - 60:17
**secondly** [1] - 54:21
**Secret** [2] - 20:16, 22:3
**Secretary** [1] - 20:17
**section** [5] - 22:7, 22:22, 22:24, 59:1, 102:10
**securities** [1] - 52:20
**Security** [4] - 22:3, 26:15, 33:10, 45:9
**see** [16] - 4:5, 4:7, 6:18, 7:8, 7:11, 7:13,

9:1, 10:11, 17:23, 27:3, 27:10, 73:16, 87:12, 90:23, 101:2, 104:8
**seeing** [3] - 19:25, 21:12, 56:20
**seem** [3] - 10:21, 66:13, 93:14
**sees** [1] - 85:1
**SEIFERT** [54] - 1:14, 2:2, 6:15, 6:18, 8:5, 8:13, 9:20, 11:16, 11:19, 12:3, 12:6, 12:10, 18:1, 18:7, 18:25, 19:4, 19:7, 50:13, 50:17, 56:19, 50:23, 51:3, 51:12, 51:25, 59:23, 62:5, 62:13, 66:25, 67:13, 68:7, 68:10, 68:19, 75:8, 78:19, 81:6, 82:25, 84:6, 84:11, 85:4, 89:12, 89:15, 89:19, 90:3, 90:7, 90:19, 92:7, 92:21, 98:14, 99:14, 100:8, 100:12, 100:15, 103:9, 103:13
**Seifert** [12] - 2:11, 12:7, 13:3, 13:5, 19:20, 20:7, 32:19, 77:6, 78:18, 85:3, 89:11, 99:13
**select** [2] - 15:15, 15:18
**selected** [2] - 15:4, 68:23
**selecting** [1] - 15:23
**selection** [2] - 13:24, 15:15
**Senate** [6] - 20:17, 20:18, 20:19, 55:24, 56:1, 89:16
**Senator** [1] - 63:6
**send** [1] - 100:25
**sense** [2] - 8:3, 56:18
**sensitive** [1] - 16:18
**sent** [1] - 1:1
**separate** [1] - 91:14
**series** [1] - 15:21
**serve** [2] - 74:10, 74:13
**served** [1] - 99:24
**service** [3] - 13:16, 74:6, 74:7
**Service** [8] - 8:6, 8:8, 20:12, 20:16, 22:4, 30:12, 101:6, 101:12
**Services** [1] - 30:8
**session** [1] - 104:11

**SESSION** [1] - 1:4
**set** [2] - 90:12, 92:25
**seven** [1] - 26:15
**several** [10] - 22:25, 28:24, 38:24, 42:2, 44:5, 80:9, 87:7, 89:13, 101:22, 101:25
**shall** [2] - 83:20, 90:24
**share** [1] - 101:14
**shave** [3] - 3:8, 100:16, 100:20, 100:23, 103:15, 103:20
**shaved** [5] - 3:1, 3:6, 3:12, 3:16, 12:12
**shaving** [2] - 3:5, 101:7
**Shephard** [2] - 20:15, 21:6
**shephard** [1] - 21:5
**sheriff's** [2] - 22:3, 26:16
**short** [1] - 15:17
**shorter** [2] - 73:15, 74:4
**shown** [1] - 84:23
**shut** [1] - 58:25
**sick** [1] - 15:10
**side** [14] - 5:22, 6:13, 15:17, 19:25, 23:12, 31:14, 39:21, 41:23, 49:12, 76:5, 76:10, 87:23, 104:1
**sidebar** [7] - 17:25, 47:14, 49:18, 59:7, 61:19, 66:23, 74:25
**sides** [23] - 22:19, 23:21, 24:10, 24:21, 26:25, 27:22, 28:13, 29:10, 29:25, 30:22, 31:10, 32:6, 33:2, 33:18, 38:1, 42:7, 43:3, 44:12, 80:7, 81:2, 86:25, 94:17, 95:11
**similar** [1] - 82:19
**simply** [1] - 65:17
**sister** [7] - 26:15, 26:19, 27:6, 35:7, 54:12, 54:14, 79:20
**sister's** [1] - 26:23
**sit** [5] - 74:5, 74:15, 74:19, 75:25, 76:1
**sites** [1] - 69:7
**sitting** [1] - 10:16
**situation** [1] - 5:16
**six** [1] - 53:20
**small** [1] - 15:5
**Smithsonian** [3] -

57:24, 57:25, 60:7
**so..** [1] - 50:1
**social** [2] - 68:25, 69:7
**software** [1] - 33:14
**sole** [2] - 39:11, 69:11
**solely** [1] - 15:18
**solution** [1] - 6:10
**someone** [13] - 22:5, 27:25, 60:15, 72:1, 72:5, 79:17, 81:18, 85:18, 86:2, 86:19, 89:9, 94:10, 94:19
**sometimes** [4] - 49:23, 50:4, 50:21, 51:4
**son** [2] - 25:16, 77:19
**soon** [1] - 5:5
**sophisticated** [1] - 93:24
**sorry** [9] - 17:5, 26:19, 66:25, 72:16, 79:22, 84:6, 90:3, 101:18, 103:13
**sort** [4] - 19:3, 30:20, 49:24, 83:6
**sound** [1] - 37:6
**sounds** [7] - 11:25, 30:10, 53:25, 67:11, 93:1, 103:25, 104:1
**Southern** [1] - 46:23
**speaking** [6] - 5:2, 10:18, 10:19, 14:11, 56:10, 56:12
**special** [1] - 21:25
**Special** [6] - 20:10, 20:11, 20:12, 20:13, 20:16
**specialist** [1] - 42:2
**specific** [3] - 5:15, 17:14, 56:17
**specifically** [3] - 10:2, 17:16, 102:11
**specifics** [1] - 31:24
**spend** [1] - 41:7
**spent** [3] - 28:15, 38:9, 88:4
**spoken** [1] - 76:9
**spouse** [1] - 41:19
**St** [1] - 99:3
**staff** [4] - 10:14, 14:9, 16:13, 23:10
**staffer** [1] - 34:18, 55:25, 82:1
**staffers** [1] - 89:25
**stand** [4] - 14:2, 16:13, 21:1, 22:8
**standpoint** [2] -

4:10, 91:1
**start** [11] - 7:12, 13:11, 22:7, 22:25, 34:4, 73:23, 75:11, 75:18, 86:2, 94:10, 98:25
**started** [5] - 4:21, 73:17, 75:1, 75:15, 75:17
**starting** [3] - 2:8, 12:25, 76:6
**starts** [2] - 13:20, 78:8
**State** [3] - 27:17, 29:18, 36:12
**state** [2] - 28:25, 49:1
**state's** [1] - 22:1
**States** [17] - 1:22, 2:5, 2:10, 6:16, 6:23, 12:22, 13:2, 13:25, 14:24, 17:1, 20:12, 20:14, 20:16, 20:17, 20:19, 22:2, 105:13
**states** [1] - 102:11
**STATES** [4] - 1:1, 1:3, 1:11, 1:15
**status** [1] - 10:21
**stay** [2] - 6:3, 76:6
**steal** [2] - 89:4
**stenographic** [1] - 105:5
**step** [2] - 68:8, 101:18
**steps** [1] - 15:12
**stepson** [2] - 25:4, 25:17
**stick** [2] - 6:11, 76:19
**still** [11] - 2:19, 11:22, 14:8, 61:25, 70:9, 83:14, 84:8, 87:24, 92:3, 99:6, 99:19
**stop** [2] - 89:10, 92:18
**stopping** [3] - 89:3, 89:4
**stops** [1] - 13:20
**stories** [6] - 69:4, 94:23, 94:25, 95:3, 95:5, 96:23
**straight** [1] - 3:10
**Street** [2] - 1:16, 1:19
**stressful** [1] - 83:21
**stricken** [1] - 62:16
**strike** [9] - 51:12, 51:24, 62:14, 67:22, 68:10, 85:8, 85:20, 93:21, 94:3
**strikes** [1] - 85:13

**striking** [1] - 68:14
**strong** [2] - 75:7, 92:2
**strongly** [2] - 90:21, 91:3
**student** [3] - 18:13, 19:1, 19:5
**stuff** [1] - 55:6
**submitted** [1] - 100:24
**subsequent** [2] - 67:10, 102:5
**suggest** [1] - 75:9
**sum** [1] - 74:18
**summarize** [1] - 95:5
**summary** [1] - 16:2
**summers** [2] - 38:9, 38:10
**Superior** [2] - 37:17, 39:12
**supervisor** [1] - 3:15
**supposed** [3] - 58:24, 59:9, 97:5
**sustain** [1] - 85:16
**sustaining** [1] - 102:1
**swear** [1] - 14:3
**sworn** [2] - 14:5, 29:15
**system** [5] - 14:23, 49:23, 50:3, 78:1, 92:19

# T

**table** [1] - 13:2
**team** [1] - 10:11
**telecommunication s** [1] - 35:8
**teleconference** [1] - 6:21
**television** [1] - 68:25
**teleworking** [1] - 81:22
**ten** [3] - 30:6, 75:12, 80:14
**tends** [1] - 56:8
**term** [1] - 71:11
**terms** [1] - 91:4, 100:23
**terribly** [1] - 88:8
**testimony** [18] - 24:25, 27:3, 27:10, 29:5, 29:21, 30:11, 30:16, 31:5, 31:6, 32:2, 32:3, 65:14, 65:15, 65:17, 65:21, 65:24, 67:20
**testing** [1] - 36:20

**tests** [2] - 14:18, 15:10
**text** [1] - 10:11
**that'll** [2] - 6:6, 32:1
**THE** [473] - 1:1, 1:10, 1:14, 1:15, 1:18, 2:1, 2:4, 2:12, 2:16, 2:18, 2:21, 2:23, 3:1, 3:4, 3:13, 3:14, 3:16, 3:17, 3:18, 3:21, 3:25, 4:3, 4:12, 4:15, 4:18, 5:1, 5:8, 5:12, 5:18, 6:3, 6:5, 6:6, 6:9, 6:17, 7:17, 8:11, 8:16, 9:5, 9:8, 9:13, 9:16, 10:8, 10:13, 11:8, 11:12, 11:18, 11:25, 12:4, 12:7, 12:11, 12:20, 12:21, 13:4, 13:8, 14:6, 17:21, 17:23, 18:2, 18:10, 18:12, 18:14, 18:18, 18:23, 19:11, 19:15, 20:21, 20:24, 21:6, 21:8, 21:11, 21:15, 22:11, 22:14, 22:21, 23:2, 23:4, 23:7, 23:11, 23:14, 23:18, 23:23, 24:1, 24:3, 24:5, 24:12, 24:14, 24:18, 24:23, 25:2, 25:8, 25:10, 25:12, 25:16, 25:20, 25:23, 26:9, 26:13, 26:17, 26:19, 26:22, 27:2, 27:9, 27:12, 27:14, 27:20, 27:24, 28:3, 28:9, 28:15, 28:21, 28:23, 29:1, 29:9, 29:12, 29:14, 29:17, 29:20, 29:24, 30:2, 30:4, 30:7, 30:10, 30:15, 30:19, 30:24, 31:1, 31:4, 31:9, 31:12, 31:16, 31:19, 31:21, 31:23, 31:25, 32:5, 32:9, 32:11, 32:14, 32:17, 32:23, 32:25, 33:4, 33:7, 33:11, 33:13, 33:15, 33:20, 34:5, 34:8, 34:12, 34:15, 34:19, 35:1, 35:5, 35:10, 35:13, 35:20, 35:22, 36:2, 36:7, 36:10, 36:13, 36:17, 36:23, 36:25, 37:6, 37:11, 37:14, 37:18, 37:21, 37:25, 38:6, 38:8, 38:12, 38:15, 38:20, 38:22, 39:1, 39:6, 39:10,

39:13, 39:19, 39:23, 40:2, 40:5, 40:7, 40:10, 40:13, 40:15, 40:18, 40:22, 41:2, 41:5, 41:10, 41:15, 41:19, 41:22, 41:25, 42:4, 42:9, 42:15, 42:19, 42:21, 42:24, 43:5, 43:8, 43:12, 43:16, 43:20, 43:23, 43:25, 44:2, 44:4, 44:8, 44:11, 44:14, 44:18, 44:20, 44:25, 45:5, 45:7, 45:10, 45:14, 45:18, 45:20, 45:24, 46:3, 46:5, 46:8, 46:11, 46:16, 46:20, 46:24, 47:3, 47:5, 47:9, 47:12, 47:17, 47:20, 47:24, 48:2, 48:5, 48:8, 48:12, 48:14, 48:17, 48:19, 48:22, 48:24, 49:3, 49:7, 49:14, 49:16, 49:19, 49:21, 50:2, 50:5, 50:8, 50:11, 51:1, 51:8, 51:11, 51:16, 51:19, 51:23, 52:3, 52:5, 52:7, 52:11, 52:15, 52:17, 52:21, 52:23, 53:2, 53:4, 53:8, 53:11, 53:16, 53:22, 53:25, 54:3, 54:7, 54:11, 54:16, 54:21, 55:1, 55:4, 55:10, 55:13, 55:17, 55:19, 55:21, 56:1, 56:3, 56:7, 56:25, 57:5, 57:9, 57:17, 57:19, 57:21, 57:23, 58:2, 58:5, 58:8, 58:11, 58:14, 58:17, 58:21, 58:24, 59:3, 59:13, 59:17, 59:20, 60:5, 60:9, 60:11, 60:14, 60:19, 60:21, 60:24, 61:1, 61:5, 61:8, 61:12, 61:17, 61:20, 61:23, 62:4, 62:6, 62:8, 62:11, 62:14, 62:19, 62:23, 63:1, 63:4, 63:7, 63:10, 63:12, 63:14, 63:18, 63:20, 63:22, 63:25, 64:4, 64:9, 64:15, 64:19, 64:23, 65:2, 65:5, 65:7, 65:10, 66:6, 66:18, 66:21, 67:2, 67:8, 67:15, 67:19, 68:4, 68:6,

68:8, 68:12, 68:14, 68:17, 68:22, 72:16, 75:1, 75:4, 75:15, 75:21, 75:24, 77:1, 77:10, 77:12, 77:16, 77:21, 77:23, 78:2, 78:5, 78:7, 78:10, 78:13, 78:18, 78:20, 78:22, 79:2, 79:5, 79:9, 79:11, 79:12, 79:15, 79:22, 79:25, 80:2, 80:10, 80:17, 80:20, 80:25, 81:4, 81:7, 81:9, 81:16, 81:24, 82:3, 82:12, 82:19, 82:23, 83:1, 84:5, 84:12, 84:17, 85:3, 85:16, 85:23, 85:25, 86:9, 86:14, 86:17, 86:19, 86:24, 87:3, 87:11, 87:14, 87:19, 87:24, 88:10, 88:21, 89:1, 89:7, 89:11, 90:15, 90:20, 91:7, 91:22, 92:14, 93:20, 94:6, 94:8, 94:15, 94:19, 94:25, 95:6, 95:9, 95:13, 95:16, 95:19, 95:22, 96:1, 96:10, 96:18, 96:22, 97:4, 97:14, 98:2, 98:15, 98:20, 98:23, 99:13, 99:15, 99:17, 99:21, 99:25, 100:3, 100:6, 100:11, 100:14, 103:7, 103:12, 103:24, 104:8

**therefore** [1] - 30:21
**therein** [1] - 19:8
**Thereupon** [14] - 12:15, 77:14, 79:7, 79:13, 81:12, 81:14, 84:15, 85:21, 91:20, 94:4, 98:18, 98:21, 100:4, 104:9
**they've** [1] - 93:17
**thinking** [1] - 67:23
**thoughts** [2] - 26:1, 88:7
**three** [3] - 34:17, 100:20, 103:17
**Thurgood** [1] - 58:19
**Thursday** [3] - 73:18, 73:19, 99:12
**timing** [1] - 97:2
**TIMOTHY** [1] - 1:6
**Timothy** [7] - 2:5, 2:15, 12:22, 13:7, 13:25, 17:1, 19:21
**today** [8] - 5:20, 6:4,

12:2, 13:22, 73:17, 77:3, 77:21, 103:18
**together** [1] - 70:3
**tons** [1] - 36:22
**top** [1] - 69:24
**Torres** [1] - 20:18
**toward** [1] - 15:16
**towards** [4] - 49:12, 59:18, 72:5, 80:3
**trade** [1] - 88:3
**traffic** [1] - 78:16
**trained** [1] - 84:19
**training** [1] - 34:22
**transcript** [4] - 11:22, 14:13, 105:5, 105:6
**TRANSCRIPT** [1] - 1:10
**transmogrified** [1] - 4:22
**Transportation** [1] - 46:7
**treat** [1] - 24:24
**treated** [2] - 50:14, 65:15
**TREVOR** [1] - 1:10
**Trial** [1] - 19:18
**trial** [21] - 3:19, 3:22, 4:6, 4:9, 5:5, 6:1, 9:2, 15:21, 18:15, 20:5, 20:8, 35:18, 65:14, 71:2, 71:9, 71:10, 71:14, 73:17, 82:21, 90:23, 103:18
**TRIAL** [1] - 1:10
**trials** [2] - 73:16, 74:4
**tried** [2] - 11:21, 15:1
**troopers** [1] - 28:25
**true** [3] - 80:22, 105:4, 105:5
**trust** [2] - 66:15, 86:12
**truth** [1] - 27:5
**truthfully** [1] - 15:25
**try** [10] - 6:11, 8:3, 12:11, 13:17, 14:16, 15:12, 51:16, 51:17, 91:7, 98:20
**trying** [5] - 2:22, 6:20, 14:20, 18:22, 91:8
**TV** [1] - 69:4
**tweeting** [1] - 69:5
**twice** [1] - 21:20
**two** [7] - 29:16, 38:9, 38:10, 44:22, 91:15, 102:6, 102:7
**type** [2] - 35:16, 101:7

**types** [1] - 102:13
**typically** [4] - 7:10, 7:15, 16:24, 103:21

## U

**U.S** [23] - 2:21, 3:14, 3:17, 6:3, 6:6, 6:12, 16:6, 17:11, 19:19, 27:15, 27:16, 32:13, 32:14, 56:13, 56:22, 72:3, 72:7, 72:9, 72:12, 72:18, 72:24, 100:17, 102:20
**ultimately** [1] - 9:11
**unaware** [2] - 73:8, 73:9
**unbiased** [3] - 95:12, 95:14, 95:15
**uncle** [2] - 27:17, 27:21
**uncomfortable** [1] - 5:19
**undemocratic** [2] - 96:8
**under** [4] - 8:9, 9:3, 40:21, 40:24
**undergrad** [1] - 29:16
**understood** [2] - 90:4, 98:7
**unfair** [1] - 49:23
**Unit** [1] - 61:4
**unit** [1] - 62:1
**UNITED** [4] - 1:1, 1:3, 1:11, 1:15
**united** [1] - 1:22
**United** [16] - 2:5, 2:10, 6:16, 6:23, 12:22, 13:2, 13:25, 14:23, 17:1, 20:11, 20:13, 20:15, 20:17, 20:19, 22:1, 105:13
**unless** [1] - 7:7
**unmasked** [1] - 10:17
**unpleasant** [3] - 70:21, 70:24, 86:3
**unrelated** [1] - 25:14
**up** [20] - 3:23, 4:19, 8:22, 10:23, 12:13, 15:3, 16:20, 18:7, 25:5, 25:15, 25:18, 36:21, 51:16, 51:21, 70:14, 73:21, 73:24, 77:12, 87:21, 99:8
**updated** [1] - 11:1

**V**

**vaccinated** [6] - 10:4, 10:6, 10:10, 10:15, 14:9
**vaccine** [2] - 10:1, 10:20
**value** [1] - 98:1
**variety** [1] - 35:4
**various** [5] - 14:25, 87:8, 90:23, 94:23, 96:7
**varying** [1] - 93:16
**venire** [1] - 85:11
**venireman** [1] - 93:22
**venireperson** [2] - 85:5, 85:13
**verdict** [1] - 15:18
**versus** [4] - 2:5, 12:22, 13:25, 17:1
**veteran** [1] - 27:17
**victim** [5] - 71:19, 71:24, 79:18, 86:20, 94:11
**video** [10] - 72:8, 80:11, 80:12, 80:15, 82:12, 82:14, 87:4, 87:5, 95:16, 96:25
**videos** [6] - 72:11, 72:12, 80:12, 83:19, 84:22, 90:23
**view** [2] - 84:1, 96:8
**vignettes** [1] - 35:16
**violate** [1] - 96:15
**violation** [1] - 103:3
**visit** [2] - 102:10, 103:1
**visiting** [1] - 4:22
**visits** [3] - 7:16, 101:20, 104:6
**voir** [2] - 11:1, 15:2
**vs** [1] - 1:5

**W**

**Wade** [1] - 20:16
**waiting** [4] - 11:16, 11:18, 13:12, 13:21
**walk** [1] - 57:2
**walked** [1] - 57:3
**walking** [1] - 56:19
**walks** [1] - 3:12
**Walter** [2] - 25:7, 25:9
**wants** [3] - 7:12, 75:11, 75:12
**Washington** [5] -

1:6, 1:17, 1:24, 38:25, 105:14
**watched** [13] - 72:8, 72:11, 80:11, 80:12, 80:14, 82:12, 82:14, 87:3, 87:5, 93:2, 95:16, 95:23
**watching** [6] - 69:4, 83:7, 83:19, 87:12, 90:25, 92:24
**Watts** [1] - 20:15
**wear** [2] - 9:18, 14:10
**website** [1] - 102:11
**Wednesday** [2] - 4:21, 8:21
**week** [4] - 3:7, 5:2, 73:22
**weekend** [2] - 7:7, 7:10
**weekly** [1] - 56:21
**weeks** [3] - 40:25, 100:20, 103:17
**weigh** [1] - 67:20
**weight** [1] - 65:17
**welcome** [2] - 13:10, 34:5
**well-reported** [1] - 93:19
**wheel** [1] - 78:23
**whole** [2] - 25:6, 89:2
**wife** [8] - 43:22, 45:22, 46:1, 58:4, 58:5, 58:8, 94:21, 95:23
**Williams** [3] - 100:18, 101:13, 102:21
**willing** [3] - 93:6, 93:13, 102:25
**willingness** [1] - 69:9
**wish** [1] - 11:3
**witness** [14] - 9:25, 24:25, 65:15, 65:17, 65:18, 65:19, 65:22, 66:11, 71:20, 71:24, 79:18, 85:4, 86:21, 94:11
**witness's** [1] - 27:9
**witnesses** [10] - 9:24, 10:3, 10:5, 10:18, 14:10, 20:1, 20:9, 21:14, 28:7, 29:21
**wondering** [2] - 5:1, 45:13
**word** [1] - 49:11
**words** [2] - 65:21, 71:11
**works** [17] - 22:5,

26:16, 31:22, 33:1,
45:14, 52:9, 58:4,
58:5, 58:9, 59:20,
62:25, 63:2, 63:6,
65:11, 84:21, 92:20,
95:4
  **wrap** [1] - 73:24
  **write** [14] - 69:25,
70:1, 71:7, 71:15,
71:25, 72:13, 73:4,
73:10, 73:13, 74:8,
74:11, 74:13, 74:20
  **written** [1] - 94:25

## Y

  **year** [3] - 18:5, 18:9,
18:13
  **years** [20] - 8:25,
24:17, 26:15, 27:16,
29:16, 30:6, 35:24,
36:21, 37:15, 38:23,
42:2, 42:13, 44:23,
53:21, 67:25, 80:9,
89:13, 89:25, 94:14,
100:2
  **yes's** [1] - 68:22
  **yesterday** [3] - 4:15,
4:20, 4:25
  **York** [2] - 27:17, 49:2
  **younger** [1] - 67:4
  **yourself** [3] - 21:2,
44:8, 64:13
  **yourselves** [2] - 2:8,
12:25