## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,**<br><br>v.<br><br>**TIMOTHY LOUIS HALE-CUSANELLI**,<br><br>Defendant. | Case No. 1:21-cr-00037 (TNM) |

## <u>MEMORANDUM ORDER</u>

Earlier this year, a jury convicted Timothy Hale-Cusanelli of five counts related to his actions on January 6.  *See* Verdict Form, ECF No. 87.  Specifically, the jury found him guilty of obstructing an official proceeding; entering a restricted building; disorderly conduct in a restricted building; disorderly conduct in a Capitol building; and parading, demonstrating, or picketing in a Capitol building.  *See id.*  Before the Court now is his motion for judgment of acquittal or for a new trial.  *See* Mot. for Judgment of Acquittal and Mot. for New Trial, ECF No. 103 (Mot.).

The Court finds that Hale-Cusanelli has given no reason for the Court to rethink its pretrial orders nor that his trial was deficient.  The Court thus denies his motion.

## I.

Federal Rule of Criminal Procedure 29 allows a defendant to move for a post-verdict judgment of acquittal on the ground that the evidence could not sustain a conviction.  *See* Fed. R. Crim. P. 29(c).  The Court must affirm the verdict if, considering the evidence "in the light most favorable to the government," it determines that "*any* rational trier of fact" could have reached the same verdict.  *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002) (cleaned up).  The Court also "must presume that the jury has properly carried out its functions of evaluating the

credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983).  To succeed on a Rule 29 motion, a defendant must clear a "very high" hurdle.  *United States v. Pasha*, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015).

### A.

Although styled as an evidentiary challenge, Hale-Cusanelli uses his Rule 29 motion to challenge the Court's interpretation of 18 U.S.C. § 1512(c)(2), the statute penalizing anyone who "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so[.]"  18 U.S.C. § 1512(c); *see* Mot. at 21–57.[1]  Before trial, the Court rejected many of these same arguments in detail.  *See* Pre-Trial Conference Tr. at 2–9, ECF No. 82.  And the Court's ruling agrees with every other judge in this district except one interpreting § 1512(c)(2).  *See id.* at 5 (citing *United States v. Miller*, — F. Supp. 3d —, 2022 WL 823070, at *12 (D.D.C. Mar. 7, 2022)).  The Court will not revisit its pretrial ruling.  Hale-Cusanelli restates many previously-denied arguments, and his new arguments do not persuade the Court to adopt a different interpretation.

Hale-Cusanelli next argues that the Court misinterpreted the word "corruptly" in § 1512(c)(2).  In its jury instructions, the Court defined corruptly as "us[ing] unlawful means or hav[ing] a wrongful or an unlawful purpose, or both."  Jury Instructions, ECF No. 84 at 27.  Hale-Cusanelli now says that "corruptly" requires him to act "(1) with the intent to obtain an unlawful material advantage for himself or an associate; and (2) by influencing another to violate their legal duty[.]"  Mot. at 53.  He never made this argument before or during trial.  Not only did the parties jointly propose the definition of corruptly that he challenges, *see* Proposed Jury

---

[1]  All page citations to ECF refer to the page numbers generated by that system.

Instructions at 7, ECF No. 77, but Hale-Cusanelli never objected when the Court discussed the final instructions with the parties, *see* Trial Tr. at 822–827, ECF No. 96 at 3–8.[2]

In any event, the Court disagrees with his argument because "corruptly" sweeps in more activity than Hale-Cusanelli admits. "[T]he desire to gain an advantage is typically the motive for a person to act corruptly, but not always." *United States v. Reffitt*, — F. Supp. 3d —, No. 21-cr-32 (DLF), 2022 WL 1404247, at *6 (D.D.C. May 4, 2022). And his contention that § 1512(c)(2) requires him to influence another flouts the statutory language. After all, "[c]orruption of another is not required to violate [§] 1512(c)(1)," which prohibits corrupt acts related to documents. *United States v. Caldwell*, 581 F. Supp. 3d 1, 19 (D.D.C. 2021). It strains usual statutory interpretation to find that a different sense of "corruptly" governs (c)(2), the next subsection. *Accord id.* Thus, "in § 1512(c)(2), 'corruptly,' is used in the intransitive, such that [Hale-Cusanelli's] *own* behavior must be corrupt." *Reffitt*, 2022 WL 1404247, at *6 (emphasis in original). His interpretation therefore fails.[3]

Beyond these interpretive arguments, Hale-Cusanelli challenges the evidence of his obstruction conviction. He says that because the certification had adjourned before he entered the Capitol, his individual actions never obstructed any official proceeding. *See* Mot. at 58. This argument is, at best, self-refuting. Hale-Cusanelli admits that the trial evidence showed obstruction by "the collective mob" on January 6. *Id.* As the jury observed in multiple videos,

---

[2] When the Court cites the trial transcript, it first provides the transcript page number and then the page number from the Court's ECF filing system.

[3] Hale-Cusanelli's reliance on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), changes nothing. *See* Mot. at 56–57. "[T]he concern that animated *Poindexter*"—that a transitive reading of "corruptly" under an entirely different statute did not reach false statements to Congress—"is simply not present in [a] prosecution under [§] 1512(c)(2)." *Caldwell*, 581 F. Supp. 3d at 19.

he joined that mob, a fact he glosses over in his briefing now.  So under his own theory, the collective obstruction is also his.  At any rate, his presence in the building for 40 minutes at the very least prevented Congress from reconvening the certification.[4]  That qualifies as "obstruct[ing]" or "imped[ing]" an official proceeding.  18 U.S.C. § 1512(c).

## B.

Lastly for Rule 29, Hale-Cusanelli argues that the Court should have given the jury a special unanimity instruction.  *See* Mot. at 59.  He argues that the indictment's obstruction count "bundled together" completed obstruction and attempted obstruction, meaning that members of the jury potentially found him guilty of either offense without agreeing unanimously as to which. *Id.*  He now says that the Court should have instructed the jury that it be unanimous on whether he completed obstruction or attempted it.  *See id.*  The Court rejected this same request when evidence closed at trial.  *See* Trial Transcript at 1008, ECF No. 97 at 53.

The plain text of § 1512(c)(2) shows why that decision was correct.  The statute penalizes anyone who "obstructs, influences, or impedes any official proceeding, *or attempts to do so.*"  18 U.S.C. § 1512(c)(2) (emphasis added).  So the actus reus of a § 1512(c)(2) violation is not just completed obstruction or influence, but also an attempt to do so.  This statutory language matters.  "[T]he jury need not agree as to mere means of satisfying the *actus reus* element of an offense[.]"  *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality op.).  Instead, the jury need only agree that a defendant "committed the offense as defined in the statute[.]"  *United States v. Kayode*, 254 F.3d 204, 214 (D.C. Cir. 2001).  Here, the offense includes attempts, meaning that so long as all jurors agreed that Hale-Cusanelli had violated § 1512(c), they did not need to agree

---

[4]  Hale-Cusanelli likens his case to that of Couy Griffin.  *See* Def.'s Reply at 26, ECF No. 106 (Reply).  The two are not similar—Griffin never entered the Capitol.  *See* 21-cr-92 (D.D.C.), ECF No. 106 at 61.

on whether he actually obstructed, influenced, or impeded the proceeding or merely tried to do so.[5]  Thus, the Court committed no error when it denied Hale-Cusanelli's request for a special unanimity instruction.[6]

## II.

Rule 33 allows courts, at a defendant's request, to vacate a judgment and order a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Motions under Rule 33 are disfavored, however, and "viewed with great caution."  *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (cleaned up).  Courts "sparingly" exercise their authority to order a new trial, reserving it for "extraordinary circumstances where the evidence preponderates heavily against the verdict" and when any error "affects a defendant's substantial rights."  *Id.* at 32 (cleaned up).  And under Federal Criminal Rule 52(b), the Court reviews objections not raised at trial for plain error.  *See United States v. Williams*, 825 F. Supp. 2d 128, 132 (D.D.C. 2011).  To be plain, any error "must be clear or obvious, rather than subject to reasonable dispute."  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  And it must be prejudicial, meaning it "affect[s] substantial rights" or the outcome of the prior proceeding.  *United States v. Olano*, 507 U.S. 725, 734 (1993) (cleaned up).

---

[5]  The Court also instructed the jury that an element of § 1512(c)(2) is that "the defendant *attempted to* or did obstruct or impede an official proceeding."  *See* Jury Instructions at 24 (emphasis added).  The jury thus heard that § 1512(c) encompassed attempted obstruction.

[6]  Hale-Cusanelli cites an out-of-circuit decision that arguably undermines some of this analysis. *See* Reply at 25 (citing *United States v. Jadue*, 31 F. Supp. 3d 794 (E.D. Va. 2014)).  Besides not binding this Court, that decision dismissed a charge of attempted obstruction under § 1512(c) on evidentiary grounds.  *See Jadue*, 31 F. Supp. 3d at 799.  The evidence showed actions "too remote from the actual commission of the crime whose attempt was charged."  *Id.*  That decision thus never confronted a jury unanimity question.

**A.**

Of his alleged grounds for a new trial, Hale-Cusanelli's most substantial is an objection to the admission of his previous unsavory statements. *See* Mot. at 10–15. Some background is necessary. Before trial, the parties disputed the admissibility of certain statements made by Hale-Cusanelli. *See* ECF No. 63. Some of these statements expressed political opinions, like his desire for a civil war to "provide a clean slate." ECF No. 68 at 3. Others were overtly racist, misogynistic, or anti-Semitic, such as an assertion that "Jews, women, and blacks were on the bottom of the totem pole." *Id.* at 4. Still other statements bridged those two categories, such as Hale-Cusanelli telling an informant that Democrats are "part of the Jews." *Id.* The Government argued that these statements showed Hale-Cusanelli's motive to stop the electoral certification, either because he wanted a civil war or because he thought President Biden was a puppet of Jewish interests. *See id.* at 10–12.

The Court determined that Federal Rule of Evidence 403 barred his alleged statements about Jews, the Nazi party, minorities, or women because they were of limited probative value and would prejudice him in the jury's eyes. *See* Pre-Trial Conference Tr. at 13–14. But the Court admitted Hale-Cusanelli's "political and civil war-related statements" because they were probative of his motive. *Id.* at 12. As the Court summarized, "if there's talk about race, religion or women or Nazis, I think those should be excised. If it's talking about a political party, about civil war, I think those come in." *Id.* at 16. In response, the Government noted that some statements might straddle both sides of the Court's ruling. *See id.* at 15. Rather than review each statement, the Court asked the parties to work out among themselves which statements, in compliance with the Court's ruling, would be admitted. *See id.* at 16. The Court then said it would review any statement they could not agree upon. *Id.*

The Court sees no reason to revisit its pretrial ruling.  As noted then, his statements show a reason for Hale-Cusanelli to pursue decertification—he wanted a new government free of what he viewed as pernicious interests.  *See* Pre-Trial Conference Tr. at 12. ("Put simply, he might have joined the riot because he saw decertification as a way to achieve his avowed hopes of a change in government.").  And motive is a "well-established non-propensity purpose for introducing evidence under Rule 404(b)."  *Id.*  Any prejudice from the content of these statements therefore stemmed from their "legitimate probative force" as evidence.  *United States v. Wilkins*, 538 F. Supp. 3d 49, 73 (D.D.C. 2021)

Ultimately, the Government admitted Hale-Cusanelli's statements largely without defense objection during trial.  Once the Court directed the parties to work out any disputes, defense counsel conferred with the Government.  That work bore fruit—on the first trial day, defense counsel told the Court that the parties had "resolved the majority" of his objections through redactions to certain exhibits.  Trial Tr. at 261, ECF No. 92 at 6.  Indeed, at that time the only disputed issue was whether the Court would *admit* some of Hale-Cusanelli's statements, rather than exclude them.  *See id.* at 261–268.  And during trial, Hale-Cusanelli objected only twice—one of which the Court sustained, *see* Trial Tr. at 485, ECF No. 93 at 94—to proposed exhibits because they were prejudicial.[7]  *See id.* (defense counsel saying about these exhibits that "[t]he only inference one can draw is that he has an anti-Semitic bent[]").

Although the Government says the failure to object forecloses any review now, *see* Opp'n at 39, the Court has reviewed the statements that Hale-Cusanelli challenges.  Each of them expresses political opinions, be they about a particular party or candidate or about

---

[7]  This strategy from defense counsel made some sense.  Hale-Cusanelli testified that he is "half Jewish and half Puerto Rican" and made these various statements as a form of "self-deprecating humor."  Trial Tr. at 987, ECF No. 97 at 32.

proceedings on Election Day.  The Court expressly allowed admission of Hale-Cusanelli's

"political" statements, *id.*, so the admission of these statements did not violate that ruling, despite

what Hale-Cusanelli says now, *see* Reply at 27.

To be sure, these statements included distasteful language and sentiments.  For that

reason, the Court gave a limiting instruction proposed by Hale-Cusanelli himself.  *See* Trial Tr.

at 959, ECF No. 97 at 4 (noting Government's lack of objection to his proposed language).  The

Court instructed the jury "not to use [its] personal opinion and disagreement of the language used

to find Mr. Hale-Cusanelli guilty."  Jury Instructions at 20.  That was enough to ensure that the

language of these relevant statements did not cause "unfair prejudice" to him.  Fed. R. Evid. 403;

*see also United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003) ("[L]imiting instructions

ordinarily suffice to protect the defendant's interests."); *United States v Brown*, 490 F.2d 758,

764 (D.C. Cir. 1973) ("[I]n the great majority of cases the limiting instruction is probably

sufficient to so minimize the dangers of jury misuse as to prevent most serious prejudice.").

**B.**

For similar reasons, the Court rejects Hale-Cusanelli's argument about the Government's

opening and closing statements.  In its opening, the Government noted that a witness would

testify about Hale-Cusanelli's belief that Jewish interests control the Democratic Party.  *See* Trial

Tr. at 300, ECF No. 92 at 45.  At closing, the Government mentioned this testimony again.  *See*

Trial Tr. at 1048, ECF No. 97 at 93 ("CHS says, 'You're saying they're all part of the Jews?'

Defendant says, "Yes of course, I give them 24 hours to leave.'").  Also during closing, the

Government showed the jury one of Hale-Cusanelli's text messages that said "Trump is leading

in all the remaining states that matter.  Minus n***** rigging, which they'll try, he wins."  *Id.* at

1051, ECF No. 97 at 96.  Hale-Cusanelli says that the display of these statements violated his

substantial rights.  *See* Mot. at 63–64.  He did not object to the opening or closing at trial, so the Court reviews this for plain error.

For a new trial based on opening or closing statements, the Court considers "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper remarks."  *United States v. Monaghan*, 741 F.2d 1434, 1443 (D.C. Cir. 1984).  All factors lean heavily in favor of the verdict here, particularly on plain-error review. The Government mentioned only statements that expressed Hale-Cusanelli's political opinions. That complied with the Court's pretrial ruling, rendering doubtful any "misconduct" by the Government.  But even if misconduct stemmed from these epithets, the Court gave a limiting instruction as to how the jury should view them.  *See supra.*  It also gave the standard instruction that "arguments of the lawyers are not evidence."  Jury Instructions at 8.  Finally, the Court is persuaded that even without reference to these stray statements, the other "overwhelming evidence" of Hale-Cusanelli's guilt would have led to the same verdict.  *United States v. Moore*, 651 F.3d 30, 53 (D.C. Cir. 2011).  Any error thus did not cause prejudice.  *See id.*

## C.

In a similar vein, Hale-Cusanelli seeks a new trial over a perceived error in the jury instructions.  Recall that one instruction defined corruptly as "us[ing] unlawful means or hav[ing] a wrongful or an unlawful purpose, or both."  Jury Instructions at 27.  Hale-Cusanelli objects to the inclusion of "wrongful."  *See* Mot. at 65.  He argues that the instruction was vague because it allowed the jury to find he acted "corruptly" because of his "wrongful" remarks about

9

Jews and others.  *See id.* at 66.  He says the Court should have instructed the jury that "corruptly" means "by unlawful means."  *Id.* at 65.

Federal Criminal Rule 30(d) requires a party to object to jury instructions "before the jury retires to deliberate."  Fed. R. Crim. P. 30(d).  Hale-Cusanelli never objected to this instruction. In fact, he joined the Government in proposing it.  *See* Proposed Jury Instructions at 7.  And when the Court asked for any final objections to the instructions, defense counsel had none.  *See* Trial Tr. at 995, ECF No. 97 at 40.  Thus, the Court reviews for plain error.  *Accord* Fed. R. Crim. P. 30(d) (precluding review when party fails to object, "except as permitted under Rule 52(b)").

Hale-Cusanelli fails that standard of review.  The instruction he now suggests bears little difference from what the jury received.  A jury faced with an instruction mentioning only "unlawful means" still would need to decide whether he acted with an intent to obstruct the official proceeding.  The same inquiry occurred under the Court's instruction because, as the Government points out, "[a]cting wrongfully includes acting contrary to law or unlawfully." Opp'n at 44 (citing dictionaries).  More, the Government raises multiple ways in which the inclusion of "wrongful" *helps* defendants by ensuring not all unlawful conduct equates to a corrupt intention.  *See id.* at 44–45.  It is therefore unsurprising that courts in this district have used exactly the same instruction as the Court did here, at Hale-Cusanelli's invitation.  *See, e.g.*, *United States v. Robertson*, No. 21-cr-34, ECF No. 86 at 12.

For these reasons, even if the Court erred, that error was neither "obvious" nor beyond "reasonable dispute."  *Puckett*, 556 U.S. at 135.  And in any event, the jury would have reached the same verdict anyway.  Hale-Cusanelli not only entered the Capitol after seeing fights between police and rioters, *see* Trial Tr. at 868, ECF No. 96 at 49, but, once inside, told other

rioters to "advance," *id.* at 934, ECF No. 96 at 115.  He knew that he was trespassing, yet he pressed ahead anyway.  Any error in the use of "wrongful" thus did not affect the outcome of the proceeding.  *See Olano*, 507 U.S. at 734.

### D.

Finally, Hale-Cusanelli challenges testimony from Daniel Schwager, the former general counsel to the Secretary of the Senate.  *See* Trial Tr. at 401, ECF No. 93 at 10.  Hale-Cusanelli made no similar objection at trial, so again plain-error review applies.

Schwager testified about the procedures Congress follows during certification of election results and which authorities set forth those procedures: the Twelfth Amendment and the Electoral Count Act (ECA), 3 U.S.C. § 15.  *See id.* at 408–416, ECF No. 93 at 17–25.  Schwager called the ECA a "law."  *See id.* at 411, 413, 414, 419, ECF No. 93 at 20, 22, 23, 28.  Hale-Cusanelli argues that the ECA is not a "law[,] but a precatory House rule in statutory form[.]" Mot. at 66.  Despite his contention that the ECA is not a law, Hale-Cusanelli then contends (presumably in the alternative) that Schwager gave a legal interpretation not permitted by a lay witness.  *See* Reply at 32.

This argument is borderline frivolous.  As part of the United States Code, the ECA met the constitutional requirements of bicameralism and presentment and is therefore a law.  *Accord INS v. Chadha*, 462 U.S. 919, 945–46 (1983).  Hale-Cusanelli's citation to two law review articles suggesting otherwise is not persuasive.  *See* Mot. at 66–67.  More, he overstates Schwager's testimony—he read the ECA and the Twelfth Amendment into the record and explained in layman's terms what the ECA says, no small feat given the statute's minute details. The Court has reviewed his testimony and finds that he rendered no impermissible legal conclusions.

**III.**

For these reasons, it is ORDERED that Defendant's [105] Motion for Judgment of

Acquittal and Motion for a New Trial is DENIED.

**SO ORDERED.**

Dated: September 19, 2022                              _____
                                                       TREVOR N. McFADDEN, U.S.D.J.