```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
     * * * * * * * * * * * * * * *    )
 3   UNITED STATES OF AMERICA,        )      Criminal Action
                                      )        No. 21-00037
 4                  Plaintiff,        )
                                      )
 5   vs.                              )
                                      )
 6   TIMOTHY LOUIS HALE-CUSANELLI,    )      Washington, D.C.
                                      )      September 22, 2022
 7                  Defendant.        )      10:18 a.m.
                                      )
 8   * * * * * * * * * * * * * * *    )

 9

10                   TRANSCRIPT OF SENTENCING HEARING
               BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                   UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE GOVERNMENT:      KATHRYN E. FIFIELD, ESQ.
                              KAREN P. SEIFERT, ESQ.
15                            UNITED STATES ATTORNEY'S OFFICE
                                FOR THE DISTRICT OF COLUMBIA
16                            555 Fourth Street, Northwest
                              Eleventh Floor
17                            Washington, D.C. 20530

18
     FOR THE DEFENDANT:       NICHOLAS D. SMITH, ESQ.
19                            DAVID B. SMITH, PLLC
                              1123 Broadway
20                            Suite 909
                              New York, New York 10010
21
                              JONATHAN W. CRISP, ESQ.
22                            CRISP AND ASSOCIATES, LLC
                              4031 North Front Street
23                            Harrisburg, Pennsylvania 17110

24
     FOR U.S. PROBATION:      CRYSTAL LUSTIG
25
```

1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Official Court Reporter
2                              United States District Court for the
                                 District of Columbia
3                              333 Constitution Avenue, Northwest
                               Room 6706
4                              Washington, D.C. 20001
                               (202) 354-3269
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  This is Criminal Case

2   21-37, the United States of America versus Timothy

3   Hale-Cusanelli.

4          Counsel, please come forward to identify

5   yourselves for the record, starting with the Government.

6          MS. FIFIELD:  Good morning, your Honor.  Kathryn

7   Fifield on behalf of the United States.  With me at counsel

8   table are AUSA Karen Seifert, Special Agent Anthony Golt

9   from the Naval Criminal Investigative Service and Jorge

10  Casillas, a paralegal from our office.

11         THE COURT:  Good morning, folks.

12         MR. SMITH:  Good morning, Judge.  This is Nick

13  Smith on behalf of the Defendant, Timothy Hale-Cusanelli.

14         With us at the bench is Jonathan Crisp, who was

15  counsel at trial.

16         THE COURT:  Good morning, Mr. Smith.

17         Good morning, Mr. Crisp.

18         Good morning, Mr. Hale-Cusanelli.

19         And good morning, Officer Lustig.

20         We're here for the sentencing of the Defendant,

21  Timothy Hale-Cusanelli, who was found guilty by a jury of

22  obstruction of an official proceeding, entering and

23  remaining in a restricted building or grounds, disorderly

24  and disruptive conduct in a restricted building or grounds,

25  disorderly conduct in a Capitol building, and parading,

1    demonstrating or picketing in a Capitol building.

2              I've received and reviewed the presentence

3    investigation report and sentencing recommendation from the

4    probation office as well as the sentencing memoranda from

5    the Government and the Defendant.

6              I've also reviewed the letter attached to the

7    Defendant's memorandum and recent filings by both parties on

8    the definition of "administration of justice."

9              And of course I've seen the videos which were

10   previously admitted at trial.

11             Are there any other documents or materials that I

12   should have reviewed?  Ms. Fifield?

13             MS. FIFIELD:  Your Honor, the Government submitted

14   via USAfx four exhibits, two of which were exhibits at

15   trial, Exhibits 403 and 411.  Those are the trial exhibit

16   numbers.

17             And the two additional exhibits were the recording

18   transcript of the conversation with the CHS, the unredacted

19   version, which was not entered at trial and presented to the

20   jury; and similarly, the unredacted audio was presented to

21   the Court via USAfx.

22             THE COURT:  Thank you, ma'am.

23             And Mr. Smith?

24             MR. SMITH:  No, your Honor.

25             THE COURT:  Mr. Hale-Cusanelli, this sentencing

1    hearing will proceed in four steps, many of which may seem

2    mechanical to you.  But I want you to keep in mind why we're

3    here today and the gravity of the situation:

4          You've committed a federal crime.  Today's

5    proceeding is a serious matter as it is about the

6    consequences that you will face because of your decision to

7    engage in criminal behavior in violation of federal law.

8          The first step of today's hearing, sir, is for me

9    to determine whether you've reviewed the presentence report

10   and whether there are any outstanding objections to it and,

11   if so, to resolve those objections.

12         The second step is to calculate your recommended

13   sentence under United States sentencing guidelines.

14         The third step is to hear from the Government,

15   from your counsel and you, sir, if you wish to be heard

16   about sentencing in this case.

17         And the last step requires the Court to fashion a

18   just and fair sentence in light of all of the factors

19   Congress set forth in 18 USC 3553(a).  As part of this last

20   step, the Court will actually impose the sentence along with

21   the other required consequences of the offense.

22         So turning to that first step, the final

23   presentence investigation report was filed on September

24   14th, 2022.  The probation office filed its sentencing

25   recommendation on the same day.  Mr. Hale-Cusanelli filed

1    his memorandum in aid of sentencing on September 16th and

2    the Government filed its memorandum on September 15th.

3              Ms. Fifield, does the Government have any

4    objection to any of the factual determinations set forth in

5    the presentence report?

6              MS. FIFIELD:  Not to the factual determinations.

7    No.

8              THE COURT:  Mr. Smith, have you and

9    Mr. Hale-Cusanelli read and discussed the presentence

10   report?

11             MR. SMITH:  Yes, your Honor, we have.

12             THE COURT:  Does the Defendant have any objection

13   to any factual statements set forth in it?

14             MR. SMITH:  Just the objections that were noted in

15   the final presentence investigation report.  I think it was

16   Page 29.  Yes.

17             THE COURT:  Did you want me to resolve any of

18   those at this point?

19             MR. SMITH:  No, your Honor.

20             THE COURT:  Mr. Hale-Cusanelli, could you approach

21   the podium, sir.

22             THE DEFENDANT:  (Complies.)

23             THE COURT:  Sir, are you fully satisfied with the

24   services of your attorneys, Mr. Smith and Mr. Crisp, in this

25   case?

1          THE DEFENDANT:  I am, your Honor.

2          THE COURT:  Sir, do you feel you've had enough

3     time to talk with them about the probation office's

4     presentence report and the papers the Government filed in

5     connection with sentencing?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Thank you.  You may have a seat, sir.

8          THE DEFENDANT:  Thank you.

9          THE COURT:  The Court will accept the facts as

10    stated in the presentence report.  The presentence report

11    will serve as my findings of fact for purposes of this

12    sentencing.

13          And my appreciation to Officer Lustig for your

14    work on this.

15          The presentence report lays out the probation

16    office's calculation of the advisory guideline range that

17    applies in this case.  I'll attempt to summarize that

18    calculation as follows:

19          As described in the presentence report, Counts 1

20    to 3 are grouped, and the applicable offense level is the

21    one that produces the highest offense level.  The guideline

22    for Count 1, found in 2J1.2 of the guidelines manual,

23    produces the highest level.  That section provides that

24    obstruction of an official proceeding has a base offense

25    level of 14.

1        The probation office calculates two additional

2    enhancements as to that offense.

3        Mr. Hale-Cusanelli caused or threatened physical

4    injury to a person in order to obstruct the administration

5    of justice.  For this, 2J1.2(b)(1)(B) imposes an eight-level

6    enhancement.

7        Second, the offense resulted in a substantial

8    interference with the administration of justice;

9    specifically, the Electoral College certification.  For that

10   substantial interference, 2J1.2(b)(2) imposes a three-level

11   enhancement.

12       Mr. Hale-Cusanelli further obstructed justice by

13   giving false testimony under oath that he did not know

14   Congress met in the Capitol.  For that obstruction, 3C1.1

15   imposes an additional two-level adjustment.

16       All told, the total offense level computed by the

17   probation office is 27.

18       Mr. Hale-Cusanelli has some prior criminal

19   history, but zero criminal history points, placing him in

20   Criminal History Category I.

21       So based upon a total offense level of 27 and a

22   criminal history category of I, the guideline range

23   applicable to Mr. Hale-Cusanelli would be 70 to 87 months;

24   and the maximum sentence for Counts 2 and 3 is 12 months.

25       I think the remaining counts are petty offenses;

1    therefore, the guidelines don't apply to them at all.

2          The guidelines fine range is $25,000 to $250,000.

3          Are there any objections to these calculations?

4    Ms. Fifield?

5          MS. FIFIELD:  Your Honor, the Government objected

6    to the PSR's approach to calculating the total offense level

7    in the sense that the Government's argument was that the

8    offense level should be calculated for each count and then

9    grouped as opposed to the PSR's approach, which is to group

10   first and then calculate the offense level.

11         At the end of the day, it comes out to the same

12   offense level for the group, so I'm not sure that it makes a

13   difference.  But the Government does maintain that objection

14   for the record.

15         THE COURT:  So, Ms. Fifield, would this make a

16   difference in other cases but not here?  Is that the

17   concern?  Or would it never make a difference?

18         MS. FIFIELD:  Potentially, yes.  But that is the

19   Office's position in each of these cases.  And I understand

20   more broadly that the offenses, consistent with the

21   instructions in the guidelines, should be calculated first

22   and then grouped.

23         THE COURT:  Mr. Smith?

24         MR. SMITH:  Yes.  May the defense be heard on

25   these legal objections?

```
 1              THE COURT:  Yes.  This is your opportunity.
 2              First, do you agree with the Government on that
 3    point, the grouping?
 4              MR. SMITH:  Your Honor, we haven't taken a
 5    position on that, actually, because it doesn't affect
 6    Mr. Hale-Cusanelli's sentence.  So we don't want to meddle
 7    in that issue.
 8              THE COURT:  Okay.  So I appreciate the
 9    Government's objection there.  I think since it doesn't make
10    a difference here, I'm going to deny that objection.
11              Mr. Smith, I'll hear from you.  I'll tell you, I
12    am very interested in the parties' view particularly on this
13    administration of justice point.  This strikes me as a close
14    question.
15              I'll tell you, I'm not very sympathetic to the
16    argument that your client did not provide false testimony
17    here.  So if I were you, I wouldn't spend a lot of time on
18    that point.
19              And similarly, I'm not very convinced by the
20    Government's argument that the Defendant himself injured or
21    threatened someone.  So I do want to hear from the
22    Government in a minute, but I think the more fruitful line
23    on that would be what other people did that can be
24    attributed to him.
25              So with those permutations, but primarily on the
```

1    administration of justice, I'd love to hear from you.

2              MR. SMITH:   So thank you, your Honor.

3              So one interesting issue that pops up often in

4    these January 6 cases over and over is an interpretive one.

5    And the Court is faced with a question of whether the plain

6    meaning of a term is primarily derived from a dictionary

7    definition -- sometimes it's a first definition, second,

8    third Webster's -- and on the other hand, whether ordinary

9    meaning comes from the context in which the term is used and

10   the relevant -- they call it -- the courts call it the

11   interpretive community that's using the term.

12             So I guess you might summarize the question as

13   being a dictionary definition versus an empirical meaning.

14   Do speakers use the term in the kind of way that the parties

15   are saying?

16             So the way this has played out in these cases is

17   there will be a term like "proceeding"; and I'm not going to

18   rehash all of the motion-to-dismiss arguments.  But a

19   prosecutor even or a criminal defense lawyer might see that

20   term in the context of Chapter 73 in the obstruction laws,

21   and they would say:  A proceeding is something that follows

22   an investigation.  A proceeding is where decision-makers

23   gather the information from the investigation.  They put a

24   legal characterization on it.

25             In these cases, the Government says:  Well, we can

1    look in Webster's and it says -- one of the definitions is a

2    series of actions.  That's one example.

3          Another example is the word "evidence."  Again,

4    lawyers in the criminal justice context would see the word

5    "evidence" and say this is information that proves or

6    disproves a fact and so on, even in the case of a phrase

7    like "execute the law."

8          You have the Government in a number of cases -- I

9    was just talking about one with Mr. Crisp -- where the

10   Government is saying:  Well, if we go to Webster's and look

11   at the word "execute," it can mean carry out.  But any

12   lawyer in the relevant interpretive community, prosecutors,

13   would say:  Execute the law?  That's what the Executive

14   Branch does.  They're enforcing the law.

15         It's not -- we can't just turn to Webster's and

16   look at the word "execute" because the relevant speakers are

17   lawyers and they're people in the criminal justice system.

18         So, Judge, we submitted a dissent.  We cited the

19   dissent in the case called *Bostock*, where the Justices were

20   really exercised on this point.  And this is really what

21   they're homing in on, that plain meaning is not just whether

22   you can fit some action inside the corners of any definition

23   you find in a dictionary.  Plain meaning is what speakers

24   use.  It's empirical.

25         This is a great quote, so I'm going to make it.

1   But Thomas Hobbes says:  Words are wise men's counters, but

2   the money of fools.  Words are wise men's counters, but the

3   money of fools.

4        What he means by that is, if words are conveying

5   the meaning we want them to, they're serving their purpose.

6   But when we just look at a word, a definition of a word in

7   the abstract, and we don't think about the context in which

8   it's used, they are controlling us and not the opposite.

9        And I think just to get to the point here, with

10  the sentencing guidelines, I think the clearest refutation

11  of the interpretive method that just looks at the dictionary

12  and not context is this issue, your Honor, because if

13  there's any term that prosecutors and defense lawyers and

14  judges are familiar with, it's the "administration of

15  justice."

16       We have submitted case law from I think four or

17  five circuits interpreting that phrase in the context of

18  Title 18.

19       THE COURT:  Weren't several of them "due

20  administration of justice"?

21       MR. SMITH:  Excuse me, your Honor?

22       THE COURT:  Weren't several of them "due

23  administration of justice"?

24       MR. SMITH:  That's correct.  So the phrase from

25  Section 1503 that they're analyzing is "due administration

1   of justice."

2          THE COURT:  Is it possible that that's a different

3   term of art than "administration of justice" here?

4          MR. SMITH:  Your Honor, we would probably say not,

5   because the -- you know, I don't think any of the cases

6   focus on the word "due" and that part of the phrase.

7          But the "due administration of justice" modifies

8   the phrase "administration of justice" in the sense that I

9   haven't really researched and I'm not sure when

10  administration of justice would not be due if we're talking

11  about properly initiated proceedings.  It seems like almost

12  kind of like a redundancy to say "due administration of

13  justice."

14          THE COURT:  I think *Black's Law Dictionary* defines

15  them differently.

16          MR. SMITH:  Defines "due" from "administration of

17  justice"?

18          THE COURT:  Due administration -- they're like two

19  terms of art.  And the due administration of justice, I

20  believe, was kind of more broad.  Maybe I'm misremembering

21  that.  But anyway, it seemed like for us lawyers, they're

22  two different terms.

23          MR. SMITH:  So, your Honor, I think, then, you

24  perhaps would have done a better job with the sentencing

25  memo yourself because if "due administration of justice" is

1    broader, that would suggest that "administration of justice"

2    would be even narrower than the definitions that were cited

3    by the courts of appeal.

4              THE COURT:  So, Mr. Smith, do you agree that 2J1.2

5    applies?  Is your position that there's just no sentencing

6    guideline here?

7              MR. SMITH:  So one of the points that Judge

8    Friedrich and I think Judge Moss picked up on was that Part

9    J of the sentencing guidelines itself, the overarching -- it

10   refers to "administration of justice."

11             And I think, your Honor, that that's a bigger

12   problem for the Government, not a less significant one.  But

13   I think we still find that the guideline itself applies

14   because if you look at Comment 1, the statutory provisions,

15   it cites Section 1512.

16             So I think there, the Government would have an

17   argument to say that, Well, we specifically cited the

18   statute here in the applicable provisions commentary.  On

19   that basis, it would apply.

20             But when it comes to analyzing the term

21   "administration of justice," I don't think -- I think -- we

22   submitted a supplemental memo on how it looks like in every

23   circuit that these -- the courts of appeal have decided that

24   the interpretive method for the guidelines shouldn't differ

25   from how we interpret statutes.

```
1              THE COURT:  Right.  But I guess I'm still -- you
2     say this is a problem for the Government.  But you're
3     agreeing -- I think I'm hearing this -- that this
4     obstruction of an official proceeding fits under Part J that
5     is defined as offenses involving the administration of
6     justice.
7              That feels like that's awkward for you that
8     this -- the guidelines have said this statute involves
9     offenses involving the administration of justice and so
10    perhaps this is a different term of art or is being used in
11    a different way here in the guidelines than it is in the
12    statute or in Black's Law Dictionary.
13             MR. SMITH:  Well, your Honor, so I think there's
14    two parts to this response.  One is that your Honor's
15    familiar with the provision of the guidelines that says if
16    there's no applicable provision, then the Court is directed
17    to find the most analogous provision.
18             So we would argue that if we have to -- the
19    guidelines instruct us to find the most analogous one, so I
20    can't come up here and tell your Honor that there's nothing
21    the Court can use.  So I guess the defense position would be
22    if the Court has to do that and find an applicable
23    guideline, it should be the one where the statutory section
24    in the commentary points to the statute that's being used.
25             But I don't think that that necessarily -- I
```

1    wouldn't follow the judges cited by the Government who take

2    the next step and say, Well, merely because we have a base

3    offense level we've agreed on, these enhancements can apply

4    as a matter of law.  I don't think the Court has to go that

5    far it, given that any -- some -- any kind of guideline has

6    to be used.  Otherwise, we're floating in space and there's

7    nothing to use.

8            So I would say -- I don't think that

9    Mr. Hale-Cusanelli's position is jeopardized by agreeing

10   that we have to find some guideline here.  And 14 base

11   offense points is something we're not objecting to.

12           THE COURT:  I mean, what do you think happened

13   here?  Would you agree that the Commission just didn't think

14   about this scenario and this was kind of an inadvertent slip

15   that they used "administration of justice" as a shorthand?

16   Do you think that's what happened?

17           MR. SMITH:  Judge, we've filed so much briefing on

18   the motion to dismiss, and I'm sure the Court is sick to

19   death of it.

20           But just to retread one of these points really

21   quickly:  I think what the Commission thought is the same as

22   what Congress thought, which is "administration of justice"

23   can entail certain proceedings in Congress pursuant to its

24   power of inquiry, which are analogous to the "administration

25   of justice" in judicial proceedings in a very specific way.

1    Congress is issuing subpoenas to call for witness testimony.

2    So they're gathering evidence in something that's also

3    called an investigation.

4            And although there's no judge, the findings that

5    Congress makes in an inquiry is -- carries legal

6    implications like a judicial proceeding would.

7            So to answer the Court's question, I think that

8    the Commission to the extent it contemplated congressional

9    proceedings was thinking of inquiries and investigations.

10   And so they thought that that phrase "administration of

11   justice" would cover those types of proceedings like in the

12   Iran Contra and, you know, other investigations in Congress.

13           THE COURT:  I take --

14           MR. SMITH:  Sorry.  I don't mean to interrupt your

15   Honor.

16           But we could probably go back to how people like

17   Oliver North and Admiral Poindexter were sentenced if it's

18   possible to still pull those sentencing memoranda from 1993.

19   But I suspect that the Government sought to apply

20   enhancements in that case, and there wasn't any debate from

21   North or Poindexter about whether this was the

22   administration of justice because they defied subpoenas.

23   Allegedly, they lied to Congress.

24           THE COURT:  So you're not going to convince me

25   that obstruction of an official proceeding does not cover

1    what's going on here.  And I understand you're not trying to

2    retread that ground.

3              MR. SMITH:  Understood.

4              THE COURT:  But my question is:  Is that

5    "obstruction of an official proceeding" -- is your view that

6    they intentionally left that out here?  Or "official

7    proceeding," I should say.  Or that they saw this as some

8    sort of shorthand for all of what was happening under the

9    statute?

10             MR. SMITH:  I think it's the latter, Judge.  And I

11   think the Court can also have it both ways.

12             I think it's not undercutting Mr. Hale-Cusanelli's

13   legal argument on his motion for a judgment of acquittal to

14   say:  If the Court -- the Court can both find that this

15   offense is stating a Section 1512(c)(2) offense, there was

16   an official proceeding, and that that official proceeding

17   didn't involve the administration of justice, because courts

18   have held that that meaning is clear.  It's judicial

19   proceedings or proceedings that imitate judicial ones

20   through a certain kind of way like in this *Kelley* case we

21   cited from the D.C. Circuit.

22             So I don't think there's anything inconsistent in

23   those positions to both deny Mr. Hale-Cusanelli's post-trial

24   motion and find that "administration of justice" means this

25   specific thing.

1          THE COURT:  Maybe you can address the Chief

2     Judge's analysis.  I mean, she spent a lot of time and I

3     thought had a very thoughtful analysis for why this does

4     apply.  You talked about Judge Friedrich in your response,

5     but I didn't see much on the Chief Judge.

6          MR. SMITH:  Well, is there a specific -- so Judge

7     Friedrich's points, I think, were three:  that we don't

8     interpret -- the Courts don't interpret the guidelines in

9     the same manner as statutes.  Maybe that was Judge Friedrich

10    and Judge Moss.

11          The second point was that an interpretation of the

12    "administration of justice" as it's been interpreted by

13    every court of appeals would create unwarranted disparity.

14          And then the third point was kind of a policy one,

15    which is that the Commission could not have meant what the

16    defense means by administration of justice because that

17    would cut out all congressional obstruction.

18          Is there a point that Judge Howell made that's

19    separate from one of those?

20          THE COURT:  Well, she talks about the *Black's Law*

21    *Dictionary* definition and suggests that what happened here

22    actually is consistent with that definition of

23    administration of justice and that *Aguilar*, the United

24    States Supreme Court case that talks about administration of

25    justice, actually talks about what a broad term that is and

1   that it can be capacious enough to include this official

2   proceeding.

3           MR. SMITH:  Judge, I think this goes back to the

4   initial point I was making about when plain meaning is a

5   dictionary definition and when it's empirical.  I think

6   Judge Moss said in his case where he applied this rule that

7   justice is defined as fair play.  One of the meanings of

8   justice is fair play.

9           And so that's obviously not what courts mean when

10  they're playing Section 1503.  They don't just look at

11  Webster's and say fair play because -- think about the

12  implications of that.

13          So if --

14          THE COURT:  Sure.  But --

15          MR. SMITH:  If I get together with my friends at a

16  restaurant --

17          THE COURT:  I get to interrupt you, not the other

18  way around, Mr. Smith.

19          I'm not talking about Webster's dictionary.  I

20  think "administration of justice" -- frankly, I agree with

21  you:  That is a legal term that is different from just

22  looking up in Webster's "administration" and "justice" and

23  putting them together.

24          But she's pointing to *Black's Law Dictionary* and

25  saying this is a term of art and that term of art fits here.

1    And my recollection is, as I think you just said, your

2    circuit court definitions are looking to "due administration

3    of justice"; and in a statute that may well have a narrower

4    meaning there than *Black's Law Dictionary*, especially given

5    that I think you admit that this statute was intended to

6    fall within this "administration of justice" part.

7              MR. SMITH:  So I think the response to the Chief

8    Judge would be:  This is an empirical question.  Do courts

9    use the phrase and have they used the phrase or prosectors

10   or defense lawyers in the sense meant by the Court, which is

11   outside the context of how we define "administration of

12   justice" in Section 1503, which is investigation followed by

13   fact-finding and subpoenas and the like?

14             And unless I'm mistaken, I don't think Judge

15   Howell cites an empirical example of a speaker in any

16   context using "administration of justice" in the sense that

17   the Chief did.

18             THE COURT:  Let me read you the definition.  It

19   says:  The maintenance of right within a political community

20   by means of the physical force of the state.  The state's

21   application of the sanction of force to the rule of right.

22             Why doesn't that fit what was happening here?

23             MR. SMITH:  Because, your Honor, if we look at --

24   this goes back to the distinction I keep harping on, and I'm

25   sorry if it's repetitive.

1          But there's a distinction between looking at an

2     abstract way a word is defined in general terms in a

3     dictionary and looking at how it's used in life and what

4     plain meaning is.

5          Like if we follow the points made by the dissent

6     in *Bostock*, plain meaning is an empirical question.  When we

7     turn to a dictionary, that's a kind of shorthand for what

8     the empirical question is likely answered.  But the question

9     is whether people have -- people, the relevant speakers, use

10    the term "administration of justice" outside of the context

11    in which we're defining administration of justice in Section

12    1503.

13         And there are no speakers that at least the Chief

14    Judge pointed to or the Government who say the phrase

15    "administration of justice" outside any context that's not

16    defined in the way we mean it in Section 1503.  That's

17    always how it's used.

18         So then the question becomes:  If the person

19    proposing an interpretation does not cite speakers who use

20    it that way, what exactly are they doing?

21         And I think the danger when we don't look at the

22    empirical meaning of the word is we're disconnecting the

23    legislature from courts.  There's no foundation we're

24    standing on if we can just turn to a dictionary and use

25    general phrases and fit it to the facts.  We're floating in

1    space again.

2            Basically, that interpretive method would mean

3    that statutes are like the guidelines:  advisory, basically,

4    if we don't connect the way we're defining this word to the

5    way speakers use it.

6            And the judge -- I think there's a reason the

7    Chief Judge did not point to speakers or courts using it

8    that way.  They don't.

9            And so this is -- and not to draw a larger circle

10   here, but this is happening over and over and over in these

11   cases, where there are settled meanings within

12   interpretative communities for words like "proceeding" or

13   "execute the law."

14           And what the Government is doing is it's saying:

15   Well, let's just open the dictionary and look at a term.

16   But there's no speakers who talk that way.

17           So I think, Judge, our point is that if the Court

18   were to find that "administration of justice" is what was

19   going on in the Capitol on January 6th, that is -- it would

20   not be applying the plain meaning of the word as it's used

21   by speakers.  It would be taking general phrases in a

22   dictionary and then fitting it to the facts rather than the

23   other way around.

24           THE COURT:  I understand your point.

25           Anything else you want to say on that?  Or do you

1    want to speak specifically to why, assuming I disagree with

2    you here on the definition of "administration of justice,"

3    these two enhancements would not apply?

4         MR. SMITH:  So one last point I'd like to make,

5    Judge, is that even Judge Moss in one of the cases the

6    Government cited acknowledged that there was probably

7    ambiguity.  And I think, you know, not that the Court

8    committed itself with its opening comments, but it said this

9    issue is challenging.

10         We cited in our supplement a case, a D.C. Circuit

11   case -- I can't remember the name -- where the Court applies

12   the rule of lenity to plain ambiguity in the guidelines.  So

13   I think here, even if we are not correct about the plain

14   meaning, I think it's very, very challenging to candidly say

15   that this is not ambiguous and that it's unambiguously the

16   case that the Government's position is correct.  The very

17   debate we're having would suggest the opposite.  And so the

18   rule of lenity would be squarely applied here.

19         THE COURT:  I understand your point.

20         MR. SMITH:  But, Judge, on the fact -- there are

21   arguments we'd like to make about them factually not

22   applying.  Would your Honor like to hear those now?

23         THE COURT:  Yes.

24         MR. SMITH:  So I don't even think the Government

25   takes the position that Mr. Hale-Cusanelli caused physical

1      injury or property damage on the --

2                THE COURT:  So I'm inclined to agree with you on

3      this.  I want to hear -- I think the Government points out

4      that even if he wasn't personally responsible for injury, he

5      is also responsible under 1B1.3 or something.

6                MR. SMITH:  Which would be the aiding and abetting

7      concept.

8                THE COURT:  Yes.  Talk about that.

9                MR. SMITH:  I will address aiding and abetting.

10               There is a case, a Supreme Court case, *Rosemond*,

11     R-O-S-E-M-O-N-D.  And it says that there are two elements to

12     aiding and abetting:  taking some act in furtherance of the

13     specific offense that was committed and intending to

14     commit -- intending to further that specific offense.

15               So it's not like a *Pinkerton* liability, where it

16     can be a slightly different crime that the Defendant's

17     responsible for.  It's got to be the specific offense that

18     someone else committed and the Defendant intends to commit

19     that offense.

20               I think here there's no evidence suggesting that

21     when Mr. Hale-Cusanelli tugged the collar of the rioter he

22     was --

23               THE COURT:  Sorry.  I'm not talking about that.

24     I'm talking more broadly.  Just a lot of people were injured

25     that day.  There was a lot of property damage.  It was done

1    by his fellow rioters.  His presence helped cause and create

2    that situation.

3             MR. SMITH:  So we would say, your Honor, then,

4    that doesn't come close to satisfying the *Rosemond* standard

5    because that would imply that everyone at the Capitol has

6    committed assault if their physical presence alone -- I

7    think there's a lot of case law saying that presence alone

8    doesn't satisfy the aiding and abetting standard.

9             THE COURT:  So you agree other people were doing

10   things that would justify the enhancement here; but under

11   *Rosemond*, he can't be found responsible for aiding and

12   abetting in that context?

13            MR. SMITH:  If there were other rioters in the

14   context of this officer who was tackling the rioter who were

15   threatening injury, then they would not only be held

16   responsible under the guidelines; they would be charged

17   ideally with assault, because that's -- threatening to

18   commit bodily injury is assault.  But we don't think that

19   presence alone would satisfy that.  We don't think the

20   tugging on the collar would satisfy it.

21            On the substantial interference point:  If the

22   Court turns to the guideline on substantial interference, it

23   will see that the types of actions that are substantial are

24   ones that are having an effect on the outcome of the

25   proceeding.

1          So there are indictments that are, you know,

2     issued through false testimony.  There is court proceedings

3     that are terminated through the actions of the Defendant.

4     So what unites all those examples, your Honor, I think it's

5     comment -- I don't have it handy --

6          THE COURT:  I'm looking at it.  But it also talks

7     about unnecessary expenditure of substantial governmental or

8     court resources.

9          MR. SMITH:  So the argument here is that this has

10    to be specific to the Defendant again and not the entire,

11    you know, crowd.  Otherwise, that enhancement would apply to

12    every single person who's -- you know, thousands of people

13    in the Capitol.

14          And I think this goes to a point we made in our

15    brief but we didn't stress enough, perhaps, which is that

16    responsibility is always individually administered.

17    Individual responsibility is an essential part of our

18    justice system.

19          Courts in this country have never imposed

20    collective punishment on defendants.  And so it's the

21    Government's burden to prove that the Defendant is

22    individually responsible for the crimes for which he would

23    be punished.

24          And so it's not enough for the Government to point

25    to a mob and say that because the Defendant is a member of

1    it, he's responsible for all of its actions and

2    consequences.

3              And so we think that the --

4              THE COURT:  So they point to -- it's 1B1.3:  In

5    the case of a jointly undertaken criminal activity, all acts

6    and omissions of others that were within the scope of the

7    jointly undertaken criminal activity, in furtherance of that

8    criminal activity and reasonably foreseeable in connection

9    with that criminal activity that occurred during the

10   commission of the offense of conviction, in preparation for

11   that offense or in the course of attempting to avoid

12   detection or responsibility for that offense.

13             MR. SMITH:  And, Judge, our response to that

14   guideline is that if you look up the case law interpreting

15   joint action, it means two things:  conspiracy and

16   potentially *Pinkerton* vicarious liability after the

17   conspiracy or aiding and abetting liability.  Those are the

18   two types of joint action that the guidelines are referring

19   to.

20             And we would say that if there's no conspiracy and

21   the *Rosemond* aiding and abetting factors aren't satisfied,

22   then you don't get to that guideline.  The guideline's not

23   referring to just a mob.

24             So we think this analysis merges with the

25   unwarranted sentence disparity point.  But I don't think the

1        Court wants to get there yet.  But, you know, if --

2                    THE COURT:  No.

3                    MR. SMITH:  If it's the case that this is

4        substantial interference because other people did these

5        things and the Defendant was present, then it would imply

6        the Government has mischarged hundreds of people, that these

7        misdemeanants who entered the Capitol Building were not

8        properly charged under Title 40.  They should have been

9        charged with assault and Section 1512 violations.  But that

10       would collapse the two offenses.

11                   You know, one point we will make under the

12       unwarranted sentence disparity issue is that there are

13       thousands of people who did things that are in many ways

14       indistinguishable from Mr. Hale-Cusanelli's conduct that day

15       who are not just charged with Title 40 offenses, but --

16                   THE COURT:  But that's not an unwarranted sentence

17       disparity.  It's about when you're found guilty of similar

18       conduct.  And I mean, they're not being found guilty of

19       similar conduct.  Right?

20                   MR. SMITH:  Well, so just to make clear what our

21       position is:  We do not understand what -- in many cases --

22       and we submitted a chart showing the conduct of

23       misdemeanants who were charged under Title 40; and it's very

24       similar, sometimes worse, than Mr. Hale-Cusanelli's.  There

25       were misdemeanants who broke into senators' offices, you

31

1    know, who kicked down doors or were there when they were

2    kicked down, who were ignoring officers' commands to leave

3    the building.  And they were sentenced under Title 40 to

4    probationary sentences.

5              THE COURT:  Anything further, Mr. Smith?

6              MR. SMITH:  So just to be clear, your Honor, are

7    we arguing, you know, all of our points right now?  Or do

8    you want to give the Government an opportunity to speak on

9    the legal issues and we can come back with some of the

10   others?

11             THE COURT:  I want to hear your view on the

12   calculation of the guidelines.

13             MR. SMITH:  So I think that's it.

14             THE COURT:  Thank you.

15             MR. SMITH:  Yes.

16             THE COURT:  Ms. Fifield?

17             MS. FIFIELD:  Good morning, your Honor.

18             THE COURT:  Good morning.

19             MS. FIFIELD:  I assume the Court would like to

20   start where it began with defense counsel, which is the

21   legal arguments versus the factual arguments as to the two

22   specific offense characteristics that apply under 2J.

23             And I'd like to start with what I think is the

24   biggest problem for the defense, which in part this Court

25   insightfully pointed out, which is that Part J of the

1    guidelines are devoted entirely to offenses involving the

2    administration of justice.

3          And 18 USC 1512 is specifically one of the

4    statutes to which that section -- specifically 2J1.2 --

5    applies.

6          And if the defense is correct that these

7    enhancements can only apply to offenses involving the

8    administration of justice, which somehow do not include

9    several other statutes that have nothing to do with courts,

10   judicial officers or tribunals, there is no way under the

11   application of 2J1.2 to measure the magnitude of a

12   defendant's obstruction.

13         There is a difference between a defendant who

14   obstructs, whether it's a judicial proceeding or a

15   nonjudicial proceeding, by failing to appear and a defendant

16   who obstructs an official proceeding or another proceeding

17   by threatening to cause or actually causing physical injury

18   and property damage.

19         So the first point is that if the Court were to

20   accept the defense's argument, it would lead to some absurd

21   results when it comes to sentencings under several of the

22   Chapter 73 1500 offenses that are cited as the statutory

23   provisions to which 2J1.2 applies.

24         THE COURT:  Do we interpret the guidelines

25   differently than we interpret statutes?

1          I mean, I'll tell you, my strong inclination, if

2    this was a statute here and you were charging that the

3    Defendant committed a violation of due administration of

4    justice, I'd say no.  I mean, that's not how the due -- or

5    the "administration of justice" has been interpreted by

6    numerous courts.  I think it's probably why you didn't

7    charge him under 1503, which is an administration of justice

8    statute.

9          Instead, you charged him under this one that also

10   has the official proceedings that, you know, I think, as

11   I've said, I think is broader or at least different than

12   "administration of justice."

13        MS. FIFIELD:  Your Honor, I do think that

14   "administration of justice" as it's used in the sentencing

15   guidelines is broader than it is used in the statutes, which

16   is not to say that the interpretive tools are any different.

17        But the guidelines in terms of both substance and

18   structure differ from the statutes that the defense is

19   talking about, not least of which because a key part of the

20   sentencing guidelines is identifying which guideline goes

21   with which statute, which again gets back to the absurd

22   results that I referenced before.

23        But the guidelines also define the substantial

24   administration of justice extremely broadly to encompass the

25   unnecessary expenditure of substantial government or court

1    resources.

2           And it is the Government's position that those key

3    differences, even using the same interpretive tools as one

4    would use in reading a statute, the plain meaning, the

5    structure of the text, leads to a clear argument that -- or

6    a clear conclusion that this guideline applies to the

7    Defendant's obstruction offense.

8           THE COURT:  What do you say to Mr. Smith's

9    argument that no one uses the term this way, "administration

10   of justice"?

11          MS. FIFIELD:  Speaking frankly, my first response

12   is no one uses the term "administration of justice."

13          And, you know, it's interesting that I think we

14   can all agree that it is a term of art, and that doesn't

15   necessarily mean that it means the same thing every time

16   that it is used.

17          And to the Court's point that there are extra

18   words involved sometimes, "due administration of justice" --

19   I was looking at as defense counsel was speaking a couple of

20   the other Chapter 73 obstruction offenses.  And 18 USC 1505

21   talks about impeding the due and proper administration of

22   the law under which any pending proceeding is being had.

23          So I think the use of the term "administration of

24   justice" is very context-dependent.  And in this case, when

25   we're talking about the sentencing guidelines, the

1    sentencing guidelines are designed to adapt to any number of

2    factual circumstances.

3            And oftentimes or in lots of occasions, we are

4    dealing with a situation where the guideline doesn't even

5    specify that the offense that is being discussed, the

6    offense at issue, is associated with that guideline.  We

7    have this issue in the Capitol riot cases when it comes to

8    18 USC 231.

9            But this guideline is clear:  18 USC 1512(c)(2) is

10   governed by 2J1.21.  And in that context, the administration

11   of justice means something -- simply because the

12   interpretive tools are the same does not mean that it leads

13   to the same outcome or the same interpretation, because you

14   have to consider the structure as part of -- I think that is

15   part of the plain meaning, is considering the structural

16   context in which one finds the term.

17           THE COURT:  Let me give you a hypo.  So you're

18   familiar with ghost guns.

19           MS. FIFIELD:  Yes.

20           THE COURT:  So imagine a defendant has been

21   convicted of felon in possession with use of a ghost gun.

22   And you probably know there's this obliteration of a serial

23   number enhancement for firearms charges.  It doesn't talk

24   about ghost guns, of course, because ghost guns weren't

25   around when the guideline was created and we haven't had a

1    full Commission until very recently.

2            My instinct would be that the same reasons why we

3    should punish an obliterated serial number on a firearm more

4    harshly would also apply to a concern about someone using a

5    ghost gun.  It's not traceable, what have you.  But the

6    guideline says nothing about ghost guns.

7            Should I apply that obliterated serial number

8    enhancement?

9            MS. FIFIELD:  I am familiar with ghost guns.  But

10   not being quite as familiar with the specifics as I think

11   the Court is, I would say there's a good argument that you

12   could do that.

13           I think the funny thing about the guidelines is

14   they are -- they attempt technical order of incalculable

15   facts and circumstances.

16           But I do think they are designed to be a

17   functional tool that, even if the sentencing guidelines

18   haven't specifically addressed a specific factual

19   circumstance that is before the Court, the Court is well

20   within its discretion to look at the clear direction of the

21   guidelines, which in this case 2J1.2 clearly directs the

22   Court to apply it to an offense under 18 USC 1512(c)(2).

23           And the substantial administration of justice

24   clearly captures what the Defendant's offense involved here,

25   which was the substantial expenditure of government

1    resources to recover from this riot just on that day alone.

2         And in terms of the interpretive tools that we're

3    using -- and I do think that, as I've said, the structure is

4    very important -- the defense has argued that it would be

5    absurd to interpret "administration of justice" differently

6    in the sentencing guidelines as in the statutes.

7         I think it would be more absurd to interpret the

8    phrase "administration of justice" such that it meant one

9    thing for the substantial interference enhancement and

10   something different for the threatening to cause or actually

11   causing physical injury or property damage enhancement.

12        So it seems to me that the guideline are very

13   clear on this.  And they give good direction to the Court to

14   look at the factual circumstances that it has before it and

15   apply the guidelines based on the facts, which is what I

16   think we'll talk about next.

17        THE COURT:  My concern about this -- and I'll tell

18   you -- I think if the Commissioners were all sitting around

19   here, they'd all agree we should want this offense to be

20   within the enhancements.  But they did use different

21   language.

22        And I think Mr. Smith makes good points, that

23   we're supposed to be using the same interpretive tools for

24   guidelines that we use for statutes, you know, the rule of

25   lenity, ambiguity.  You have the burden to show the

```
1    enhancement applies.
2             Why isn't the answer just that they didn't include
3    "official proceeding"?  They should have done that; they
4    probably wish they had done that.  Maybe they will change it
5    to include that.  But they didn't right now.
6             The judges in this district have been pretty clear
7    back at the motion-to-dismiss stage that this isn't an
8    administration of justice.  This is something different, an
9    official proceeding, and that we should be consistent.
10            And you can certainly argue for a 3553(a) upward
11   variance and get to the same result.  But when I'm trying to
12   faithfully contextually apply the guidelines, is this
13   administration of justice?
14            MS. FIFIELD:  I think the first response to that
15   is that notably or interestingly, that was not an aspect of
16   this Court's ruling on whether obstruction of an official
17   proceeding encompassed the conduct that we're talking about
18   in this case.
19            And even though it was an aspect of other courts'
20   decisions that 18 USC 1512(c)(2) captures the conduct that
21   occurred on January 6th, they also arrived at the place that
22   the Government is asking this Court to arrive now, which is
23   that it does mean something different in the context of the
24   sentencing guidelines.
25            And a functional, commonsense approach to the
```

1    guidelines in this case, just like the Court said, everyone

2    looking at the facts of this case and looking at the way

3    that the guidelines structure these enhancements, it's a

4    commonsense approach to apply them because it measures the

5    degree and magnitude of obstruction.

6          THE COURT:   I mean, we have this *Winfield* case in

7    this circuit where really this circuit has been very

8    concerned about us applying the guidelines kind of using the

9    comments to inform the guidelines really kind of directing

10   us to be -- really stay within the text of the guidelines.

11         And even though we think something should be kind

12   of crammed into it and the Commission intended to include

13   it -- you may recall *Winfield* was about "attempts," where

14   the guideline itself doesn't talk about "attempts," but the

15   comments say that "attempts" should be included.   And the

16   circuit said that that doesn't work.   If it's not in the

17   text of the guideline, it doesn't apply; and you need to

18   proceed that way.

19         I mean, it feels like you're asking me to fix a

20   mistake that the Commission made.   And I'm not sure that's

21   my job.

22         MS. FIFIELD:   I don't think it is a mistake.   I

23   think that the guidelines clearly capture statutes that

24   themselves capture conduct that has nothing to do with

25   judicial proceedings or tribunals.

1          And, you know, that could be -- I have on my list

2    1505, 1511, 1516 and 1519.

3          1505 is obstruction of proceedings before

4    departments, agencies and committees.  And that is the

5    statute that I read from earlier, which captures conduct

6    that -- "whoever corruptly, by threats or force, by any

7    threatening letter or communication, obstructs, impedes or

8    endeavors to influence, obstruct or impede the due and

9    proper administration of the law under which any pending

10   proceeding is being had before any department or agency of

11   the United States."

12         THE COURT:  Yes.  I mean, you probably know you

13   have the FTC; you have all these commissions around here

14   that have surprisingly court-like attributes.  You have

15   ALJs, what have you.  And so I certainly agree with you that

16   it would go beyond grand juries and what you and I do around

17   here.

18         But there's a lot of other things that the Federal

19   Government does that look a lot like this proceeding that

20   are arguably administration of justice that are several

21   stepped removed from a certification process at the Capitol.

22         MS. FIFIELD:  I don't think the Court needs to get

23   there, as I've gone over.

24         But I would go back to the Government's

25   alternative argument that this certification did have some

1    quasi-adjudicative or quasi-investigative aspects.  But I

2    think if you're looking at these other statutes, these

3    statutes capture a broad range of conduct.  Some of this

4    involves investigations; some of it, like in the case of 18

5    USC 1511, involves enforcement of the criminal laws.

6           The defense talked about the rule of right, as the

7    Court mentioned in Judge Howell's decision.  The rule of

8    right is spelled out in the Constitution, the Electoral

9    Count Act.  The rule of right was the proper functioning of

10   the peaceful transfer of power by certifying the Electoral

11   College vote.

12          So I do think that if -- I don't want to keep

13   harping on it, but if the Court determines that these two

14   enhancements don't apply, and we're considering all of the

15   conduct that is captured in these Chapter 73 obstruction

16   statutes, there is no way to measure the degree and

17   magnitude of a defendant's obstruction if these enhancements

18   do not apply.

19          THE COURT:  I'll hear you on the specific points,

20   the facts here.

21          MS. FIFIELD:  I appreciate the Court's flagging

22   that the Court is less persuaded by the Defendant's own acts

23   analysis.  But I would like to start there, if it's okay

24   with the Court.

25          THE COURT:  Quickly.

1            MS. FIFIELD:  Quickly.

2            The Defendant's own acts, as laid out in the

3      Government's sentencing memo, the Government has two

4      theories supporting the Defendant's own acts under the --

5      I'll call it the plus eight.

6            First, the Defendant entered the United States

7      Capitol on January 6th clearly having invoked at least at

8      that stage in his own mind civil war.  He was engaging in

9      conduct that was militaristic in nature.  He was saying,

10     "Advance, advance, advance."  And he later told a witness

11     that he was saying, "Advance, advance, advance" because he

12     was encouraging other rioters to come into the Capitol

13     Building and we need more people.  That's what the Defendant

14     said.

15           And that marshaling of a violent mob that the

16     Defendant engaged in was a direct threat to law enforcement

17     and property damage.  And that does bleed into a little bit

18     sort of the aiding and abetting analysis.  And when I get to

19     the aiding and abetting analysis, that's some of what I'll

20     discuss.

21           But the Defendant himself engaged in that conduct

22     for the stated purpose of taking the building and holding

23     it, which would mean expelling law enforcement, leading to

24     its logical end.

25           More directly, this interaction that the Defendant

1    had with Officer Matthew Shephard in the Capitol Visitor

2    Center is much broader than I think the Government even

3    emphasized in its arguments at trial.

4         Officer Shephard -- the Government put this in its

5    sentencing memorandum -- Officer Shephard talked about what

6    was going on down in the Capitol Visitor Center at the time

7    the Defendant was there.  He was talking about the number of

8    rioters who had homemade weapons and projectiles.  He was

9    talking about rioters who had chemical spray in their

10   possession.  And he talked about these people as a group of

11   which the Defendant was a part.

12        And when he was talking about the officers'

13   priorities about who to detain in what order, because, as he

14   said, they didn't have nearly enough resources down there in

15   the Capitol Visitor Center or anywhere in the Capitol on

16   January 6th, they decided to focus first on rioters with

17   chemical spray and with these homemade weapons.

18        And when Officer Shephard and his fellow officers

19   step out from their formation to attempt to detain some of

20   these more aggressive agitators and folks with weapons,

21   because, as he put it, if they were blinded by chemical

22   spray, they had no idea -- they had no way to protect their

23   weapons, which would have been -- I think the way he put it

24   sort of simply was a terrible situation.  We can -- there's

25   no dispute that if a rioter had gotten ahold of a service

1    weapon down in the Capitol Visitor Center, that would be an

2    immediate and serious threat not just to law enforcement,

3    but to anyone else down there.

4            When Officer Shephard steps out with fellow

5    officers to detain rioters who are wielding chemical spray

6    or other weapons, it breaks down into what he called a

7    brawl.  You can see that in Exhibit 411 that the Government

8    submitted to the Court.  You can't see the officers when

9    this interaction begins because they're off frame.  But you

10   can see the brawl that Officer Shephard's talking about as

11   it appears in the top right corner of that frame in Exhibit

12   411.

13           And when that brawl breaks out, the Defendant runs

14   over to this scuffle -- it looks like a rugby scrum -- up in

15   the top right corner of the frame.  And then as Officer

16   Shephard is trying to take down the other rioter --

17   Rukstales, I think, is his name -- Hale-Cusanelli had

18   previously backed up to get away from the brawl that he

19   still is watching.  And it is at this point when Officer

20   Shephard is attempting to detain this rioter who is

21   struggling and resisting that detention that Hale-Cusanelli

22   swoops in and tries to grab that rioter out of Officer

23   Shephard's grasp.

24           And I think any law enforcement officer would tell

25   you that a person interfering with an ongoing arrest and

1     detention of a different subject is a direct threat to law

2     enforcement in that moment.  They would consider it as such.

3             In terms of the aiding and abetting and jointly

4     undertaken criminal activity, I'll say that I hadn't

5     prepared extensive arguments on this because I do think that

6     the Defendant's own acts gets the Court to the plus eight.

7             But there are various points at the riot -- in the

8     riot when even though the Defendant has not been charged as

9     part of a conspiracy or he does not have co-conspirators as

10    a technical matter, it is well-established --

11            THE COURT:  1512 includes aiding and abetting.

12    Right?

13            MS. FIFIELD:  Right.

14            THE COURT:  And we discussed that --

15            MS. FIFIELD:  Right.

16            THE COURT:  -- at length at the trial.

17            MS. FIFIELD:  Right.

18            The Senate wing door is a great example.  At 12:12

19    p.m., when -- or even honestly before that, when we are down

20    on the lower west terrace and the Defendant is picking up

21    and moving bike rack barriers, that could be interpreted

22    pretty easily as assistance being provided to the mob who is

23    minutes later going to attack a line of police at the base

24    of the northwest stairs.

25            Hale-Cusanelli is in that crowd after that line

1    collapses.  First, there's a brutal battle on the northwest

2    stairs.  That crowd climbs the stairs up to the upper west

3    terrace and then to the Senate wing door, where I think you

4    can fairly say as a group they coordinate to breach both the

5    window to the right of the Senate wing door if you're on the

6    outside and then the door itself.  And Hale-Cusanelli was in

7    that crowd.  He was inside that door within 90 seconds of

8    the window being smashed.

9         So I think you can -- even just looking at the

10   window, for example, or -- I don't have documentation or

11   information about the cost of the damage to the door, but it

12   was kicked in because it was previously locked and secured,

13   so I imagine there was damage.  But even just in that

14   instance, I think, Hale-Cusanelli could be fairly said to

15   have threatened to cause or caused property damage by aiding

16   and abetting others.

17        The same argument and perhaps even a stronger

18   argument goes back to that interaction in the Capitol

19   Visitor Center with Officer Shephard.  Hale-Cusanelli was

20   part of a crowd that was actively resisting law enforcement

21   directions to leave and physically engaging with law

22   enforcement who were threatened and who -- that was an

23   ongoing threat to their personal safety and security as well

24   as to the building.

25        That could also include the Government's first

1    argument as to the Defendant's own acts when he's doing this

2    "Advance, advance," calling people into the building.  He is

3    by his own words and his own actions working with other

4    rioters so they can bring in more people and take the

5    building, hold the building, clear the building.

6         So I think unless the Court has other questions,

7    I'll conclude by saying I think there are a lot of different

8    ways from a factual perspective that this Court can get to

9    the plus eight.  The Government's position is that the

10   strongest argument is that the Defendant by his own acts

11   posed a direct threat to law enforcement.

12        But even through the aiding and abetting route,

13   there are multiple different points during his time on

14   Capitol grounds and inside the Capitol Building where the

15   Defendant works together with other rioters to cause

16   property damage and to present a threat to the safety of law

17   enforcement.

18        THE COURT:  Thank you, ma'am.

19        I'll hear very briefly from you, Mr. Smith.

20        MR. SMITH:  Judge, just very briefly in response

21   to a couple of the points on the administration of justice

22   the Government just made:  Ms. Fifield suggested that if the

23   Court were to construe administration of justice like most

24   other courts of appeal have construed it, under Section 1503

25   that other sections in Chapter 73 might not -- the Court

1    might not have a way to degree -- to measure, meter out the

2    differences between defendants in Section 1505.

3            That is not the case.  If the Court looks to the

4    *Kelley* decision, K-E-L-L-E-Y, which interpreted Section

5    1505, the Court of Appeals said that this is administration

6    of justice because of the particular indicia that it pointed

7    out, the investigation, subpoenas and adjudicative power.

8    So there is no suggestion that Sections 1505, 1511 -- there

9    was one other statute that Ms. Fifield cited -- but there

10   is -- that risk is a bugbear.  It's not real.

11           On the factual points, Ms. Fifield started with

12   the suggestion that Mr. Hale-Cusanelli's conduct was

13   starting civil war when he entered the building.

14           Judge, this is hyperbole.  And I don't think I'd

15   go too far by saying it's inappropriate.  We should reserve

16   phrases like that for circumstances that really describe it,

17   and not elsewhere.

18           I think you'll see that Ms. Fifield didn't really

19   exactly describe what facts satisfy the *Rosemond* standard

20   for aiding and abetting.  The case law is clear that

21   presence alone does not satisfy aiding and abetting.

22           There was no -- she didn't cite any specific act

23   that Mr. Hale-Cusanelli took that forwarded the specific

24   intent to cause bodily injury or threat to law enforcement.

25   If interference alone meant assault, which is what

1   threatening to commit bodily injury does, then, your Honor,

2   the Government has charged far, far, far too few defendants

3   with assault.  There is interference charges all over the

4   January 6th cases.  It's under a statute called Section

5   231(a)(3), which criminalizes interference with law

6   enforcement during a riot.

7           There has to be some kind of difference between

8   interference and assault.  The case law has always drawn

9   that distinction.

10          So we didn't hear any facts showing what action

11  Mr. Hale-Cusanelli took that demonstrates an intent to

12  threaten bodily injury.  There are none.  And presence alone

13  cannot get them there.  Waving at a skylight didn't.

14          Judge, on unwarranted sentencing disparities, I

15  understand the Court's disagreement on the comparison with

16  the Title 40 offenses.  But, your Honor, in our briefing

17  submission, we submitted some sentences for real, true

18  meat-and-potatoes assault.  There are some cases where

19  rioters have punched law enforcement officers, struck them

20  with Lacrosse sticks, pulled down barriers.  Those cases are

21  between the -- I guess you could say six months and a year

22  and a day.  There's, you know, half a dozen of those.  That

23  conduct is unquestionably more severe than

24  Mr. Hale-Cusanelli's.

25          THE COURT:  Okay.

1          MR. SMITH:  One other case we cited is the

2    *Mostofsky* case, where a defendant went into the Ohio Clock

3    Corridor.  He stole a police vest.  And he was one of the

4    most prominent rioters in that section of the Capitol.

5    That's an eight-month sentence.

6          THE COURT:  Thanks.

7          Let's take a five-minute break.

8          (Thereupon a recess was taken, after which the

9    following proceedings were had:)

10          THE COURT:  I appreciate the arguments and the

11    briefing on this from the parties.

12          Mr. Hale-Cusanelli objects to the imposition of

13    the enhancements found in 2J1.2(b)(1)(B) and (b)(2) on the

14    ground that the Electoral College certification which he

15    obstructed did not involve the administration of justice.

16          Even though that phrase appears in the sentencing

17    guideline and not a statute, I think it's appropriate to

18    interpret the phrase using the same interpretive canons and

19    methods as for a statute.  This approach has broad support

20    among many circuits, as noted in Mr. Hale-Cusanelli's filing

21    from yesterday, ECF No. 115.

22          *Black's Law Dictionary* defines "administration of

23    justice" as "the maintenance of the right within a political

24    community by means of the physical force of the state and

25    the state's application of the sanction of force to that

1    rule of right," closed quote.

2          As that phrase denotes, the administration of

3    justice involves using the state's coercive force to

4    maintain or enforce a legal right.

5          Although I think this is a close call, the

6    certification had no such characteristics.  Congress itself

7    cannot enforce the certification results nor impose some

8    sanction of force to its pronouncement.  Admittedly, someone

9    cannot be elected president until Congress completes the

10   certification, but that fact does not bear on

11   enforceability.

12         If someone disagreed with the certification or

13   wanted to vindicate it, they would have to begin some kind

14   of judicial proceeding.  And, if needed, law enforcement

15   could act to enforce the certification results.

16         Those actions would involve administration of

17   justice precisely because they carry the possibility of

18   punishment by the state.

19         This distinction has the same basis in the

20   separation of powers.  When Congress passes legislation, it

21   defines the rights of citizens and in the criminal sense

22   authorizes when the state can use its coercive power to

23   punish wrongdoing.

24         In that sense, every law involves justice.  But

25   Congress does not administer the justice it metes out.  That

1    is a job for law enforcement and for the courts.

2            Judge Moss made a similar point in *United States*

3    *versus Montgomery*, when he wrote that Congress, quote, "does

4    not engage in the administration of justice," closed quote,

5    578 F.Supp. 3d, 54, Page 65, from this district, from 2021.

6            Although I'm not sure if Congress never engages in

7    the administration of justice, I am convinced that the

8    certification is appreciably different from investigatory

9    hearings or other instances where Congress might be said to

10   administer justice.

11           And I agree with Mr. Smith that this definition

12   from *Black's Law Dictionary* is actually pretty capacious and

13   arguably, as lawyers and we in the courts use that term,

14   "administration of justice," it's even a narrower term that

15   assuredly would not include normal proceedings in front of

16   Congress or even something like the certification.  I think

17   perhaps that's different in some sort of impeachment hearing

18   or something where subpoena power is at play, but neither of

19   those apply here.

20           My interpretation is also supported by other

21   decisions in this courthouse, although not directly on this

22   point.  All of my colleagues have denied the argument also

23   put forward by Mr. Hale-Cusanelli in this case that the term

24   "official proceeding" in 1512(c)(2) dealt only with those

25   proceedings involving the administration of justice.

1          Indeed, although I did not address that phrase at

2    length in this case, I implicitly rejected it.  That denial

3    gives me pause about finding Mr. Hale-Cusanelli's conduct

4    affected the administration of justice.

5          As we all know, the statute trumps a guideline.

6    That's from *Dorsey versus United States*, 567 U.S. 260, Page

7    266, from 2012.  And given that statutory supremacy, courts

8    must interpret a statute and a guideline, quote,

9    "harmoniously."  That's *United States versus Higgins*, 129

10   F.3d 138, Pages 141 to 142, from the Third Circuit in 1997.

11         I see only incongruity if I agree with the

12   Government here.  It would be inharmonious to say on the one

13   hand that "official proceeding" is more expansive than

14   "proceedings involving the administration of justice," but

15   then to say the certification actually involved that

16   administration.

17         If true, my colleagues and I simply could have

18   assumed that the argument from many January 6th defendants

19   was correct and then said that the certification still came

20   under their definition of an official proceeding.  We would

21   have saved a lot of time and ink had we done so.  But I'm

22   aware of no judge who has taken that approach.

23         I do think it's quite likely the Commission would

24   have included "official proceeding" in this term if they had

25   thought about it or could have foreseen January 6th.  But

1    they didn't.

2          Given that courts are supposed to interpret the

3    guidelines with similar interpretive principles to how we

4    interpret statutes, and that it is the Government's burden

5    to prove the application of any enhancement, I think the

6    more prudent course is to find that they have not met their

7    burden here.

8          Of course, that does not preclude me from

9    considering this conduct as a justification for an upward

10   variance under 3553(a).

11         I also note that the comment here to 2J1.2 when it

12   describes the background lists numerous offenses, but they

13   all relate to kind of administration of justice:  using

14   threats or force to intimidate or influence a juror or a

15   federal officer; obstructing a civil or administrative

16   proceeding; stealing or altering court records; unlawfully

17   intercepting grand jury deliberations; obstructing a

18   criminal investigation; obstructing a state or local

19   investigation of illegal gambling; using intimidation to

20   influence testimony, alter evidence, evade legal process or

21   obstruct the communication of a judge or law enforcement

22   officer; or causing a witness bodily injury or property

23   damage in retaliation for providing testimony, information

24   or evidence in a federal proceeding.

25         All of those examples that the Commission gives

1    for what obstruction of justice looked like involved some

2    sort of traditional notion of courts' judicial operation and

3    so forth.  I think what we have here on January 6th is

4    something different than any of that.  It's an official

5    proceeding.

6          I think the defense has conceded that we've got to

7    find somewhere to fit this and that this guideline is

8    correct, the correct place to do it.  But I think it's a

9    different question when I go on and actually consider the

10   enhancements -- very significant enhancements, I should

11   add -- that the Government is asking for.

12         I don't think this administration of justice as

13   defined in the enhancement -- as used in the enhancement is

14   a fair way to describe what is happening here, especially

15   given the rules of lenity and ambiguity that Mr. Smith

16   raises.

17         So for all these reasons, I find that

18   Mr. Hale-Cusanelli did not obstruct the administration of

19   justice and that the enhancements in 2J1.2(b)(1)(B) and

20   (b)(2) are inapplicable.

21         Therefore, I find that the appropriate guideline

22   level is 16, resulting in a 21- to 27-month guideline range,

23   prior to the consideration of any variance.

24         The Court will now discuss the applicable

25   penalties under the statute, which include imprisonment,

 1     probation, fines and restitution.

 2                  For Count 1, obstruction of an official

 3     proceeding, the maximum term the Court may impose is 20

 4     years.

 5                  For Counts 2 and 3, entering and remaining in a

 6     restricted building and disruptive or disorderly conduct in

 7     a restricted building, the maximum prison term for each is

 8     one year.

 9                  And for Counts 4 and 5, disorderly or disruptive

10     conduct in a Capitol building and parading, picketing or

11     demonstrating in a Capitol building, the maximum prison term

12     is six months.

13                  For Count 1, obstruction of an official

14     proceeding, the maximum fine is $250,000.  There's also a

15     mandatory special assessment of $100.

16                  For Counts 2 and 3, entering and remaining in a

17     restricted building and disruptive or disorderly conduct in

18     a restricted building, the maximum fine is $100,000 per

19     count.

20                  There's also a mandatory special assessment of $25

21     per count.

22                  For Counts 4 and 5, disorderly or disruptive

23     conduct in a Capitol building and parading, picketing or

24     demonstrating in a Capitol building, the maximum fine is

25     $5,000 per count.  There is also a mandatory special

1    assessment of $10 per count.

2            For Count 1, obstruction of an official

3    proceeding, the Court may impose a term of supervised

4    release of not more than three years.

5            For Counts 2 and 3, the Court may impose a term of

6    supervised release of not more than one year.  The other

7    counts are for petty offenses, and thus a term of supervised

8    release is not applicable.

9            Under 18 USC 3624(e), multiple terms of supervised

10   release shall run concurrently.

11           Turning next to probation:  Mr. Hale-Cusanelli is

12   eligible for one to five years of probation because Count 1

13   is a Class C felony.  One of the following must be imposed

14   as a condition of probation unless extraordinary

15   circumstances exist:  a fine, restitution or community

16   service.

17           For Counts 2 through 5, he is eligible for up to

18   five years' probation.

19           That said, the guideline range is in Zone D of the

20   sentencing table, meaning that Mr. Hale-Cusanelli is

21   ineligible for probation under the guideline 5B1.1.

22           According to 18 USC 3663A, restitution is

23   mandatory in this case.  The Government has requested $2,000

24   in restitution.

25           Have I stated accurately the statutory framework

1    under which we are operating in regard to this case?

2    Ms. Fifield?

3                MS. FIFIELD:  I believe so, your Honor.

4                But just one clarification for the record:  The

5    Court has reached offense level 16 starting at a base

6    offense level of 14 and adding an additional two levels

7    for -- under 3C1.1?

8                THE COURT:  Yes.  Thank you for clarifying that.

9    Yes.

10               I didn't hear an objection -- well, I think there

11   is an objection, but I'm overruling your objection on the

12   false testimony here in court.  I can discuss that later in

13   my explanation for the offense.  But I think that is

14   certainly appropriate here.

15               Mr. Smith, any objections regarding the statutory

16   framework --

17               MR. SMITH:  No, your Honor.

18               THE COURT:  -- under which we are operating?

19               Before I discuss the other sentencing factors that

20   will bear on the Court's final decision, I will at this

21   point share with the parties the particular sentence the

22   probation office has recommended, taking into account the

23   advisory guidelines' sentence, the available sentences and

24   all of the factors listed in Section 3553(a):

25               The probation office has recommended a sentence of

1    60 months' incarceration on Count 1, 12 months'

2    incarceration on Counts 2 and 3 and six months'

3    incarceration on Counts 4 and 5, all to run concurrently.

4         The probation office also recommends 36 months'

5    supervised release on Count 1, 12 months' supervised release

6    on Counts 4 and 5, all to run concurrently.

7         Finally, the probation office recommends

8    restitution in an amount to be determined at this hearing

9    and a special assessment of $170.  The recommendation of the

10   probation office is based solely on the facts and

11   circumstances contained in the presentence report.

12        I must now consider the relevant factors that

13   Congress set out in 18 USC 3553(a) to ensure that the Court

14   imposes a sentence that is sufficient but not greater than

15   necessary to comply with the purposes of sentencing.

16        The purposes include the need for the sentence

17   imposed to reflect the seriousness of the offense, to

18   promote respect for the law and to provide just punishment

19   for the offense.  The sentence should also afford adequate

20   deterrence to criminal conduct, protect the public from

21   future crimes of the Defendant and promote rehabilitation.

22        In addition to the guidelines and policy

23   statements, I must consider the nature and circumstances of

24   the offense, the history and characteristics of the

25   Defendant, the need for the sentence imposed, the guideline

1   ranges, the need to avoid unwarranted sentence disparities

2   among defendants with similar records who have been found

3   guilty of similar conduct and the types of sentences

4   available.

5          Does the Government wish to be heard on the

6   application of the factors set forth in 3553(a), request a

7   variance or otherwise make a sentencing recommendation?

8          MS. FIFIELD:  This is a great country.  And there

9   are a lot of aspects of American life, government, that make

10  that true.  But there's a strong argument to be made that

11  the peaceful transfer of power, due process and the right to

12  trial by jury and the rule of law are at the top of that

13  list of what makes America great.

14         This case implicates all three of those things.  I

15  think it's interesting when we're talking about what

16  happened on January 6th and the obstruction of the

17  proceeding to certify the Electoral College vote, that was a

18  proceeding that most Americans had never heard of before

19  January 6th.

20         It was interesting at trial when Dan Schwager was

21  on the stand testifying about that proceeding.  He was

22  giving this testimony that was frankly quite dry; and then

23  he transitioned -- he was talking about every other January

24  6th that he's been a part of every four years to certify the

25  results of the presidential election.

1          It was dry.  And then he got to what happened on

2     January 6th, 2021, when everything fell apart.

3          And I think that's a good way to think about the

4     role that the rule of law plays in our society.  For most

5     Americans, most of the time, the guardrails of the law are

6     in the background.  It's pedestrian.  It's ordinary.  We

7     don't think of it.  We think of it -- I will say that the

8     ordinariness of those guardrails and of something like the

9     Electoral College certification is on the flip side the

10    thing that makes this country extraordinary, is just how

11    ordinary those things typically are.

12         It's when the guardrails of law are tested that --

13    we've been talking about the rule of right when we were

14    discussing the sentencing guidelines.  It is when those

15    guardrails are tested that our response in protection of

16    those things that make this country extraordinary becomes so

17    important.  And it becomes important to say that not

18    equivocally, but forcefully, that the rule of law matters.

19    And it needs to be respected.

20         This Defendant, as this Court put it, wanted a new

21    government.  And he was willing to take it by force.

22         He went to the Capitol on January 6th.  I don't

23    think it's an exaggeration to say he wanted to engage in

24    civil war.  He said that himself several times.

25         And if it wasn't -- if the mob was not successful

1    in doing what Hale-Cusanelli wanted, which was to hold the

2    building, if they had had more rioters, they could have held

3    the building.  It was just a prelude, but for what this

4    Court, what the folks in this room are doing right now,

5    which is responding to the test of the rule of law and the

6    guardrails of law that keep our society functioning.

7          This Defendant by his acts on January 6th

8    demonstrated he has no respect for that.

9          He also mentioned due process and the right to

10   trial by jury.  This Defendant availed himself of those

11   rights.  And the right to trial by jury, I believe this

12   Court mentioned it to the jury itself:  It is something that

13   makes this country extraordinary.

14         And this Defendant had so little respect for that

15   proceeding, for those rights, that he sat in that chair and

16   he lied to this jury -- that jury -- and this Court.  He

17   lied under oath.

18         Oaths are important here, too, especially for

19   those of us who commit at least part of our lives to federal

20   public service.  I took an oath.  Law enforcement that was

21   at the Capitol on January 6th, they took oaths.  We took

22   oaths to protect this country and the Constitution against

23   enemies foreign and domestic.

24         The Defendant took that same oath.  The Defendant

25   took everything that this country has to give up to its

1    limit; and he is not at fault for that.  He availed himself

2    of the protections of the Constitution, including the right

3    to hold and state unsavory views.  That's not what we're

4    here today to talk about.

5           We're here today to talk about the threat on

6    January 6th that this Defendant posed to the rule of law and

7    the peaceful transfer of power and the threat that this

8    Defendant represented when he lied under oath in this

9    courtroom.

10          It's that need to promote respect for the rule of

11   law and for general deterrence that I think is a helpful

12   place to start in all of these January 6th cases.

13          It's difficult to capture when we're doing this

14   one defendant, one case at a time the true magnitude of what

15   happened on January 6th.  This Court has said it's a

16   national embarrassment.  And it is.  And the reason that a

17   national embarrassment is not a small thing, the reason that

18   it matters, is because it impacts the national security of

19   this country.  It impacts the position of this country in

20   the global order.

21          And I don't think it's an exaggeration to say that

22   one defendant's participation in what happened on January

23   6th encompasses and to some degree makes that defendant

24   responsible for all of that.

25          And I think Officer Raymond Watts when he

1    testified in this courtroom on a smaller scale, but still

2    just as powerfully, captured it when he said:  A breach of

3    the Capitol is a breach of the Capitol.  Every single rioter

4    in the Capitol posed a direct threat to the lives of law

5    enforcement, to the lives of members of Congress and to the

6    building itself.  And that's not nothing, either.

7              Officer Watts talked at the end of his testimony

8    about what it means to him personally to destroy the citadel

9    of democracy.  That's what happened on January 6th.

10             And at best, if the Defendant didn't enter the

11   United States Capitol with the corrupt intent to obstruct

12   the official proceeding, which the jury found beyond a

13   reasonable doubt that he did, he was at least grotesquely

14   indifferent and disrespectful to the rule of law, to the

15   destruction of that building, to the threat to law

16   enforcement.

17             And it is that need to promote respect for the

18   rule of law and for general deterrence that demands

19   meaningful sentences in all of these cases.

20             And the nature and circumstances of this

21   Defendant's offense:  There is gravity in what he did that

22   he has in common with everyone else on January 6th.  And

23   that should not be taken lightly.  But what sets this

24   Defendant apart is the seriousness with which he took his

25   endeavors on January 6th.

1          Now, I anticipate that defense counsel is going to

2    stand up here and again say that this is hyperbole, that

3    this is exaggeration, that the Defendant's a big talker.  I

4    don't buy that.  I don't buy it because when he was talking

5    to his roommate days following January 6th, he whispered

6    under his breath as if no one else was listening:  "I really

7    fucking wish there would be a civil war."  You can hear it

8    in his voice.  He is not kidding around.

9          And he thought about it for a long time.  He read

10   the books.  He thought about the structure of government.

11   And what Hale-Cusanelli was after, at least what

12   Hale-Cusanelli attempted on January 6th, was the

13   installation of a new government, as this Court said, a new

14   American order.

15         In terms of this Defendant's history and

16   characteristics, I won't dwell on this point.  I am curious

17   whether defense counsel is going to.  He devoted a lot of

18   his memo -- memorandum, sentencing memorandum, to minimizing

19   or obfuscating this Defendant's history in terms of

20   antisemitism and threats of violence.

21         The Government doesn't think that that's even

22   what's at issue here today.  The First Amendment guarantees

23   this Defendant's, all Americans' right, to hold unsavory

24   views and say unsavory things.  Where the law gets concerned

25   and where this Court needs to get concerned is when that

1    bridges into a likelihood that this Defendant is going to

2    commit violence or this Defendant is again going to

3    disrespect the law, the rule of law, by invading perhaps not

4    the United States Capitol, but posing a similar threat which

5    is both abstract and real.

6              This Court found by clear and convincing evidence

7    that this Defendant posed a danger to the community.  And

8    the Government went through with some depth this Court's

9    specific comments about that, and I won't repeat them.

10             THE COURT:  Don't you think it's relevant, though,

11   kind of to the extent that there's a motivation for what he

12   did, that it's almost kind of a hate crime-type situation?

13             MS. FIFIELD:  I wouldn't go quite that far and get

14   that specific.

15             I think the way that the Government's

16   memorandum -- and what I would say here -- tried to parse

17   this out is it's relevant to his motive to commit the crime.

18   That was the Government's theory of the case from the

19   get-go.  And we had pretrial hearings about that.  We talked

20   to the jury about that, albeit in a limited capacity due to

21   the Court's pretrial ruling.

22             It's relevant for that limited purpose.  And it's

23   also relevant for the limited purpose of whether this

24   Defendant's history and characteristics indicate that he is

25   an ongoing danger to the community.  The Government did note

1    in its sentencing memorandum that based on all the

2    information that we have, the circumstances have not

3    changed.

4           The Defendant's -- I don't want to say position,

5    because we are trying to draw -- drawing this line between

6    First Amendment-protected activity, which is absolutely this

7    Defendant and every American's right, getting up to the line

8    of presenting a threat of indicia of dangerousness.

9           And the Defendant's conduct in the jail -- you

10   know, there's been public reporting about this -- also goes

11   to specific deterrence.  And specific deterrence -- I think

12   I've said everything that I need to say in terms of whatever

13   the Defendant says today.  And I don't know if he will

14   address this Court.  But what I expect his counsel to say is

15   that he's sorry.

16          I don't buy it, for the same reason that after

17   January 6th, when he's talking to his roommate and he's

18   whispering under his breath about how much he wants a civil

19   war, that's when he was being unvarnished, unpolished.  When

20   he was sitting on the stand under oath, he's telling a

21   different story.

22          I don't have any faith that what the Defendant has

23   told his attorney and has represented in his sentencing

24   memorandum, that that is genuine or reflective of genuine

25   remorse.  And that matters.

1          Contrition matters because at a small -- on a

2     smaller level, the personal level, it does impact a person's

3     likelihood to reoffend.

4          And on a bigger level, when we're talking about

5     the 3553(a) factors and the purposes of sentencing, one of

6     the most important goals of sentencing is rehabilitation.

7     And contrition has to be a part of that, of being

8     accountable for the wrongs that the Defendant committed

9     against society.

10          This Defendant has not demonstrated that.

11          Getting to the guidelines and unwarranted

12     sentencing disparities:  The Government's position is that

13     the guidelines are the primary driver of fairness.  And

14     so --

15          THE COURT:  That's not super-helpful to you at

16     this point.

17          MS. FIFIELD:  The Government -- if the Court is

18     going to impose a guidelines sentence, the Government would

19     advocate for the top of the range.

20          However, given the Court's comments regarding

21     upward variances and given the sentences imposed on other

22     defendants who have been convicted of this offense in this

23     context, which the Government still maintains that the

24     threat that this Defendant posed to law enforcement, to the

25     building on this day, that would support an upward variance;

1    if not within the Government's proposed sentencing

2    guidelines range, then quite close to it.

3          The cases that were cited in the defense's

4    sentencing memorandum are not appropriate comparators.  It's

5    partially because the guidelines for 18 USC 231(a)(3) and

6    111(a), which are some of the cases -- some of the charges

7    that the defense counsel cited in their sentencing

8    memorandum, in the infinite wisdom of the Sentencing

9    Commission, those guidelines are not as serious, are not as

10   heavy as those for the lead charge with which this Defendant

11   is convicted.  The base offense levels for those offenses

12   are much lower.

13         And I do think it's important when we're talking

14   about the guidelines and sentencing disparities, as the

15   Government stated in its sentencing memorandum, before the

16   Court uses comparators, even in the January 6th context, the

17   Court has to be very mindful of the fact that so many of

18   those cases -- in so many of those cases, those Defendants

19   benefited from a three-point reduction -- or three-level

20   reduction for acceptance of responsibility.

21         THE COURT:  Do you know why there were a couple of

22   cases -- I think it was in front of Judge Moss -- where you

23   didn't even advocate for the eight-point enhancement?

24         MS. FIFIELD:  I can't speak to -- in every single

25   one of these cases, the Government's charging decisions,

1    sentencings recommendations, they're very fact-specific.  So

2    I can't speak to the deliberative choices that took place in

3    those specific cases.

4         But the eight points, the Government's choice to

5    advocate for the eight points, is reflective of the

6    Government's position that a defendant by their own acts, by

7    their -- I think if we had relied on -- or if the Court had

8    relied solely on the aiding and abetting theory, I'm not

9    making this argument.  I'm not attributing the Government's

10   position to this argument.

11        But under that aiding and abetting theory, there

12   are a lot of defendants that could be susceptible to that

13   eight-point bump.  And the Government is exercising its

14   prerogative to keep that eight-point bump pretty closely

15   tailored to a defendant's own conduct that poses a threat to

16   law enforcement or to property inside the building.

17        If the Court has no further questions, I'll

18   conclude.  If we're quoting philosophers today, John Locke

19   is a philosopher with which the Defendant is no doubt

20   familiar.  He said:  Where law ends, tyranny begins.

21        It is not hyperbole to say that in this case and

22   in many of these Capitol riot cases, the tests that are

23   being put to the law are an extremely serious -- should be

24   an extremely serious, weighty driver of meaningful

25   sentences, especially in cases where defendants have stated

1    intent that they desire a new government and they are

2    willing to take it by force.  That is tyranny.

3          This case is about the rule of law and respect for

4    the law, respect for law enforcement, respect for the

5    constitutional rights guaranteed by the First Amendment and

6    the Fifth Amendment.  This Defendant has demonstrated

7    respect for none of that.

8          Thank you.

9          THE COURT:  Thank you, ma'am.

10         Mr. Smith, do you wish to be heard on the

11   application of the factors set forth in 3553(a), request a

12   variance or otherwise make a sentencing recommendation?

13         MR. SMITH:  I do, your Honor.  Thank you.  I'm

14   going to be brief.  And then I'm going to let

15   Mr. Hale-Cusanelli allocute, and I think he'll be brief,

16   too.

17         The Government stressed the importance of the rule

18   of law here.  And I just -- I'm really glad the Government

19   said that, because we could not agree more with Ms. Fifield

20   that -- I think the point we'd like to make here is

21   Mr. Hale-Cusanelli is not disdainful of courts.  He's

22   grateful for the Court's brave rejection of the Government's

23   position on the administration of justice, which we would

24   argue is inconsistent with the rule of law, which includes

25   not creating novel interpretations of law and applying them

1     retroactively.

2            Ms. Fifield stressed that -- raised the

3     antisemitic images and comments that the Government raised

4     in this case.  And my colleague said something that struck

5     me as a little bit surprising.  Ms. Fifield said that she

6     does not think that this is an issue in this case.

7            And that is surprising, because not only is

8     that -- was that made an issue in this case; it dominated

9     many parts of the proceedings.  It was a central argument

10    for depriving the Defendant of his liberty, which is another

11    core component of the rule of law.  It was a major part of

12    the Government's trial arguments in opening and closing.  I

13    think Ms. Fifield herself in one of those situations

14    stressed the Defendant's antisemitism.

15           So I think our question is:  If that's not an

16    issue in this case, why was the Government using it?

17           To the extent --

18           THE COURT:  I think it's an issue, Mr. Smith.  So

19    feel free to convince me I'm wrong.

20           MR. SMITH:  Well, I can tell you that -- and

21    Mr. Hale-Cusanelli will tell you himself -- that he regrets

22    and makes no excuses for his ugly and childish comments, but

23    they don't reflect his personal views of the matter.  And he

24    needs to learn to clean up his tone and his commentary.  But

25    it doesn't imply that he's about to launch a civil war

1    because of certain pieces of literature in his home that was

2    selectively used to present to the Court an image of him

3    that is not accurate.

4            I want to emphasize the punishment that

5    Mr. Hale-Cusanelli has already gone through.  I know that

6    courts don't consider pretrial confinement punishment.  It's

7    not.  It's for protecting society.  But nevertheless,

8    defendants receive credit for the time they've served

9    pretrial.

10           And I want to describe some of the conditions.

11   Between January 2021 and June 2021, Mr. Hale-Cusanelli was

12   in his cell 23 hours a day.  To people who have not had

13   clients in prison or been in prison themselves, good for

14   them.  That's something they should be proud of.  But being

15   in a cell 23 hours day is a very mind-numbing experience.

16   It's crushing.  It can have psychological effects on people.

17   It can distort their personality throughout their lives.

18   This is a long time in solitary confinement.

19           And that's a pretty significant gauge of

20   deterrence with this Defendant.  I think you'll hear him say

21   that he doesn't want to be pitied for something like this,

22   but I think it does show that he has no good reason to be

23   back in court again.

24           Ms. Fifield represented that there was something

25   about Mr. Hale-Cusanelli's conduct in jail that warrants a

1    stiff above-guidelines sentence.

2         Your Honor, we have a document here that I think

3    we'll submit into evidence.  It's a D.C. Department of

4    Corrections work performance rating for Mr. Hale-Cusanelli

5    dated yesterday.  It's up to date.  He has excellent reviews

6    for every single category of prisoner conduct here.

7         I think in summary, Mr. Hale-Cusanelli's

8    supervising captain said, quote, "He is always willing to

9    assist when it's needed.  There are no issues with his work

10   performance or behavior," end quote.

11        To the contrary from what Ms. Fifield said,

12   Mr. Hale-Cusanelli's been threatened in jail.  There are

13   inmates or at least one inmate who have threatened to take

14   his life.  His experience there has been brutal, and not

15   thanks to his own behavior.

16        On the disparity issue with other defendants who

17   have been sentenced under 1512, your Honor, I think even

18   setting aside the guidelines' legal issue, the defendants'

19   conduct in these cases that have already been sentenced is

20   not even close to Mr. Hale-Cusanelli's.

21        So one case that the Government might have been

22   referring to but didn't use the name was Reffitt, Guy

23   Reffitt, who was sentenced I think between 70 and 80 months.

24   He brought a gun with him to the Capitol.  He committed what

25   we would call classic obstruction of justice by threatening

1    his son and telling him he would kill him if he spoke to the

2    FBI.  He held guns to his wife's head.  He said that -- at

3    the Capitol on camera with his GoPro camera that he was

4    going to drag members of Congress out by their hair.

5              This isn't even comparable conduct.

6              The Court referenced some of Judge Moss's 1512

7    cases.  I think one of the cases the Court was referring to

8    was an eight-month sentence where the Defendant entered the

9    Senate chamber, which is much farther than

10   Mr. Hale-Cusanelli proceeded.

11             So we think even if you use the Section 1512

12   comparisons, they don't argue for an above-guidelines

13   sentence here.

14             Your Honor, the last point I'll make, and then

15   I'll give it to Mr. Hale-Cusanelli -- and this is a little

16   bit awkward for him, and I feel bad about bringing this up.

17   But he had an incredibly hard upbringing, something, you

18   know, in many ways really shocking.  And that's never an

19   excuse for behavior.  But it's -- you're supposed to

20   consider the Defendant in the round and their personality

21   and their life experience.  We think that that's an

22   appropriate 3553(a) factor to consider here.

23             On the potential for violence, Judge, he has no

24   criminal -- the normal gauge of predicting violence is

25   criminal history.  He doesn't have any criminal history for

1    violence.  His adoptive aunt has submitted a letter saying

2    she's known him since childhood and he doesn't have a

3    violent bone in his body.  No one's disputing he makes

4    really ugly comments, but that can't be the reason to

5    enhance a sentence.

6             I think that's it from us, Judge, so I'm going to

7    let Mr. Hale-Cusanelli speak.

8             THE COURT:  Mr. Hale-Cusanelli, you have the right

9    to make a statement or present any information to mitigate

10   the sentence.  Would you like to say anything that you would

11   like me to consider before imposing sentence?

12            THE DEFENDANT:  Yes, your Honor.

13            Good morning, Judge.

14            THE COURT:  Good morning.

15            THE DEFENDANT:  I'm grateful for this opportunity

16   to address this honorable Court.

17            I don't want there to be any doubt about my

18   conduct on January 6th.  I know that I should not have been

19   inside the Capitol Building.  That is not a question.  My

20   behavior that day was unacceptable, and I disgraced my

21   uniform and I disgraced the country.

22            When I think about the property damage and the

23   burdens of law enforcement that day, your Honor, I know that

24   my conduct will not be remembered with pride.  And, your

25   Honor, I know that I owe -- I owe a massive apology to the

1    members of Congress that day, their staffers, as well as the

2    members of the Capitol Police and the Metro PD that I got in

3    the way of.  I'm sorry that they endured the events of that

4    day.

5              And your Honor may want to know why I proceeded to

6    trial if I do feel this way.  It's not because I lacked any

7    regret.  I just want this honorable Court to know that you

8    shouldn't preclude -- shouldn't preclude that I was

9    operating under the advice of counsel.  I was challenging

10   law as applied to my case.  And I agreed with counsel.

11             I would like to address the character evidence

12   used against me, your Honor:

13             I don't make any excuses for my remarks.  I have

14   been open about the fact that I do say ugly things.  And

15   they are childish and, in the eyes of most, repugnant.  I'm

16   not going to make excuses for that.  But I don't have a

17   history of violence and I don't consider -- I don't consider

18   myself to be a public threat.  I don't consider myself a

19   danger to society, your Honor.

20             And I ask this honorable Court to consider that

21   and to consider the true scope of my life.

22             My -- my comment and my behavior, my sense of

23   humor, whatever you want to call it, it doesn't reflect my

24   true sentiments, your Honor.

25             Your Honor, I'm -- I can pledge to you that you'll

1    never see my face in court again after this.  I can

2    guarantee you that.

3            I have actually spent over 200 days in solitary

4    confinement.  One of the reasons besides my regret that I

5    can promise I don't intend to ever come back is because I

6    never want to live the last two years ever again.  And I

7    wouldn't wish it on anyone.  And there's been more than just

8    death threats.  It's -- it does -- it crushes your soul, the

9    kind of time I've done in solitary.  It changes who you are.

10   And I want the Court to know that I don't intend to live

11   through that and I don't intend to burden society to the

12   point where I have to come back to that.

13           So, Judge, I'm not asking for pity.  I'm just

14   explaining why I don't intend to come back to a courtroom

15   ever again.

16           Your Honor, if there's any kind of service that I

17   can provide to rectify the damage done to the Capitol

18   Building or to injuries or anything done to the Capitol or

19   Metro Police, I stand by to perform whatever that duty might

20   be.

21           And I am grateful -- I want to say on a personal

22   note, I am grateful to the Capitol Police for the

23   professionalism they showed when I was in the building and

24   I'm grateful for just how the police communicated with me

25   and the way they talked to me.  I do owe -- also owe Officer

1    Shephard an apology as well.

2         I thank you for this opportunity, your Honor, to

3    address this honorable Court.  I ask for mercy.

4         Thank you, your Honor.

5         THE COURT:  Thank you, sir.

6         Sir, you may remain at the podium.

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Sir, I've assessed the particular

9    facts of this case in light of the relevant 3553(a) factors,

10   and I now want to provide remarks for the record and for

11   you, sir, about my considerations in regard to the nature of

12   the offense and your history and characteristics:

13        On January 6th, 2021, you participated in a

14   national embarrassment.  Your actions on that day were

15   extremely troubling.  You were at the front of a mob that

16   attacked police, smashed windows and doors to breach the

17   Capitol Building and proceeded to maraud through the Capitol

18   Building.

19        More, once you were inside, you tried to get

20   others to join you inside, waving through windows to others

21   outside to get them to come in, further escalating a

22   dangerous and volatile situation.

23        And then, when an officer tried to arrest a

24   particularly unruly rioter, you interfered, trying to pull

25   the rioter away from the police officer, Officer Shephard.

1          The sights that we saw on January 6th, the crimes

2      you and others committed on that day, are things Americans

3      never thought they'd see in the Capitol Building.  And we

4      certainly hope never to see them again.

5          The jury has found that in doing these things you

6      intended to obstruct the certification process occurring

7      that day, a vital and solemn step in the peaceful transfer

8      of power from one president to the next.

9          Your statements before, during and after January

10      6th show that you had an impressive understanding of the

11      certification process and that you absolutely knew what you

12      and others were doing by storming the Capitol Building when

13      the certification was supposed to be occurring.

14          I was also appalled at your taunts to a Capitol

15      Police officer who was bravely doing her duty on January 6th

16      in the face of overwhelming rioters and violence.  You said,

17      "Fuck you!  The revolution will be televised, cunt."  That

18      is shocking conduct towards a public servant.  It is

19      absolutely unacceptable.

20          But that statement is only one of the shocking

21      statements you've made that show a deep hostility and

22      insensitivity towards people who aren't like you.  The

23      Government has provided numerous examples of degrading

24      statements you've made about women, Jews and minorities in

25      their filing at ECF 18.  You also infamously posed as

1   Hitler.  A colleague recalled you saying that babies born

2   with any deformities or disabilities should be shot in the

3   forehead.

4          Your attorney has tried to contextualize these

5   actions as private statements made jokingly to your roommate

6   and a personal photo you took as a lark.  But the evidence

7   shows otherwise.  The Government's filing shows that

8   numerous Navy seamen had heard you make these derogatory

9   statements and that a supervisor had to counsel you for

10  wearing a Hitler moustache to work.

11         While these statements and actions are blameworthy

12  in themselves, and I can and do consider them as aggravating

13  factors in your sentencing that go to your dangerousness,

14  they are particularly relevant here because the Government

15  has convincingly shown that your animus toward racial and

16  religious minorities was at least in part responsible for

17  your desire to obstruct the certification process.

18         You told your roommate that you hoped for a civil

19  war in order to provide a clean slate and suggested that all

20  Democrats are Jews and therefore should be arrested.

21         I recognize that people can say provocative things

22  just to get a response from people, and I believe that was

23  part of your motivation in making some of these remarks.

24  But I hope you see statements like these nonetheless have

25  real-world consequences.  They frighten and offend others;

1    they normalize violent, racist and antisemitic behavior; and

2    they apparently helped you justify your conduct on January

3    6th.

4           And I can't help noting that antisemitic incidents

5    have been rising in the last few years.  Jewish people have

6    faced millennia of discrimination, oppression and violence.

7    Thankfully, this country has been a safe haven for them and

8    they have contributed in many ways to our nation.

9    Statements and actions like yours make them less safe and

10   less confident they can participate as equal members of our

11   society.

12          I understand that you had a very difficult and

13   traumatic childhood, and I'm sorry for that.  No one should

14   have to go through the rejection and abandonment that you

15   endured.  I think it's fair to assume that those experiences

16   have encouraged your instinct to lash out and say hateful

17   thing to others.

18          While your childhood does provide important

19   context for your actions, I don't think it excuses them --

20   and I think you agree with me there -- nor does it provide a

21   reason for a downward variance here.

22          You're 32 years old, and you are fully responsible

23   for your actions.

24          I've also considered your employment and military

25   service.  I don't agree with any implication that you should

1    be punished more harshly because of your involvement with

2    the military, but nor does it provide a reason to vary

3    downward, especially given that so many of your racist and

4    antisemitic comments occurred in the military environment.

5          Similarly, I disagree with the suggestion that you

6    should receive credit for being incarcerated during COVID.

7    I haven't seen that as a basis for downward variance in

8    other cases either.  I recognize that life was particularly

9    difficult for people who were incarcerated during COVID.

10   Frankly, everyone lost freedoms and quality of life over the

11   last couple of years.

12         I do appreciate your statements of remorse now.  I

13   credit those, and I think I understand your desire to follow

14   your counsel's advice.  I think that is understandable.  And

15   certainly I do credit your remorse; and frankly, your

16   sentence would have been more severe but for your comments

17   now and what I take to be a real recognition of the harm

18   that you've caused.

19         Both attorneys have pointed to other obstruction

20   of official proceedings cases from this district in support

21   of their proposed sentences.  Ultimately, I think your case

22   has several aggravating factors that set it apart from other

23   cases.  But I also don't think they would support the

24   significant gap between the Government's recommendation and

25   most of the other obstruction sentences, I think the highest

1    of which other than the *Reffitt* case I think was 51 months.

2            I see the following aggravating factors here:

3    first, your sexist, racist and antisemitic comments and

4    motivation, which I've already discussed; second, your --

5    the lack of acceptance of responsibility, unlike most of the

6    other cases that resolved through a guilty plea; third, your

7    decision to lie on the witness stand.

8            I absolutely believe all criminal defendants have

9    the right to testify in their own behalf.  But they, like

10   all witnesses, must do so truthfully.  You did not do so

11   here.

12           In particular, neither the jury nor I believed

13   your claim that Congress -- that you didn't know that

14   Congress resides in the Capitol Building.  That was a

15   risible lie, both given your clear knowledge about the

16   certification process and your statement to your roommate

17   that you were right next to the House of Representatives

18   when you were in the Capitol Visitor Center.  This was an

19   obvious attempt to avoid responsibility for knowingly

20   obstructing the certification process.

21           Similarly, I didn't believe you when you claimed

22   that you didn't know Officer Shephard was a policeman when

23   you tried to pull a rioter away from him.  Officer Shepard

24   was in full uniform and directly in front of you.  It's

25   absurd to think you decided to intervene in that altercation

1    without realizing you were aiding a fellow rioter to elude

2    lawful arrest.

3             I also think your conduct there also sets your

4    case apart from many of the other obstruction cases.

5             Having said all that, I do think the guideline

6    range calculated by the probation office and recommended by

7    the Government results in an overly harsh sentence here.  In

8    particular, I think the eight-level enhancement under

9    guideline 2J1.2(b)(1)(B) is too severe, given that you

10   yourself didn't injure or threaten anyone, nor did you

11   damage any property.

12            I take it that this enhancement is primarily aimed

13   at those seeking to obstruct justice by witness intimidation

14   or the like.  That did not happen here.

15            Having said that, I cannot ignore the significant

16   property damage and numerous law enforcement injuries

17   committed by your fellow rioters, which I think your

18   presence and actions helped make possible.

19            I also think that your conduct with Officer

20   Shephard is relevant in analogizing it to that guideline

21   provision.

22            Therefore, I think some additional punishment is

23   warranted, but not the full eight levels recommended by the

24   guidelines.

25            I do think the substantial interference

1    three-level enhancement is appropriate.  Regardless of

2    whether the "administration of justice" language actually

3    applies to this situation, I have no doubt that the

4    Commission would have intended for this to apply to

5    substantial interference with an official proceeding like a

6    certification process, which is itself more significant than

7    almost any court proceeding.

8            This reasoning also applies to the prior

9    enhancement I discussed.  Even though by its terms it only

10   mentions "administration of justice," I think this official

11   proceeding is substantially comparable for 3553(a) purposes,

12   although as I say I don't think the guideline by its terms

13   applies.

14           And you and your fellow rioters were responsible

15   for substantially interfering with the certification,

16   causing a multiple-hour delay, numerous law enforcement

17   injuries and the expenditure of extensive resources.

18           Speaking of resources, I agree with the

19   Government's assessment for the need of restitution here,

20   and I will order $2,000 in restitution for the reasons

21   articulated in the Government's memorandum.

22           Ultimately, I'm going to sentence you to four

23   years' incarceration.  Whether this is seen as an upward

24   variance from what I believe is the accurate guideline

25   calculation or a downward variance from what the probation

1    office calculated, I would still render the same sentence.

2             I don't think the guidelines as calculated by me

3    appropriately account for your racist and antisemitic

4    motivation.  I also believe the extensive damage and

5    injuries caused on January 6th with your fellow rioters

6    require additional punishment beyond what my calculation

7    allows.

8             I also think that your intervention in the arrest

9    by Officer Shephard requires additional punishment beyond

10   what my calculation envisions.

11            As I've indicated, though, I don't think the full

12   eight-level enhancement envisioned in the probation office's

13   calculation is appropriate, given your culpability here.

14            My sentence also reflects a concern about

15   unwarranted sentence disparities, and I think that this

16   sentence appropriately fits in relation to the other

17   obstruction sentences rendered in January 6th cases.

18            Sir, this is a significant sentence.  And it means

19   that you'll be facing several more years behind bars.  I

20   think that is necessary because of your actions on January

21   6th.  Having said that, I don't think you're unredeemable.

22   You are clearly an intelligent man.  You've survived a lot

23   of adversity already in your life.  You did not allow your

24   childhood to define you or to limit you, and you can do so

25   the same again here.

1           You will still be a young man when you're

2     released; and I will hope that you will continue to serve

3     your country and make a life for yourself when you get out.

4           I will now impose the sentence.

5           It is the judgment of the Court that you, Timothy

6     Hale-Cusanelli, are hereby sentenced to a term of 48 months'

7     incarceration on Count 1, 12 months each on Counts 2 and 3

8     and six months each on Counts 4 and 5, as well as a $170

9     special assessment.  You shall also serve a three-year term

10    of supervised release on Counts 1, 2, 3 and 4 -- I'm

11    sorry -- 1, 2 and 3.

12          All sentences of incarceration are to be served

13    concurrently and all sentences of supervised release are to

14    be served concurrently.

15          Within 72 hours of release from custody, you shall

16    report in person to the probation office in the district to

17    which you are released.

18          While on supervision, you must abide by the

19    following mandatory conditions:  You must not commit another

20    federal, state or local offense; you must not possess or use

21    any controlled substance.  I waive the requirement that you

22    submit to one drug test.  You must cooperate in the

23    collection of DNA.  You must submit to -- you must also

24    abide by the recommended standard conditions of release

25    found in guideline 5D1.3(c).

1          You shall also comply with the following special

2    conditions:  You are ordered to make restitution to the

3    Architect of the Capitol in the amount of $2,000.

4    Restitution shall be made to the Clerk of the Court for the

5    U.S. District Court for the District of Columbia for

6    disbursement to the Architect of the Capitol, Office of the

7    Chief Financial Officer.  Payment of all financial

8    obligations described herein are specific requirements of

9    your probation.

10          You must pay the balance of any financial

11   obligation owed at a rate of no less than $100 each month.

12   A $170 special assessment is immediately payable to the

13   Clerk of the Court for the U.S. District Court for the

14   District of Columbia.

15          Within 30 days of any change of address, you shall

16   notify the Clerk of the Court of the change until such time

17   as this financial obligation is paid in full.

18          The probation office shall release the presentence

19   investigation report to all appropriate agencies, which

20   includes the United States Probation Office in the approved

21   district of residence, in order to execute the sentence of

22   the Court.

23          Pursuant to 18 USC 3742, you have the right to

24   appeal the sentence imposed by this Court if this period of

25   imprisonment is longer than the statutory maximum.  If you

1    choose to appeal, you must file any appeal within 14 days

2    after the Court enters judgment.

3         And as defined in 28 USC 2255, you also have the

4    right to challenge the conviction entered or sentence

5    imposed if new and currently unavailable information becomes

6    available to you or on a claim that you received ineffective

7    assistance of counsel in entering a plea of guilty to the

8    offense of conviction or in connection with sentencing.

9         If you are unable to afford the cost of an appeal,

10   you may request permission from the Court to file an appeal

11   without cost to you.

12        Pursuant to *United States versus Hunter*, 809 F.3d

13   677 from the D.C. Circuit in 2016, are there any objections

14   to the sentence imposed that are not already noted on the

15   record?  Ms. Fifield?

16        MS. FIFIELD:  No objection.  I do have two short

17   clarifying questions.

18        THE COURT:  Okay.

19        MS. FIFIELD:  First, I take it the Court does not

20   intend to impose a fine as part of the sentence?

21        THE COURT:  No.  Thanks for asking.  I'm waiving

22   the interest on the restitution.

23        MS. FIFIELD:  And would the Court mind repeating

24   the quantity of the special assessment?

25        THE COURT:  I think it's $170.  Is that --

```
1                    MS. FIFIELD:  Thank you.

2                    THE COURT:  Yes.

3                    Mr. Smith, any questions?

4                    MR. SMITH:  No, your Honor.  No objections beyond

5         what's in the papers and discussed today.

6                    But we had a request for BOP placement.

7                    THE COURT:  Okay.

8                    MR. SMITH:  The Defendant's from New Jersey, so it

9         would be Fort Dix.  The Fort Dix facility in New Jersey,

10        which is --

11                   THE COURT:  Any concern about that, Ms. Lustig?

12                   THE PROBATION OFFICER:  No, your Honor.

13                   But I did have a clarification.  I believe you

14        said 36 months of supervised release on each of Counts 1, 2

15        and 3 to run concurrently.  However, the maximum term that

16        may be imposed on Counts 2 and 3 is 12 months.

17                   THE COURT:  Yes.  Thanks for that.  That was my

18        mistake.

19                   36 months on Count 1, 12 months on Counts 2 and 3.

20        And those are all to run concurrently.

21                   Ms. Fifield, do you have any objection to the

22        placement recommendation?

23                   MS. FIFIELD:  No objection.

24                   THE COURT:  I will make that recommendation.

25                   Anything further, Ms. Fifield?
```

1          MR. SMITH:  Thank you, Judge.

2          MS. FIFIELD:  Nothing from the Government, your

3    Honor.

4          THE COURT:  Mr. Smith?

5          MR. SMITH:  No, your Honor.

6          THE COURT:  Good luck to you, sir.

7          THE DEFENDANT:  Thank you, your Honor.

8          (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                    Dated this 27th day of September, 2022.

11

12             <u>/s/ Lisa Edwards, RDR, CRR</u>
               Official Court Reporter
13             United States District Court for the
                 District of Columbia
14             333 Constitution Avenue, Northwest
               Washington, D.C. 20001
15             (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## $

**$10** [1] - 57:1
**$100** [2] - 56:15, 89:11
**$100,000** [1] - 56:18
**$170** [4] - 59:9, 88:8, 89:12, 90:25
**$2,000** [3] - 57:23, 86:20, 89:3
**$25** [1] - 56:20
**$25,000** [1] - 9:2
**$250,000** [2] - 9:2, 56:14
**$5,000** [1] - 56:25

## /

**/s** [1] - 93:12

## 1

**1** [14] - 7:19, 7:22, 15:14, 56:2, 56:13, 57:2, 57:12, 59:1, 59:5, 88:7, 88:10, 88:11, 91:14, 91:19
**10010** [1] - 1:20
**10:18** [1] - 1:7
**111(a** [1] - 69:6
**1123** [1] - 1:19
**115** [1] - 50:21
**12** [6] - 8:24, 59:1, 59:5, 88:7, 91:16, 91:19
**129** [1] - 53:9
**12:12** [1] - 45:18
**138** [1] - 53:10
**14** [4] - 7:25, 17:10, 58:6, 90:1
**141** [1] - 53:10
**142** [1] - 53:10
**14th** [1] - 5:24
**1500** [1] - 32:22
**1503** [7] - 13:25, 21:10, 22:12, 23:12, 23:16, 33:7, 47:24
**1505** [6] - 34:20, 40:2, 40:3, 48:2, 48:5, 48:8
**1511** [3] - 40:2, 41:5, 48:8
**1512** [7] - 15:15, 30:9, 32:3, 45:11, 74:17, 75:6, 75:11
**1512(c)(2** [4] - 19:15, 35:9, 38:20, 52:24
**1512(c)(2)** [1] - 36:22

**1516** [1] - 40:2
**1519** [1] - 40:2
**15th** [1] - 6:2
**16** [2] - 55:22, 58:5
**16th** [1] - 6:1
**17110** [1] - 1:23
**18** [15] - 5:19, 13:18, 32:3, 34:20, 35:8, 35:9, 36:22, 38:20, 41:4, 57:9, 57:22, 59:13, 69:5, 80:25, 89:23
**1993** [1] - 18:18
**1997** [1] - 53:10
**1B1.3** [2] - 26:5, 29:4

## 2

**2** [12] - 8:24, 56:5, 56:16, 57:5, 57:17, 59:2, 88:7, 88:10, 88:11, 91:14, 91:16, 91:19
**20** [1] - 56:3
**200** [1] - 78:3
**20001** [2] - 2:4, 93:14
**2012** [1] - 53:7
**2016** [1] - 90:13
**202** [2] - 2:4, 93:15
**2021** [5] - 52:5, 61:2, 73:11, 79:13
**2022** [3] - 1:6, 5:24, 93:10
**20530** [1] - 1:17
**21** [1] - 55:22
**21-00037** [1] - 1:3
**21-37** [1] - 3:2
**22** [1] - 1:6
**2255** [1] - 90:3
**23** [2] - 73:12, 73:15
**231** [1] - 35:8
**231(a)(3** [2] - 49:5, 69:5
**260** [1] - 53:6
**266** [1] - 53:7
**27** [2] - 8:17, 8:21
**27-month** [1] - 55:22
**27th** [1] - 93:10
**28** [1] - 90:3
**29** [1] - 6:16
**2J** [1] - 31:22
**2J1.2** [7] - 7:22, 15:4, 32:4, 32:11, 32:23, 36:21, 54:11
**2J1.2(b)(1)(B** [4] - 8:5, 50:13, 55:19, 85:9
**2J1.2(b)(2** [1] - 8:10
**2J1.21** [1] - 35:10

## 3

**3** [12] - 7:20, 8:24, 56:5, 56:16, 57:5, 59:2, 88:7, 88:10, 88:11, 91:15, 91:16, 91:19
**30** [1] - 89:15
**32** [1] - 82:22
**333** [2] - 2:3, 93:14
**354-3269** [2] - 2:4, 93:15
**3553(a** [9] - 38:10, 58:24, 59:13, 60:6, 68:5, 71:11, 75:22, 79:9, 86:11
**3553(a)** [2] - 5:19, 54:10
**36** [3] - 59:4, 91:14, 91:19
**3624(e** [1] - 57:9
**3663A** [1] - 57:22
**3742** [1] - 89:23
**3C1.1** [2] - 8:14, 58:7
**3d** [1] - 52:5

## 4

**4** [6] - 56:9, 56:22, 59:3, 59:6, 88:8, 88:10
**40** [5] - 30:8, 30:15, 30:23, 31:3, 49:16
**403** [1] - 4:15
**4031** [1] - 1:22
**411** [3] - 4:15, 44:7, 44:12
**48** [1] - 88:6

## 5

**5** [6] - 56:9, 56:22, 57:17, 59:3, 59:6, 88:8
**51** [1] - 84:1
**54** [1] - 52:5
**555** [1] - 1:16
**567** [1] - 53:6
**578** [1] - 52:5
**5B1.1** [1] - 57:21
**5D1.3(c)** [1] - 88:25

## 6

**6** [1] - 11:4
**60** [1] - 59:1
**65** [1] - 52:5

**6706** [1] - 2:3
**677** [1] - 90:13
**6th** [35] - 24:19, 38:21, 42:7, 43:16, 49:4, 53:18, 53:25, 55:3, 60:16, 60:19, 60:24, 61:2, 61:22, 62:7, 62:21, 63:6, 63:12, 63:15, 63:23, 64:9, 64:22, 64:25, 65:5, 65:12, 67:17, 69:16, 76:18, 79:13, 80:1, 80:10, 80:15, 82:3, 87:5, 87:17, 87:21

## 7

**70** [2] - 8:23, 74:23
**72** [1] - 88:15
**73** [5] - 11:20, 32:22, 34:20, 41:15, 47:25

## 8

**80** [1] - 74:23
**809** [1] - 90:12
**87** [1] - 8:23

## 9

**90** [1] - 46:7
**909** [1] - 1:20

## A

**a.m** [1] - 1:7
**abandonment** [1] - 82:14
**abetting** [17] - 26:6, 26:9, 26:12, 27:8, 27:12, 29:17, 29:21, 42:18, 42:19, 45:3, 45:11, 46:16, 47:12, 48:20, 48:21, 70:8, 70:11
**abide** [2] - 88:18, 88:24
**ability** [1] - 93:7
**above-guidelines** [2] - 74:1, 75:12
**absolutely** [4] - 67:6, 80:11, 80:19, 84:8
**abstract** [3] - 13:7, 23:2, 66:5
**absurd** [5] - 32:20, 33:21, 37:5, 37:7,

84:25
    **accept** [2] - 7:9, 32:20
    **acceptance** [2] - 69:20, 84:5
    **according** [1] - 57:22
    **account** [2] - 58:22, 87:3
    **accountable** [1] - 68:8
    **accurate** [3] - 73:3, 86:24, 93:4
    **accurately** [1] - 57:25
    **acknowledged** [1] - 25:6
    **acquittal** [1] - 19:13
    **Act** [1] - 41:9
    **act** [3] - 26:12, 48:22, 51:15
    **Action** [1] - 1:3
    **action** [4] - 12:22, 29:15, 29:18, 49:10
    **actions** [14] - 12:2, 27:23, 28:3, 29:1, 47:3, 51:16, 79:14, 81:5, 81:11, 82:9, 82:19, 82:23, 85:18, 87:20
    **actively** [1] - 46:20
    **activity** [6] - 29:5, 29:7, 29:8, 29:9, 45:4, 67:6
    **acts** [9] - 29:5, 41:22, 42:2, 42:4, 45:6, 47:1, 47:10, 62:7, 70:6
    **adapt** [1] - 35:1
    **add** [1] - 55:11
    **adding** [1] - 58:6
    **addition** [1] - 59:22
    **additional** [7] - 4:17, 8:1, 8:15, 58:6, 85:22, 87:6, 87:6
    **address** [8] - 20:1, 26:9, 53:1, 67:14, 76:16, 77:11, 79:3, 89:15
    **addressed** [1] - 36:18
    **adequate** [1] - 59:19
    **adjudicative** [2] - 41:1, 48:7
    **adjustment** [1] - 8:15
    **administer** [2] - 51:25, 52:10
    **administered** [1] - 28:16
    **administration** [86] - 4:8, 8:4, 8:8, 10:13, 11:1, 13:14, 13:20,

13:23, 13:25, 14:3, 14:7, 14:8, 14:10, 14:12, 14:16, 14:18, 14:19, 14:25, 15:1, 15:10, 15:21, 16:5, 16:9, 17:15, 17:22, 17:24, 18:10, 18:22, 19:17, 19:24, 20:12, 20:16, 20:23, 20:24, 21:20, 21:22, 22:2, 22:6, 22:11, 22:16, 23:10, 23:11, 23:15, 24:18, 25:2, 32:2, 32:8, 33:3, 33:5, 33:7, 33:12, 33:14, 33:24, 34:9, 34:12, 34:18, 34:21, 34:23, 35:10, 36:23, 37:5, 37:8, 38:8, 38:13, 40:9, 40:20, 47:21, 47:23, 48:5, 50:15, 50:22, 51:2, 51:16, 52:4, 52:7, 52:14, 52:25, 53:4, 53:14, 53:16, 54:13, 55:12, 55:18, 71:23, 86:2, 86:10

**administrative** [1] - 54:15

**Admiral** [1] - 18:17

**admit** [1] - 22:5

**admitted** [1] - 4:10

**admittedly** [1] - 51:8

**adoptive** [1] - 76:1

**advance** [8] - 42:10, 42:11, 47:2

**adversity** [1] - 87:23

**advice** [2] - 77:9, 83:14

**advisory** [3] - 7:16, 24:3, 58:23

**advocate** [3] - 68:19, 69:23, 70:5

**affect** [1] - 10:5

**affected** [1] - 53:4

**afford** [2] - 59:19, 90:9

**agencies** [2] - 40:4, 89:19

**agency** [1] - 40:10

**Agent** [1] - 3:8

**aggravating** [3] - 81:12, 83:22, 84:2

**aggressive** [1] - 43:20

**agitators** [1] - 43:20

**agree** [15] - 10:2, 15:4, 17:13, 21:20, 26:2, 27:9, 34:14, 37:19, 40:15, 52:11, 53:11, 71:19, 82:20,

82:25, 86:18

**agreed** [2] - 17:3, 77:10

**agreeing** [2] - 16:3, 17:9

**Aguilar** [1] - 20:23

**ahold** [1] - 43:25

**aid** [1] - 6:1

**aiding** [18] - 26:6, 26:9, 26:12, 27:8, 27:11, 29:17, 29:21, 42:18, 42:19, 45:3, 45:11, 46:15, 47:12, 48:20, 48:21, 70:8, 70:11, 85:1

**aimed** [1] - 85:12

**albeit** [1] - 66:20

**ALJs** [1] - 40:15

**allegedly** [1] - 18:23

**allocute** [1] - 71:15

**allow** [1] - 87:23

**allows** [1] - 87:7

**almost** [3] - 14:11, 66:12, 86:7

**alone** [7] - 27:6, 27:7, 27:19, 37:1, 48:21, 48:25, 49:12

**alter** [1] - 54:20

**altercation** [1] - 84:25

**altering** [1] - 54:16

**alternative** [1] - 40:25

**ambiguity** [4] - 25:7, 25:12, 37:25, 55:15

**ambiguous** [1] - 25:15

**Amendment** [4] - 65:22, 67:6, 71:5, 71:6

**Amendment-protected** [1] - 67:6

**AMERICA** [1] - 1:3

**America** [2] - 3:2, 60:13

**American** [2] - 60:9, 65:14

**American's** [1] - 67:7

**Americans** [3] - 60:18, 61:5, 80:2

**Americans'** [1] - 65:23

**amount** [2] - 59:8, 89:3

**analogizing** [1] - 85:20

**analogous** [3] - 16:17, 16:19, 17:24

**analysis** [6] - 20:2, 20:3, 29:24, 41:23,

42:18, 42:19

**analyzing** [2] - 13:25, 15:20

**AND** [1] - 1:22

**animus** [1] - 81:15

**answer** [2] - 18:7, 38:2

**answered** [1] - 23:8

**Anthony** [1] - 3:8

**anticipate** [1] - 65:1

**antisemitic** [6] - 72:3, 82:1, 82:4, 83:4, 84:3, 87:3

**antisemitism** [2] - 65:20, 72:14

**anyway** [1] - 14:21

**apart** [4] - 61:2, 64:24, 83:22, 85:4

**apology** [2] - 76:25, 79:1

**appalled** [1] - 80:14

**appeal** [8] - 15:3, 15:23, 47:24, 89:24, 90:1, 90:9, 90:10

**Appeals** [1] - 48:5

**appeals** [1] - 20:13

**appear** [1] - 32:15

**aPPEARANCES** [1] - 1:13

**applicable** [7] - 7:20, 8:23, 15:18, 16:16, 16:22, 55:24, 57:8

**application** [6] - 22:21, 32:11, 50:25, 54:5, 60:6, 71:11

**applied** [3] - 21:6, 25:18, 77:10

**applies** [11] - 7:17, 15:5, 15:13, 25:11, 32:5, 32:23, 34:6, 38:1, 86:3, 86:8, 86:13

**apply** [20] - 9:1, 15:19, 17:3, 18:19, 20:4, 25:3, 28:11, 31:22, 32:7, 36:4, 36:7, 36:22, 37:15, 38:12, 39:4, 39:17, 41:14, 41:18, 52:19, 86:4

**applying** [4] - 24:20, 25:22, 39:8, 71:25

**appreciably** [1] - 52:8

**appreciate** [4] - 10:8, 41:21, 50:10, 83:12

**appreciation** [1] - 7:13

**approach** [7] - 6:20, 9:6, 9:9, 38:25, 39:4,

50:19, 53:22

**appropriate** [8] - 50:17, 55:21, 58:14, 69:4, 75:22, 86:1, 87:13, 89:19

**appropriately** [2] - 87:3, 87:16

**approved** [1] - 89:20

**Architect** [1] - 89:3, 89:6

**arguably** [2] - 40:20, 52:13

**argue** [4] - 16:18, 38:10, 71:24, 75:12

**argued** [1] - 37:4

**arguing** [1] - 31:7

**argument** [21] - 9:7, 10:16, 10:20, 15:17, 19:13, 28:9, 32:20, 34:5, 34:9, 36:11, 40:25, 46:17, 46:18, 47:1, 47:10, 52:22, 53:18, 60:10, 70:9, 70:10, 72:9

**arguments** [8] - 11:18, 25:21, 31:21, 43:3, 45:5, 50:10, 72:12

**arrest** [4] - 44:25, 79:23, 85:2, 87:8

**arrested** [1] - 81:20

**arrive** [1] - 38:22

**arrived** [1] - 38:21

**art** [6] - 14:3, 14:19, 16:10, 21:25, 34:14

**articulated** [1] - 86:21

**aside** [1] - 74:18

**aspect** [2] - 38:15, 38:19

**aspects** [2] - 41:1, 60:9

**assault** [8] - 27:6, 27:17, 27:18, 30:9, 48:25, 49:3, 49:8, 49:18

**assessed** [1] - 79:8

**assessment** [8] - 56:15, 56:20, 57:1, 59:9, 86:19, 88:9, 89:12, 90:24

**assist** [1] - 74:9

**assistance** [2] - 45:22, 90:7

**associated** [1] - 35:6

**ASSOCIATES** [1] - 1:22

**assume** [2] - 31:19, 82:15

**assumed** [1] - 53:18

**assuming** [1] - 25:1

**assuredly** [1] - 52:15

**attached** [1] - 4:6

**attack** [1] - 45:23

**attacked** [1] - 79:16

**attempt** [4] - 7:17, 36:14, 43:19, 84:19

**attempted** [1] - 65:12

**attempting** [2] - 29:11, 44:20

**attempts** [3] - 39:13, 39:14, 39:15

**attorney** [2] - 67:23, 81:4

**ATTORNEY'S** [1] - 1:15

**attorneys** [2] - 6:24, 83:19

**attributed** [1] - 10:24

**attributes** [1] - 40:14

**attributing** [1] - 70:9

**audio** [1] - 4:20

**aunt** [1] - 76:1

**AUSA** [1] - 3:8

**authorizes** [1] - 51:22

**available** [3] - 58:23, 60:4, 90:6

**availed** [2] - 62:10, 63:1

**Avenue** [2] - 2:3, 93:14

**avoid** [2] - 29:11, 60:1, 84:19

**aware** [1] - 53:22

**awkward** [2] - 16:7, 75:16

**B**

**b)(2** [2] - 50:13, 55:20

**babies** [1] - 81:1

**backed** [1] - 44:18

**background** [2] - 54:12, 61:6

**bad** [1] - 75:16

**balance** [1] - 89:10

**barriers** [2] - 45:21, 49:20

**bars** [1] - 87:19

**base** [6] - 7:24, 17:2, 17:10, 45:23, 58:5, 69:11

**based** [4] - 8:21, 37:15, 59:10, 67:1

**basis** [3] - 15:19, 51:19, 83:7

**battle** [1] - 46:1

**bear** [2] - 51:10, 58:20
**becomes** [4] - 23:18, 61:16, 61:17, 90:5
**BEFORE** [1] - 1:10
**began** [1] - 31:20
**begin** [1] - 51:13
**begins** [2] - 44:9, 70:20
**behalf** [3] - 3:7, 3:13, 84:9
**behavior** [7] - 5:7, 74:10, 74:15, 75:19, 76:20, 77:22, 82:1
**behind** [1] - 87:19
**bench** [1] - 3:14
**benefited** [1] - 69:19
**best** [2] - 64:10, 93:7
**better** [1] - 14:24
**between** [9] - 23:1, 32:13, 48:2, 49:7, 49:21, 67:5, 73:11, 74:23, 83:24
**beyond** [5] - 40:16, 64:12, 87:6, 87:9, 91:4
**big** [1] - 65:3
**bigger** [2] - 15:11, 68:4
**biggest** [1] - 31:24
**bike** [1] - 45:21
**bit** [3] - 42:17, 72:5, 75:16
**Black's** [7] - 14:14, 16:12, 20:20, 21:24, 22:4, 50:22, 52:12
**blameworthy** [1] - 81:11
**bleed** [1] - 42:17
**blinded** [1] - 43:21
**bodily** [5] - 27:18, 48:24, 49:1, 49:12, 54:22
**body** [1] - 76:3
**bone** [1] - 76:3
**books** [1] - 65:10
**BOP** [1] - 91:6
**born** [1] - 81:1
**Bostock** [2] - 12:19, 23:6
**Branch** [1] - 12:14
**brave** [1] - 71:22
**bravely** [1] - 80:15
**brawl** [4] - 44:7, 44:10, 44:13, 44:18
**breach** [4] - 46:4, 64:2, 64:3, 79:16
**break** [1] - 50:7
**breaks** [2] - 44:6, 44:13

**breath** [2] - 65:6, 67:18
**bridges** [1] - 66:1
**brief** [3] - 28:15, 71:14, 71:15
**briefing** [3] - 17:17, 49:16, 50:11
**briefly** [2] - 47:19, 47:20
**bring** [1] - 47:4
**bringing** [1] - 75:16
**broad** [4] - 14:20, 20:25, 41:3, 50:19
**broader** [4] - 15:1, 33:11, 33:15, 43:2
**broadly** [3] - 9:20, 26:24, 33:24
**Broadway** [1] - 1:19
**broke** [1] - 30:25
**brought** [2] - 74:24
**brutal** [2] - 46:1, 74:14
**bugbear** [1] - 48:10
**building** [27] - 3:23, 3:24, 3:25, 4:1, 31:3, 42:22, 46:24, 47:2, 47:5, 48:13, 56:6, 56:7, 56:10, 56:11, 56:17, 56:18, 56:23, 56:24, 62:2, 62:3, 64:6, 64:15, 68:25, 70:16, 78:23
**Building** [10] - 30:7, 42:13, 47:14, 76:19, 78:18, 79:17, 79:18, 80:3, 80:12, 84:14
**bump** [2] - 70:13, 70:14
**burden** [5] - 28:21, 37:25, 54:4, 54:7, 78:11
**burdens** [1] - 76:23
**buy** [2] - 65:4, 67:16
**BY** [1] - 2:1

**C**

**calculate** [2] - 5:12, 9:10
**calculated** [5] - 9:8, 9:21, 85:6, 87:1, 87:2
**calculates** [1] - 8:1
**calculating** [1] - 9:6
**calculation** [7] - 7:16, 7:18, 31:12, 86:25, 87:6, 87:10, 87:13
**calculations** [1] - 9:3
**camera** [2] - 75:3

**candidly** [1] - 25:14
**cannot** [4] - 49:13, 51:7, 51:9, 85:15
**canons** [1] - 50:18
**capacious** [2] - 21:1, 52:12
**capacity** [1] - 66:20
**Capitol** [48] - 3:25, 4:1, 8:14, 24:19, 27:5, 28:13, 30:7, 35:7, 40:21, 42:7, 42:12, 43:1, 43:6, 43:15, 44:1, 46:18, 47:14, 50:4, 56:10, 56:11, 56:23, 56:24, 61:22, 62:21, 64:3, 64:4, 64:11, 66:4, 70:22, 74:24, 75:3, 76:19, 77:2, 78:17, 78:18, 78:22, 79:17, 80:3, 80:12, 80:14, 84:14, 84:18, 89:3, 89:6
**captain** [1] - 74:8
**capture** [4] - 39:23, 39:24, 41:3, 63:13
**captured** [2] - 41:15, 64:2
**captures** [3] - 36:24, 38:20, 40:5
**carries** [1] - 18:5
**carry** [2] - 12:11, 51:17
**case** [50] - 5:16, 6:25, 7:17, 12:6, 12:19, 13:16, 18:20, 19:20, 20:24, 21:6, 25:10, 25:11, 25:16, 26:10, 27:7, 29:5, 29:14, 30:3, 34:24, 36:21, 38:18, 39:1, 39:2, 39:6, 41:4, 48:3, 48:20, 49:8, 50:1, 50:2, 52:23, 53:2, 57:23, 58:1, 60:14, 63:14, 66:18, 70:21, 71:3, 72:4, 72:6, 72:8, 72:16, 74:21, 77:10, 79:9, 83:21, 84:1, 85:4
**Case** [1] - 3:1
**cases** [34] - 9:16, 9:19, 11:4, 11:16, 11:25, 12:8, 14:5, 24:11, 25:5, 30:21, 35:7, 49:4, 49:18, 49:20, 63:12, 64:19, 69:3, 69:6, 69:18, 69:22, 69:25, 70:3, 70:22, 70:25, 74:19, 75:7, 83:8, 83:20,

83:23, 84:6, 85:4, 87:17
**Casillas** [1] - 3:10
**Category** [1] - 8:20
**category** [2] - 8:22, 74:6
**caused** [5] - 8:3, 25:25, 46:15, 83:18, 87:5
**causing** [4] - 32:17, 37:11, 54:22, 86:16
**cell** [2] - 73:12, 73:15
**Center** [6] - 43:2, 43:6, 43:15, 44:1, 46:19, 84:18
**central** [1] - 72:9
**certain** [3] - 17:23, 19:20, 73:1
**certainly** [5] - 38:10, 40:15, 58:14, 80:4, 83:15
**CERTIFICATE** [1] - 93:1
**certification** [22] - 8:9, 40:21, 40:25, 50:14, 51:6, 51:7, 51:10, 51:12, 51:15, 52:8, 52:16, 53:15, 53:19, 61:9, 80:6, 80:11, 80:13, 81:17, 84:16, 84:20, 86:6, 86:15
**certify** [3] - 60:17, 60:24, 93:4
**certifying** [1] - 41:10
**chair** [1] - 62:15
**challenge** [1] - 90:4
**challenging** [3] - 25:9, 25:14, 77:9
**chamber** [1] - 75:9
**change** [3] - 38:4, 89:15, 89:16
**changed** [1] - 67:3
**changes** [1] - 78:9
**Chapter** [5] - 11:20, 32:22, 34:20, 41:15, 47:25
**character** [1] - 77:11
**characteristics** [6] - 31:22, 51:6, 59:24, 65:16, 66:24, 79:12
**characterization** [1] - 11:24
**charge** [2] - 33:7, 69:10
**charged** [8] - 27:16, 30:8, 30:9, 30:15, 30:23, 33:9, 45:8, 49:2
**charges** [3] - 35:23,

49:3, 69:6
**charging** [2] - 33:2, 69:25
**chart** [1] - 30:22
**chemical** [4] - 43:9, 43:17, 43:21, 44:5
**Chief** [7] - 20:1, 20:5, 22:7, 22:17, 23:13, 24:7, 89:7
**childhood** [4] - 76:2, 82:13, 82:18, 87:24
**childish** [2] - 72:22, 77:15
**choice** [1] - 70:4
**choices** [1] - 70:2
**choose** [1] - 90:1
**CHS** [1] - 4:18
**circle** [1] - 24:9
**Circuit** [4] - 19:21, 25:10, 53:10, 90:13
**circuit** [5] - 15:23, 22:2, 39:7, 39:16
**circuits** [2] - 13:17, 50:20
**circumstance** [1] - 36:19
**circumstances** [9] - 35:2, 36:15, 37:14, 48:16, 57:15, 59:11, 59:23, 64:20, 67:2
**citadel** [1] - 64:8
**cite** [2] - 23:19, 48:22
**cited** [12] - 12:18, 15:2, 15:17, 17:1, 19:21, 25:6, 25:10, 32:22, 48:9, 50:1, 69:3, 69:7
**cites** [2] - 15:15, 22:15
**citizens** [1] - 51:21
**civil** [8] - 42:8, 48:13, 54:15, 61:24, 65:7, 67:18, 72:25, 81:18
**claim** [2] - 84:13, 90:6
**claimed** [1] - 84:21
**clarification** [2] - 58:4, 91:13
**clarifying** [2] - 58:8, 90:17
**Class** [1] - 57:13
**classic** [1] - 74:25
**clean** [2] - 72:24, 81:19
**clear** [13] - 19:18, 30:20, 31:6, 34:5, 34:6, 35:9, 36:20, 37:13, 38:6, 47:5, 48:20, 66:6, 84:15
**clearest** [1] - 13:10

**clearly** [5] - 36:21, 36:24, 39:23, 42:7, 87:22

**Clerk** [3] - 89:4, 89:13, 89:16

**client** [1] - 10:16

**clients** [1] - 73:13

**climbs** [1] - 46:2

**Clock** [1] - 50:2

**close** [5] - 10:13, 27:4, 51:5, 69:2, 74:20

**closed** [2] - 51:1, 52:4

**closely** [1] - 70:14

**closing** [1] - 72:12

**co** [1] - 45:9

**co-conspirators** [1] - 45:9

**coercive** [2] - 51:3, 51:22

**collapse** [1] - 30:10

**collapses** [1] - 46:1

**collar** [2] - 26:21, 27:20

**colleague** [2] - 72:4, 81:1

**colleagues** [2] - 52:22, 53:17

**collection** [1] - 88:23

**collective** [1] - 28:20

**College** [5] - 8:9, 41:11, 50:14, 60:17, 61:9

**COLUMBIA** [2] - 1:1, 1:15

**Columbia** [4] - 2:2, 89:5, 89:14, 93:13

**commands** [1] - 31:2

**Comment** [1] - 15:14

**comment** [3] - 28:5, 54:11, 77:22

**commentary** [3] - 15:18, 16:24, 72:24

**comments** [11] - 25:8, 39:9, 39:15, 66:9, 68:20, 72:3, 72:22, 76:4, 83:4, 83:16, 84:3

**Commission** [11] - 17:13, 17:21, 18:8, 20:15, 36:1, 39:12, 39:20, 53:23, 54:25, 69:9, 86:4

**commission** [1] - 29:10

**Commissioners** [1] - 37:18

**commissions** [1] - 40:13

**commit** [8] - 26:14, 26:18, 27:18, 49:1, 62:19, 66:2, 66:17, 88:19

**committed** [10] - 5:4, 25:8, 26:13, 26:18, 27:6, 33:3, 68:8, 74:24, 80:2, 85:17

**committees** [1] - 40:4

**common** [1] - 64:22

**commonsense** [2] - 38:25, 39:4

**communicated** [1] - 78:24

**communication** [2] - 40:7, 54:21

**communities** [1] - 24:12

**community** [7] - 11:11, 12:12, 22:19, 50:24, 57:15, 66:7, 66:25

**comparable** [2] - 75:5, 86:11

**comparators** [2] - 69:4, 69:16

**comparison** [1] - 49:15

**comparisons** [1] - 75:12

**complete** [1] - 93:6

**completes** [1] - 51:9

**complies** [1] - 6:22

**comply** [2] - 59:15, 89:1

**component** [1] - 72:11

**computed** [1] - 8:16

**conceded** [1] - 55:6

**concept** [1] - 26:7

**concern** [5] - 9:17, 36:4, 37:17, 87:14, 91:11

**concerned** [1] - 39:8, 65:24, 65:25

**conclude** [2] - 47:7, 70:18

**concluded** [1] - 92:8

**conclusion** [1] - 34:6

**concurrently** [7] - 57:10, 59:3, 59:6, 88:13, 88:14, 91:15, 91:20

**condition** [1] - 57:14

**conditions** [4] - 73:10, 88:19, 88:24, 89:2

**conduct** [36] - 3:24, 3:25, 30:14, 30:18,

30:19, 30:22, 38:17, 38:20, 39:24, 40:5, 41:3, 41:15, 42:9, 42:21, 48:12, 49:23, 53:3, 54:9, 56:6, 56:10, 56:17, 56:23, 59:20, 60:3, 67:9, 70:15, 73:25, 74:6, 74:19, 75:5, 76:18, 76:24, 80:18, 82:2, 85:3, 85:19

**confident** [1] - 82:10

**confinement** [3] - 73:6, 73:18, 78:4

**Congress** [22] - 5:19, 8:14, 17:22, 17:23, 18:1, 18:5, 18:12, 18:23, 51:6, 51:9, 51:20, 51:25, 52:3, 52:6, 52:9, 52:16, 59:13, 64:5, 75:4, 77:1, 84:13, 84:14

**congressional** [2] - 18:8, 20:17

**connect** [1] - 24:4

**connection** [3] - 7:5, 29:8, 90:8

**consequences** [4] - 5:6, 5:21, 29:2, 81:25

**consider** [15] - 35:14, 45:2, 55:9, 59:12, 59:23, 73:6, 75:20, 75:22, 76:11, 77:17, 77:18, 77:20, 77:21, 81:12

**consideration** [1] - 55:23

**considerations** [1] - 79:11

**considered** [1] - 82:24

**considering** [3] - 35:15, 41:14, 54:9

**consistent** [3] - 9:20, 20:22, 38:9

**conspiracy** [4] - 29:15, 29:17, 29:20, 45:9

**conspirators** [1] - 45:9

**constitutes** [1] - 93:4

**Constitution** [5] - 2:3, 41:8, 62:22, 63:2, 93:14

**constitutional** [1] - 71:5

**construe** [1] - 47:23

**construed** [1] - 47:24

**contained** [1] - 59:11

**contemplated** [1] - 18:8

**context** [19] - 11:9, 11:20, 12:4, 13:7, 13:12, 13:17, 22:11, 22:16, 23:10, 23:15, 27:12, 27:14, 34:24, 35:10, 35:16, 38:23, 68:23, 69:16, 82:19

**context-dependent** [1] - 34:24

**contextualize** [1] - 81:4

**contextually** [1] - 38:12

**continue** [1] - 88:2

**Contra** [1] - 18:12

**contrary** [1] - 74:11

**contributed** [1] - 82:8

**contrition** [2] - 68:1, 68:7

**controlled** [1] - 88:21

**controlling** [1] - 13:8

**conversation** [1] - 4:18

**conveying** [1] - 13:4

**convicted** [3] - 35:21, 68:22, 69:11

**conviction** [3] - 29:10, 90:4, 90:8

**convince** [2] - 18:24, 72:19

**convinced** [2] - 10:19, 52:7

**convincing** [1] - 66:6

**convincingly** [1] - 81:15

**cooperate** [1] - 88:22

**coordinate** [1] - 46:4

**core** [1] - 72:11

**corner** [2] - 44:11, 44:15

**corners** [1] - 12:22

**correct** [7] - 13:24, 25:13, 25:16, 32:6, 53:19, 55:8

**Corrections** [1] - 74:4

**Corridor** [1] - 50:3

**corrupt** [1] - 64:11

**corruptly** [1] - 40:6

**cost** [3] - 46:11, 90:9, 90:11

**counsel** [14] - 3:4, 3:7, 3:15, 5:15, 31:20, 34:19, 65:1, 65:17, 67:14, 69:7, 77:9, 77:10, 81:9, 90:7

**counsel's** [1] - 83:14

**count** [5] - 9:8, 56:19, 56:21, 56:25, 57:1

**Count** [10] - 7:22, 41:9, 56:2, 56:13, 57:2, 57:12, 59:1, 59:5, 88:7, 91:19

**counters** [2] - 13:1, 13:2

**country** [12] - 28:19, 60:8, 61:10, 61:16, 62:13, 62:22, 62:25, 63:19, 76:21, 82:7, 88:3

**counts** [2] - 8:25, 57:7

**Counts** [17] - 7:19, 8:24, 56:5, 56:9, 56:16, 56:22, 57:5, 57:17, 59:2, 59:3, 59:6, 88:7, 88:8, 88:10, 91:14, 91:16, 91:19

**couple** [4] - 34:19, 47:21, 69:21, 83:11

**course** [5] - 4:9, 29:11, 35:24, 54:6, 54:8

**court** [11] - 20:13, 22:2, 28:2, 28:8, 33:25, 40:14, 54:16, 58:12, 73:23, 78:1, 86:7

**Court** [88] - 2:1, 2:2, 4:21, 5:17, 5:20, 7:9, 11:5, 16:16, 16:21, 16:22, 17:4, 17:18, 19:11, 19:14, 20:24, 22:10, 24:17, 25:7, 25:11, 26:10, 27:22, 30:1, 31:19, 31:24, 32:19, 36:11, 36:19, 36:22, 37:13, 38:22, 39:1, 40:22, 41:7, 41:13, 41:22, 41:24, 44:8, 45:6, 47:6, 47:8, 47:23, 47:25, 48:3, 48:5, 55:24, 56:3, 57:3, 57:5, 58:5, 59:13, 61:20, 62:4, 62:12, 62:16, 63:15, 65:13, 65:25, 66:6, 67:14, 68:17, 69:16, 69:17, 70:7, 70:17, 73:2, 75:6, 75:7, 76:16, 77:7, 77:20, 78:10, 79:3, 88:5, 89:4, 89:5, 89:13, 89:16, 89:22, 89:24,

90:2, 90:10, 90:19, 90:23, 93:12, 93:13
**COURT** [86] - 1:1, 3:11, 3:16, 4:22, 4:25, 6:8, 6:12, 6:17, 6:20, 6:23, 7:2, 7:7, 7:9, 9:15, 9:23, 10:1, 10:8, 13:19, 13:22, 14:2, 14:14, 14:18, 15:4, 16:1, 17:12, 18:13, 18:24, 19:4, 20:1, 20:20, 21:14, 21:17, 22:18, 24:24, 25:19, 25:23, 26:2, 26:8, 26:23, 27:9, 28:6, 29:4, 30:2, 30:16, 31:5, 31:11, 31:14, 31:16, 31:18, 32:24, 34:8, 35:17, 35:20, 37:17, 39:6, 40:12, 41:19, 41:25, 45:11, 45:14, 45:16, 47:18, 49:25, 50:6, 50:10, 58:8, 58:18, 66:10, 68:15, 69:21, 71:9, 72:18, 76:8, 76:14, 79:5, 79:8, 90:18, 90:21, 90:25, 91:2, 91:7, 91:11, 91:17, 91:24, 92:4, 92:6
**Court's** [10] - 18:7, 34:17, 38:16, 41:21, 49:15, 58:20, 66:8, 66:21, 68:20, 71:22
**court-like** [1] - 40:14
**courthouse** [1] - 52:21
**courtroom** [3] - 63:9, 64:1, 78:14
**COURTROOM** [1] - 3:1
**Courts** [1] - 20:8
**courts** [18] - 11:10, 15:3, 15:23, 19:17, 21:9, 22:8, 23:23, 24:7, 28:19, 32:9, 33:6, 47:24, 52:1, 52:13, 53:7, 54:2, 71:21, 73:6
**courts'** [2] - 38:19, 55:2
**cover** [2] - 18:11, 18:25
**COVID** [2] - 83:6, 83:9
**crammed** [1] - 39:12
**create** [2] - 20:13, 27:1
**created** [1] - 35:25
**creating** [1] - 71:25

**credit** [4] - 73:8, 83:6, 83:13, 83:15
**crime** [4] - 5:4, 26:16, 66:12, 66:17
**crime-type** [1] - 66:12
**crimes** [3] - 28:22, 59:21, 80:1
**Criminal** [4] - 1:3, 3:1, 3:9, 8:20
**criminal** [20] - 5:7, 8:18, 8:19, 8:22, 11:19, 12:4, 12:17, 29:5, 29:7, 29:8, 29:9, 41:5, 45:4, 51:21, 54:18, 59:20, 75:24, 75:25, 84:8
**criminalizes** [1] - 49:5
**CRISP** [2] - 1:21, 1:22
**Crisp** [4] - 3:14, 3:17, 6:24, 12:9
**crowd** [5] - 28:11, 45:25, 46:2, 46:7, 46:20
**CRR** [3] - 2:1, 93:3, 93:12
**crushes** [1] - 78:8
**crushing** [1] - 73:16
**CRYSTAL** [1] - 1:24
**culpability** [1] - 87:13
**cunt** [1] - 80:17
**curious** [1] - 65:16
**Cusanelli** [41] - 3:3, 3:13, 3:18, 3:21, 4:25, 5:25, 6:9, 6:20, 8:3, 8:12, 8:18, 8:23, 25:25, 26:21, 44:17, 44:21, 45:25, 46:6, 46:14, 46:19, 48:23, 49:11, 50:12, 52:23, 55:18, 57:11, 57:20, 62:1, 65:11, 65:12, 71:15, 71:21, 72:21, 73:5, 73:11, 74:4, 75:10, 75:15, 76:7, 76:8, 88:6
**CUSANELLI** [1] - 1:6
**Cusanelli's** [14] - 10:6, 17:9, 19:12, 19:23, 30:14, 30:24, 48:12, 49:24, 50:20, 53:3, 73:25, 74:7, 74:12, 74:20
**custody** [1] - 88:15
**cut** [1] - 20:17

# D

**D.C** [8] - 1:6, 1:17, 2:4, 19:21, 25:10, 74:3, 90:13, 93:14
**damage** [15] - 26:1, 26:25, 32:18, 37:11, 42:17, 46:11, 46:13, 46:15, 47:16, 54:23, 76:22, 78:17, 85:11, 85:16, 87:4
**Dan** [1] - 60:20
**danger** [4] - 23:21, 66:7, 66:25, 77:19
**dangerous** [1] - 79:22
**dangerousness** [2] - 67:8, 81:13
**date** [1] - 74:5
**Dated** [1] - 93:10
**dated** [1] - 74:5
**DAVID** [1] - 1:19
**days** [4] - 65:5, 78:3, 89:15, 90:1
**dealing** [1] - 35:4
**dealt** [1] - 52:24
**death** [2] - 17:19, 78:8
**debate** [2] - 18:20, 25:17
**decided** [3] - 15:23, 43:16, 84:25
**decision** [6] - 5:6, 11:22, 41:7, 48:4, 58:20, 84:7
**decision-makers** [1] - 11:22
**decisions** [3] - 38:20, 52:21, 69:25
**deep** [1] - 80:21
**Defendant** [53] - 1:7, 3:13, 3:20, 4:5, 6:12, 10:20, 26:18, 28:3, 28:10, 28:21, 28:25, 30:5, 33:3, 42:6, 42:13, 42:16, 42:21, 42:25, 43:7, 43:11, 44:13, 45:8, 45:20, 47:10, 47:15, 59:21, 59:25, 61:20, 62:7, 62:10, 62:14, 62:24, 63:6, 63:8, 64:10, 64:24, 66:1, 66:2, 66:7, 67:7, 67:13, 67:22, 68:8, 68:10, 68:24, 69:10, 70:19, 71:6, 72:10, 73:20, 75:8, 75:20
**defendant** [7] -

32:13, 32:15, 35:20, 50:2, 63:14, 63:23, 70:6
**DEFENDANT** [9] - 1:18, 6:22, 7:1, 7:6, 7:8, 76:12, 76:15, 79:7, 92:7
**Defendant's** [19] - 4:7, 26:16, 34:7, 36:24, 41:22, 42:2, 42:4, 45:6, 47:1, 64:21, 65:3, 65:15, 65:19, 65:23, 66:24, 67:4, 67:9, 72:14, 91:8
**defendant's** [4] - 32:12, 41:17, 63:22, 72:15
**defendants** [11] - 28:20, 48:2, 49:2, 53:18, 60:2, 68:22, 70:12, 70:25, 73:8, 74:16, 84:8
**Defendants** [1] - 69:18
**defendants'** [1] - 74:18
**defense** [17] - 9:24, 11:19, 13:13, 16:21, 20:16, 22:10, 31:20, 31:24, 32:6, 33:18, 34:19, 37:4, 41:6, 55:6, 65:1, 65:17, 69:7
**defense's** [2] - 32:20, 69:3
**defied** [1] - 18:22
**define** [2] - 22:11, 33:23, 87:24
**defined** [6] - 16:5, 21:7, 23:2, 23:16, 55:13, 90:3
**defines** [4] - 14:14, 14:16, 50:22, 51:21
**defining** [2] - 23:11, 24:4
**definition** [13] - 4:8, 11:7, 11:13, 12:22, 13:6, 20:21, 20:22, 21:5, 22:18, 25:2, 52:11, 53:20
**definitions** [3] - 12:1, 15:2, 22:2
**deformities** [1] - 81:2
**degrading** [1] - 80:23
**degree** [4] - 39:5, 41:16, 48:1, 63:23
**delay** [1] - 86:16

**deliberations** [1] - 54:17
**deliberative** [1] - 70:2
**demands** [1] - 64:18
**democracy** [1] - 64:9
**Democrats** [1] - 81:20
**demonstrated** [3] - 62:8, 68:10, 71:6
**demonstrates** [1] - 49:11
**demonstrating** [3] - 4:1, 56:11, 56:24
**denial** [1] - 53:2
**denied** [1] - 52:22
**denotes** [1] - 51:2
**deny** [2] - 10:10, 19:23
**department** [1] - 40:10
**Department** [1] - 74:3
**departments** [1] - 40:4
**dependent** [1] - 34:24
**depriving** [1] - 72:10
**depth** [1] - 66:8
**DEPUTY** [1] - 3:1
**derived** [1] - 11:6
**derogatory** [1] - 81:8
**describe** [4] - 48:16, 48:19, 55:14, 73:10
**described** [2] - 7:19, 89:8
**describes** [1] - 54:12
**designed** [2] - 35:1, 36:16
**desire** [3] - 71:1, 81:17, 83:13
**destroy** [1] - 64:8
**destruction** [1] - 64:15
**detain** [4] - 43:13, 43:19, 44:5, 44:20
**detection** [1] - 29:12
**detention** [2] - 44:21, 45:1
**determinations** [2] - 6:4, 6:6
**determine** [1] - 5:9
**determined** [1] - 59:8
**determines** [1] - 41:13
**deterrence** [6] - 59:20, 63:11, 64:18, 67:11, 73:20
**devoted** [2] - 32:1,

65:17
**dictionary** [11] - 11:6, 11:13, 12:23, 13:11, 21:5, 21:19, 23:3, 23:7, 23:24, 24:15, 24:22
**Dictionary** [7] - 14:14, 16:12, 20:21, 21:24, 22:4, 50:22, 52:12
**differ** [2] - 15:24, 33:18
**difference** [6] - 9:13, 9:16, 9:17, 10:10, 32:13, 49:7
**differences** [2] - 34:3, 48:2
**different** [20] - 14:2, 14:22, 16:10, 16:11, 21:21, 26:16, 33:11, 33:16, 37:10, 37:20, 38:8, 38:23, 45:1, 47:7, 47:13, 52:8, 52:17, 55:4, 55:9, 67:21
**differently** [3] - 14:15, 32:25, 37:5
**difficult** [3] - 63:13, 82:12, 83:9
**direct** [4] - 42:16, 45:1, 47:11, 64:4
**directed** [1] - 16:16
**directing** [1] - 39:9
**direction** [2] - 36:20, 37:13
**directions** [1] - 46:21
**directly** [3] - 42:25, 52:21, 84:24
**directs** [1] - 36:21
**disabilities** [1] - 81:2
**disagree** [2] - 25:1, 83:5
**disagreed** [1] - 51:12
**disagreement** [1] - 49:15
**disbursement** [1] - 89:6
**disconnecting** [1] - 23:22
**discretion** [1] - 36:20
**discrimination** [1] - 82:6
**discuss** [4] - 42:20, 55:24, 58:12, 58:19
**discussed** [6] - 6:9, 35:5, 45:14, 84:4, 86:9, 91:5
**discussing** [1] - 61:14
**disdainful** [1] - 71:21

**disgraced** [2] - 76:20, 76:21
**dismiss** [3] - 11:18, 17:18, 38:7
**disorderly** [6] - 3:23, 3:25, 56:6, 56:9, 56:17, 56:22
**disparities** [5] - 49:14, 60:1, 68:12, 69:14, 87:15
**disparity** [5] - 20:13, 29:25, 30:12, 30:17, 74:16
**disproves** [1] - 12:6
**dispute** [1] - 43:25
**disputing** [1] - 76:3
**disrespect** [1] - 66:3
**disrespectful** [1] - 64:14
**disruptive** [5] - 3:24, 56:6, 56:9, 56:17, 56:22
**dissent** [3] - 12:18, 12:19, 23:5
**distinction** [4] - 22:24, 23:1, 49:9, 51:19
**distort** [1] - 73:17
**District** [7] - 2:2, 2:2, 89:5, 89:13, 89:14, 93:13
**DISTRICT** [4] - 1:1, 1:1, 1:11, 1:15
**district** [6] - 38:6, 52:5, 83:20, 88:16, 89:21, 93:13
**Dix** [2] - 91:9
**DNA** [1] - 88:23
**document** [1] - 74:2
**documentation** [1] - 46:10
**documents** [1] - 4:11
**domestic** [1] - 62:23
**dominated** [1] - 72:8
**done** [8] - 14:24, 26:25, 38:3, 38:4, 53:21, 78:9, 78:17, 78:18
**door** [6] - 45:18, 46:3, 46:5, 46:6, 46:7, 46:11
**doors** [2] - 31:1, 31:16
**Dorsey** [1] - 53:6
**doubt** [4] - 64:13, 70:19, 76:17, 86:3
**down** [10] - 31:1, 31:2, 43:6, 43:14, 44:1, 44:3, 44:6, 44:16, 45:19, 49:20

**downward** [4] - 82:21, 83:3, 83:7, 86:25
**dozen** [1] - 49:22
**drag** [1] - 75:4
**draw** [2] - 24:9, 67:5
**drawing** [1] - 67:5
**drawn** [1] - 49:8
**driver** [2] - 68:13, 70:24
**drug** [1] - 88:22
**dry** [2] - 60:22, 61:1
**due** [20] - 13:19, 13:22, 13:25, 14:6, 14:7, 14:10, 14:12, 14:16, 14:18, 14:19, 14:25, 22:2, 33:3, 33:4, 34:18, 34:21, 40:8, 60:11, 62:9, 66:20
**during** [6] - 29:9, 47:13, 49:6, 80:9, 83:6, 83:9
**duty** [2] - 78:19, 80:15
**dwell** [1] - 65:16

## E

**easily** [1] - 45:22
**ECF** [2] - 50:21, 80:25
**EDWARDS** [2] - 2:1, 93:3
**Edwards** [1] - 93:12
**effect** [1] - 27:24
**effects** [1] - 73:16
**eight** [14] - 8:5, 42:5, 45:6, 47:9, 50:5, 69:23, 70:4, 70:5, 70:13, 70:14, 75:8, 85:8, 85:23, 87:12
**eight-level** [1] - 8:5, 85:8, 87:12
**eight-month** [2] - 50:5, 75:8
**eight-point** [3] - 69:23, 70:13, 70:14
**either** [2] - 64:6, 83:8
**elected** [1] - 51:9
**election** [1] - 60:25
**Electoral** [6] - 8:9, 41:8, 41:10, 50:14, 60:17, 61:9
**elements** [1] - 26:11
**Eleventh** [1] - 1:16
**eligible** [2] - 57:12, 57:17
**elsewhere** [1] -

48:17
**elude** [1] - 85:1
**embarrassment** [3] - 63:16, 63:17, 79:14
**emphasize** [1] - 73:4
**emphasized** [1] - 43:3
**empirical** [8] - 11:13, 12:24, 21:5, 22:8, 22:15, 23:6, 23:8, 23:22
**employment** [1] - 82:24
**encompass** [1] - 33:24
**encompassed** [1] - 38:17
**encompasses** [1] - 63:23
**encouraged** [1] - 82:16
**encouraging** [1] - 42:12
**end** [4] - 9:11, 42:24, 64:7, 74:10
**endeavors** [2] - 40:8, 64:25
**ends** [1] - 70:20
**endured** [2] - 77:3, 82:15
**enemies** [1] - 62:23
**enforce** [3] - 51:4, 51:7, 51:15
**enforceability** [1] - 51:11
**enforcement** [25] - 41:5, 42:16, 42:23, 44:2, 44:24, 45:2, 46:20, 46:22, 47:11, 47:17, 48:24, 49:6, 49:19, 51:14, 52:1, 54:21, 62:20, 64:5, 64:16, 68:24, 70:16, 71:4, 76:23, 85:16, 86:16
**enforcing** [1] - 12:14
**engage** [3] - 5:7, 52:4, 61:23
**engaged** [2] - 42:16, 42:21
**engages** [1] - 52:6
**engaging** [2] - 42:8, 46:21
**enhance** [1] - 76:5
**enhancement** [18] - 8:6, 8:11, 27:10, 28:11, 35:23, 36:8, 37:9, 37:11, 38:1, 54:5, 55:13, 69:23, 85:8, 85:12, 86:1,

86:9, 87:12
**enhancements** [13] - 8:2, 17:3, 18:20, 25:3, 32:7, 37:20, 39:3, 41:14, 41:17, 50:13, 55:10, 55:19
**ensure** [1] - 59:13
**entail** [1] - 17:23
**enter** [1] - 64:10
**entered** [6] - 4:19, 30:7, 42:6, 48:13, 75:8, 90:4
**entering** [4] - 3:22, 52:5, 56:16, 90:7
**enters** [1] - 90:2
**entire** [1] - 28:10
**entirely** [1] - 32:1
**environment** [1] - 83:4
**envisioned** [1] - 87:12
**envisions** [1] - 87:10
**equal** [1] - 82:10
**equivocally** [1] - 61:18
**escalating** [1] - 79:21
**especially** [5] - 22:4, 55:14, 62:18, 70:25, 83:3
**ESQ** [4] - 1:14, 1:14, 1:18, 1:21
**essential** [1] - 28:17
**established** [1] - 45:10
**evade** [1] - 54:20
**events** [1] - 77:3
**evidence** [10] - 12:3, 12:5, 18:2, 26:20, 54:20, 54:24, 66:6, 74:3, 77:11, 81:6
**exactly** [2] - 23:20, 48:19
**exaggeration** [3] - 61:23, 63:21, 65:3
**example** [5] - 12:2, 12:3, 22:15, 45:18, 46:10
**examples** [3] - 28:4, 54:25, 80:23
**excellent** [1] - 74:5
**excuse** [2] - 13:21, 75:19
**excuses** [4] - 72:22, 77:13, 77:16, 82:19
**execute** [6] - 12:7, 12:11, 12:13, 12:16, 24:13, 89:21
**Executive** [1] - 12:13
**exercised** [1] - 12:20

exercising [1] - 70:13
exhibit [1] - 4:15
Exhibit [2] - 44:7, 44:11
exhibits [3] - 4:14, 4:17
Exhibits [1] - 4:15
exist [1] - 57:15
expansive [1] - 53:13
expect [1] - 67:14
expelling [1] - 42:23
expenditure [4] - 28:7, 33:25, 36:25, 86:17
experience [3] - 73:15, 74:14, 75:21
experiences [1] - 82:15
explaining [1] - 78:14
explanation [1] - 58:13
extensive [3] - 45:5, 86:17, 87:4
extent [3] - 18:8, 66:11, 72:17
extra [1] - 34:17
extraordinary [4] - 57:14, 61:10, 61:16, 62:13
extremely [4] - 33:24, 70:23, 70:24, 79:15
eyes [1] - 77:15

**F**

F.3d [2] - 53:10, 90:12
F.Supp [1] - 52:5
face [3] - 5:6, 78:1, 80:16
faced [2] - 11:5, 82:6
facility [1] - 91:9
facing [1] - 87:19
fact [8] - 7:11, 12:6, 22:13, 25:20, 51:10, 69:17, 70:1, 77:14
fact-finding [1] - 22:13
fact-specific [1] - 70:1
factor [1] - 75:22
factors [12] - 5:18, 29:21, 58:19, 58:24, 59:12, 60:6, 68:5, 71:11, 79:9, 81:13,

83:22, 84:2
facts [11] - 7:9, 23:25, 24:22, 36:15, 37:15, 39:2, 41:20, 48:19, 49:10, 59:10, 79:9
factual [9] - 6:4, 6:6, 6:13, 31:21, 35:2, 36:18, 37:14, 47:8, 48:11
factually [1] - 25:21
failing [1] - 32:15
fair [6] - 5:18, 21:7, 21:8, 21:11, 55:14, 82:15
fairly [2] - 46:4, 46:14
fairness [1] - 68:13
faith [1] - 67:22
faithfully [1] - 38:12
fall [1] - 22:6
false [4] - 8:13, 10:16, 28:2, 58:12
familiar [6] - 13:14, 16:15, 35:18, 36:9, 36:10, 70:20
far [6] - 17:5, 48:15, 49:2, 66:13
fashion [1] - 5:17
fault [1] - 63:1
FBI [1] - 75:2
Federal [1] - 40:18
federal [6] - 5:4, 5:7, 54:15, 54:24, 62:19, 88:20
fell [1] - 61:2
fellow [7] - 27:1, 43:18, 44:4, 85:1, 85:17, 86:14, 87:5
felon [1] - 35:21
felony [1] - 57:13
few [2] - 49:2, 82:5
Fifield [20] - 3:7, 4:12, 6:3, 9:4, 9:15, 31:16, 47:22, 48:9, 48:11, 48:18, 58:2, 71:19, 72:2, 72:5, 72:13, 73:24, 74:11, 90:15, 91:21, 91:25
FIFIELD [31] - 1:14, 3:6, 4:13, 6:6, 9:5, 9:18, 31:17, 31:19, 33:13, 34:11, 35:19, 36:9, 38:14, 39:22, 40:22, 41:21, 42:1, 45:13, 45:15, 45:17, 58:3, 60:8, 66:13, 68:17, 69:24, 90:16, 90:19, 90:23, 91:1, 91:23, 92:2

Fifth [1] - 71:6
file [2] - 90:1, 90:10
filed [6] - 5:23, 5:24, 5:25, 6:2, 7:4, 17:17
filing [3] - 50:20, 80:25, 81:7
filings [1] - 4:7
final [2] - 5:22, 6:15, 58:20
finally [1] - 59:7
Financial [1] - 89:7
financial [3] - 89:7, 89:10, 89:17
findings [2] - 7:11, 18:4
fine [6] - 9:2, 56:14, 56:18, 56:24, 57:15, 90:20
fines [1] - 56:1
firearm [1] - 36:3
firearms [1] - 35:23
first [15] - 5:8, 5:22, 9:10, 9:21, 10:2, 11:7, 32:19, 34:11, 38:14, 42:6, 43:16, 46:1, 46:25, 84:3, 90:19
First [3] - 65:22, 67:6, 71:5
fit [4] - 12:22, 22:22, 23:25, 55:7
fits [3] - 16:4, 21:25, 87:16
fitting [1] - 24:22
five [4] - 13:17, 50:7, 57:12, 57:18
five-minute [1] - 50:7
fix [1] - 39:19
flagging [1] - 41:21
flip [1] - 61:9
floating [2] - 17:6, 23:25
Floor [1] - 1:16
focus [2] - 14:6, 43:16
folks [3] - 3:11, 43:20, 62:4
follow [3] - 17:1, 23:5, 83:13
followed [1] - 22:12
following [6] - 50:9, 57:13, 65:5, 84:2, 88:19, 89:1
follows [2] - 7:18, 11:21
fools [2] - 13:2, 13:3
FOR [5] - 1:1, 1:14, 1:15, 1:18, 1:24
force [10] - 22:20, 22:21, 40:6, 50:24, 50:25, 51:3, 51:8,

54:14, 61:21, 71:2
forcefully [1] - 61:18
foregoing [1] - 93:4
forehead [1] - 81:3
foreign [1] - 62:23
foreseeable [1] - 29:8
foreseen [1] - 53:25
formation [1] - 43:19
Fort [2] - 91:9
forth [6] - 5:19, 6:4, 6:13, 55:3, 60:6, 71:11
forward [2] - 3:4, 52:23
forwarded [1] - 48:23
foundation [1] - 23:23
four [5] - 4:14, 5:1, 13:16, 60:24, 86:22
Fourth [1] - 1:16
frame [2] - 44:9, 44:11, 44:15
framework [2] - 57:25, 58:16
frankly [5] - 21:20, 34:11, 60:22, 83:10, 83:15
free [1] - 72:19
freedoms [1] - 83:10
Friedrich [3] - 15:8, 20:4, 20:9
Friedrich's [1] - 20:7
friends [1] - 21:15
frighten [1] - 81:25
front [4] - 52:15, 69:22, 79:15, 84:24
Front [1] - 1:22
fruitful [1] - 10:22
FTC [1] - 40:13
fuck [1] - 80:17
fucking [1] - 65:7
full [6] - 36:1, 84:24, 85:23, 87:11, 89:17, 93:5
fully [2] - 6:23, 82:22
functional [2] - 36:17, 38:25
functioning [2] - 41:9, 62:6
funny [1] - 36:13
furtherance [2] - 26:12, 29:7
future [1] - 59:21

**G**

gambling [1] - 54:19

gap [1] - 83:24
gather [1] - 11:23
gathering [1] - 18:2
gauge [2] - 73:19, 75:24
general [5] - 23:2, 23:25, 24:21, 63:11, 64:18
genuine [2] - 67:24
get-go [1] - 66:19
ghost [7] - 35:18, 35:21, 35:24, 36:5, 36:6, 36:9
given [11] - 17:5, 22:4, 53:7, 54:2, 55:15, 68:20, 68:21, 83:3, 84:15, 85:9, 87:13
glad [1] - 71:18
global [1] - 63:20
goals [1] - 68:6
Golt [1] - 3:8
GoPro [1] - 75:3
governed [1] - 35:10
GOVERNMENT [1] - 1:14
Government [56] - 3:5, 4:5, 4:13, 5:14, 6:2, 6:3, 7:4, 9:5, 9:13, 10:2, 10:22, 11:25, 12:8, 12:10, 15:12, 15:16, 16:2, 17:1, 18:19, 23:14, 24:14, 25:6, 25:24, 26:3, 28:24, 30:6, 31:8, 38:22, 40:19, 42:3, 43:2, 43:4, 44:7, 47:22, 49:2, 53:12, 55:11, 57:23, 60:5, 65:21, 66:8, 66:25, 68:17, 68:18, 68:23, 69:15, 70:13, 71:17, 71:18, 72:3, 72:16, 74:21, 80:23, 81:14, 85:7, 92:2
government [7] - 33:25, 36:25, 60:9, 61:21, 65:10, 65:13, 71:1
Government's [25] - 9:7, 10:9, 10:20, 25:16, 28:21, 34:2, 40:24, 42:3, 46:25, 47:9, 54:4, 66:15, 66:18, 68:12, 69:1, 69:25, 70:4, 70:6, 70:9, 71:22, 72:12, 81:7, 83:24, 86:19, 86:21
governmental [1] -

28:7
**grab** [1] - 44:22
**grand** [2] - 40:16,
54:17
**grasp** [1] - 44:23
**grateful** [5] - 71:22,
76:15, 78:21, 78:22,
78:24
**gravity** [2] - 5:3,
64:21
**great** [4] - 12:25,
45:18, 60:8, 60:13
**greater** [1] - 59:14
**grotesquely** [1] -
64:13
**ground** [2] - 19:2,
50:14
**grounds** [3] - 3:23,
3:24, 47:14
**group** [4] - 9:9, 9:12,
43:10, 46:4
**grouped** [3] - 7:20,
9:9, 9:22
**grouping** [1] - 10:3
**guarantee** [1] - 78:2
**guaranteed** [1] -
71:5
**guarantees** [1] -
65:22
**guardrails** [5] - 61:5,
61:8, 61:12, 61:15,
62:6
**guess** [4] - 11:12,
16:1, 16:21, 49:21
**guideline** [36] - 7:16,
7:21, 8:22, 15:6,
15:13, 16:23, 17:5,
17:10, 27:22, 29:14,
29:22, 33:20, 34:6,
35:4, 35:6, 35:9,
35:25, 36:6, 37:12,
39:14, 39:17, 50:17,
53:5, 53:8, 55:7,
55:21, 55:22, 57:19,
57:21, 59:25, 85:5,
85:9, 85:20, 86:12,
86:24, 88:25
**guideline's** [1] -
29:22
**guidelines** [54] -
5:13, 7:22, 9:1, 9:2,
9:21, 13:10, 15:9,
15:24, 16:8, 16:11,
16:15, 16:19, 20:8,
24:3, 25:12, 27:16,
29:18, 31:12, 32:1,
32:24, 33:15, 33:17,
33:20, 33:23, 34:25,
35:1, 36:13, 36:17,
36:21, 37:6, 37:15,

37:24, 38:12, 38:24,
39:1, 39:3, 39:8, 39:9,
39:10, 39:23, 54:3,
59:22, 61:14, 68:11,
68:13, 68:18, 69:2,
69:5, 69:9, 69:14,
74:1, 75:12, 85:24,
87:2
**guidelines'** [2] -
58:23, 74:18
**guilty** [6] - 3:21,
30:17, 30:18, 60:3,
84:6, 90:7
**gun** [3] - 35:21, 36:5,
74:24
**guns** [6] - 35:18,
35:24, 36:6, 36:9,
75:2
**Guy** [1] - 74:22

## H

**hair** [1] - 75:4
**HALE** [1] - 1:6
**Hale** [55] - 3:3, 3:13,
3:18, 3:21, 4:25, 5:25,
6:9, 6:20, 8:3, 8:12,
8:18, 8:23, 10:6, 17:9,
19:12, 19:23, 25:25,
26:21, 30:14, 30:24,
44:17, 44:21, 45:25,
46:6, 46:14, 46:19,
48:12, 48:23, 49:11,
49:24, 50:12, 50:20,
52:23, 53:3, 55:18,
57:11, 57:20, 62:1,
65:11, 65:12, 71:15,
71:21, 72:21, 73:5,
73:11, 73:25, 74:4,
74:7, 74:12, 74:20,
75:10, 75:15, 76:7,
76:8, 88:6
**HALE-CUSANELLI**
[1] - 1:6
**Hale-Cusanelli** [41] -
3:3, 3:13, 3:18, 3:21,
4:25, 5:25, 6:9, 6:20,
8:3, 8:12, 8:18, 8:23,
25:25, 26:21, 44:17,
44:21, 45:25, 46:6,
46:14, 46:19, 48:23,
49:11, 50:12, 52:23,
55:18, 57:11, 57:20,
62:1, 65:11, 65:12,
71:15, 71:21, 72:21,
73:5, 73:11, 74:4,
75:10, 75:15, 76:7,
76:8, 88:6
**Hale-Cusanelli's** [14]
- 10:6, 17:9, 19:12,

19:23, 30:14, 30:24,
48:12, 49:24, 50:20,
53:3, 73:25, 74:7,
74:12, 74:20
**half** [1] - 49:22
**hand** [2] - 11:8,
53:13
**handy** [1] - 28:5
**hard** [1] - 75:17
**harm** [1] - 83:17
**harmoniously** [1] -
53:9
**harping** [2] - 22:24,
41:13
**Harrisburg** [1] - 1:23
**harsh** [1] - 85:7
**harshly** [2] - 36:4,
83:1
**hate** [1] - 66:12
**hateful** [1] - 82:16
**haven** [1] - 82:7
**head** [1] - 75:2
**hear** [13] - 5:14,
10:11, 10:21, 11:1,
25:22, 26:3, 31:11,
41:19, 47:19, 49:10,
58:10, 65:7, 73:20
**heard** [6] - 5:15,
9:24, 60:5, 60:18,
71:10, 81:8
**HEARING** [1] - 1:10
**hearing** [5] - 5:1, 5:8,
16:3, 52:17, 59:8
**hearings** [2] - 52:9,
66:19
**heavy** [1] - 69:10
**held** [4] - 19:18,
27:15, 62:2, 75:2
**help** [1] - 82:4
**helped** [3] - 27:1,
82:2, 85:18
**helpful** [2] - 63:11,
68:15
**hereby** [2] - 88:6,
93:3
**herein** [1] - 89:8
**herself** [1] - 72:13
**Higgins** [1] - 53:9
**highest** [3] - 7:21,
7:23, 83:25
**himself** [6] - 10:20,
42:21, 61:24, 62:10,
63:1, 72:21
**history** [11] - 8:19,
8:22, 59:24, 65:15,
65:19, 66:24, 75:25,
77:17, 79:12
**History** [1] - 8:20
**Hitler** [2] - 81:1,
81:10

**Hobbes** [1] - 13:1
**hold** [4] - 47:5, 62:1,
63:3, 65:23
**holding** [1] - 42:22
**home** [1] - 73:1
**homemade** [2] -
43:8, 43:17
**homing** [1] - 12:21
**honestly** [1] - 45:19
**Honor** [50] - 3:6,
4:13, 4:24, 6:11, 6:19,
7:1, 7:6, 9:5, 10:4,
11:2, 13:12, 13:21,
14:4, 14:23, 15:11,
16:13, 16:20, 18:15,
22:23, 25:22, 27:3,
28:4, 31:6, 31:17,
33:13, 49:1, 49:16,
58:3, 58:17, 71:13,
74:2, 74:17, 75:14,
76:12, 76:23, 76:25,
77:5, 77:12, 77:19,
77:24, 77:25, 78:16,
79:2, 79:4, 79:7, 91:4,
91:12, 92:3, 92:5,
92:7
**Honor's** [1] - 16:14
**honorable** [4] -
76:16, 77:7, 77:20,
79:3
**HONORABLE** [1] -
1:10
**hope** [3] - 80:4,
81:24, 88:2
**hoped** [1] - 81:18
**hostility** [1] - 80:21
**hour** [1] - 86:16
**hours** [3] - 73:12,
73:15, 88:15
**House** [1] - 84:17
**Howell** [2] - 20:18,
22:15
**Howell's** [1] - 41:7
**humor** [1] - 77:23
**hundreds** [1] - 30:6
**Hunter** [1] - 90:12
**hyperbole** [3] -
48:14, 65:2, 70:21
**hypo** [1] - 35:17

## I

**idea** [1] - 43:22
**ideally** [1] - 27:17
**identify** [1] - 3:4
**identifying** [1] -
33:20
**ignore** [1] - 85:15
**ignoring** [1] - 31:2

**illegal** [1] - 54:19
**image** [1] - 73:2
**images** [1] - 72:3
**imagine** [2] - 35:20,
46:13
**imitate** [1] - 19:19
**immediate** [1] - 44:2
**immediately** [1] -
89:12
**impact** [1] - 68:2
**impacts** [2] - 63:18,
63:19
**impeachment** [1] -
52:17
**impede** [1] - 40:8
**impedes** [1] - 40:7
**impeding** [1] - 34:21
**implicates** [1] -
60:14
**implication** [1] -
82:25
**implications** [2] -
18:6, 21:12
**implicitly** [1] - 53:2
**imply** [3] - 27:5,
30:5, 72:25
**importance** [1] -
71:17
**important** [7] - 37:4,
61:17, 62:18, 68:6,
69:13, 82:18
**impose** [8] - 5:20,
51:7, 56:3, 57:3, 57:5,
68:18, 88:4, 90:20
**imposed** [9] - 28:19,
57:13, 59:17, 59:25,
68:21, 89:24, 90:5,
90:14, 91:16
**imposes** [4] - 8:5,
8:10, 8:15, 59:14
**imposing** [1] - 76:11
**imposition** [1] -
50:12
**impressive** [1] -
80:10
**imprisonment** [2] -
55:25, 89:25
**inadvertent** [1] -
17:14
**inapplicable** [1] -
55:20
**inappropriate** [1] -
48:15
**incalculable** [1] -
36:14
**incarcerated** [2] -
83:6, 83:9
**incarceration** [6] -
59:1, 59:2, 59:3,
86:23, 88:7, 88:12

**incidents** [1] - 82:4
**inclination** [1] - 33:1
**inclined** [1] - 26:2
**include** [9] - 21:1, 32:8, 38:2, 38:5, 39:12, 46:25, 52:15, 55:25, 59:16
**included** [2] - 39:15, 53:24
**includes** [3] - 45:11, 71:24, 89:20
**including** [1] - 63:2
**incongruity** [1] - 53:11
**inconsistent** [2] - 19:22, 71:24
**incredibly** [1] - 75:17
**indeed** [1] - 53:1
**indicate** [1] - 66:24
**indicated** [1] - 87:11
**indicia** [2] - 48:6, 67:8
**indictments** [1] - 28:1
**indifferent** [1] - 64:14
**indistinguishable** [1] - 30:14
**individual** [1] - 28:17
**individually** [2] - 28:16, 28:22
**ineffective** [1] - 90:6
**ineligible** [1] - 57:21
**infamously** [1] - 80:25
**infinite** [1] - 69:8
**influence** [3] - 40:8, 54:14, 54:20
**inform** [1] - 39:9
**information** [7] - 11:23, 12:5, 46:11, 54:23, 67:2, 76:9, 90:5
**inharmonious** [1] - 53:12
**initial** [1] - 21:4
**initiated** [1] - 14:11
**injure** [1] - 85:10
**injured** [2] - 10:20, 26:24
**injuries** [4] - 78:18, 85:16, 86:17, 87:5
**injury** [11] - 8:4, 26:1, 26:4, 27:15, 27:18, 32:17, 37:11, 48:24, 49:1, 49:12, 54:22
**ink** [1] - 53:21
**inmate** [1] - 74:13
**inmates** [1] - 74:13
**inquiries** [1] - 18:9

**inquiry** [2] - 17:24, 18:5
**insensitivity** [1] - 80:22
**inside** [7] - 12:22, 46:7, 47:14, 70:16, 76:19, 79:19, 79:20
**insightfully** [1] - 31:25
**installation** [1] - 65:13
**instance** [1] - 46:14
**instances** [1] - 52:9
**instead** [1] - 33:9
**instinct** [2] - 36:2, 82:16
**instruct** [1] - 16:19
**instructions** [1] - 9:21
**intelligent** [1] - 87:22
**intend** [5] - 78:5, 78:10, 78:11, 78:14, 90:20
**intended** [4] - 22:5, 39:12, 80:6, 86:4
**intending** [2] - 26:13, 26:14
**intends** [1] - 26:14
**intent** [4] - 48:24, 49:11, 64:11, 71:1
**intentionally** [1] - 19:6
**interaction** [3] - 42:25, 44:9, 46:18
**intercepting** [1] - 54:17
**interest** [1] - 90:22
**interested** [1] - 10:12
**interesting** [4] - 11:3, 34:13, 60:15, 60:20
**interestingly** [1] - 38:15
**interfered** [1] - 79:24
**interference** [12] - 8:8, 8:10, 27:21, 27:22, 30:4, 37:9, 48:25, 49:3, 49:5, 49:8, 85:25, 86:5
**interfering** [2] - 44:25, 86:15
**interpret** [11] - 15:25, 20:8, 32:24, 32:25, 37:5, 37:7, 50:18, 53:8, 54:2, 54:4
**interpretation** [4] - 20:11, 23:19, 35:13, 52:20
**interpretations** [1] - 71:25

**interpretative** [1] - 24:12
**interpreted** [4] - 20:12, 33:5, 45:21, 48:4
**interpreting** [2] - 13:17, 29:14
**interpretive** [13] - 11:4, 11:11, 12:12, 13:11, 15:24, 24:2, 13:16, 34:3, 35:12, 37:2, 37:23, 50:18, 54:3
**interrupt** [2] - 18:14, 21:17
**intervene** [1] - 84:25
**intervention** [1] - 87:8
**intimidate** [1] - 54:14
**intimidation** [2] - 54:19, 85:13
**invading** [1] - 66:3
**investigation** [11] - 4:3, 5:23, 6:15, 11:22, 11:23, 18:3, 22:12, 48:7, 54:18, 54:19, 89:19
**investigations** [3] - 18:9, 18:12, 41:4
**investigative** [1] - 41:1
**Investigative** [1] - 3:9
**investigatory** [1] - 52:8
**invoked** [1] - 42:7
**involve** [3] - 19:17, 50:15, 51:16
**involved** [4] - 34:18, 36:24, 53:15, 55:1
**involvement** [1] - 83:1
**involves** [5] - 16:8, 41:4, 41:5, 51:3, 51:24
**involving** [6] - 16:5, 16:9, 32:1, 32:7, 52:25, 53:14
**Iran** [1] - 18:12
**issue** [14] - 10:7, 11:3, 13:12, 25:9, 30:12, 35:6, 35:7, 65:22, 72:6, 72:8, 72:16, 72:18, 74:16, 74:18
**issued** [1] - 28:2
**issues** [2] - 31:9, 74:9
**issuing** [1] - 18:1
**itself** [9] - 15:9,

15:13, 25:8, 39:14, 46:6, 51:6, 62:12, 64:6, 86:6

## J

**jail** [3] - 67:9, 73:25, 74:12
**January** [37] - 11:4, 24:19, 38:21, 42:7, 43:16, 49:4, 53:18, 53:25, 55:3, 60:16, 60:19, 60:23, 61:2, 61:22, 62:7, 62:21, 63:6, 63:12, 63:15, 63:22, 64:9, 64:22, 64:25, 65:5, 65:12, 67:17, 69:16, 73:11, 76:18, 79:13, 80:1, 80:9, 80:15, 82:2, 87:5, 87:17, 87:20
**jeopardized** [1] - 17:9
**Jersey** [2] - 91:8, 91:9
**Jewish** [1] - 82:5
**Jews** [2] - 80:24, 81:20
**job** [3] - 14:24, 39:21, 52:1
**John** [1] - 70:18
**join** [1] - 79:20
**joint** [2] - 29:15, 29:18
**jointly** [3] - 29:5, 29:7, 45:3
**jokingly** [1] - 81:5
**Jonathan** [1] - 3:14
**JONATHAN** [1] - 1:21
**Jorge** [1] - 3:9
**judge** [9] - 17:17, 18:4, 21:3, 24:6, 47:20, 48:14, 49:14, 53:22, 54:21
**Judge** [30] - 3:12, 12:18, 15:7, 15:8, 19:10, 20:4, 20:5, 20:6, 20:9, 20:10, 20:18, 21:6, 22:8, 22:14, 23:14, 24:7, 24:17, 25:5, 25:20, 29:13, 41:7, 52:2, 69:22, 75:6, 75:23, 76:6, 76:13, 78:13, 92:1
**JUDGE** [1] - 1:11
**Judge's** [1] - 20:2
**judges** [3] - 13:14,

17:1, 38:6
**judgment** [3] - 19:13, 88:5, 90:2
**judicial** [9] - 17:25, 18:6, 19:18, 19:19, 32:10, 32:14, 39:25, 51:14, 55:2
**June** [1] - 73:11
**juries** [1] - 40:16
**juror** [1] - 54:14
**jury** [13] - 3:21, 4:20, 54:17, 60:12, 62:10, 62:11, 62:12, 62:16, 64:12, 66:20, 80:5, 84:12
**justice** [94] - 4:8, 8:5, 8:8, 8:12, 10:13, 11:1, 12:4, 12:17, 13:15, 13:20, 13:23, 14:1, 14:3, 14:7, 14:8, 14:10, 14:13, 14:17, 14:19, 14:25, 15:1, 15:10, 15:21, 16:6, 16:9, 17:15, 17:22, 17:25, 18:11, 18:22, 19:17, 19:24, 20:12, 20:16, 20:23, 20:25, 21:7, 21:8, 21:20, 21:22, 22:3, 22:6, 22:12, 22:16, 23:10, 23:11, 23:15, 24:18, 25:2, 28:18, 32:2, 32:8, 33:4, 33:5, 33:7, 33:12, 33:14, 33:24, 34:10, 34:12, 34:18, 34:24, 35:11, 36:23, 37:5, 37:8, 38:8, 38:13, 40:20, 47:21, 47:23, 48:6, 50:15, 50:23, 51:3, 51:17, 51:24, 51:25, 52:4, 52:7, 52:10, 52:14, 52:25, 53:4, 53:14, 54:13, 55:1, 55:12, 55:19, 71:23, 74:25, 85:13, 86:2, 86:10
**Justices** [1] - 12:19
**justification** [1] - 54:9
**justify** [2] - 27:10, 82:2

## K

**KAREN** [1] - 1:14
**Karen** [1] - 3:8
**KATHRYN** [1] - 1:14
**Kathryn** [1] - 3:6
**keep** [5] - 5:2, 22:24, 41:12, 62:6, 70:14

**KELLEY** [1] - 48:4
**Kelley** [2] - 19:20, 48:4
**key** [2] - 33:19, 34:2
**kicked** [3] - 31:1, 31:2, 46:12
**kidding** [1] - 65:8
**kill** [1] - 75:1
**kind** [18] - 11:14, 14:12, 14:20, 17:5, 17:14, 19:20, 20:14, 23:7, 39:8, 39:9, 39:11, 49:7, 51:13, 54:13, 66:11, 66:12, 78:9, 78:16
**knowingly** [1] - 84:19
**knowledge** [1] - 84:15
**known** [1] - 76:2

**L**

**lack** [1] - 84:5
**lacked** [1] - 77:6
**Lacrosse** [1] - 49:20
**laid** [1] - 42:2
**language** [2] - 37:21, 86:2
**larger** [1] - 24:9
**lark** [1] - 81:6
**lash** [1] - 82:16
**last** [7] - 5:17, 5:19, 25:4, 75:14, 78:6, 82:5, 83:11
**latter** [1] - 19:10
**launch** [1] - 72:25
**law** [62] - 5:7, 12:7, 12:13, 12:14, 13:16, 17:4, 24:13, 27:7, 29:14, 34:22, 40:9, 42:16, 42:23, 44:2, 44:24, 45:1, 46:20, 46:21, 47:11, 47:16, 48:20, 48:24, 49:5, 49:8, 49:19, 51:14, 51:24, 52:1, 54:21, 59:18, 60:12, 61:4, 61:5, 61:12, 61:18, 62:5, 62:6, 62:20, 63:6, 63:11, 64:4, 64:14, 64:15, 64:18, 65:24, 66:3, 68:24, 70:16, 70:20, 70:23, 71:3, 71:4, 71:18, 71:24, 71:25, 72:11, 76:23, 77:10, 85:16, 86:16
**Law** [7] - 14:14,

16:12, 20:20, 21:24, 22:4, 50:22, 52:12
**lawful** [1] - 85:2
**laws** [2] - 11:20, 41:5
**lawyer** [2] - 11:19, 12:12
**lawyers** [6] - 12:4, 12:17, 13:13, 14:21, 22:10, 52:13
**lays** [1] - 7:15
**lead** [2] - 32:20, 69:10
**leading** [1] - 42:23
**leads** [2] - 34:5, 35:12
**learn** [1] - 72:24
**least** [9] - 23:13, 33:11, 33:19, 42:7, 62:19, 64:13, 65:11, 74:13, 81:16
**leave** [2] - 31:2, 46:21
**left** [1] - 19:6
**legal** [10] - 9:25, 11:24, 18:5, 19:13, 21:21, 31:9, 31:21, 51:4, 54:20, 74:18
**legislation** [1] - 51:20
**legislature** [1] - 23:23
**length** [2] - 45:16, 53:2
**lenity** [4] - 25:12, 25:18, 37:25, 55:15
**less** [5] - 15:12, 41:22, 82:9, 82:10, 89:11
**letter** [3] - 4:6, 40:7, 76:1
**level** [24] - 7:20, 7:21, 7:23, 7:25, 8:5, 8:10, 8:15, 8:16, 8:21, 9:6, 9:8, 9:10, 9:12, 17:3, 55:22, 58:5, 58:6, 68:2, 68:4, 69:19, 85:8, 86:1, 87:12
**levels** [3] - 58:6, 69:11, 85:23
**liability** [3] - 26:15, 29:16, 29:17
**liberty** [1] - 72:10
**lie** [2] - 84:7, 84:15
**lied** [4] - 18:23, 62:16, 62:17, 63:8
**life** [9] - 23:3, 60:9, 74:14, 75:21, 77:21, 83:8, 83:10, 87:23, 88:3

**light** [2] - 5:18, 79:9
**lightly** [1] - 64:23
**likelihood** [2] - 66:1, 68:3
**likely** [2] - 23:8, 53:23
**limit** [2] - 63:1, 87:24
**limited** [3] - 66:20, 66:22, 66:23
**line** [5] - 10:22, 45:23, 45:25, 67:5, 67:7
**LISA** [2] - 2:1, 93:3
**Lisa** [1] - 93:12
**list** [2] - 40:1, 60:13
**listed** [1] - 58:24
**listening** [1] - 65:6
**lists** [1] - 54:12
**literature** [1] - 73:1
**live** [2] - 78:6, 78:10
**lives** [4] - 62:19, 64:4, 64:5, 73:17
**LLC** [1] - 1:22
**local** [2] - 54:18, 88:20
**Locke** [1] - 70:18
**locked** [1] - 46:12
**logical** [1] - 42:24
**look** [13] - 12:1, 12:10, 12:16, 13:6, 15:14, 21:10, 22:23, 23:21, 24:15, 29:14, 36:20, 37:14, 40:19
**looked** [1] - 55:1
**looking** [10] - 21:22, 22:2, 23:1, 23:3, 28:6, 34:19, 39:2, 41:2, 46:9
**looks** [4] - 13:11, 15:22, 44:14, 48:3
**lost** [1] - 83:10
**LOUIS** [1] - 1:6
**love** [1] - 11:1
**lower** [2] - 45:20, 69:12
**luck** [1] - 92:6
**Lustig** [3] - 3:19, 7:13, 91:11
**LUSTIG** [1] - 1:24

**M**

**ma'am** [3] - 4:22, 47:18, 71:9
**magnitude** [4] - 32:11, 39:5, 41:17, 63:14
**maintain** [2] - 9:13, 51:4

**maintains** [1] - 68:23
**maintenance** [2] - 22:19, 50:23
**major** [1] - 72:11
**makers** [1] - 11:22
**man** [2] - 87:22, 88:1
**mandatory** [5] - 56:15, 56:20, 56:25, 57:23, 88:19
**manner** [1] - 20:9
**manual** [1] - 7:22
**maraud** [1] - 79:17
**marshaling** [1] - 42:15
**massive** [1] - 76:25
**materials** [1] - 4:11
**matter** [4] - 5:5, 17:4, 45:10, 72:23
**matters** [4] - 61:18, 63:18, 67:25, 68:1
**Matthew** [1] - 43:1
**maximum** [9] - 8:24, 56:3, 56:7, 56:11, 56:14, 56:18, 56:24, 89:25, 91:15
**McFADDEN** [1] - 1:10
**mean** [17] - 12:11, 17:12, 18:14, 20:2, 21:9, 23:16, 24:2, 30:18, 33:1, 33:4, 34:15, 35:12, 38:23, 39:6, 39:19, 40:12, 42:23
**meaning** [17] - 11:6, 11:9, 11:13, 12:21, 12:23, 13:5, 19:18, 21:4, 22:4, 23:4, 23:6, 23:22, 24:20, 25:14, 34:4, 35:15, 57:20
**meaningful** [2] - 64:19, 70:24
**meanings** [2] - 21:7, 24:11
**means** [10] - 13:4, 19:24, 20:16, 22:20, 29:15, 34:15, 35:11, 50:24, 64:8, 87:18
**meant** [4] - 20:15, 22:10, 37:8, 48:25
**measure** [2] - 32:11, 41:16, 48:1
**measures** [1] - 39:4
**meat** [1] - 49:18
**meat-and-potatoes** [1] - 49:18
**mechanical** [1] - 5:2
**meddle** [1] - 10:6
**member** [1] - 28:25
**members** [5] - 64:5,

75:4, 77:1, 77:2, 82:10
**memo** [4] - 14:25, 15:22, 42:3, 65:18
**memoranda** [2] - 4:4, 18:18
**memorandum** [13] - 4:7, 6:1, 6:2, 43:5, 65:18, 66:16, 67:1, 67:24, 69:4, 69:8, 69:15, 86:21
**men's** [2] - 13:1, 13:2
**mentioned** [3] - 41:7, 62:9, 62:12
**mentions** [1] - 86:10
**mercy** [1] - 79:3
**merely** [1] - 17:2
**merges** [1] - 29:24
**met** [2] - 8:14, 54:6
**meter** [1] - 48:1
**metes** [1] - 51:25
**method** [3] - 13:11, 15:24, 24:2
**methods** [1] - 50:19
**Metro** [2] - 77:2, 78:19
**might** [7] - 11:12, 11:19, 47:25, 48:1, 52:9, 74:21, 78:19
**militaristic** [1] - 42:9
**military** [3] - 82:24, 83:2, 83:4
**millennia** [1] - 82:6
**mind** [4] - 5:2, 42:8, 73:15, 90:23
**mind-numbing** [1] - 73:15
**mindful** [1] - 69:17
**minimizing** [1] - 65:18
**minorities** [2] - 80:24, 81:16
**minute** [2] - 10:22, 50:7
**minutes** [1] - 45:23
**mischarged** [1] - 30:6
**misdemeanants** [3] - 30:7, 30:23, 30:25
**misremembering** [1] - 14:20
**mistake** [3] - 39:20, 39:22, 91:18
**mistaken** [1] - 22:14
**mitigate** [1] - 76:9
**mob** [6] - 28:25, 29:23, 42:15, 45:22, 61:25, 79:15
**modifies** [1] - 14:7
**moment** [1] - 45:2

**money** [2] - 13:2, 13:3
**Montgomery** [1] - 52:3
**month** [3] - 50:5, 75:8, 89:11
**months** [12] - 8:23, 8:24, 49:21, 56:12, 74:23, 84:1, 88:7, 88:8, 91:14, 91:16, 91:19
**months'** [6] - 59:1, 59:2, 59:4, 59:5, 88:6
**morning** [11] - 3:6, 3:11, 3:12, 3:16, 3:17, 3:18, 3:19, 31:17, 31:18, 76:13, 76:14
**Moss** [6] - 15:8, 20:10, 21:6, 25:5, 52:2, 69:22
**Moss's** [1] - 75:6
**most** [11] - 16:17, 16:19, 47:23, 50:4, 60:18, 61:4, 61:5, 68:6, 77:15, 83:25, 84:5
**Mostofsky** [1] - 50:2
**motion** [5] - 11:18, 17:18, 19:13, 19:24, 38:7
**motion-to-dismiss** [2] - 11:18, 38:7
**motivation** [4] - 66:11, 81:23, 84:4, 87:4
**motive** [1] - 66:17
**moustache** [1] - 81:10
**moving** [1] - 45:21
**MR** [47] - 3:12, 4:24, 6:11, 6:14, 6:19, 9:24, 10:4, 11:2, 13:21, 13:24, 14:4, 14:16, 14:23, 15:7, 16:13, 17:17, 18:14, 19:3, 19:10, 20:6, 21:3, 21:15, 22:7, 22:23, 25:4, 25:20, 25:24, 26:6, 26:9, 27:3, 27:13, 28:9, 29:13, 30:3, 30:20, 31:6, 31:13, 31:15, 47:20, 50:1, 58:17, 71:13, 72:20, 91:4, 91:8, 92:1, 92:5
**MS** [30] - 3:6, 4:13, 6:6, 9:5, 9:18, 31:17, 31:19, 33:13, 34:11, 35:19, 36:9, 38:14, 39:22, 40:22, 41:21,
42:1, 45:13, 45:15, 45:17, 58:3, 60:8, 66:13, 68:17, 69:24, 90:16, 90:19, 90:23, 91:1, 91:23, 92:2
**multiple** [3] - 47:13, 57:9, 86:16
**multiple-hour** [1] - 86:16
**must** [13] - 53:8, 57:13, 59:12, 59:23, 84:10, 88:18, 88:19, 88:20, 88:22, 88:23, 89:10, 90:1

# N

**name** [3] - 25:11, 44:17, 74:22
**narrower** [3] - 15:2, 22:3, 52:14
**nation** [1] - 82:8
**national** [4] - 63:16, 63:17, 63:18, 79:14
**nature** [4] - 42:9, 59:23, 64:20, 79:11
**Naval** [1] - 3:9
**Navy** [1] - 81:8
**nearly** [1] - 43:14
**necessarily** [2] - 16:25, 34:15
**necessary** [2] - 59:15, 87:20
**need** [9] - 39:17, 42:13, 59:16, 59:25, 60:1, 63:10, 64:17, 67:12, 86:19
**needed** [2] - 51:14, 74:9
**needs** [4] - 40:22, 61:19, 65:25, 72:24
**never** [9] - 9:17, 28:19, 52:6, 60:18, 75:18, 78:1, 78:6, 80:3, 80:4
**nevertheless** [1] - 73:7
**new** [5] - 61:20, 65:13, 71:1, 90:5
**New** [1] - 1:20, 91:8, 91:9
**next** [5] - 17:2, 37:16, 57:11, 80:8, 84:17
**NICHOLAS** [1] - 1:18
**Nick** [1] - 3:12
**none** [2] - 49:12, 71:7
**nonetheless** [1] -
81:24
**nonjudicial** [1] -
32:15
**normal** [2] - 52:15, 75:24
**normalize** [1] - 82:1
**North** [3] - 1:22, 18:17, 18:21
**northwest** [2] -
45:24, 46:1
**Northwest** [3] - 1:16, 2:3, 93:14
**notably** [1] - 38:15
**note** [3] - 54:11, 66:25, 78:22
**noted** [3] - 6:14, 50:20, 90:14
**notes** [1] - 93:5
**nothing** [7] - 16:20, 17:7, 32:9, 36:6, 39:24, 64:6, 92:2
**notify** [1] - 89:16
**noting** [1] - 82:4
**notion** [1] - 55:2
**novel** [1] - 71:25
**number** [6] - 12:8, 35:1, 35:23, 36:3, 36:7, 43:7
**numbers** [1] - 4:16
**numbing** [1] - 73:15
**numerous** [4] - 33:6, 54:12, 80:23, 81:8, 85:16, 86:16

# O

**oath** [6] - 8:13, 62:17, 62:20, 62:24, 63:8, 67:20
**oaths** [3] - 62:18, 62:21, 62:22
**obfuscating** [1] -
65:19
**objected** [1] - 9:5
**objecting** [1] - 17:11
**objection** [11] - 6:4, 6:12, 9:13, 10:9, 10:10, 58:10, 58:11, 90:16, 91:21, 91:23
**objections** [8] - 5:10, 5:11, 6:14, 9:3, 9:25, 58:15, 90:13, 91:4
**objects** [1] - 50:12
**obligation** [2] -
89:11, 89:17
**obligations** [1] - 89:8
**obliterated** [2] -
36:3, 36:7
**obliteration** [1] -
35:22
**obstruct** [8] - 8:4, 40:8, 54:21, 55:18, 64:11, 80:6, 81:17, 85:13
**obstructed** [2] -
8:12, 50:15
**obstructing** [4] -
54:15, 54:17, 54:18, 84:20
**obstruction** [26] -
3:22, 7:24, 8:14, 11:20, 16:4, 18:25, 19:5, 20:17, 32:12, 34:7, 34:20, 38:16, 39:5, 40:3, 41:15, 41:17, 55:1, 56:2, 56:13, 57:2, 60:16, 74:25, 83:19, 83:25, 85:4, 87:17
**obstructs** [3] -
32:14, 32:16, 40:7
**obvious** [1] - 84:19
**obviously** [1] - 21:9
**occasions** [1] - 35:3
**occurred** [3] - 29:9, 38:21, 83:4
**occurring** [2] - 80:6, 80:13
**OF** [4] - 1:1, 1:3, 1:10, 1:15
**offend** [1] - 81:25
**offense** [42] - 5:21, 7:20, 7:21, 7:24, 8:2, 8:7, 8:16, 8:21, 9:6, 9:8, 9:10, 9:12, 17:3, 17:11, 19:15, 26:13, 26:14, 26:17, 26:19, 29:10, 29:11, 29:12, 31:22, 34:7, 35:5, 35:6, 36:22, 36:24, 37:19, 58:5, 58:6, 58:13, 59:17, 59:19, 59:24, 64:21, 68:22, 69:11, 79:12, 88:20, 90:8
**offenses** [14] - 8:25, 9:20, 16:5, 16:9, 30:10, 30:15, 32:1, 32:7, 32:22, 34:20, 49:16, 54:12, 57:7, 69:11
**Office** [2] - 89:6, 89:20
**office** [14] - 3:10, 4:4, 5:24, 8:1, 8:17, 58:22, 58:25, 59:4, 59:7, 59:10, 85:6, 87:1, 88:16, 89:18
**OFFICE** [1] - 1:15
**Office's** [1] - 9:19
**office's** [3] - 7:3, 7:16, 87:12
**officer** [9] - 27:14, 43:4, 44:24, 54:15, 54:22, 64:7, 79:23, 79:25, 80:15
**Officer** [19] - 3:19, 7:13, 43:1, 43:5, 43:18, 44:4, 44:10, 44:15, 44:19, 44:22, 46:19, 63:25, 78:25, 79:25, 84:22, 84:23, 85:19, 87:9, 89:7
**OFFICER** [1] - 91:12
**officers** [5] - 32:10, 43:18, 44:5, 44:8, 49:19
**officers'** [2] - 31:2, 43:12
**offices** [1] - 30:25
**Official** [1] - 2:1
**official** [27] - 3:22, 7:24, 16:4, 18:25, 19:5, 19:6, 19:16, 21:1, 32:16, 33:10, 38:3, 38:9, 38:16, 52:24, 53:13, 53:20, 53:24, 55:4, 56:2, 56:13, 57:2, 64:12, 83:20, 86:5, 86:10, 93:12
**often** [1] - 11:3
**oftentimes** [1] - 35:3
**Ohio** [1] - 50:2
**old** [1] - 82:22
**Oliver** [1] - 18:17
**omissions** [1] - 29:6
**once** [1] - 79:19
**one** [49] - 7:21, 11:3, 11:4, 12:1, 12:2, 12:9, 15:7, 15:12, 16:14, 16:19, 16:23, 17:20, 20:14, 20:19, 21:7, 25:4, 25:5, 30:11, 32:3, 33:9, 34:3, 34:9, 34:12, 35:16, 37:8, 48:9, 50:1, 50:3, 53:12, 56:8, 57:6, 57:12, 57:13, 58:4, 63:14, 63:22, 65:6, 68:5, 69:25, 72:13, 74:13, 74:21, 75:7, 78:4, 80:8, 80:20, 82:13, 88:22
**one's** [1] - 76:3
**ones** [2] - 19:19, 27:24
**ongoing** [3] - 44:25, 46:23, 66:25

**open** [2] - 24:15, 77:14

**opening** [2] - 25:8, 72:12

**operating** [3] - 58:1, 58:18, 77:9

**operation** - 55:2

**opportunity** [4] - 10:1, 31:8, 76:15, 79:2

**opposed** [1] - 9:9

**opposite** [2] - 13:8, 25:17

**oppression** [1] - 82:6

**order** [8] - 8:4, 36:14, 43:13, 63:20, 65:14, 81:19, 86:20, 89:21

**ordered** [1] - 89:2

**ordinariness** [1] - 61:8

**ordinary** [3] - 11:8, 61:6, 61:11

**otherwise** [5] - 17:6, 28:11, 60:7, 71:12, 81:7

**outcome** [2] - 27:24, 35:13

**outside** [5] - 22:11, 23:10, 23:15, 46:6, 79:21

**outstanding** [1] - 5:10

**overarching** [1] - 15:9

**overly** [1] - 85:7

**overruling** [1] - 58:11

**overwhelming** [1] - 80:16

**owe** [4] - 76:25, 78:25

**owed** [1] - 89:11

**own** [13] - 41:22, 42:2, 42:4, 42:8, 45:6, 47:1, 47:3, 47:10, 70:6, 70:15, 74:15, 84:9

---

**P**

---

**p.m** [1] - 45:19

**Page** [3] - 6:16, 52:5, 53:6

**Pages** [1] - 53:10

**paid** [1] - 89:17

**papers** [2] - 7:4, 91:5

**parading** [3] - 3:25, 56:10, 56:23

**paralegal** [1] - 3:10

**parse** [1] - 66:16

**Part** [3] - 15:8, 16:4, 31:25

**part** [18] - 5:19, 14:6, 22:6, 28:17, 31:24, 33:19, 35:14, 35:15, 43:11, 45:9, 46:20, 60:24, 62:19, 68:7, 72:11, 81:16, 81:23, 90:20

**partially** [1] - 69:5

**participate** [1] - 82:10

**participated** [1] - 79:13

**participation** [1] - 63:22

**particular** [5] - 48:6, 58:21, 79:8, 84:12, 85:8

**particularly** [4] - 10:12, 79:24, 81:14, 83:8

**parties** [4] - 4:7, 11:14, 50:11, 58:21

**parties'** [1] - 10:12

**parts** [2] - 16:14, 72:9

**passes** [1] - 51:20

**pause** [1] - 53:3

**pay** [1] - 89:10

**payable** [1] - 89:12

**payment** [1] - 89:7

**PD** [1] - 77:2

**peaceful** [4] - 41:10, 60:11, 63:7, 80:7

**pedestrian** [1] - 61:6

**penalties** [1] - 55:25

**pending** [2] - 34:22, 40:9

**Pennsylvania** [1] - 1:23

**people** [22] - 10:23, 12:17, 18:16, 23:9, 26:24, 27:9, 28:12, 30:4, 30:6, 30:13, 42:13, 43:10, 47:2, 47:4, 73:12, 73:16, 80:22, 81:21, 81:22, 82:5, 83:9

**per** [4] - 56:18, 56:21, 56:25, 57:1

**perform** [1] - 78:19

**performance** [2] - 74:4, 74:10

**perhaps** [6] - 14:24, 16:10, 28:15, 46:17, 52:17, 66:3

**period** [1] - 89:24

**permission** [1] - 90:10

**permutations** [1] - 10:25

**person** [5] - 8:4, 23:18, 28:12, 44:25, 88:16

**person's** [1] - 68:2

**personal** [5] - 46:23, 68:2, 72:23, 78:21, 81:6

**personality** [2] - 73:17, 75:20

**personally** [2] - 26:4, 64:8

**perspective** [1] - 47:8

**persuaded** [1] - 41:22

**petty** [2] - 8:25, 57:7

**philosopher** [1] - 70:19

**philosophers** [1] - 70:18

**photo** [1] - 81:6

**phrase** [14] - 12:6, 13:17, 13:24, 14:6, 14:8, 18:10, 22:9, 23:14, 37:8, 50:16, 50:18, 51:2, 53:1

**phrases** [3] - 23:25, 24:21, 48:16

**physical** [7] - 8:3, 22:20, 25:25, 27:6, 32:17, 37:11, 50:24

**physically** [1] - 46:21

**picked** [1] - 15:8

**picketing** [3] - 4:1, 56:10, 56:23

**picking** [1] - 45:20

**pieces** [1] - 73:1

**Pinkerton** [2] - 26:15, 29:16

**pitied** [1] - 73:21

**pity** [1] - 78:13

**place** [4] - 38:21, 55:8, 63:12, 70:2

**placement** [2] - 91:6, 91:22

**placing** [1] - 8:19

**plain** [11] - 11:5, 12:21, 12:23, 21:4, 23:4, 23:6, 24:20, 25:12, 25:13, 34:4, 35:15

**Plaintiff** [1] - 1:4

**play** [4] - 21:7, 21:8, 21:11, 52:18

**played** [1] - 11:16

**playing** [1] - 21:10

**plays** [1] - 61:4

**plea** [2] - 84:6, 90:7

**pledge** [1] - 77:25

**PLLC** [1] - 1:19

**plus** [3] - 42:5, 45:6, 47:9

**podium** [2] - 6:21, 79:6

**Poindexter** [2] - 18:17, 18:21

**point** [36] - 6:18, 10:3, 10:13, 10:18, 12:20, 13:9, 20:11, 20:14, 20:18, 21:4, 24:7, 24:17, 24:24, 25:4, 25:19, 27:21, 28:14, 28:24, 29:4, 29:25, 30:11, 32:19, 34:17, 44:19, 52:2, 52:22, 58:21, 65:16, 68:16, 69:19, 69:23, 70:13, 70:14, 71:20, 75:14, 78:12

**pointed** [4] - 23:14, 31:25, 48:6, 83:19

**pointing** [1] - 21:24

**points** [17] - 8:19, 15:7, 16:24, 17:11, 17:20, 20:7, 23:5, 26:3, 31:7, 37:22, 41:19, 45:7, 47:13, 47:21, 48:11, 70:4, 70:5

**Police** [4] - 77:2, 78:19, 78:22, 80:15

**police** [5] - 45:23, 50:3, 78:24, 79:16, 79:25

**policeman** [1] - 84:22

**policy** [2] - 20:14, 59:22

**political** [2] - 22:19, 50:23

**pops** [1] - 11:3

**posed** [6] - 47:11, 63:6, 64:4, 66:7, 68:24, 80:25

**poses** [1] - 70:15

**posing** [1] - 66:4

**position** [16] - 9:19, 10:5, 15:5, 16:21, 17:9, 25:16, 25:25, 30:21, 34:2, 47:9, 63:19, 67:4, 68:12, 70:6, 70:10, 71:23

**positions** [1] - 19:23

**possess** [1] - 88:20

**possession** [2] - 35:21, 43:10

**plays** [1] - 61:4

**possibility** [1] - 51:17

**possible** [3] - 14:2, 18:18, 85:18

**post** [1] - 19:23

**post-trial** [1] - 19:23

**potatoes** [1] - 49:18

**potential** [1] - 75:23

**potentially** [2] - 9:18, 29:16

**power** [8] - 17:24, 41:10, 48:7, 51:22, 52:18, 60:11, 63:7, 80:8

**powerfully** [1] - 64:2

**powers** [1] - 51:20

**precisely** [1] - 51:17

**preclude** [3] - 54:8, 77:8

**predicting** [1] - 75:24

**prelude** [1] - 62:3

**preparation** [1] - 29:10

**prepared** [1] - 45:5

**prerogative** [1] - 70:14

**presence** [7] - 27:1, 27:6, 27:7, 27:19, 48:21, 49:12, 85:18

**present** [4] - 30:5, 47:16, 73:2, 76:9

**presented** [2] - 4:19, 4:20

**presentence** [13] - 4:2, 5:9, 5:23, 6:5, 6:9, 6:15, 7:4, 7:10, 7:15, 7:19, 59:11, 89:18

**presenting** [1] - 67:8

**president** [2] - 51:9, 80:8

**presidential** [1] - 60:25

**pretrial** [4] - 66:19, 66:21, 73:6, 73:9

**pretty** [5] - 38:6, 45:22, 52:12, 70:14, 73:19

**previously** [3] - 4:10, 44:18, 46:12

**pride** [1] - 76:24

**primarily** [3] - 10:25, 11:6, 85:12

**primary** [1] - 68:13

**principles** [1] - 54:3

**priorities** [1] - 43:13

**prison** [4] - 56:7, 56:11, 73:13

**prisoner** [1] - 74:6

**private** [1] - 81:5
**probation** [23] - 4:4,
5:24, 7:3, 7:15, 8:1,
8:17, 56:1, 57:11,
57:12, 57:14, 57:18,
57:21, 58:22, 58:25,
59:4, 59:7, 59:10,
85:6, 86:25, 87:12,
88:16, 89:9, 89:18
**PROBATION** [2] -
1:24, 91:12
**Probation** [1] - 89:20
**probationary** [1] -
31:4
**problem** [3] - 15:12,
16:2, 31:24
**proceed** [2] - 5:1,
39:18
**proceeded** [3] -
75:10, 77:5, 79:17
**proceeding** [45] -
3:22, 5:5, 7:24, 11:17,
11:21, 11:22, 16:4,
18:6, 18:25, 19:5,
19:7, 19:16, 21:2,
24:12, 27:25, 32:14,
32:15, 32:16, 34:22,
38:3, 38:9, 38:17,
40:10, 40:19, 51:14,
52:24, 53:13, 53:20,
53:24, 54:16, 54:24,
55:5, 56:3, 56:14,
57:3, 60:17, 60:18,
60:21, 62:15, 64:12,
86:5, 86:7, 86:11
**proceedings** [18] -
14:11, 17:23, 17:25,
18:9, 18:11, 19:19,
28:2, 33:10, 39:25,
40:3, 50:9, 52:15,
52:25, 53:14, 72:9,
83:20, 93:6
**Proceedings** [1] -
92:8
**process** [10] - 40:21,
54:20, 60:11, 62:9,
80:6, 80:11, 81:17,
84:16, 84:20, 86:6
**produced** [1] - 93:6
**produces** [2] - 7:21,
7:23
**professionalism** [1]
- 78:23
**projectiles** [1] - 43:8
**prominent** [1] - 50:4
**promise** [1] - 78:5
**promote** [4] - 59:18,
59:21, 63:10, 64:17
**pronouncement** [1] -
51:8

**proper** [3] - 34:21,
40:9, 41:9
**properly** [2] - 14:11,
30:8
**property** [12] - 26:1,
26:25, 32:18, 37:11,
42:17, 46:15, 47:16,
54:22, 70:16, 76:22,
85:11, 85:16
**proposed** [2] - 69:1,
83:21
**proposing** [1] -
23:19
**prosectors** [1] - 22:9
**prosecutor** [1] -
11:19
**prosecutors** [2] -
12:12, 13:13
**protect** [2] - 43:22,
59:20, 62:22
**protected** [1] - 67:6
**protecting** [1] - 73:7
**protection** [1] -
61:15
**protections** [1] -
63:2
**proud** [1] - 73:14
**prove** [2] - 28:21,
54:5
**proves** [1] - 12:5
**provide** [8] - 10:16,
59:18, 78:17, 79:10,
81:19, 82:18, 82:20,
83:2
**provided** [2] - 45:22,
80:23
**provides** [1] - 7:23
**providing** [1] - 54:23
**provision** [4] - 16:15,
16:16, 16:17, 85:21
**provisions** [3] -
15:14, 15:18, 32:23
**provocative** [1] -
81:21
**prudent** [1] - 54:6
**PSR's** [2] - 9:6, 9:9
**psychological** [1] -
73:16
**public** [5] - 59:20,
62:20, 67:10, 77:18,
80:18
**pull** [3] - 18:18,
79:24, 84:23
**pulled** [1] - 49:20
**punched** [1] - 49:19
**punish** [2] - 36:3,
51:23
**punished** [2] - 28:23,
83:1
**punishment** [8] -

28:20, 51:18, 59:18,
73:4, 73:6, 85:22,
87:6, 87:9
**purpose** [4] - 13:5,
42:22, 66:22, 66:23
**purposes** [5] - 7:11,
59:15, 59:16, 68:5,
86:11
**pursuant** [3] - 17:23,
89:23, 90:12
**put** [7] - 11:23, 43:4,
43:21, 43:23, 52:23,
61:20, 70:23
**putting** [1] - 21:23

### Q

**quality** [1] - 83:10
**quantity** [1] - 90:24
**quasi** [2] - 41:1
**quasi-adjudicative**
[1] - 41:1
**quasi-investigative**
[1] - 41:1
**questions** [4] - 47:6,
70:17, 90:17, 91:3
**quickly** [3] - 17:21,
41:25, 42:1
**quite** [5] - 36:10,
53:23, 60:22, 66:13,
69:2
**quote** [7] - 12:25,
51:1, 52:3, 52:4, 53:8,
74:8, 74:10
**quoting** [1] - 70:18

### R

**R-O-S-E-M-O-N-D**
[1] - 26:11
**racial** [1] - 81:15
**racist** [4] - 82:1,
83:3, 84:3, 87:3
**rack** [1] - 45:21
**raised** [2] - 72:2,
72:3
**raises** [1] - 55:16
**range** [9] - 7:16,
8:22, 9:2, 41:3, 55:22,
57:19, 68:19, 69:2,
85:6
**ranges** [1] - 60:1
**rate** [1] - 89:11
**rather** [1] - 24:22
**rating** [1] - 74:4
**Raymond** [1] - 63:25
**RDR** [3] - 2:1, 93:3,
93:12

**reached** [1] - 58:5
**read** [4] - 6:9, 22:18,
40:5, 65:9
**reading** [1] - 34:4
**real** [5] - 48:10,
49:17, 66:5, 81:25,
83:17
**real-world** [1] - 81:25
**realizing** [1] - 85:1
**really** [13] - 12:20,
14:9, 17:20, 39:7,
39:9, 39:10, 48:16,
48:18, 65:6, 71:18,
75:18, 76:4
**reason** [8] - 24:6,
63:16, 63:17, 67:16,
73:22, 76:4, 82:21,
83:2
**reasonable** [1] -
64:13
**reasonably** [1] - 29:8
**reasoning** [1] - 86:8
**reasons** [4] - 36:2,
55:17, 78:4, 86:20
**recalled** [1] - 81:1
**receive** [2] - 73:8,
83:6
**received** [2] - 4:2,
90:6
**recent** [1] - 4:7
**recently** [1] - 36:1
**recess** [1] - 50:8
**recognition** [1] -
83:17
**recognize** [2] -
81:21, 83:8
**recollection** [1] -
22:1
**recommendation** [8]
- 4:3, 5:25, 59:9, 60:7,
71:12, 83:24, 91:22,
91:24
**recommendations**
[1] - 70:1
**recommended** [6] -
5:12, 58:22, 58:25,
85:6, 85:23, 88:24
**recommends** [2] -
59:4, 59:7
**record** [5] - 3:5, 9:14,
58:4, 79:10, 90:15
**recording** [1] - 4:17
**records** [2] - 54:16,
60:2
**recover** [1] - 37:1
**rectify** [1] - 78:17
**reduction** [2] -
69:19, 69:20
**redundancy** [1] -
14:12

**referenced** [2] -
33:22, 75:6
**referring** [4] - 29:18,
29:23, 74:22, 75:7
**refers** [1] - 15:10
**Reffitt** [3] - 74:22,
74:23, 84:1
**reflect** [3] - 59:17,
72:23, 77:23
**reflective** [2] - 67:24,
70:5
**reflects** [1] - 87:14
**refutation** [1] - 13:10
**regard** [2] - 58:1,
79:11
**regarding** [2] -
58:15, 68:20
**regardless** [1] - 86:1
**regret** [2] - 77:7, 78:4
**regrets** [1] - 72:21
**rehabilitation** [2] -
59:21, 68:6
**rehash** [1] - 11:18
**rejected** [1] - 53:2
**rejection** [2] - 71:22,
82:14
**relate** [1] - 54:13
**relation** [1] - 87:16
**release** [12] - 57:4,
57:6, 57:8, 57:10,
59:5, 88:10, 88:13,
88:15, 88:24, 89:18,
91:14
**released** [2] - 88:2,
88:17
**relevant** [12] - 11:10,
12:12, 12:16, 23:9,
59:12, 66:10, 66:17,
66:22, 66:23, 79:9,
81:14, 85:20
**relied** [2] - 70:7, 70:8
**religious** [1] - 81:16
**remain** [1] - 79:6
**remaining** [4] - 3:23,
8:25, 56:5, 56:16
**remarks** [3] - 77:13,
79:10, 81:23
**remember** [1] - 25:11
**remembered** [1] -
76:24
**remorse** [3] - 67:25,
83:12, 83:15
**removed** [1] - 40:21
**render** [1] - 87:1
**rendered** [1] - 87:17
**reoffend** [1] - 68:3
**repeat** [1] - 66:9
**repeating** [1] - 90:23
**repetitive** [1] - 22:25
**report** [14] - 4:3, 5:9,

5:23, 6:5, 6:10, 6:15, 7:4, 7:10, 7:15, 7:19, 59:11, 88:16, 89:19
**REPORTED** [1] - 2:1
**Reporter** [2] - 2:1, 93:12
**reporting** [1] - 67:10
**Representatives** [1] - 84:17
**represented** [3] - 63:8, 67:23, 73:24
**repugnant** [1] - 77:15
**request** [4] - 60:6, 71:11, 90:10, 91:6
**requested** [1] - 57:23
**require** [1] - 87:6
**required** [1] - 5:21
**requirement** [1] - 88:21
**requirements** [1] - 89:8
**requires** [2] - 5:17, 87:9
**researched** [1] - 14:9
**reserve** [1] - 48:15
**residence** [1] - 89:21
**resides** [1] - 84:14
**resisting** [2] - 44:21, 46:20
**resolve** [2] - 5:11, 6:17
**resolved** [1] - 84:6
**resources** [6] - 28:8, 34:1, 37:1, 43:14, 86:17, 86:18
**respect** [9] - 59:18, 62:8, 62:14, 63:10, 64:17, 71:3, 71:4, 71:7
**respected** [1] - 61:19
**responding** [1] - 62:5
**response** [9] - 16:14, 20:4, 22:7, 29:13, 34:11, 38:14, 47:20, 61:15, 81:22
**responsibility** [6] - 28:16, 28:17, 29:12, 69:20, 84:5, 84:19
**responsible** [11] - 26:4, 26:5, 26:17, 27:11, 27:16, 28:22, 29:1, 63:24, 81:16, 82:22, 86:14
**restaurant** [1] - 21:16
**restitution** [10] - 56:1, 57:15, 57:22, 57:24, 59:8, 86:19,

86:20, 89:2, 89:4, 90:22
**restricted** [6] - 3:23, 3:24, 56:6, 56:7, 56:17, 56:18
**result** [1] - 38:11
**resulted** [1] - 8:7
**resulting** [1] - 55:22
**results** [6] - 32:21, 33:22, 51:7, 51:15, 60:25, 85:7
**retaliation** [1] - 54:23
**retread** [2] - 17:20, 19:2
**retroactively** [1] - 72:1
**reviewed** [4] - 4:2, 4:6, 4:12, 5:9
**reviews** [1] - 74:5
**revolution** [1] - 80:17
**rights** [4] - 51:21, 62:11, 62:15, 71:5
**riot** [6] - 35:7, 37:1, 45:7, 45:8, 49:6, 70:22
**rioter** [11] - 26:21, 27:14, 43:25, 44:16, 44:20, 44:22, 64:3, 79:24, 79:25, 84:23, 85:1
**rioters** [16] - 27:1, 27:13, 42:12, 43:8, 43:9, 43:16, 44:5, 47:4, 47:15, 49:19, 50:4, 62:2, 80:16, 85:17, 86:14, 87:5
**risible** [1] - 84:15
**rising** [1] - 82:5
**risk** [1] - 48:10
**role** [1] - 61:4
**Room** [1] - 2:3
**room** [1] - 62:4
**roommate** [5] - 65:5, 67:17, 81:5, 81:18, 84:16
**Rosemond** [5] - 26:10, 27:4, 27:11, 29:21, 48:19
**round** [1] - 75:20
**route** [1] - 47:12
**rugby** [1] - 44:14
**Rukstales** [1] - 44:17
**rule** [23] - 21:6, 22:21, 25:12, 25:18, 37:24, 41:6, 41:7, 41:9, 51:1, 60:12, 61:4, 61:13, 61:18, 62:5, 63:6, 63:10, 64:14, 64:18, 66:3,

71:3, 71:17, 71:24, 72:11
**rules** [1] - 55:15
**ruling** [2] - 38:16, 66:21
**run** [5] - 57:10, 59:3, 59:6, 91:15, 91:20
**runs** [1] - 44:13

## S

**safe** [2] - 82:7, 82:9
**safety** [2] - 46:23, 47:16
**sanction** [3] - 22:21, 50:25, 51:8
**sat** [1] - 62:15
**satisfied** [2] - 6:23, 29:21
**satisfy** [5] - 27:8, 27:19, 27:20, 48:19, 48:21
**satisfying** [1] - 27:4
**saved** [1] - 53:21
**saw** [2] - 19:7, 80:1
**scale** [1] - 64:1
**scenario** [1] - 17:14
**Schwager** [1] - 60:20
**scope** [2] - 29:6, 77:21
**scrum** [1] - 44:14
**scuffle** [1] - 44:14
**seamen** [1] - 81:8
**seat** [1] - 7:7
**second** [5] - 5:12, 8:7, 11:7, 20:11, 84:4
**seconds** [1] - 46:7
**Section** [14] - 13:25, 15:15, 19:15, 21:10, 22:12, 23:11, 23:16, 30:9, 47:24, 48:2, 48:4, 49:4, 58:24, 75:11
**section** [4] - 7:23, 16:23, 32:4, 50:4
**sections** [1] - 47:25
**Sections** [1] - 48:8
**secured** [1] - 46:12
**security** [2] - 46:23, 63:18
**see** [14] - 11:19, 12:4, 20:5, 27:23, 44:7, 44:8, 44:10, 48:18, 53:11, 78:1, 80:3, 80:4, 81:24, 84:2
**seeking** [1] - 85:13
**seem** [1] - 5:1
**Seifert** [1] - 3:8

**SEIFERT** [1] - 1:14
**selectively** [1] - 73:2
**Senate** [4] - 45:18, 46:3, 46:5, 75:9
**senators'** [1] - 30:25
**sense** [7] - 9:7, 14:8, 22:10, 22:16, 51:21, 51:24, 77:22
**sentence** [38] - 5:13, 5:18, 5:20, 8:24, 10:6, 29:25, 30:12, 30:16, 50:5, 58:21, 58:23, 58:25, 59:14, 59:16, 59:19, 59:25, 60:1, 68:18, 74:1, 75:8, 75:13, 76:5, 76:10, 76:11, 83:16, 85:7, 86:22, 87:1, 87:14, 87:15, 87:16, 87:18, 88:4, 89:21, 89:24, 90:4, 90:14, 90:20
**sentenced** [6] - 18:17, 31:3, 74:17, 74:19, 74:23, 88:6
**sentences** [12] - 31:4, 49:17, 58:23, 60:3, 64:19, 68:21, 70:25, 83:21, 83:25, 87:17, 88:12, 88:13
**Sentencing** [1] - 69:8
**sentencing** [45] - 3:20, 4:3, 4:4, 4:25, 5:13, 5:16, 5:24, 6:1, 7:5, 7:12, 13:10, 14:24, 15:5, 15:9, 18:18, 33:14, 33:20, 34:25, 35:1, 36:17, 37:6, 38:24, 42:3, 43:5, 49:14, 50:16, 57:20, 58:19, 59:15, 60:7, 61:14, 65:18, 67:1, 67:23, 68:5, 68:6, 68:12, 69:1, 69:4, 69:7, 69:14, 69:15, 71:12, 81:13, 90:8
**SENTENCING** [1] - 1:10
**sentencings** [2] - 32:21, 70:1
**sentiments** [1] - 77:24
**separate** [1] - 20:19
**separation** [1] - 51:20
**September** [5] - 1:6, 5:23, 6:1, 6:2, 93:10
**serial** [3] - 35:22, 36:3, 36:7

**series** [1] - 12:2
**serious** [5] - 5:5, 44:2, 69:9, 70:23, 70:24
**seriousness** [2] - 59:17, 64:24
**servant** [1] - 80:18
**serve** [3] - 7:11, 88:2, 88:9
**served** [3] - 73:8, 88:12, 88:14
**Service** [1] - 3:9
**service** [5] - 43:25, 57:16, 62:20, 78:16, 82:25
**services** [1] - 6:24
**serving** [1] - 13:5
**set** [7] - 5:19, 6:4, 6:13, 59:13, 60:6, 71:11, 83:22
**sets** [2] - 64:23, 85:3
**setting** [1] - 74:18
**settled** [1] - 24:11
**several** [8] - 13:19, 13:22, 32:9, 32:21, 40:20, 61:24, 83:22, 87:19
**severe** [3] - 49:23, 83:16, 85:9
**sexist** [1] - 84:3
**shall** [7] - 57:10, 88:9, 88:15, 89:1, 89:4, 89:15, 89:18
**share** [1] - 58:21
**Shepard** [1] - 84:23
**Shephard** [13] - 43:1, 43:4, 43:5, 43:18, 44:4, 44:16, 44:20, 46:19, 79:1, 79:25, 84:22, 85:20, 87:9
**Shephard's** [2] - 44:10, 44:23
**shocking** [3] - 75:18, 80:18, 80:20
**short** [1] - 90:16
**shorthand** [3] - 17:15, 19:8, 23:7
**shot** [1] - 81:2
**show** [4] - 37:25, 73:22, 80:10, 80:21
**showed** [1] - 78:23
**showing** [2] - 30:22, 49:10
**shown** [1] - 81:15
**shows** [2] - 81:7
**sick** [1] - 17:18
**side** [1] - 61:9
**sights** [1] - 80:1
**significant** [7] - 15:12, 55:10, 73:19,

83:24, 85:15, 86:6, 87:18

**similar** [8] - 30:17, 30:19, 30:24, 52:2, 54:3, 60:2, 60:3, 66:4

**similarly** [4] - 4:20, 10:19, 83:5, 84:21

**simply** [3] - 35:11, 43:24, 53:17

**single** [4] - 28:12, 64:3, 69:24, 74:6

**sitting** [2] - 37:18, 67:20

**situation** [7] - 5:3, 27:2, 35:4, 43:24, 66:12, 79:22, 86:3

**situations** [1] - 72:13

**six** [4] - 49:21, 56:12, 59:2, 88:8

**skylight** [1] - 49:13

**slate** [1] - 81:19

**slightly** [1] - 26:16

**slip** [1] - 17:14

**small** [2] - 63:17, 68:1

**smaller** [2] - 64:1, 68:2

**smashed** [2] - 46:8, 79:16

**SMITH** [49] - 1:18, 1:19, 3:12, 4:24, 6:11, 6:14, 6:19, 9:24, 10:4, 11:2, 13:21, 13:24, 14:4, 14:16, 14:23, 15:7, 16:13, 17:17, 18:14, 19:3, 19:10, 20:6, 21:3, 21:15, 22:7, 22:23, 25:4, 25:20, 25:24, 26:6, 26:9, 27:3, 27:13, 28:9, 29:13, 30:3, 30:20, 31:6, 31:13, 31:15, 47:20, 50:1, 58:17, 71:13, 72:20, 91:4, 91:8, 92:1, 92:5

**Smith** [19] - 3:13, 3:16, 4:23, 6:8, 6:24, 9:23, 10:11, 15:4, 21:18, 31:5, 37:22, 47:19, 52:11, 55:15, 58:15, 71:10, 72:18, 91:3, 92:4

**Smith's** [1] - 34:8

**society** [7] - 61:4, 62:6, 68:9, 73:7, 77:19, 78:11, 82:11

**solely** [2] - 59:10, 70:8

**solemn** [1] - 80:7

**solitary** [3] - 73:18,

78:3, 78:9

**someone** [5] - 10:21, 26:18, 36:4, 51:8, 51:12

**sometimes** [3] - 11:7, 30:24, 34:18

**somewhere** [1] - 55:7

**son** [1] - 75:1

**sorry** [7] - 18:14, 22:25, 26:23, 67:15, 77:3, 82:13, 88:11

**sort** [5] - 19:8, 42:18, 43:24, 52:17, 55:2

**sought** [1] - 18:19

**soul** [1] - 78:8

**space** [2] - 17:6, 24:1

**speaker** [1] - 22:15

**speakers** [10] - 11:14, 12:16, 12:23, 23:9, 23:13, 23:19, 24:5, 24:7, 24:16, 24:21

**speaking** [3] - 34:11, 34:19, 86:18

**Special** [1] - 3:8

**special** [8] - 56:15, 56:20, 56:25, 59:9, 88:9, 89:1, 89:12, 90:24

**specific** [19] - 17:25, 19:25, 20:6, 26:13, 26:14, 26:17, 28:10, 31:22, 36:18, 41:19, 48:22, 48:23, 66:9, 66:14, 67:11, 70:1, 70:3, 89:8

**specifically** [6] - 8:9, 15:17, 25:1, 32:3, 32:4, 36:18

**specifics** [1] - 36:10

**specify** [1] - 35:5

**spelled** [1] - 41:8

**spend** [1] - 10:17

**spent** [2] - 20:2, 78:3

**spray** [4] - 43:9, 43:17, 43:22, 44:5

**squarely** [1] - 25:18

**staffers** [1] - 77:1

**stage** [2] - 38:7, 42:8

**stairs** [3] - 45:24, 46:2

**stand** [5] - 60:21, 65:2, 67:20, 78:19, 84:7

**standard** [4] - 27:4, 27:8, 48:19, 88:24

**standing** [1] - 23:24

**start** [4] - 31:20, 31:23, 41:23, 63:12

**started** [1] - 48:11

**starting** [3] - 3:5, 48:13, 58:5

**state** [7] - 22:20, 50:24, 51:18, 51:22, 54:18, 63:3, 88:20

**state's** [3] - 22:20, 50:25, 51:3

**statement** [3] - 76:9, 80:20, 84:16

**statements** [11] - 6:13, 59:23, 80:9, 80:21, 80:24, 81:5, 81:9, 81:11, 81:24, 82:9, 83:12

**States** [15] - 2:2, 3:2, 3:7, 5:13, 20:24, 40:11, 42:6, 52:2, 53:6, 53:9, 64:11, 66:4, 89:20, 90:12, 93:13

**STATES** [4] - 1:1, 1:3, 1:11, 1:15

**stating** [1] - 19:15

**statute** [19] - 15:18, 16:8, 16:12, 16:24, 19:9, 22:3, 22:5, 33:2, 33:18, 33:21, 34:4, 40:5, 48:9, 49:4, 50:17, 50:19, 53:5, 53:8, 55:25

**statutes** [15] - 15:25, 20:9, 24:3, 32:4, 32:9, 32:25, 33:15, 33:18, 37:6, 37:24, 39:23, 41:2, 41:3, 41:16, 54:4

**statutory** [7] - 15:14, 16:23, 32:22, 53:7, 57:25, 58:15, 89:25

**stay** [1] - 39:10

**stealing** [1] - 54:16

**stenographic** [1] - 93:5

**step** [9] - 5:8, 5:12, 5:14, 5:17, 5:20, 5:22, 17:2, 43:19, 80:7

**stepped** [1] - 40:21

**steps** [2] - 5:1, 44:4

**sticks** [1] - 49:20

**stiff** [1] - 74:1

**still** [9] - 15:13, 16:1, 18:18, 44:19, 53:19, 64:1, 68:23, 87:1, 88:1

**stole** [1] - 50:3

**storming** [1] - 80:12

**story** [1] - 67:21

**Street** [2] - 1:16, 1:22

**stress** [1] - 28:15

**stressed** [3] - 71:17, 72:2, 72:14

**strikes** [1] - 10:13

**strong** [2] - 33:1, 60:10

**stronger** [1] - 46:17

**strongest** [1] - 47:10

**struck** [2] - 49:19, 72:4

**structural** [1] - 35:15

**structure** [6] - 33:18, 34:5, 35:14, 37:3, 39:3, 65:10

**struggling** [1] - 44:21

**subject** [1] - 45:1

**submission** [1] - 49:17

**submit** [3] - 74:3, 88:22, 88:23

**submitted** [8] - 4:13, 12:18, 13:16, 15:22, 30:22, 44:8, 49:17, 76:1

**subpoena** [1] - 52:18

**subpoenas** [4] - 18:1, 18:22, 22:13, 48:7

**substance** [2] - 33:17, 88:21

**substantial** [14] - 8:7, 8:10, 27:21, 27:22, 27:23, 28:7, 30:4, 33:23, 33:25, 36:23, 36:25, 37:9, 85:25, 86:5

**substantially** [2] - 86:11, 86:15

**successful** [1] - 61:25

**sufficient** [1] - 59:14

**suggest** [2] - 15:1, 25:17

**suggested** [2] - 47:22, 81:19

**suggesting** [1] - 26:20

**suggestion** [3] - 48:8, 48:12, 83:5

**suggests** [1] - 20:21

**Suite** [1] - 1:20

**summarize** [2] - 7:17, 11:12

**summary** [1] - 74:7

**super** [1] - 68:15

**super-helpful** [1] - 68:15

**supervised** [9] - 57:3, 57:6, 57:7, 57:9, 59:5, 88:10, 88:13,

91:14

**supervising** [1] - 74:8

**supervision** [1] - 88:18

**supervisor** [1] - 81:9

**supplement** [1] - 25:10

**supplemental** [1] - 15:22

**support** [4] - 50:19, 68:25, 83:20, 83:23

**supported** [1] - 52:20

**supporting** [1] - 42:4

**supposed** [4] - 37:23, 54:2, 75:19, 80:13

**supremacy** [1] - 53:7

**Supreme** [2] - 20:24, 26:10

**surprising** [2] - 72:5, 72:7

**surprisingly** [1] - 40:14

**survived** [1] - 87:22

**susceptible** [1] - 70:12

**suspect** [1] - 18:19

**swoops** [1] - 44:22

**sympathetic** [1] - 10:15

**system** [2] - 12:17, 28:18

# T

**table** [2] - 3:8, 57:20

**tackling** [1] - 27:14

**tailored** [1] - 70:15

**talker** [1] - 65:3

**talks** [5] - 20:20, 20:24, 20:25, 28:6, 34:21

**taunts** [1] - 80:14

**technical** [2] - 36:14, 45:10

**televised** [1] - 80:17

**term** [34] - 11:6, 11:9, 11:11, 11:14, 11:17, 11:20, 13:13, 14:3, 15:20, 16:10, 20:25, 21:21, 21:25, 23:10, 24:15, 34:9, 34:12, 34:14, 34:23, 35:16, 52:13, 52:14, 52:23, 53:24, 56:3, 56:7, 56:11, 57:3, 57:5, 57:7, 88:6, 88:9,

91:15
**terminated** [1] - 28:3
**terms** [12] - 14:19,
14:22, 23:2, 33:17,
37:2, 45:3, 57:9,
65:15, 65:19, 67:12,
86:9, 86:12
**terrace** [2] - 45:20,
46:3
**terrible** [1] - 43:24
**test** [2] - 62:5, 88:22
**tested** [2] - 61:12,
61:15
**testified** [1] - 64:1
**testify** [1] - 84:9
**testifying** [1] - 60:21
**testimony** [9] - 8:13,
10:16, 18:1, 28:2,
54:20, 54:23, 58:12,
60:22, 64:7
**tests** [1] - 70:22
**text** [3] - 34:5, 39:10,
39:17
**thankfully** [1] - 82:7
**THE** [100] - 1:1, 1:10,
1:14, 1:15, 1:18, 3:1,
3:11, 3:16, 4:22, 4:25,
6:8, 6:12, 6:17, 6:20,
6:22, 6:23, 7:1, 7:2,
7:6, 7:7, 7:8, 7:9,
9:15, 9:23, 10:1, 10:8,
13:19, 13:22, 14:2,
14:14, 14:18, 15:4,
16:1, 17:12, 18:13,
18:24, 19:4, 20:1,
20:20, 21:14, 21:17,
22:18, 24:24, 25:19,
25:23, 26:2, 26:8,
26:23, 27:9, 28:6,
29:4, 30:2, 30:16,
31:5, 31:11, 31:14,
31:16, 31:18, 32:24,
34:8, 35:17, 35:20,
37:17, 39:6, 40:12,
41:19, 41:25, 45:11,
45:14, 45:16, 47:18,
49:25, 50:6, 50:10,
58:8, 58:18, 66:10,
68:15, 69:21, 71:9,
72:18, 76:8, 76:12,
76:14, 76:15, 79:5,
79:7, 79:8, 90:18,
90:21, 90:25, 91:2,
91:7, 91:11, 91:12,
91:17, 91:24, 92:4,
92:6, 92:7
**themselves** [1] -
39:24, 73:13, 81:12
**theories** [1] - 42:4
**theory** [3] - 66:18,

70:8, 70:11
**therefore** [4] - 9:1,
55:21, 81:20, 85:22
**Thereupon** [1] - 50:8
**they've** [1] - 73:8
**thinking** [1] - 18:9
**Third** [1] - 53:10
**third** [4] - 5:14, 11:8,
20:14, 84:6
**Thomas** [1] - 13:1
**thoughtful** [1] - 20:3
**thousands** [2] -
28:12, 30:13
**threat** [16] - 42:16,
44:2, 45:1, 46:23,
47:11, 47:16, 48:24,
63:5, 63:7, 64:4,
64:15, 66:4, 67:8,
68:24, 70:15, 77:18
**threaten** [2] - 49:12,
85:10
**threatened** [6] - 8:3,
10:21, 46:15, 46:22,
74:12, 74:13
**threatening** [7] -
27:15, 27:17, 32:17,
37:10, 40:7, 49:1,
74:25
**threats** [4] - 40:6,
54:14, 65:20, 78:8
**three** [8] - 8:10, 20:7,
57:4, 60:14, 69:19,
86:1, 88:9
**three-level** [3] - 8:10,
69:19, 86:1
**three-point** [1] -
69:19
**three-year** [1] - 88:9
**throughout** [1] -
73:17
**Timothy** [4] - 3:2,
3:13, 3:21, 88:5
**TIMOTHY** [1] - 1:6
**Title** [6] - 13:18,
30:8, 30:15, 30:23,
31:3, 49:16
**today** [7] - 5:3, 63:4,
63:5, 65:22, 67:13,
70:18, 91:5
**today's** [2] - 5:4, 5:8
**together** [3] - 21:15,
21:23, 47:15
**tone** [1] - 72:24
**took** [10] - 48:23,
49:11, 62:20, 62:21,
62:24, 62:25, 64:24,
70:2, 81:6
**tool** [1] - 36:17
**tools** [5] - 33:16,
34:3, 35:12, 37:2,

37:23
**top** [4] - 44:11,
44:15, 60:12, 68:19
**total** [3] - 8:16, 8:21,
9:6
**toward** [1] - 81:15
**towards** [2] - 80:18,
80:22
**traceable** [1] - 36:5
**traditional** [1] - 55:2
**transcript** [3] - 4:18,
93:5, 93:6
**TRANSCRIPT** [1] -
1:10
**transfer** [4] - 41:10,
60:11, 63:7, 80:7
**transitioned** [1] -
60:23
**traumatic** [1] - 82:13
**TREVOR** [1] - 1:10
**trial** [14] - 3:15, 4:10,
4:15, 4:19, 19:23,
43:3, 45:16, 60:12,
60:20, 62:10, 62:11,
72:12, 77:6
**tribunals** [2] - 32:10,
39:25
**tried** [5] - 66:16,
79:19, 79:23, 81:4,
84:23
**tries** [1] - 44:22
**troubling** [1] - 79:15
**true** [8] - 49:17,
53:17, 60:10, 63:14,
77:21, 77:24, 93:4,
93:5
**trumps** [1] - 53:5
**truthfully** [1] - 84:10
**trying** [5] - 19:1,
38:11, 44:16, 67:5,
79:24
**tugged** [1] - 26:21
**tugging** [1] - 27:20
**turn** [3] - 12:15, 23:7,
23:24
**turning** [2] - 5:22,
57:11
**turns** [1] - 27:22
**two** [18] - 4:14, 4:17,
8:1, 8:15, 14:18,
14:22, 16:14, 25:3,
26:11, 29:15, 29:18,
30:10, 31:21, 41:13,
42:3, 58:6, 78:6,
90:16
**two-level** [1] - 8:15
**type** [1] - 66:12
**types** [4] - 18:11,
27:23, 29:18, 60:3
**typically** [1] - 61:11

**tyranny** [2] - 70:20,
71:2

**U**

**U.S** [4] - 1:24, 53:6,
89:5, 89:13
**ugly** [3] - 72:22,
76:4, 77:14
**ultimately** [1] -
83:21, 86:22
**unable** [1] - 90:9
**unacceptable** [2] -
76:20, 80:19
**unambiguously** [1] -
25:15
**unavailable** [1] -
90:5
**under** [39] - 5:13,
8:13, 16:4, 19:8, 26:5,
27:10, 27:16, 30:8,
30:11, 30:23, 31:3,
31:22, 32:10, 32:21,
33:7, 33:9, 34:22,
36:22, 40:9, 42:4,
47:24, 49:4, 53:20,
54:10, 55:25, 57:9,
57:21, 58:1, 58:7,
58:18, 62:17, 63:8,
65:6, 67:18, 67:20,
70:11, 74:17, 77:9,
85:8
**undercutting** [1] -
19:12
**understandable** [1] -
83:14
**understood** [1] -
19:3
**undertaken** [3] -
29:5, 29:7, 45:4
**uniform** [2] - 76:21,
84:24
**united** [1] - 2:2
**UNITED** [4] - 1:1,
1:3, 1:11, 1:15
**United** [14] - 3:2, 3:7,
5:13, 20:23, 40:11,
42:6, 52:2, 53:6, 53:9,
64:11, 66:4, 89:20,
90:12, 93:13
**unites** [1] - 28:4
**unlawfully** [1] -
54:16
**unless** [3] - 22:14,
47:6, 57:14
**unlike** [1] - 84:5
**unnecessary** [2] -
28:7, 33:25
**unpolished** [1] -

67:19
**unquestionably** [1] -
49:23
**unredacted** [2] -
4:18, 4:20
**unredeemable** [1] -
87:21
**unruly** [1] - 79:24
**unsavory** [3] - 63:3,
65:23, 65:24
**unvarnished** [1] -
67:19
**unwarranted** [8] -
20:13, 29:25, 30:12,
30:16, 49:14, 60:1,
68:11, 87:15
**up** [16] - 11:3, 15:8,
16:20, 21:22, 29:14,
44:14, 44:18, 45:20,
46:2, 57:17, 62:25,
65:2, 67:7, 72:24,
74:5, 75:16
**upbringing** [1] -
75:17
**upper** [1] - 46:2
**upward** [5] - 38:10,
54:9, 68:21, 68:25,
86:23
**USAfx** [2] - 4:14,
4:21
**USC** [14] - 5:19, 32:3,
34:20, 35:8, 35:9,
36:22, 38:20, 41:5,
57:9, 57:22, 59:13,
69:5, 89:23, 90:3
**uses** [3] - 34:9,
34:12, 69:16

**V**

**variance** [10] - 38:11,
54:10, 55:23, 60:7,
68:25, 71:12, 82:21,
83:7, 86:24, 86:25
**variances** [1] - 68:21
**various** [1] - 45:7
**vary** [1] - 83:2
**version** [1] - 4:19
**versus** [7] - 3:2,
11:13, 31:21, 52:3,
53:6, 53:9, 90:12
**vest** [1] - 50:3
**via** [2] - 4:14, 4:21
**vicarious** [1] - 29:16
**videos** [1] - 4:9
**view** [3] - 10:12,
19:5, 31:11
**views** [1] - 63:3,
65:24, 72:23

**vindicate** [1] - 51:13
**violation** [2] - 5:7, 33:3
**violations** [1] - 30:9
**violence** [8] - 65:20, 66:2, 75:23, 75:24, 76:1, 77:17, 80:16, 82:6
**violent** [3] - 42:15, 76:3, 82:1
**Visitor** [6] - 43:1, 43:6, 43:15, 44:1, 46:19, 84:18
**vital** [1] - 80:7
**voice** [1] - 65:8
**volatile** [1] - 79:22
**vote** [2] - 41:11, 60:17
**vs** [1] - 1:5

### W

**waive** [1] - 88:21
**waiving** [1] - 90:21
**wants** [2] - 30:1, 67:18
**war** [7] - 42:8, 48:13, 61:24, 65:7, 67:19, 72:25, 81:19
**warranted** [1] - 85:23
**warrants** [1] - 73:25
**Washington** [4] - 1:6, 1:17, 2:4, 93:14
**watching** [1] - 44:19
**Watts** [2] - 63:25, 64:7
**waving** [2] - 49:13, 79:20
**ways** [5] - 19:11, 30:13, 47:8, 75:18, 82:8
**weapon** [1] - 44:1
**weapons** [5] - 43:8, 43:17, 43:20, 43:23, 44:6
**wearing** [1] - 81:10
**Webster's** [7] - 11:8, 12:1, 12:10, 12:15, 21:11, 21:19, 21:22
**weighty** [1] - 70:24
**well-established** [1] - 45:10
**west** [2] - 45:20, 46:2
**whispered** [1] - 65:5
**whispering** [1] - 67:18
**wielding** [1] - 44:5
**wife's** [1] - 75:2
**willing** [3] - 61:21,

71:2, 74:8
**window** [3] - 46:5, 46:8, 46:10
**windows** [2] - 79:16, 79:20
**Winfield** [2] - 39:6, 39:13
**wing** [3] - 45:18, 46:3, 46:5
**wisdom** [1] - 69:8
**wise** [2] - 13:1, 13:2
**wish** [6] - 5:15, 38:4, 60:5, 65:7, 71:10, 78:7
**witness** [5] - 18:1, 42:10, 54:22, 84:7, 85:13
**witnesses** [1] - 84:10
**women** [1] - 80:24
**word** [11] - 12:3, 12:4, 12:11, 12:16, 13:6, 14:6, 23:2, 23:22, 24:4, 24:20
**words** [6] - 13:1, 13:2, 13:4, 24:12, 34:18, 47:3
**works** [1] - 47:15
**world** [1] - 81:25
**worse** [1] - 30:24
**wrongdoing** [1] - 51:23
**wrongs** [1] - 68:8
**wrote** [1] - 52:3

### Y

**year** [4] - 49:21, 56:8, 57:6, 88:9
**years** [9] - 56:4, 57:4, 57:12, 60:24, 78:6, 82:5, 82:22, 83:11, 87:19
**years'** [2] - 57:18, 86:23
**yesterday** [2] - 50:21, 74:5
**York** [2] - 1:20
**young** [1] - 88:1
**yourself** [3] - 14:25, 85:10, 88:3
**yourselves** [1] - 3:5

### Z

**zero** [1] - 8:19
**Zone** [1] - 57:19